IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE DRY MAX PAMPERS LITIGATION | : | CASE NO. 1:10-cv-00301 TSB |
| | : | (Judge Timothy S. Black) |
| | : | **MOTION OF DEFENDANTS THE** |
| | | **PROCTER & GAMBLE COMPANY,** |
| | : | **THE PROCTER & GAMBLE** |
| | | **PAPER PRODUCTS COMPANY** |
| | : | **AND THE PROCTER & GAMBLE** |
| | | **DISTRIBUTING LLC TO DISMISS** |
| | : | **THE CONSOLIDATED CLASS** |
| | | **ACTION COMPLAINT** |
| | : | |

Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC (collectively "Procter & Gamble") move to dismiss the Consolidated Class Action Complaint ("Complaint") [Doc. No. 25] in its entirety.

In their Complaint, Plaintiffs[1] allege forty-five (45) causes of action that can be divided roughly into five (5) separate theories of recovery: (1) breach of implied warranty (under the Uniform Commercial Code (Count One) and the Magnuson-Moss Warranty Act (Count Two)); (2) unjust enrichment (Count Three); (3) violations of various states' deceptive

---

[1] Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Mariah MaLoon, Morgan Maue, Robin York, Jeni McAllister, Maria McMahon, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Lisa Saacks, Diane Samelson, Adona Schank, Asia Southard, Suzy Sullivan, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe, and Amy Young (collectively "Plaintiffs").

trade practices and consumer fraud acts (Counts Four through Twenty-Nine); (4) common law negligence and strict liability (Counts Thirty and Thirty-One); and (5) violations of various states' product liability acts (Counts Thirty-Two through Forty-Five).

For the reasons demonstrated in the accompanying memorandum, each of Plaintiffs' claims is fatally defective and must be dismissed.

Respectfully submitted,

OF COUNSEL:

Robert F. Ruyak (*pro hac vice pending*)
Edward Han (*pro hac vice pending*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 783-0800
Telecopier: (202) 383-6610

Joanne E. Caruso (*pro hac vice pending*)
HOWREY LLP
550 South Hope St.
Suite 1100
Los Angeles, CA 90071
Telephone: (213) 892-1800
Telecopier: (213) 892-2300

s/ D. Jeffrey Ireland
D. Jeffrey Ireland (0010443)
  Trial Attorney
Brian D. Wright (0075359)
Bruke H. Sullivan (0082765)
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0310
Telecopier: (513) 632-0319
Email: djireland@ficlaw.com

Counsel for Defendants
The Procter & Gamble Company,
The Procter & Gamble Paper Products Company
and The Procter & Gamble Distributing LLC

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ....................................................................................... 1

II.  SUMMARY OF DEFECTS IN PLAINTIFFS' COMPLAINT ........................... 3

III. PLAINTIFFS' CLAIMS ARE DEFECTIVE BECAUSE OF SPECULATION AND A
     FAILURE TO PLEAD CAUSATION ............................................................. 6

     A.   Plaintiffs Fail to Allege Sufficient Facts (More Than Conclusory
          Allegations of "Correlation") to Raise a Right to Relief Above the
          Speculative Level ............................................................................... 7

     B.   Plaintiffs Must Allege Facts Showing Causation and Do More Than
          Allege Conduct that is Merely Consistent with Actionable Conduct ................ 11

IV.  EVEN IF SUFFICIENT FACTS ARE ALLEGED, EACH OF PLAINTIFFS' CLAIMS
     REMAIN DEFECTIVE FOR SEVERAL SEPARATE AND INDEPENDENT
     REASONS ............................................................................................. 13

     A.   Plaintiffs' Implied Warranty Claims (Both Under the Uniform Commercial
          Code (Count One) and Magnuson-Moss Warranty Act (Count Two)) Must
          be Dismissed ..................................................................................... 13

          1.   Plaintiffs Lack Standing to Bring the Several Alleged Claims ................. 13

          2.   Plaintiffs Failed to Provide Proper (or Any) Notice ............................. 15

          3.   The Lack of Privity Requires Dismissal .............................................. 16

          4.   Product Liability Statutes Specifically Abrogate Several Claims ............ 17

          5.   Magnuson-Moss Warranty Act Claim Must Be Dismissed ..................... 18

     B.   Plaintiffs' Deceptive Trade Practices and Consumer Fraud Claims are
          Legally Deficient For Multiple Reasons .................................................. 19

          1.   No Plaintiffs Allege that They Read, Saw or Heard Any Specific
               Statement, and It Is Not Possible that Plaintiffs Were Caused Harm
               By Something of Which They Were Not Aware .................................... 19

          2.   Plaintiffs Fail to Allege Facts Regarding Reliance or Causation ............ 21

          3.   Plaintiffs Failed to Meet Several Additional Requirements and
               Their Claims Must be Dismissed ...................................................... 21

               (a)   Plaintiffs Failed to Provide Required Notices ............................. 21

        (b)     Product Liability Acts Specifically Abrogate Several Claims ........................................................................... 24

        (c)     Several States Prohibit Class-Wide Relief..................................... 24

    C.     Plaintiffs' Negligence and Strict Liability Claims Must Be Dismissed ............... 26

        1.     Class Members Cannot Recover Purely Economic Harm ........................ 26

        2.     Product Liability Acts Specifically Abrogate Several Claims.................. 27

    D.     Each of the Alleged Product Liability Claims Requires Some Physical Harm ........................................................................................ 28

    E.     Plaintiffs' Unjust Enrichment Claims Must Be Dismissed ................................... 28

V.    CONCLUSION.................................................................................................30

APPENDIX A – Notice Requirements for Breach

APPENDIX B – Lack of Privity Requires Dismissal of Breach of Implied Warranty Claims under Certain States

APPENDIX C – Privity Exception Applies Only With Physical Injury

APPENDIX D – Heightened Pleading Applies to Deceptive Trade Practices Acts

APPENDIX E – Reliance or Causation Is a Required Element of Claims Under Deceptive Trade Practices Acts

APPENDIX F – Economic Loss Rule Requires Dismissal of Plaintiffs' Negligence and Strict Liability Claims

APPENDIX G – Plaintiffs' No-Injury Product Liability Claims Must Be Dismissed

## TABLE OF AUTHORITIES

Page(s)

### CASES

A.B.C. Home & Real Estate Inspection, Inc. v. Plummer, 500 N.E.2d 1257 (Ind. Ct. App. 1986)...........................................................................................22-23

Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc., No. 8:09-cv-2453-T-30TBM, 2010 U.S. Dist. LEXIS 84544 (M.D. Fla. July 16, 2010)...........19

Alban v. BMW of N. Am., LLC, No. 09-5398, 2010 U.S. Dist. LEXIS 94038 (D.N.J. Sept. 8, 2010) .........................................................................................20

Anderson v. Merck & Co., 417 F. Supp. 2d 842 (E.D. Ky. 2006) ....................................21

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937 (2009).....................................3, 6-7, 11, 12

Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545 (6th Cir. 2007) ...............................................................................................................7

Bailey v. Monaco Coach Corp., 168 Fed. Appx. 893 (11th Cir. 2006) ............................16

Baisden v. I'm Ready Prods. Inc., No. H-08-0451, 2008 U.S. Dist. LEXIS 39949 (S.D. Tex. May 16, 2008) ........................................................................30

Banks v. Nationwide Mut. Fire Ins. Co., No. 99AP-1413, 2000 Ohio App. LEXIS 5504 (Ohio Ct. App. Franklin County Nov. 28, 2000)..................................28

Bearden v. Honeywell Int'l, Inc., No. 3:09-01035, 2010 U.S. Dist. LEXIS 58359 (M.D. Tenn. June 14, 2010).......................................................................18

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) .........3, 7, 8, 10, 11, 12

Benchmark Bldg. Corp. v. United Builders Supply Co., No. 62896, 1992 Conn. Super. LEXIS 1629 (Conn. Super. Ct. May 28, 1992) .........................................15-16

Berry v. Indianapolis Life Ins. Co., No. 3:08-cv-0248-B, 2010 U.S. Dist. LEXIS 88703 (N.D. Tex. Aug. 26, 2010) .....................................................................29

Bingham v. Blair LLC, No. C10-5005, 2010 U.S. Dist. LEXIS 39351 (W.D. Wash. Apr. 19, 2010) ..........................................................................................27

Bower v. Int'l Bus. Machs, Inc., 495 F. Supp. 2d 837 (S.D. Ohio 2004) .........................23

Brown v. Philip Morris Inc., 228 F. Supp. 2d 506 (D.N.J. 2002)....................................27

Chamberlain v. Am. Tobacco Co., No 1-96 CV 2005, 1999 U.S. Dist. LEXIS 22636 (N.D. Ohio Nov. 19, 1999) ................................................................29

In re Checking Account Overdraft Litig., 694 F. Supp. 2d 1302 (S.D. Fla. 2010)............14

Christian v. Sony Corp. of Am., 152 F. Supp. 2d 1184 (D. Minn. 2001).........................16

Clark v. The Procter & Gamble Co., Case No. 10-cv-301 (filed May 11, 2010)............1, 2

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99 (1957)............................................................7

Coto Settlement v. Eisenberg, 593 F.3d 1031 (9th Cir. 2010)..........................................29

Deerman v. Fed. Home Loan Mortgage Corp., 955 F. Supp. 1393 (N.D. Ala. 1997), aff'd, 140 F.3d 1043 (11th Cir. 1998).......................................................21, 22

Dema v. Tenet Physician Services-Hilton Head, Inc., 383 S.C. 115, 678 S.E.2d 430 (2009)..........................................................................................................25

Drobnak v. Andersen Corp., 561 F.3d 778 (8th Cir. 2009).........................................28, 29

Dubinsky v. Mermart, LLC, No. 4:08-cv-1806, 2009 U.S. Dist. LEXIS 31992 (E.D. Mo. Apr. 15, 2009), aff'd, 595 F.3d 812 (8th Cir. 2010) ...................................29

Dunn v. Zimmer, Inc., 3 2005 U.S. Dist. LEXIS 5346 (D. Conn. Mar. 31, 2005)............24

Ex parte Exxon Corp., 725 So. 2d 930 (Ala. 1998).........................................................25

In re Facebook PPC Adver. Litig., Nos. 5:09-cv-03043, 5:09-cv-03519, 5:09-cv-03430, 2010 U.S. Dist. LEXIS 87769 (N.D. Cal. Aug. 25, 2010) ..............................20

Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., No. 07-cv-1005, 2010 U.S. Dist. LEXIS 60422 (N.D. Ohio June 18, 2010) ..................................................................16

Hensley Mfg., Inc. v. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009) ..............................7, 10

Hinson v. United Fin. Servs., Inc., No. COA95-459, 123 N.C. App. 469, 473 S.E.2d 382 (N.C. App. 1996)...............................................................................28

Iowa Network Servs., Inc. v. Qwest Corp., 385 F. Supp. 2d 850 (S.D. Iowa 2005), aff'd, 466 F.3d 1091 (8th Cir. 2006) ...............................................................28, 29

Johnson v. Microsoft Corp., 106 Ohio St. 3d 278, 834 N.E.2d 791 ............................. 29

Johnson v. Ross, No. 6:08-cv-00313, 2009 U.S. Dist. LEXIS 115034 .............................28

Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009)................................................20

Koronthaly v. L'Oreal USA, Inc., No. 08-4625, 2010 U.S. App. LEXIS 6383 (3d
    Cir. Mar. 26, 2010) ..............................................................................................4

L.S. Henriksen Constr., Inc. v. Shea, 155 Or. App. 156, 961 P.2d 295 (Or. App.
    1998) ....................................................................................................................28

Laster v. T-Mobile United States, Inc., 407 F. Supp. 2d 1181 (S.D. Cal. 2005),
    aff'd, 252 Fed. Appx. 777 (9th Cir. 2007)..........................................................22

Lieb v. American Motors Corp., 538 F. Supp. 127 (S.D.N.Y. 1982)................................19

Loreto v. The Procter & Gamble Co., No. 1:09-cv-815, 2010 U.S. Dist. LEXIS
    91699 (S.D. Ohio Sept. 3, 2010)..............................................................2, 4, 13-14

Loyd v. Huntington Nat'l Bank, No. 1:08 CV 2301, 2009 U.S. Dist. LEXIS 51858
    (N.D. Ohio June 18, 2009)....................................................................................8

Marrone v. Philip Morris USA, Inc., 110 Ohio St. 3d 5, 850 N.E.2d 31...........................23

Miles v. Raymond Corp., 612 F. Supp. 2d 913 (N.D. Ohio 2009) ....................................27

Mitchell v. Procter & Gamble, No. 2:09-CV-426, 2010 U.S. Dist. LEXIS 17956
    (S.D. Ohio Mar. 1, 2010) ..............................................................................3, 24

Monroe v. Baxter Healthcare Corp. (In re Heparin), No. 3:09HC60137, 2010 U.S.
    Dist. LEXIS 11297 (N.D. Ohio Feb. 9, 2010) ...................................................10

Montgomery v. Wyeth, 580 F.3d 455 (6th Cir. 2009) ......................................................14

Morgan v. Biro Mfg. Co., Inc., 15 Ohio St. 3d 339, 474 N.E.2d 286 (1984)...................14

Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845 (6th
    Cir. 2002) ...........................................................................................................26

N.G.L. Travel Assocs. v. Celebrity Cruises Inc., 764 So. 2d 672 (Fla. 3d DCA
    2000) ..................................................................................................................29

Nelson Mullins Riley & Scarborough, LLP v. Aon Risk Servs. of, N.Y., No.
    4:04-c 2007 U.S. Dist. LEXIS 98126 (D.S.C. July 18, 2007) ........................29

Norris v. Baxter Heathcare Corp., 397 F.3d 878 (10th Cir. 2005) ....................................10

Pacheco v. Boar's Head Provisions Co., No. 1:09-cv-298, 2010 U.S. Dist. LEXIS
    30463 (W.D. Mich. Mar. 30, 2010) ..................................................................28

Parker v. Bell Ford, Inc., 425 So. 2d 1101 (Ala. 1983) ....................................................15

Perry v. Tri-State Chrysler Jeep, LLC, No. 3:08-0104, 2008 U.S. Dist. LEXIS
33218 (S.D. W. Va. Apr. 16, 2008) ...........................................................22

Premier Pork L.L.C. v. Westin, Inc., No. 07-1661, 2008 U.S. Dist. LEXIS 20532
(D.N.J. Mar. 17, 2008)...............................................................................29

Radford v. Daimler Chrysler Corp., 168 F. Supp. 2d 751 (N.D. Ohio 2001)....................28

Rose v. Truck Ctrs., Inc., 611 F. Supp. 2d 745 (N.D. Ohio 2009) ....................................27

Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., __ U.S. __, 130 S. Ct. 1431
(2010).........................................................................................................25

Shane v. Bonzl. Distrib. USA, Inc., 200 Fed. Appx. 397 (6th Cir. 2006) ........................28

Shannon v. Howmedica Osteonics Corp., No 09-4171, 2010 U.S. Dist. LEXIS
8621 (D.N.J. Feb. 1, 2010)..................................................................17, 24

Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc., 836 S.W.2d 907 (Ky. Ct. App.
1992) ..........................................................................................................21

Smith v. Ford Motor Co., No. C-06-00497, 2010 U.S. Dist. LEXIS 95122 (N.D.
Calif. Sept. 13, 2010) ................................................................................29

Smith v. Lawyers Title Ins. Corp., No. 07-12124, 2009 U.S. Dist. LEXIS 16140
(E.D. Mich. Mar. 2, 2009) .........................................................................13

Southern v. Pfizer, Inc., 471 F. Supp. 2d 1207 (N.D. Ala. June 2006) ............................28

St. Clair v. Kroger Co., 581 F. Supp. 2d 896 (N.D. Ohio 2008) ................................6, 15

State Farm Bank, F.S.B. v. Manheim Auto. Fin. Servs., Inc., No. 3:10-cv-00519,
2010 U.S. Dist. LEXIS 80698 (N.D. Tex. Aug. 6, 2010)..........................29

Stratford v. SmithKline Beecham Corp., No. 2:07-CV-639, 2008 U.S. Dist.
LEXIS 84826 (S.D. Ohio June 17, 2008) .................................................17

Suarez v. Playtex Prods, Inc., Nos. 08 C 2703, 08 C 3352, 2009 U.S. Dist. LEXIS
63771 (N.D. Ill. July 24, 2009) ............................................................ 28-29

Temple v. Fleetwood Enters., 133 Fed. Appx. 254 (6th Cir. 2005) ..................................18

Thomas v. Metro. Life Ins. Co., 540 F. Supp. 2d 1212 (W.D. Okla. 2008) .....................14

Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203, 2006 U.S. Dist. LEXIS 39113
(D. Kan. June 13, 2006)..............................................................................20

Tompkin v. Am. Brands, 219 F.3d 566 (6th Cir. 2000) .................................................27

In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010) ..............................25

Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 562 A.2d 517 (1989).....................17, 27

Wyser-Pratte Mgmt. Co. v. Telxon Corp., 413 F.3d 553 (6th Cir. 2005)...........................2

In re Yasmin and Yaz (Drospirenone) Sales Practices and Prods. Liab. Litig. V. Bayer Healthcare Pharms. Inc., 3:09-md-02100, MDL No. 2100, 3:09-cv-20071, 2010 U.S. Dist. LEXIS 80758 (S.D. Ill. Aug. 5, 2010) ...................................29

## STATUTES AND RULES

15 U.S.C. § 2310(d)(3)(C) .......................................................................................19

15 U.S.C. § 2310(e) ................................................................................................18

810 Ill. Comp. Stat. 5/2-607.....................................................................................16

Cal. Civ. Code § 1782), ...........................................................................................21

Ala. Code § 8-19-1 et seq. .................................................................................21-22, 24

Fed. R. Civ. P. 9(b) .......................................................................1, 5, 19, 20, 29

Fed. R. Civ. P. 12(b)(6).......................................................................1, 2, 6, 7

Me. Rev. Stat. tit. 5 § 213(1-a) ................................................................................23

Mont. Code Ann. § 30-14-101 et seq................................................................................24

Mont. Code Ann. § 30-14-133(1) ..............................................................................25

Ohio Admin. Code § 109:4-3-10(A) ...........................................................................23

Ohio Rev. Code § 1345.09(B) ..................................................................................23

Ohio Rev. Code § 2307.71(A)(7) ..............................................................................28

S.C. Code § 39-5-10 et seq. ....................................................................................24

S.C. Code § 39-5-140(a) .........................................................................................25

Tex. Bus. Com. Code § 17.505.................................................................................23

W. Va. Code §§ 46A-1-101 et seq..................................................................................22

W. Va. Code § 46A-6-106(b) ...........................................................................21

## MISCELLANEOUS

Restatement (Second) Conflict of Laws § 146 (1971)......................................14

**MEMORANDUM IN SUPPORT OF THE MOTION OF DEFENDANTS
THE PROCTER & GAMBLE COMPANY, THE PROCTER & GAMBLE PAPER
PRODUCTS COMPANY AND THE PROCTER & GAMBLE DISTRIBUTING LLC
TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

I.         <u>INTRODUCTION</u>

Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC (collectively "Procter & Gamble") move to dismiss the Consolidated Class Action Complaint ("Complaint") [Doc. No. 25] in its entirety.

Plaintiffs[1] filed the first of several complaints on May 11, 2010, asserting seven (7) claims for relief against Procter & Gamble on behalf of "all purchasers" of Pampers brand diapers and "Easy Ups" whose children suffered alleged rashes by the use of Procter & Gamble's Pampers with Dry Max diaper.  Class Action Complaint, <u>Clark et al. v. The Procter & Gamble Co., et al.</u>, Case No. 10-cv-301 (filed May 11, 2010) ("<u>Clark</u> Complaint").[2]  Less than one week before Plaintiffs filed the <u>Clark</u> Complaint, the United States Consumer Products Safety Commission ("CPSC") and the parallel Canadian agency, Health Canada, announced an investigation into whether there was <u>any</u> link between the Pampers with Dry Max diapers and the

---

[1] The forty-eight (48) Plaintiffs named in the Complaint are:  Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Mariah MaLoon, Morgan Maue, Robin York, Jeni McAllister, Maria McMahon, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Lisa Saacks, Diane Samelson, Adona Schank, Asia Southard, Suzy Sullivan, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe, and Amy Young (collectively "Plaintiffs").

[2] In late-2009 and early-2010, Procter & Gamble introduced an improved diaper product called Pampers with Dry Max.  Complaint, ¶ 2.  Pampers with Dry Max is an enhancement of the previous Pampers product, as it is thinner and has superior performance.  <u>Id.</u> ¶ 55.  While the Pampers with Dry Max uses the same ingredients and materials as the previous Pampers product (and numerous other disposable diapers on the market), Procter & Gamble has improved the diaper by applying the same materials in a different fashion.  <u>Id.</u> ¶ 75.  For example, Procter & Gamble has replaced inefficient pulp with more efficient superabsorber to improve the diapers' performance.  <u>Id.</u> ¶¶ 84 and 85.

purported rashes experienced by consumers. Complaint, ¶¶ 147-150.[3] After they were informed that Procter & Gamble planned to move to dismiss the <u>Clark</u> Complaint (and the other complaints),[4] Plaintiffs obtained leave from this Court and filed a Complaint on August 23, 2010. Notwithstanding its length, the Complaint fires a shotgun – spraying 45 separate causes of action propped-up by insufficient and speculative theories.

While Plaintiffs attempted to address some of the deficiencies in their earlier complaints, Plaintiffs' claims still suffer fatal defects. Plaintiffs have attempted to shore up their speculative theories by pleading affirmatively the CPSC and Health Canada investigations as support for their claims. <u>Id</u>. ¶¶ 147-150, 166-720. Yet, those investigations provide no support, and now undermine, Plaintiffs' speculative theories. The CPSC and Health Canada concluded there is <u>no</u> link between Pampers with Dry Max and diaper rash.[5]

---

[3] Complaint, ¶¶ 66-68 and n.1 (citing press releases from Health Canada and news articles about the CPSC investigation).

[4] The Court held a preliminary pretrial telephone conference on July 19, 2010. During the pretrial conference, Plaintiffs acknowledged that Procter & Gamble would likely file a motion to dismiss.

[5] "No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash," United States Consumer Product Safety Commission ("CPSC") website: http://www.cpsc.gov/CPSCPUB/PREREL/prhtml10/10331.html (last visited Oct. 12, 2010) (attached as Exhibit 1); "Health Canada, US Consumer Product Safety Commission Find No Link Between Pampers Dry Max Diapers and Severe Diaper Rash," Health Canada website: http://www.hc-sc.gc.ca/ahc-asc/media/ftr-ati/_2010/2010_149-eng.php (last visited Oct. 12, 2010) (attached as Exhibit 2). When considering this Motion to Dismiss, the Court may consider the outcome of the investigations by the U.S Consumer Products Safety Commission (CPSC") and Health Canada. Although matters outside the pleading are generally not considered without converting the motion to one for summary judgment under Fed. R. Civ. P. 56, there are exceptions to this rule, as this Court noted in <u>Loreto v. The Procter & Gamble Co.</u>, No. 1:09-cv-815, 2010 U.S. Dist. LEXIS 91699, at *4-5 (S.D. Ohio Sept. 3, 2010) (Black, J.). Plaintiffs rely on the CPSC and Health Canada investigations as support for their claims. Complaint, ¶¶ 147-150. Plaintiffs recognize and allege that the "CPSC is charged with protecting the public from unreasonable risks of serious injury or death from thousands of types of consumer products under the agency's jurisdiction." <u>Id</u>. ¶ 147. Plaintiffs allege these "investigations [are] currently ongoing." <u>Id</u>. ¶ 150. Since the Court may consider the fact of the investigation as cited and discussed in the Complaint, this Court may consider the outcome of this investigations when ruling on the Motion to Dismiss. <u>Wyser-Pratte Mgmt. Co. v. Telxon Corp.</u>, 413 F.3d 553, 560 (6th Cir. 2005) ("On a motion to dismiss under Fed. R. Civ. P. 12(b)(6). . . the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.").

Moreover, Plaintiffs attempt unsuccessfully to prop-up weak and speculative claims by quoting selectively from various articles about diaper rash. Complaint, nn.3, 5 and 69. In doing so, Plaintiffs ignore the multitude of causes of diaper rash mentioned in the very same articles, and instead, Plaintiffs assert mere theories to support the conclusory assertion that the Pampers with Dry Max diaper must be the singular cause of the rashes experienced by Plaintiffs' children (and the millions of children in the United States). Id. ¶¶ 80-102. The CPSC and Health Canada investigations and the articles cited by Plaintiffs do not support Plaintiffs' speculative theories and 45 separate claims. On the contrary, the CPSC and Health Canada investigations and the articles cited in the Complaint support the dismissal of Plaintiffs' claims and demonstrate further that Plaintiffs' claims remain fatally flawed and irreparably defective.

II.     SUMMARY OF DEFECTS IN PLAINTIFFS' COMPLAINT

Plaintiffs assert claims individually and on behalf of "[a]ll persons in the United States who purchased or acquired (including by gift) Pampers brand diapers or 'Easy Ups' containing 'Dry Max' technology [], and who discarded or ceased using the Dry Max Pampers because of concerns about health effects. . . ." Complaint, ¶ 151. At the threshold, Plaintiffs' claims should be dismissed because they cannot meet the Supreme Court's standards for plausibility; and separately, the various causes of action or theories of recovery fail for a variety of reasons under state law.

All of Plaintiffs' claims are speculative and fail to meet the threshold plausibility requirement expressed in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007) and Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937 (2009).[6] While Plaintiffs' Complaint has now

---

[6] Assertion of speculative theories of recovery against Procter & Gamble is nothing new, and they are routinely dismissed by courts. E.g., Mitchell v. Procter & Gamble, No. 2:09-CV-426, 2010 U.S. Dist. LEXIS 17956 (S.D. Ohio Mar. 1, 2010) (dismissing plaintiffs claims for, among other reasons, failing to meet Twombly and Iqbal

(footnote cont'd...)

3

swelled to 211 pages and 720 paragraphs, Plaintiffs still fail to allege facts sufficient to support the theory that the Pampers with Dry Max product was the <u>proximate cause</u> of any alleged harm or injury (including diaper rash) suffered by Plaintiffs or Plaintiffs' children.  While Plaintiffs cite numerous articles (many of which recognize a multitude of causes of diaper rash), Plaintiffs ignore the various causes of diaper rash and theorize that the Pampers with Dry Max diaper must be the cause of the rashes experienced by Plaintiffs' children (and the millions of children in the United States).  Importantly, Plaintiffs fail to isolate the diaper (Pampers with Dry Max) as the cause of any rash in Plaintiffs' children.  Plaintiffs' Complaint, weighted down by speculative theories, is not enough to meet the plausibility pleading requirements of <u>Twombly</u> and <u>Iqbal</u>.

In addition, each of Plaintiffs' claims is barred for separate reasons.  <u>First</u>, Plaintiffs' breach of implied warranty claims (brought under each state's adoption of the Uniform Commercial Code (Count One) and the Magnuson-Moss Warranty Act (Count Two)) are fatally defective for several independent reasons.  The warranty claims alleged under several different states' laws must be dismissed as none of the Plaintiffs have standing to bring the alleged claims. Several of Plaintiffs' warranty claims require expressly that the buyer notify the seller of the breach, and since Plaintiffs failed to provide notice, the claims must be dismissed.  Several states have enacted product liability statutes that specifically abrogate breach of implied warranty claims.  The lack of privity requires several warranty claims to be dismissed.  The Magnuson-Moss Warranty Act claim must be dismissed because, among other reasons, the Act does not

---

(…cont'd)
requirements related to plaintiffs' theories about Prilosec OTC increasing the risk of food borne illness); <u>Loreto v. The Procter & Gamble Co.</u>, No. 1:09-cv-815, 2010 U.S. Dist. LEXIS 91699 (S.D. Ohio Sept. 3, 2010) (Black, J.) (granting defendant's motion to dismiss plaintiffs' class action complaint); <u>Koronthaly v. L'Oreal USA, Inc.</u>, No. 08-4625, 2010 U.S. App. LEXIS 6383 (3d Cir. Mar. 26, 2010) (affirming the district court's granting of Procter & Gamble's motion to dismiss the class action complaint).

alter state law regarding implied warranties.  If there is no actionable state law breach of implied warranty claim, then there can be no Magnuson-Moss Warranty Act claim.

Second, Plaintiffs' deceptive trade practices and consumer fraud claims are also legally deficient for multiple reasons.  Plaintiffs' pleading failed to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), as Plaintiffs have failed to allege that they saw, heard or read any specific statement from Procter & Gamble.  Either reliance or causation (or both) is an element in many of Plaintiffs' deceptive trade practices and consumer fraud claims, and it is not legally possible that any Plaintiff was caused harm by something which they were not aware of or which they were not exposed.  Several states require notice in order to maintain a consumer fraud claim, and Plaintiffs have failed to provide the requisite notice.  Like the breach of warranty claims above, several states have product liability statutes that govern Plaintiffs' claims and specifically abrogate Plaintiffs' deceptive trade practices and consumer fraud claims.  Finally, several of the claims are brought under statutes that prohibit the recovery of class-wide relief.

Third, Plaintiffs' common law negligence and strict liability claims also fail for multiple reasons.  To the extent that Plaintiffs seek to bring claims on behalf of those putative class members who suffered no physical injury, the negligence and strict liability claims must be dismissed because such common law claims do not permit recovery for purely economic harm.  Like the claims above, several states have product liability statutes that govern Plaintiffs' claims and specifically abrogate claims asserted under negligence and strict liability theories.

Fourth, to the extent that Plaintiffs seek to bring claims on behalf of those putative class members who suffered no injury, the product liability claims must be dismissed because these claims require some physical harm.

Fifth, since Plaintiffs could maintain a product liability claim (on an individual basis, if Plaintiffs can survive the plausibility threshold and allege sufficient facts to show that any injury was proximately caused by the Pampers with Dry Max product), a remedy "at law" exists and an unjust enrichment claim could not succeed and must be dismissed. Moreover, certain states require dismissal of unjust enrichment claims where Plaintiffs' related claims fail. Other states also provide that allegations that a product was allegedly defective does not permit recovery under a claim for unjust enrichment. Finally, two states do not permit Plaintiffs to recover under a claim for unjust enrichment, as Plaintiffs did not purchase Pampers with Dry Max from Procter & Gamble directly.

Prior to filing this Motion to Dismiss, Procter & Gamble filed a Motion to Strike Plaintiffs' Class Allegations ("Motion to Strike"). Given the multiple differences in state laws, the individual issues associated with causation and the conclusions of the CPSC and Health Canada, it would be impossible to manage this matter as a class action. Although the Motion to Strike complements this Motion to Dismiss, Plaintiffs' claims lack merit and should be dismissed in their entirety. In the event that the case is not dismissed (and it should be), this Court should strike the class action allegations and dismiss the Complaint for lack of subject matter jurisdiction. St. Clair v. Kroger Co., 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) (finding that class claims failed and therefore "dismissal sua sponte of the plaintiff's individual claims . . . appears appropriate").

## I.  PLAINTIFFS' CLAIMS ARE DEFECTIVE BECAUSE OF SPECULATION AND A FAILURE TO PLEAD CAUSATION

Plaintiffs' claims fail to meet the plausibility pleading requirements of Twombly and Iqbal. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint via a two-step process. The first step is to identify any conclusory allegations and assume only

6

well-pleaded factual allegations as true. Ashcroft v. Iqbal, __, U.S. __, 129 S. Ct. 1937, 1950 (2009).  After assuming the veracity of all well-pleaded factual allegations, the second step is to determine whether plaintiffs plead "a claim to relief that is plausible on its face." Id. at 1940 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1965, 1974 (2007).  A claim is factually plausible only when plaintiffs "plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).  Plaintiffs fail to meet the second step – the plausibility threshold required in both Twombly and Iqbal because they cannot "raise a right to relief above the speculative level," particularly on the element of causation.

> A.   Plaintiffs Fail to Allege Sufficient Facts (More Than Conclusory Allegations of "Correlation") to Raise a Right to Relief Above the Speculative Level

After both Twombly and Iqbal, Plaintiff must plead enough "factual allegations . . . to raise a right to relief above the speculative level" to survive a motion to dismiss under Rule 12(b)(6). Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965).[7]  Plaintiffs must state sufficient facts to state a claim "that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires plaintiff to plead enough facts in the complaint to allow the court to

---

[7] Gone are the days when a plaintiff can haul a defendant into Court by relying on vague and conclusory allegations in a complaint and argue, based on the former pleading requirements in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957), that a defendant must show that there are no facts to support plaintiff's claim for relief.  A plaintiff must plead more to survive a motion to dismiss. Hensley Mfg., Inc. v. ProPride, Inc., 579 F.3d 603, 608-09 (6th Cir. 2009).

draw the reasonable inference that defendant is liable for the alleged misconduct).[8]  Plaintiffs fail

to allege facts sufficient to raise a right to relief above the speculative level.

Although Plaintiffs' Complaint has now inflated to 211 pages and 720

paragraphs,[9] Plaintiffs still fail to allege facts sufficient to support the conclusory assertion that

the Pampers with Dry Max product was the <u>cause</u> of any alleged harm or injury (including diaper

rash) suffered by Plaintiffs or Plaintiffs' children.  While Plaintiffs cite numerous articles about

diaper rash in their Complaint (many of which recognize the numerous different causes of diaper

rash) (Complaint, nn.3, 5 and 69), Plaintiffs ignore the various causes of diaper rash cited in

those articles and assert theories (without sufficient factual support) that the Pampers with Dry

Max diaper must be the cause of the rashes experienced by Plaintiffs' children.

For example, Plaintiffs cite and selectively quote from articles that recognize

diaper rash is "[t]he most common form of ICD (irritant contact dermatitis) in early infancy." <u>Id.</u>

n.3 (Paolo Pigatto <u>et al.</u>, <u>Contact Dermatitis in Children</u>, 36 Italian J. of Pediatrics 2 (2010),

available at http://www.ijponline.net/content/36/1/2 (last visited on Oct. 12, 2010) (attached as

Exhibit 3).  The Pigatto article identifies many "[f]actors favoring [the] onset [of diaper rash

include] the dampness and maceration of the area covered by the [diaper], prolonged contact

with organic liquids and the secondary development of ammoniac by fecal bacterial flora, the

development of <u>candida albicans</u> and inflammatory bacteria, the deodorants and preservatives

---

[8] In promulgating the "plausibility" standard, the Supreme Court was driven by pragmatic concerns involving (1) the need to stem what it deemed baseless litigation (like the litigation here) and (2) the high costs of pretrial discovery (as Plaintiffs seek in this case).  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556-67, 127 S. Ct. 1955, 1965-72 (2007).

[9] <u>Loyd v. Huntington Nat'l Bank</u>, No. 1:08 CV 2301, 2009 U.S. Dist. LEXIS 51858, at *52 n.31 (N.D. Ohio June 18, 2009) ("[I]t should go without saying that the length of a Complaint bears no relation to its legal sufficiency.").

contained in nappies, the creams and oils applied many times a day, and mechanical stimuli caused by physically cleaning and washing the newborn." Id.[10]

Plaintiffs' articles affirm that "[d]iaper dermatitis is a common problem in outpatient pediatric office settings." Id. n.69 (Lauren Alberta, et al., Diaper Dye Dermatitis, 116 Pediatrics 450 (2005), available at: http://www.pediatrics.org/cgi/ content/full/116/3/e450 (last visited on Oct. 12, 2010) (attached as Exhibit 5).[11] Plaintiffs ignore that diaper rash is a common problem and instead assert (without sufficient factual support and on information and belief) that any rash experienced by Plaintiffs' children must have been caused by the Pampers with Dry Max diaper. Complaint, ¶¶ 10-49. Plaintiffs support ineffectively their allegations with theories that the rashes must be caused by the Pampers with Dry Max diaper.[12]

---

[10] Similarly, Plaintiffs' articles recognize that "[o]ther factors such as ammonia generated by the bacteria breakdown of urea, skin-skin and skin-diaper frictions, changes in skin pH, faeval protease and lipase enzymes activated in the pH range of 6-7, increases in $CO_2$ caused by heat and moisture and heat increase in the diaper area can also create irritations on the human skin." Id. n.5 (Mecla Yaman et al., Alternative Test Methods for Assessing Mechanical Properties of Disposable Diapers, 15 Fibres & Textiles E. Eur. 80 (2007) (attached as Exhibit 4)). A child's diet is also a factor that contributes to diaper dermatitis because it affects the characteristics of urine and feces. Id. n.3 (Paolo Pigatto et al., Contact Dermatitis in Children, 36 Italian J. of Pediatrics 2 (2010), available at http://www.ijponline.net/content/36/1/2 (last visited on Oct. 12, 2010) (attached as Exhibit 3). In addition, the frequency of diaper changes is a separate factor that affects skin irritation. Id. Plaintiffs ignore these factors in their Complaint.

[11] The commonness of diaper rash was corroborated by Procter & Gamble (Complaint, ¶ 1, n.1). As explained by Jodi Allen, 10% of all diaper rash is severe. The severity exists regardless of the diaper and is wholly unexplained by Plaintiffs, who appear to be representative of the severity of diaper rash.

[12] Plaintiffs allege that Procter & Gamble launched the improved Pampers with Dry Max product. Complaint, ¶¶ 2-3, 6. Relying entirely on information and belief, Plaintiffs hypothesize that the Pampers with Dry Max caused rashes with more theories. Id. ¶¶ 10-49. More specifically, after describing the composition of the "Modern Disposable Diaper" (Id. ¶¶ 73-74), Plaintiffs speculate about how Procter & Gamble may have modified the previous version of Pampers to improve performance. Id. ¶¶ 59-62, 77-102. Absent any facts, Plaintiffs speculate about how Procter & Gamble may have (1) increased the quantity and porosity of SAPs (Id. ¶ 81-83), (2) reduced the amount of pulp in the diaper (Id. ¶ 84-86) and (3) used materials like "hot-melt adhesives" in the diaper to hold the SAPs in place. Id. ¶ 87-88. Plaintiffs also posit several other speculative theories, including the (1) potential use of acrylic acid and the polymerization process (Id. ¶¶ 89-96), (2) "potential causes" of alleged harm based on "[o]ther potential irritants" as explained by "Z Recommends" in an article cited by Plaintiffs (Id. ¶ 97 and n.66), in which the consumer group concluded "We have no way of knowing if Pampers Dry Max is such a product or not, so have focused our reporting on what might be causing the symptoms. . . ." (attached as Exhibit 6), (3) fragrances that Procter & Gamble "could have used" in the diaper that "have the potential to lead to rashes" (Id. ¶ 98), (4) the diaper purportedly "may cause overdrying" or "may" affect babies' skin (Id. ¶¶ 99-100), (5) removal of a mesh liner in the
(footnote cont'd…)

By ignoring all of the factors that could cause the common problem of diaper rash, Plaintiffs fail to allege facts sufficient to raise a right to relief above the level of speculation. Plaintiffs' Complaint is weighted down by speculative theories, which are not enough to state a claim (beyond speculation) that meets the plausibility pleading requirement of Twombly and Iqbal. For example, Plaintiffs' allegations (by their own characterization, alleging that "the use of Dry Max Pampers directly correlated with" certain alleged skin conditions(Complaint, ¶¶ 10-49)) amount to no more than a theory about alleged correlation between the use of Pampers with Dry Max and the alleged injuries; however, Plaintiffs must plead facts relating to causation, not correlation, for each of their claims. Norris v. Baxter Heathcare Corp., 397 F.3d 878, 885 (10th Cir. 2005) ("[C]orrelation does not equal causation.").

The mere theories (couched as insufficient fact allegations) are simply not "enough to raise a right to relief above the speculative level." Twombly 550 U.S. at 555, 127 S. Ct. at 1965 (internal citations omitted). The essential point remains – Plaintiffs must allege facts to show that the Pampers with Dry Max diaper was the cause of any alleged harm or injury. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 613 (6th Cir. 2009) (affirming dismissal of plaintiff's complaint and observing plaintiff's contentions that certain facts "may exist," and holding that "mere speculation is insufficient; it was [plaintiff's] burden to allege those facts, if they indeed exist, in the first instance."); Monroe v. Baxter Healthcare Corp. (In re Heparin), No. 3:09HC60137, 2010 U.S. Dist. LEXIS 11297 (N.D. Ohio Feb. 9, 2010) (Carr, C.J.) (granting defendant's motion to dismiss where plaintiff failed to plead facts sufficiently relating to proximate causation). Factual allegations are essential predicates to Plaintiffs' claims, and there

---

(...cont'd)

product that "could cause" various alleged injuries (Id. ¶ 101) and (6) the use of dyes in the diapers that could be a "potential irritant" (Id. ¶ 102). Plaintiffs attempt to tie the above theories with irrelevant allegations (and criticisms) about how Procter & Gamble responded to complaints. Complaint, ¶¶ 130-142.

are simply no facts (only speculative theories) alleged in Plaintiffs' Complaint that would support the allegations that any causal relationship exists between the Pampers with Dry Max product and the diaper rash allegedly suffered by Plaintiffs.  Thus, Plaintiffs have failed to state a claim (beyond a speculative level) upon which relief can be granted.

> **B.** **Plaintiffs Must Allege Facts Showing Causation and Do More Than Allege Conduct that is Merely Consistent with Actionable Conduct**

Separately, Plaintiffs fail to provide this Court with enough "factual content, [which would] allow[ ] this [C]ourt to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  While asserting that Plaintiffs suffered from diaper rashes (a common experience in the life of an infant)[13] after wearing the Pampers with Dry Max diaper (a brand which even Plaintiffs allege is commonly used (Complaint, ¶ 63)) and tying these allegations with speculative theories, Plaintiffs fail to present more than allegations that are "merely consistent" with actionable conduct. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 557, 127 S. Ct. at 1966 ("[w]here a complaint pleads facts that are merely consistent with a defendant's liability, [the complaint] stops short of the line between possibility and plausibility of entitlement to relief") (internal quotations omitted).  In other words, while allegations about suffering the alleged rash after wearing the Pampers with Dry Max product may be "consistent" with Plaintiffs' theory of liability, those allegations, without more, do not plausibly suggest any liability.

---

[13] The CPSC recognizes "Most babies exhibit diaper rash at least once in their lifetime." No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash," United States Consumer Product Safety Commission ("CPSC") website:  http://www.cpsc.gov/CPSCPUB/PREREL/prhtml10/10331.html (last visited Oct. 12, 2010) (attached as Exhibit 1).  Given that Pampers is one of the leading diaper products in the U.S. and the world (Complaint, ¶ 61) and the commonness of diaper rash, it is not surprising that many babies experience diaper rash while wearing a Pampers Dry Max product.

Plaintiffs' reliance on the CPSC and Health Canada investigations to support their speculative theories about Pampers with Dry Max is misplaced.  Complaint, ¶¶ 147-150.  Both the CPSC and Health Canada investigations found no link between the rashes and the Pampers with Dry Max diaper.  The CPSC stated that:

> "To date, the review has not identified any specific cause linking Dry Max diapers to diaper rash.
>
> * * *
>
> CPSC staff reviewed clinical and toxicological data found in published, peer-reviewed medical literature.  CPSC also critically reviewed data submitted by Procter & Gamble (P&G) and the results of a human cumulative irritation patch study conducted by P&G in May 2010.  Further, chemistry, toxicology and pediatric medicine information provided by Health Canada was reviewed by CPSC."[14]

Health Canada reached the same conclusion.[15]

Plaintiffs simply fail to allege facts sufficient to support the apparent theory that any rash was in fact caused by wearing the Pampers with Dry Max product, and neither investigation from the CPSC nor Health Canada support Plaintiffs' speculative theories. Plaintiffs' complaint fails to allege conduct that is more than "merely consistent" with actionable conduct and "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 557, 127 S. Ct. at 1966).

---

[14] "No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash," United States Consumer Product Safety Commission ("CPSC") website:  http://www.cpsc.gov/ CPSCPUB/PREREL/ prhtml10/10331.html (last visited Oct. 12, 2010) (attached as Exhibit 1).

[15] "Health Canada, US Consumer Product Safety Commission Find No Link Between Pampers Dry Max Diapers and Severe Diaper Rash," Health Canada website:  http://www.hc-sc.gc.ca/ahc-asc/media/ftr-ati/_2010/2010_149-eng.php (last visited Oct. 12, 2010) (attached as Exhibit 2).

III.    **EVEN IF SUFFICIENT FACTS ARE ALLEGED, EACH OF PLAINTIFFS'
CLAIMS REMAIN DEFECTIVE FOR SEVERAL SEPARATE AND
INDEPENDENT REASONS**

Even if Plaintiffs' claims survive the plausibility threshold of <u>Twombly</u> and <u>Iqbal</u>

(and they should not), each of Plaintiffs' claims remain fatally defective for several separate and

independent reasons.  Plaintiffs' forty-five (45) causes of action can be divided roughly into five

(5) separate theories of recovery:  (1) breach of implied warranty (under the Uniform

Commercial Code (Count One) and the Magnuson-Moss Warranty Act (Count Two)); (2) unjust

enrichment (Count Three); (3) violations of various deceptive trade practices and consumer fraud

acts (Counts Four through Twenty-Nine); (4) common law negligence and strict liability (Count

Thirty and Thirty-One); and (5) violations of various states' product liability acts (Counts Thirty-

Two through Forty-Five).  For the reasons set forth below, each of Plaintiffs' claims must be

dismissed.

A.    **Plaintiffs' Implied Warranty Claims (Both Under the Uniform Commercial
Code (Count One) and Magnuson-Moss Warranty Act (Count Two)) Must
be Dismissed**

1.    <u>Plaintiffs Lack Standing to Bring the Several Alleged Claims</u>

Plaintiffs' claim for breach of implied warranty must be dismissed as alleged

under the laws of 24 states and the District of Columbia because Plaintiffs have alleged no facts

that they are residents of, made purchases in, or were otherwise injured in those jurisdictions, and

thus, Plaintiffs have no standing to bring claims under the laws of these 25 jurisdictions.  <u>Smith</u>

<u>v. Lawyers Title Ins. Corp.</u>, No. 07-12124, 2009 U.S. Dist. LEXIS 16140, at *7-8 (E.D. Mich.

Mar. 2, 2009) (dismissing for lack of standing class claims asserted under the laws of "Arizona,

Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee, and Washington," because

"besides the state of Michigan, the plaintiff has not alleged injury in any other state, nor are his

particular claims based on the application of the laws of any other state"); <u>Loreto v. Procter &</u>

Gamble Co., No. 1:09-cv-815, 2010 U.S. Dist. LEXIS 91699, at *14-15 (S.D. Ohio Sept. 3, 2010) (Black, J.) (dismissing Ohio consumer protection and deceptive trade practice claims where plaintiffs alleged violations in all states because plaintiffs were residents of New Jersey).[16]

Plaintiffs allege that Procter & Gamble breached the implied warranty of merchantability, citing the laws of all 50 states and the District of Columbia. Complaint, ¶ 169.[17] However, Plaintiffs allege they are residents of, made purchases in, and purportedly suffered injuries in only 26 states (Alabama, California, Colorado, Connecticut, Florida, Illinois, Iowa, Kansas, Kentucky, Maine, Michigan, Missouri, Minnesota, Montana, Nebraska, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Texas, West Virginia, Washington and Wisconsin). Complaint, ¶¶ 10-49. None of the Plaintiffs assert they were injured (or purchased Pampers with Dry Max diapers) in the states of Alaska, Arizona, Arkansas, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Indiana, Louisiana, Maryland, Massachusetts, Mississippi, Nevada, New Hampshire, New Mexico, North Dakota, Oklahoma,

---

[16] Accord: In re Checking Account Overdraft Litig., 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) ("Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state. . . . Therefore, all state statutory claims where no named plaintiff resides in the state from which the claim is asserted are hereby dismissed. . . ."); Thomas v. Metro. Life Ins. Co., 540 F. Supp. 2d 1212, 1225-26 (W.D. Okla. 2008) (dismissing claims asserted under forty-one states' statutes, finding that dismissal was required for "any state law claims alleged under the laws of any states where a particular named plaintiff is not a resident").

[17] When a federal court hears a diversity action, as here, the forum state's choice-of-law rules apply. Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009). Ohio employs the "most significant relationship" choice-of-law approach articulated in the Restatement of Law of Conflicts. Morgan v. Biro Mfg. Co., Inc., 15 Ohio St. 3d 339, 342, 474 N.E. 2d 286, 289 (1984). Pursuant to Section 146 of the Restatement, "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." Id. To determine the state with the "most significant relationship" a court must consider: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation." Morgan, 15 Ohio St. 3d at 342, 474 N.E. 2d at 289. "All of these factors are to be evaluated according to their relative importance to the case." Id. (finding in a products liability case that Kentucky had a more significant relationship to the lawsuit than Ohio because the plaintiff's injury occurred in Kentucky, the plaintiff was a resident of Kentucky, was employed in Kentucky at the time of the injury, and received workers' compensation benefits under Kentucky law; meanwhile, the only contacts in Ohio were that the defendant was incorporated in Ohio and the product was manufactured in Ohio).

Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia and Wyoming.  Complaint, ¶¶ 10-49.  Therefore, Plaintiffs' breach of implied warranty claims under the laws of the foregoing twenty-five jurisdictions must be dismissed for failure to allege facts in support of standing.

2.    Plaintiffs Failed to Provide Proper (or Any) Notice

Of the 26 states for which there is a named Plaintiff, the laws of at least eight states require dismissal of Plaintiffs' respective claims for breach of implied warranty because Plaintiffs failed to provide Procter & Gamble with proper notice of the alleged breach of warranty.  Each of these states requires that a buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of the purported breach or be barred from any remedy.  E.g., St. Clair v. Kroger Co., 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) ("[Named plaintiff's] failure to notify [the defendant] of its alleged breach before bringing this lawsuit precludes [the named plaintiff] from proceeding further with [the] claim.").  Plaintiffs fail to allege that any of them provided Procter & Gamble with notice of any alleged breach of implied warranty.  Complaint, ¶¶ 166-178.  Lack of notice bars breach of implied warranty claims in the states of Michigan, Montana, Nebraska, New York, Ohio, Oregon, Texas and Wisconsin.[18]

At least five (5) additional states (Alabama, Connecticut, Florida, Illinois and Minnesota) require notice and provide an exception in cases only where there is an alleged personal injury.  Parker v. Bell Ford, Inc., 425 So. 2d 1101, 1102 (Ala. 1983) ("Notice is a condition precedent to any claim for breach of warranty."); Benchmark Bldg. Corp. v. United

---

[18] Appendix A provides citations to legal authority that demonstrate that under the laws of certain states, including the Ohio authority cited above, notice must be provided to maintain a breach of warranty claim.

<u>Builders Supply Co.</u>, No. 62896, 1992 Conn. Super. LEXIS 1629, at *5 (Conn. Super. Ct.

May 28, 1992) (striking implied warranty claim based on plaintiff's failure to allege notice);

<u>Bailey v. Monaco Coach Corp.</u>, 168 Fed. Appx. 893, 895 (11th Cir. 2006) (dismissing

consumer's warranty claim against a manufacturer under Florida law, in part, because defendant

manufacturer "was not given reasonable notice of certain defects."); 810 Ill. Comp. Stat. 5/2-607

("[T]he buyer must within a reasonable time after he discovers or should have discovered any

breach notify the seller of breach or be barred from any remedy."); <u>Christian v. Sony Corp. of</u>

<u>Am.</u>, 152 F. Supp. 2d 1184, 1188 (D. Minn. 2001) (granting summary judgment in favor of

defendants because plaintiff failed to provide notice). To the extent Plaintiffs seek to bring

warranty claims on behalf of those persons who purchased or acquired (including through gift)

the Pampers with Dry Max diapers but suffered no injury, claims brought under the laws of the

states of Alabama, Connecticut, Florida, Illinois, and Minnesota must also be dismissed for lack

of notice.

### 3. The Lack of Privity Requires Dismissal

Like notice, the lack of privity requires several claims to be dismissed. Several

states (Florida, Kentucky, Ohio, Washington and Wisconsin) require privity and a plaintiff

cannot maintain a breach of implied warranty claim against the manufacturer of the product.

<u>E</u>.g., <u>Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.</u>, No. 07-cv-1005, 2010 U.S. Dist. LEXIS

60422, at *24 (N.D. Ohio June 18, 2010) (dismissing plaintiff's implied warranty of

merchantability claim because "under Ohio law, privity of contract is generally a prerequisite to

a breach of the implied warrant[y] of merchantability").[19] None of the Plaintiffs allege that they

---

[19] Appendix B provides citations to legal authority that demonstrate that under the laws of Florida, Kentucky, Ohio, Washington, and Wisconsin, the lack of privity requires dismissal.

were in privity or purchased the Pampers with Dry Max product directly from Procter & Gamble, so their claims must be dismissed.

Moreover, at least seven additional states (Alabama, California, Connecticut, Illinois, New York, North Carolina, and Oregon) also require privity and provide an exception only where there is a physical injury alleged.[20]  Any claims brought on behalf of putative class members who purchased or acquired (including through gift) the Pampers but suffered no physical injury, must be dismissed.  Since there is no allegation that those putative class members purchased or acquired the Pampers with Dry Max product directly from Procter & Gamble, the putative class members are not in privity with Procter & Gamble.  Thus, claims brought on behalf of purchase-only or gift-only putative class members under the laws of Alabama, California, Colorado, Illinois, New York, and North Carolina must be dismissed.

4.    Product Liability Statutes Specifically Abrogate Several Claims

Several states (including Connecticut, New Jersey, and Ohio) have product liability statutes that abrogate all common law claims or certain statutory claims, including breach of implied warranty claims.  Shannon v. Howmedica Osteonics Corp., No 09-4171, 2010 U.S. Dist. LEXIS 8621, at *5-6 (D.N.J. Feb. 1, 2010) ("[Plaintiff's] breach of implied warranty claim is subsumed by the PLA and is not actionable separate[ly]."); Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471, 562 A.2d 517, 521 (1989) (holding that CPLA is the exclusive remedy for products liability claims and plaintiff's independent breach of warranty claim is barred); Stratford v. SmithKline Beecham Corp., No. 2:07-CV-639, 2008 U.S. Dist. LEXIS 84826, at *9, *12-22 (S.D. Ohio June 17, 2008) (Graham, J.) (dismissing negligence, breach of express

---

[20] Appendix C provides citations to legal authority that demonstrate that the laws of certain states require privity, and even where there is an exception where Plaintiffs sustained a physical injury, dismissal is appropriate where class members did not sustain a physical injury.

warranty and breach of implied warranty claims). Thus, to the extent that Plaintiffs allege physical injury based on the use of the Pampers with Dry Max diapers, certain common law and statutory claims under various states' laws are abrogated.

           5.    <u>Magnuson-Moss Warranty Act Claim Must Be Dismissed</u>

The Magnuson-Moss Warranty Act does not alter the individual state law of implied warranties, and there can be no Magnuson-Moss Warranty Act claim based on an implied warranty where there is no actionable state law claim. <u>Temple v. Fleetwood Enters.</u>, 133 Fed. Appx. 254, 268 (6th Cir. 2005) ("[I]f there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act."). As demonstrated above, Plaintiffs' implied warranty claims are deficient, and thus, Plaintiffs' dependent claims under the Magnuson-Moss Warranty Act must also be dismissed.

Separately, Plaintiffs failed to provide Procter & Gamble with any notice of the alleged breach of an implied warranty and that they intended to proceed on a class-wide basis. 15 U.S.C. § 2310(e) ("No action . . . may be brought . . . [unless] the named plaintiffs . . . notify the defendant that they are acting on behalf of the class."); <u>Bearden v. Honeywell Int'l, Inc.</u>, No. 3:09-01035, 2010 U.S. Dist. LEXIS 58359, at *10-11 (M.D. Tenn. June 14, 2010) (dismissing Magnuson-Moss claim because plaintiffs failed to provide notice that they were acting on behalf of a class, and stating that "the plain text of § 2310(e) reveals that notice must be given before the suit is filed"). Prior to filing the <u>Clark</u> Complaint (or any of the other complaints), Plaintiffs failed to provide Procter & Gamble with notice of their claims or that they were acting on behalf of a class. Plaintiffs' Magnuson-Moss Warranty Act claim must be dismissed.

Finally, Plaintiffs fail to meet the jurisdictional requirement to bring a class action under the Magnuson-Moss Warranty Act, which prohibits class-wide relief if the number of

named plaintiffs is less than one hundred. 15 U.S.C. § 2310(d)(3)(C); Lieb v. American Motors Corp., 538 F. Supp. 127, 132 (S.D.N.Y. 1982) (dismissing Magnuson-Moss claim because complaint had only one named plaintiff, stating that a "court cannot superintend a prospective plaintiff's activities designed to satisfy jurisdictional prerequisites after the complaint is filed," and that the "complaint is deficient measured against the explicit and unambiguous statutory mandate and must be dismissed as a class action"). The 40 named plaintiffs in this case fail to meet the jurisdictional requirements of the Magnuson-Moss Warranty Act.

        **B.**     **Plaintiffs' Deceptive Trade Practices and Consumer Fraud Claims are Legally Deficient For Multiple Reasons**

            **1.**     **No Plaintiffs Allege that They Read, Saw or Heard Any Specific Statement, and It Is Not Possible that Plaintiffs Were Caused Harm By Something of Which They Were Not Aware**

        Most of the states' deceptive trade practices laws are subject to the requirements of Fed. R. Civ. P. 9(b). See Alabama, California, Colorado, Connecticut, Florida, Illinois, Kansas, Kentucky, Maine, Michigan, Minnesota, Missouri, Montana, Nebraska, New Jersey, Ohio, Pennsylvania, South Carolina, Texas, Washington, West Virginia, and Wisconsin.[21] Fed. R. Civ. P. 9(b) is applicable to any alleged fraud associated with states' deceptive trade practices. Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc., No. 8:09-cv-2453-T-30TBM, 2010 U.S. Dist. LEXIS 84544, at *12 (M.D. Fla. July 16, 2010) ("'Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b).'") (citation omitted).

---

[21] Appendix D provides citations to legal authority to demonstrate that the majority of deceptive trade practices acts under which Plaintiffs seek relief require heightened pleading under Fed. R. Civ. P. 9(b).

Plaintiffs' Rule 9(b) allegations are deficient because they fail to identify who, what, where, when and how of any alleged fraud. Stated another way, Plaintiffs allege no facts relating to Plaintiffs seeing, hearing, or reviewing any specific statement from Procter & Gamble. More specifically, while Plaintiffs assert that Procter & Gamble marketed the Pampers with Dry Max product (and diaper products in general) in various ways (Complaint, ¶ 54-57,67-69, 70-72, 75-76, 108-117, 124, 129, 131-142 and 146) without warning that Pampers with Dry Max may cause injury and that Procter & Gamble intentionally failed to disclose and/or concealed the known defects and risks (¶¶ 211, 254, 293, 304, 328, 329, 340, 351, 366, 391, 406, 461, 475, 499 and 513),[22] Plaintiffs fail to allege that any of them actually saw, heard or read any specific statement from Procter & Gamble.[23] Without factual allegations about what Plaintiffs actually saw, heard or read, Plaintiffs' Complaint fails to comply with Rule 9(b).

---

[22] Plaintiffs also assert (in similarly conclusory and insufficient fashion) that Procter & Gamble represented that the Pampers with Dry Max were safe, high quality products that would perform as represented and that Procter & Gamble made representations about the capacity and characteristics of the product that were false and misleading. Id. ¶ 233, 247, 267, 338, and 526.

[23] Plaintiffs' claims under various states' consumer protection statutes also fail under Fed. R. Civ. P. 9(b), even where those claims are based (in whole or in part) on purported omissions, Plaintiffs have not alleged a single fact relating to what any named plaintiff saw, heard, or reviewed from Procter & Gamble. E.g., In re Facebook PPC Adver. Litig., Nos. 5:09-cv-03043, 5:09-cv-03519, 5:09-cv-03430, 2010 U.S. Dist. LEXIS 87769, at *30 (N.D. Cal. Aug. 25, 2010) ("The Court recognizes the difficulty in pleading a specific time and place of a failure to act, but Plaintiffs still should be able to identify with particularity at least the specific policies and representations that they reviewed.") (internal citation omitted); Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009) ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)."); Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203, 2006 U.S. Dist. LEXIS 39113, at *26, *28 (D. Kan. June 13, 2006) (dismissing plaintiffs' consumer fraud claims in a putative class action, stating, "[T]here are no allegations about what material facts were misrepresented or omitted insofar as plaintiff Thompson is concerned. . . . [T]he court finds defendant's motion to dismiss Ms. Thompson's claims for violation of consumer protection laws should be granted for failure to comply with Fed. R. Civ. P. 9(b)."); Alban v. BMW of N. Am., LLC, No. 09-5398, 2010 U.S. Dist. LEXIS 94038, at *31 (D.N.J. Sept. 8, 2010) (dismissing plaintiff claim under the NJCFA because plaintiffs' failed to meet the heightened 9(b) pleading standards, stating that "in the context of claims under the NJCFA, 'Rule 9(b) requires a plaintiff to plead (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff suffered an ascertainable loss as a result of the misrepresentation." (alteration in original) (internal quotations omitted)).

2.     Plaintiffs Fail to Allege Facts Regarding Reliance or Causation

Reliance or causation (or both) is an element of every states' deceptive trade practices statutes under which Plaintiffs have alleged a claim (Alabama, California, Colorado, Connecticut, Florida, Illinois, Kansas, Kentucky,[24] Maine, Michigan, Minnesota, Missouri, Montana, Nebraska, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Washington, West Virginia and Wisconsin).[25]  Plaintiffs claims are fatally defective because no one alleges that he or she read, saw or heard any specific statement from Procter & Gamble.  Since no Plaintiffs allege that they read, saw or heard any specific statement, it is not possible that they relied on any such statement or that such a statement caused them any harm.

3.     Plaintiffs Failed to Meet Several Additional Requirements and Their Claims Must be Dismissed

(a)     Plaintiffs Failed to Provide Required Notices

Some states, e.g., Alabama (Ala. Code § 8-19-10(e)), California (Cal. Civ. Code § 1782), and West Virginia (W. Va. Code § 46A-6-106(b)), require notice and an opportunity to cure before Plaintiffs may file certain deceptive trade practices claims for damages.  Deerman v. Fed. Home Loan Mortgage Corp., 955 F. Supp. 1393 , 1399-1400 (N.D. Ala. 1997) ("Deermans have, nevertheless, failed to state a claim under the Alabama DTPA. They have not complied with the pre-filing demand requirement imposed by the statute.  The Alabama DTPA provides

---

[24] Plaintiffs' claim under the Kentucky Consumer Protection Act fails for the separate and independent reason that Plaintiffs have not pled (and did not have) privity with Procter & Gamble.  Anderson v. Merck & Co., 417 F. Supp. 2d 842, 848 (E.D. Ky. 2006) ("As Plaintiffs do not claim that the [defendants] ever sold Vioxx to them, Plaintiffs have not presented a colorable claim against the [defendants] for violations of the Kentucky Consumer Protection Act."); Skilcraft Sheetmetal, Inc. v. Kentucky Mach., Inc., 836 S.W.2d 907, 909 (Ky. Ct. App. 1992) ("[T]he language of the statute plainly contemplates an action by a purchaser against his immediate seller.").

[25] Appendix E provides citations to legal authority to demonstrate that the majority of deceptive trade practices acts under which Plaintiffs seek relief require Plaintiffs to plead facts in relation to the element of reliance or causation.

that 'at least 15 days prior to the filing of any action under this section," a prospective plaintiff must file a 'written demand' for relief that 'reasonably describes the unfair or deceptive act or practice relied upon and the injury suffered.") (emphasis added), aff'd, 140 F.3d 1043 (11th Cir. 1998)); Laster v. T-Mobile United States, Inc., 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) ("Because Plaintiffs failed to provide notice to Defendants pursuant to § 1782(a), their claim for damages under the CLRA must be dismissed with prejudice."), aff'd, 252 Fed. Appx. 777 (9th Cir. 2007); Perry v. Tri-State Chrysler Jeep, LLC, No. 3:08-0104, 2008 U.S. Dist. LEXIS 33218, at *12-13 (S.D. W. Va. Apr. 16, 2008) (dismissing plaintiff's consumer protection act claim against defendant for failure to comply with notice requirements). Plaintiffs have failed to allege sufficient facts that they have provided notice, stating in only conclusory form that each Plaintiff "will provide or already has provided any required notice to appropriate entities regarding P&G Companies' unfair and deceptive trade practices." Complaint, ¶¶ 207, 241, 521.[26] As a result, Plaintiffs' Alabama, California and West Virginia claims must be dismissed.[27]

---

[26] Not only do Plaintiffs fail to allege sufficient facts that they provided the requisite pre-filing notice, Plaintiffs' conclusory statements are belied by the facts. For instance, although counsel for Plaintiffs sent letters to Procter & Gamble about claims under the Alabama Deceptive Trade Practices Act (Ala. Code § 8-19-1 et seq.) and West Virginia Consumer Credit and Protection Act (W. Va. Code §§ 46A-1-101 et seq.), both letters were untimely and Plaintiffs' claims under both statutes must be dismissed. Counsel for Plaintiffs filed the Clark class action – without providing any notice to Procter & Gamble – on May 11, 2010, and it included claims under the West Virginia Consumer Credit and Protection Act. Not until July 16, 2010 – more than 60 days after filing a lawsuit – did counsel for Plaintiffs even attempt to provide notice. Thus, dismissal is warranted for Plaintiffs' failure to provide pre-filing notice. Perry v. Tri-State Chrysler Jeep, LLC, No. 3:08-0104, 2008 U.S. Dist. LEXIS 33218, at *12-13 (S.D.W.Va. Apr. 16, 2008) (dismissing plaintiff's consumer protection act claim against defendant for failure to comply with pre-filing notice requirements). Likewise, counsel for Plaintiff failed to provide the requisite 15-day pre-filing demand under Ala. Code § 8-19-10(e). Plaintiffs added a claim under Alabama Deceptive Trade Practices Act in their Consolidated Complaint filed on August 23, 2010. However, Plaintiffs did not attempt to provide notice until September 16, 2010. Therefore, Plaintiffs' claim under the Alabama Deceptive Trade Practices Act must be dismissed. Deerman v. Fed. Home Loan Mortgage Corp., 955 F. Supp. 1393, 1399-1400 (N.D. Ala. 1997) ("[F]ailure to reasonably describe the unfair or deceptive practice in a timely letter is fatal to their claim under the Alabama law.").

[27] Plaintiffs also failed to provide adequate notice for their claims under the Indiana Deceptive Practices Act, Maine Unfair Trade Practices, and Texas Deceptive Trade Practices Act. First, Plaintiffs' letter of September 16, 2010 regarding the Indiana Deceptive Practices Act referred to a class of only unspecified consumers, and no specific customer or actual damages sustained by a particular consumer were mentioned. No named Plaintiff has alleged claims under the Indiana Deceptive Practices Act. Thus, Plaintiffs' attempt to provide notice under the

(footnote cont'd...)

Plaintiffs must meet additional statutory notice requirements to maintain a class action for purported violations of the Ohio Consumer Sales Practices Act.  Ohio Rev. Code § 1345.09(B).  A consumer may seek relief in a class action only if (1) "the violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based," or (2) "if the violation is an act or practice that was determined by a court to violate the CSPA and the court's decision was available for public inspection." Marrone v. Philip Morris USA, Inc., 110 Ohio St. 3d 5, 2006-Ohio-2869, 850 N.E. 2d 31, at ¶ 1.  Plaintiffs must "identify in their complaint a rule or judgment that would place the Defendant on notice that the conduct alleged by the Plaintiffs violated the CSPA." Bower v. Int'l Bus. Machs, Inc., 495 F. Supp. 2d 837, 841 (S.D. Ohio 2004) (Rice, J.).

Plaintiffs fail to meet these statutory notice requirements.  Instead, Plaintiffs cite to only Ohio Admin. Code § 109:4-3-10(A) (Complaint, ¶ 446), which the Supreme Court of Ohio has held is insufficient to meet the statutory requirements of Ohio Rev. Code § 1345.09(B). Marrone, 110 Ohio St. 3d 5, 2006-Ohio-2869, at ¶¶ 23-24 ("[Ohio Adm. Code 109:4-3-10] is insufficient to provide prior notice under R.C. 1345.09(B) because it does not refer to any particular act or practice. . . . [T]here must be a substantial similarity between a defendant's

---

(...cont'd)

Indiana Deceptive Practices Act is defective. A.B.C. Home & Real Estate Inspection, Inc. v. Plummer, 500 N.E.2d 1257, 1262-63 (Ind. Ct. App. 1986).  Second, Plaintiffs' letter of September 16, 2010 regarding the Maine Unfair Trade Practices Act was untimely.  While the Clark Complaint was filed on May 11, 2010 with a claim under the Maine Unfair Trade Practices Act, Plaintiffs did not attempt to provide notice until more than four months later, contrary to the 30-day pre-filing requirement under Me. Rev. Stat. tit. 5, § 213(1-A).  Third, Plaintiffs' letter of July 16, 2010 relating to the Texas Deceptive Trade Practices Act constitutes a defective attempt to provide notice because Plaintiffs' letter was sent more than two months after Plaintiffs filed the Clark Complaint, which contained a claim under the Texas Deceptive Trade Practices Act.  Tex. Bus. & Com. Code § 17.505 ("As a prerequisite to filing a suit seeking damages . . . a consumer shall give written notice to the person at least 60 days before filing the suit.").  Thus, all five of Plaintiffs' attempts to provide notice under various states' deceptive trade practices acts (including Alabama and West Virginia) were defective.

alleged violation of the Act and an act or practice previously declared deceptive by either a rule promulgated by the Attorney General or a court decision that was publicly available when the alleged violation occurred."). As a result, Plaintiffs' Ohio Consumer Sales Practices Act claim must be dismissed.

        (b)    Product Liability Acts Specifically Abrogate Several Claims

Like the breach of implied warranty and Magnuson-Moss Warranty Act claims (see supra p. 17), product liability statutes of several states abrogate Plaintiffs' deceptive trade practices and consumer fraud claims. Mitchell v. Procter & Gamble, No. 2:09-cv-426, 2010 U.S. Dist. LEXIS 17956, at *11-13 (S.D. Ohio Mar. 1, 2010) (holding that the OPLA preempts OCSPA claims); Shannon v. Howmedica Osteonics Corp., No 09-4171, 2010 U.S. Dist. LEXIS 8621, at *6-7 (D.N.J. Feb. 1, 2010) (holding that NJCFA claims are preempted by the NJPLA to the extent that a plaintiff seeks relief for personal injuries under the NJCFA); Dunn v. Zimmer, Inc., 3:00cv1306, 2005 U.S. Dist. LEXIS 5346, at *28 (D. Conn. Mar. 31, 2005) (holding that independent CUTPA claim, arising out of plaintiff's claim that as a result of allegedly unlawful marketing plaintiff was injured by defendant's allegedly defective product, was barred by the CPLA). To the extent that Plaintiffs seek to bring deceptive trade practices act claims under the laws of Connecticut, Ohio or New Jersey to recover any compensatory (or punitive) damages for alleged physical injuries suffered from using the Pampers with Dry Max product, Plaintiffs' claims must be dismissed.

        (c)    Several States Prohibit Class-Wide Relief

Several of the statutory claims (including claims under the Alabama Deceptive Trade Practices Act (Ala. Code § 8-19-1 et seq.), Montana Consumer Protection Act (Mont. Code § 30-14-101 et seq.), and South Carolina Unfair Trade Practices Act (S.C. Code § 39-5-10

et seq.)) prohibit class-wide relief.[28] Ex parte Exxon Corp., 725 So. 2d 930, 933 (Ala. 1998)

(granting writ of mandamus and decertifying class, holding, "Alabama law does not allow

consumers to bring class actions based on deceptive trade practices."); Mont. Code Ann. § 30-

14-133(1) ("A consumer who suffers any ascertainable loss of money or property, real or

personal, as a result of the use or employment by another person of a method, act, or practice

declared unlawful by 30-14-103 may bring an individual but not a class action under the rules of

civil procedure. . . .") (emphasis added); S.C. Code § 39-5-140(a) ("Any person who suffers any

ascertainable loss of money or property, real or personal, as a result of the use or employment by

another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20

may bring an action individually, but not in a representative capacity, to recover actual

damages.") (emphasis added); Dema v. Tenet Physician Services-Hilton Head, Inc., 383 S.C.

115, 122-123, 678 S.E.2d 430 (2009) (affirming the dismissal of plaintiffs' class action complaint

in which plaintiffs included an SCUTPA claim, stating, "SCUTPA, however, prohibits a plaintiff

from bringing a suit in a representative capacity. . . . Federal courts have recognized that class

action suits may not be brought pursuant to SCUTPA. . . . [B]ecause SCUTPA claims may not

be maintained in a class action law suit, the trial court properly dismissed Appellants' claim."

(internal citations omitted)). Claims brought under the Alabama, Montana and South Carolina

Acts must be dismissed.

---

[28] Plaintiffs' claims fail under various states' deceptive trade practices and consumer fraud acts, notwithstanding the plurality's opinion in Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., __ U.S. __, 130 S. Ct. 1431 (2010), as the class action restrictions under the above statutory provisions are interwoven with the substantive remedies available under the specific acts under which Plaintiffs bring their claims. In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254, at *7 (N.D. Ohio July 12, 2010) (stating that, "Unlike the New York rule at issue in Shady Grove, [Ohio's class action restriction] is not a pan-substantive rule that applies to federal claims or to claims based on other states' laws. Rather, it applies only to 'a violation of Chapter 1345 of the [Ohio] Revised Code' – indicating its substantive nature." (internal citation omitted)).

C.     Plaintiffs' Negligence and Strict Liability Claims Must Be Dismissed

1.     Class Members Cannot Recover Purely Economic Harm

To the extent that Plaintiffs seek to bring claims for negligence or strict liability on behalf of those putative class members (persons who purchased the product or received the product as a gift) who suffered no physical injury (experienced no rash after using the Pampers with Dry Max product), the common law negligence claims require some physical harm and do not permit recovery for purely economic harm.

For these purchase-only or gift-only class members, Plaintiffs fail to allege that the class members suffered any physical injury.  Stated another way, Plaintiffs seek to represent class members who purchased (or received by gift) the Pampers with Dry Max product and suffered no physical injury or negative effects from using the product, and they seek to represent a class of people who received a benefit (or could have received the benefit had they not unilaterally decided to discontinue using the product) and expressed no complaints from using the product.  These allegations are insufficient to satisfy the required allegation of injury in Plaintiffs' negligence and strict liability claims.

Courts in most jurisdictions have found that the economic loss rule bars recovery in tort for economic losses.  Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002) ("The economic loss rule bars recovery in tort for economic loss. . . . A large majority of jurisdictions in this country have adopted the economic loss rule.").[29]  To the extent that Plaintiffs seek to represent and bring claims on behalf of purchase-only or gift-

---

[29] Appendix F provides citations to legal authority that demonstrate that putative class members must allege physical injuries to maintain claims under theories of negligence and strict liability.

only class members who did not sustain any physical injuries, Plaintiffs' negligence and strict liability claims must be dismissed.

### 2. Product Liability Acts Specifically Abrogate Several Claims

As shown above (see supra, pp. 17-18 and 24), several states have product liability acts that specifically abrogate all common law claims. Tompkin v. Am. Brands, 219 F.3d 566, 575 (6th Cir. 2000) (holding that common law claims of negligence are preempted by OPLA); Rose v. Truck Ctrs., Inc., 611 F. Supp. 2d 745, 748 (N.D. Ohio 2009) (recognizing that "common law product liability" and "negligent manufacture" claims are "superseded by OPLA"); Miles v. Raymond Corp., 612 F. Supp. 2d 913, 918 (N.D. Ohio 2009) (holding common law claims of negligence and product liability are preempted by the OPLA); Bingham v. Blair LLC, No. C10-5005, 2010 U.S. Dist. LEXIS 39351, at *4-5 (W.D. Wash. Apr. 19, 2010) (holding that common law claims for negligence, strict liability, and breach of warranty were preempted by the WPLA); Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 524 (D.N.J. 2002) (holding that common law negligence and strict liability claims are subsumed by the NJPLA); Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 470-71, 562 A.2d 517, 521 (1989) (holding that CPLA is the exclusive remedy for products liability claims and plaintiff's independent common law negligence and strict liability claims were barred). To the extent that Plaintiffs seek to bring negligence or strict liability claims under the laws of Connecticut, New Jersey, Ohio and Washington to recover any compensatory (or punitive) damages for alleged physical injuries suffered from using the Pampers with Dry Max product, Plaintiffs' common law negligence and strict liability claims must be dismissed.

D.     Each of the Alleged Product Liability Claims Requires Some Physical Harm

To the extent that Plaintiffs seek to bring product liability claims on behalf of those putative class members who suffered no physical injury, the claims must be dismissed because statutory product liability claims for each of the states require some physical harm. E.g., Ohio Rev. Code § 2307.71(A)(7); Radford v. Daimler Chrysler Corp., 168 F. Supp. 2d 751, 753 (N.D. Ohio 2001) (dismissing plaintiff's Ohio Products Liability Act claim because "[e]conomic loss is not 'harm.'" (quoting Ohio Rev. Code § 2307.71(A)(7)).[30]

E.     Plaintiffs' Unjust Enrichment Claims Must Be Dismissed

As an alternative claim, Plaintiffs seek recovery under a general theory of unjust enrichment.  Plaintiffs' claim for unjust enrichment fails because (1) a remedy "at law" exists;[31] (2) an unjust enrichment claim fails under the laws of several states where, as here, related claims upon which allegations of unjustness are based fail;[32] (3) the fact that a defendant sold an

---

[30] Appendix G provides citations to legal authority to demonstrate that Plaintiffs' product liability claims without any personal injury must be dismissed.

[31] Iowa Network Servs., Inc. v. Qwest Corp., 385 F. Supp. 2d 850, 909 (S.D. Iowa 2005) (dismissing unjust enrichment claim where there was an alternate remedy available under federal law), aff'd, 466 F.3d 1091 (8th Cir. 2006); Shane v. Bunzl Distrib. USA, Inc., 200 Fed. Appx. 397, 404 (6th Cir. 2006) (affirming the dismissal of plaintiff's unjust enrichment claim under Kentucky law where an adequate remedy at law existed); Pacheco v. Boar's Head Provisions Co., No. 1:09-cv-298, 2010 U.S. Dist. LEXIS 30463, at *12-15 (W.D. Mich. Mar. 30, 2010) (dismissing plaintiff's unjust enrichment claim where plaintiff seeks the same relief under a statutory claim and unjust enrichment claim and rejecting plaintiff's assertion that it has the right to bring the unjust enrichment claim in the alternative) (citations omitted); Drobnak v. Andersen Corp., 561 F.3d 778, 786-87 (8th Cir. 2009) (dismissing unjust enrichment claim under Minnesota law where plaintiffs would have had an adequate remedy under its UCC and fraud claims); Hinson v. United Fin. Servs., Inc., No. COA95-459, 123 N.C. App. 469, 473, 473 S.E.2d 382, 385 (N.C. App. 1996) (dismissing plaintiff's unjust enrichment claim because plaintiff had a remedy under a contract); Banks v. Nationwide Mut. Fire Ins. Co., No. 99AP-1413, 2000 Ohio App. LEXIS 5504, at *16 (Ohio Ct. App. Franklin County Nov. 28, 2000) (citations omitted) (overruling plaintiff's assignment of error regarding dismissal of her unjust enrichment claim where plaintiff had a claim in tort and where there was a contract); L.S. Henriksen Constr., Inc. v. Shea, 155 Or. App. 156, 159-161, 961 P.2d 295, 296-98 (Or. App. 1998) (holding that in order to state a claim for unjust enrichment plaintiff must show that the enrichment was unjust and plaintiff must exhaust all other remedies); Johnson v. Ross, No. 6:08-cv-00313, 2009 U.S. Dist. LEXIS 115034, at *12-13. (S.D.W.Va. Dec. 10, 2009).

[32] Southern v. Pfizer, Inc., 471 F. Supp. 2d 1207, 1219-20 (N.D. Ala. June 2006) (holding that a plaintiff could not maintain its unjust enrichment claim that was based on a fraudulent misrepresentation where the fraudulent misrepresentation claim was not viable); Suarez v. Playtex Prods., Inc., Nos. 08 C 2703, 08 C 3352, 2009 U.S. Dist.
(footnote cont'd...)

28

allegedly defective product or purportedly made misrepresentations about its product or service is insufficient to maintain a claim for unjust enrichment under the laws of certain states;[33] (4) a claim for unjust enrichment cannot be maintained where the plaintiff did not purchase directly from the defendant.[34] Finally, California does not recognize unjust enrichment as an independent cause of action,[35] and Texas requires fraud to maintain an unjust enrichment claim (which, as previously shown in relation to the claims under various states' laws for deceptive trade

_____

(...cont'd)
LEXIS 63771, at *13 (N.D. Ill. July 24, 2009) (dismissing unjust enrichment claims based on the allegations supporting plaintiffs negligence and consumer fraud claims in an action alleging that baby bottles contained excessive levels of lead where plaintiffs negligence and consumer fraud claims failed); Iowa Network Servs., Inc. v. Qwest Corp., 385 F. Supp. 2d 850, 904 (S.D. Iowa 2005), aff'd, 466 F.3d 1091 (8th Cir. 2006); Dubinsky v. Mermart, LLC, No. 4:08-cv-1806, 2009 U.S. Dist. LEXIS 31992, at *16-18 (E.D. Mo. Apr. 15, 2009), aff'd, 595 F.3d 812 (8th Cir. 2010); In re Yasmin and Yaz (Drospirenone) Sales Practices and Prods Liab. Litig. v. Bayer Healthcare Pharms., Inc., 3:09-md-02100, MDL No. 2100, 3:09-cv-20071, 2010 U.S. Dist. LEXIS 80758, at *32-33 (S.D. Ill. Aug. 5, 2010) (dismissing unjust enrichment claim in a products liability case where the related common law fraud and negligence claims failed); Coto Settlement v. Eisenberg, 593 F.3d 1031, 1041 (9th Cir. 2010) (dismissing unjust enrichment claim under Washington law for money had and received where it echoed the underlying conversion claim that was also dismissed).

[33] N.G.L. Travel Assocs. v. Celebrity Cruises Inc., 764 So. 2d 672, 675 (Fla. 3d DCA 2000) ("Unjust enrichment 'cannot exist where payment has been made for the benefit conferred.'"); Drobnak, 561 F.3d at 786-87 (dismissing unjust enrichment claim under Minnesota law where plaintiffs would have had an adequate remedy under its UCC and fraud claims, which were dismissed because plaintiffs had not properly pled a related fraud claim under Fed. R. Civ. P. 9(b) and failed to provide proper notice with respect to its UCC claims); Chamberlain v. Am. Tobacco Co., No 1-96 CV 2005, 1999 U.S. Dist. LEXIS 22636, at *53-54 (N.D. Ohio Nov. 19, 1999) (dismissing plaintiff's claims against defendant for injuries caused by cigarettes manufactured by defendants because defendant was not unjustly enriched by retaining profits from the sale of the cigarettes which plaintiff actually received); Nelson Mullins Riley & Scarborough, LLP v. Aon Risk Servs. of N.Y., No. 4:04-cv-21962, 2007 U.S. Dist. LEXIS 98126, at *14 (D.S.C. July 18, 2007) (holding that receipt of payment by defendant where services had been rendered was not unjust); State Farm Bank, F.S.B. v. Manheim Auto. Fin. Servs., Inc., No. 3:10-cv-00519, 2010 U.S. Dist. LEXIS 80698, at *12-16 (N.D. Tex. Aug. 6, 2010) (holding that defendant was not unjustly enriched where it retains certain financial benefits even though plaintiff alleges that it did not abide by certain legal duties in providing its services and dismissing plaintiff's unjust enrichment claim); Berry v. Indianapolis Life Ins. Co., No. 3:08-cv-0248-B, 2010 U.S. Dist. LEXIS 88703, at *55-56 (N.D. Tex. Aug. 26, 2010) (applying Wisconsin law).

[34] Premier Pork L.L.C. v. Westin, Inc., No. 07-1661, 2008 U.S. Dist. LEXIS 20532, at *41-45 (D.N.J. Mar. 17, 2008) (dismissing plaintiff's claim for unjust enrichment where plaintiff did not have a direct relationship with any of the defendants); Johnson v. Microsoft Corp., 106 Ohio St. 3d 278, 2005-Ohio-4985, 834 N.E. 2d 791, at ¶21) (affirming dismissal of plaintiff's claim for unjust enrichment in putative class action where plaintiff did not purchase product directly from the defendant manufacturer).

[35] Smith v. Ford Motor Co., No. C-06-00497, 2010 U.S. Dist. LEXIS 95122, at *43-44 (N.D. Calif. Sept. 13, 2010).

practices, has not been adequately pled).[36]  Therefore, Plaintiffs' claim for unjust enrichment fails

for at least one of the foregoing reasons under the laws of almost every state in which there is a

named plaintiff.

IV.        <u>CONCLUSION</u>

For each of these reasons, Plaintiffs' claims against Procter & Gamble fail, and

this Court should grant this Motion to Dismiss the Consolidated Class Action Complaint.

Respectfully submitted,


OF COUNSEL:

Robert F. Ruyak (*pro hac vice pending*)
Edward Han (*pro hac vice pending*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 783-0800
Telecopier: (202) 383-6610

Joanne E. Caruso (*pro hac vice pending*)
HOWREY LLP
550 South Hope St.
Suite 1100
Los Angeles, CA  90071
Telephone: (213) 892-1800
Telecopier: (213) 892-2300

s/ D. Jeffrey Ireland
D. Jeffrey Ireland (0010443)
   Trial Attorney
Brian D. Wright (0075359)
Bruke H. Sullivan (0082765)
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0310
Telecopier:  (513) 632-0319
Email:  djireland@ficlaw.com

Counsel for Defendants
The Procter & Gamble Company
The Procter & Gamble Paper Products Company
and The Procter & Gamble Distributing LLC

---

[36] <u>Baisden v. I'm Ready Prods. Inc.</u>, No. H-08-0451, 2008 U.S. Dist. LEXIS 39949, at *31-32 (S.D. Tex. May 16, 2008) (dismissing claim for unjust enrichment where the plaintiff failed to allege that the plaintiff secured the benefit through, fraud, duress or undue advantage).

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 20th day of October, 2010, I electronically filed the foregoing

Motion of Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products

Company and The Procter & Gamble Distributing LLC to Dismiss the Consolidated Class

Action Complaint with the Clerk of Courts using the CM/ECF system, which will send

notification of such filing to CM/ECF participants:

> Lynn Lincoln Sarko
> Michael D. Woerner
> Gretchen Freeman Cappio
> Gretchen S. Obrist
> KELLER ROHRBACK L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA  98101
>
> David S. Preminger
> KELLER ROHRBACK L.L.P.
> 770 Broadway, 2nd Floor
> New York, NY  10003
>
> Interim Lead Counsel for Plaintiffs
>
>
> Craig W. Hillwig
> Christina Donato Saler
> Joseph C. Kohn
> George S. Croner
> KOHN, SWIFT & GRAF, P.C.
> One South Broad Street, Suite 2100
> Philadelphia, PA  19107
>
> Thomas M. Mullaney
> LAW OFFICES OF THOMAS M. MULLANEY
> 275 Madison Avenue, 37th Floor
> New York, NY  10016
>
> Attorneys for Plaintiffs

and I hereby certify that I have mailed by first class U.S. mail, postage prepaid, the document to

the non-CM/ECF participants:

Donald S. Varian, Jr.
195 South Main Street, Suite 400
Akron, OH 44308

Todd S. Collins
Neil F. Mara
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365

Gerard V. Mantese
David Honigman
MANTESE, HONIGMAN, ROSSMAN AND WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, MI 48083

Daniel E. Gustafson
Karla M. Gluek
Amanda M. Williams
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
PO Box 1190
Alexandria, LA 71309-1190

Nicholas J. Drakulich
THE DRAKULICH FIRM
A Professional Law Corporation
2727 Camino Del Rio South, Suite 322
San Diego, CA 92108

Joseph F. Devereux, Jr.
Joseph F. Devereux III
DEVEREUX MURPHY LLC
The Plaza at Clayton
190 Carondelet, Suite 1100
St. Louis, MO 63105

Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA  17601

David S. Corwin
SHER CORWIN, LLC
190 Carondelet Plaza, Suite 1100
Clayton, MO  63105

Attorneys for Plaintiffs


s/ D. Jeffrey Ireland
D. Jeffrey Ireland

413934.3

# APPENDIX A

## Notice Requirements for Breach

1.  Michigan: <u>Am. Bumper & Mfg. Co. v. Transtechnology Corp.</u>, 252 Mich. App. 340, 348, 652 N.W. 2d 252, 257 (Mich. Ct. App. 2002) (affirming trial court's judgment in favor of defendant where plaintiff failed to provide statutory notice, stating, "the statute plainly and unambiguously states that notice must be given or the buyer is barred from any remedy");

2.  Montana: Mont. Code § 30-2-607(3) ("[T]he buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy");

3.  Nebraska: <u>Timmerman v. Hertz</u>, 195 Neb. 237, 245, 238 N.W.2d 220, 225 (Neb. 1976) (stating that the "purchaser must plead that he gave timely notice of the breach");

4.  New York: <u>Hubbard v. Gen. Motors Corp.</u>, No. 95-Civ.-4362, 1996 U.S. Dist. LEXIS 6974, at *13 (S.D.N.Y. May 22, 1996) (dismissing plaintiff's breach of implied warranty claim for failure to allege notice);

5.  Oregon: Or. Rev. Stat. § 72.6070(3)(a) ("The buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy");

6.  Texas: <u>Wilson v. Home Depot U.S.A., Inc.</u>, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005) (granting summary judgment in favor of the defendant on consumers' class claim for breach of warranty finding that the "notice requirement is a condition precedent for a buyer's cause of action"); and

7.  Wisconsin: <u>Carl v. Spickler Enters., Ltd.</u>, 165 Wis. 2d 611, 478 N.W.2d 48 (Wis. Ct. App. 1991) ("[T]he buyer must provide . . . notice before commencing an action.").

## **APPENDIX B**

Lack of Privity Requires Dismissal of Breach of Implied Warranty Claims under Certain States

1. Florida:  Cruz v. Mylan, Inc., No. 8:09-CV-1106-T17-EAJ, 2010 U.S. Dist. LEXIS 13563, at *4 (M.D. Fla. Feb. 17, 2010) ("Plaintiff's implied warranty claims must be dismissed for want of privity between the parties."); T.W.M. v. Am. Med. Sys., 886 F. Supp. 842, 844 (N.D. Fla. 1995) (dismissing breach of implied warranty of merchantability claim for lack of privity, stating, "A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant.");

2. Kentucky:  Childress v. Interstate Battery Sys. of Am., No. 1:09CV-54-M, 2010 U.S. Dist. LEXIS 13897, at *14-15 (W.D. Ky. 2010) (dismissing breach of implied warranty of merchantability claim for lack of privity); Compex Int'l Co. v. Taylor, 209 S.W.3d 462, 465 (Ky. 2006) (reversing appellate court's decision and reinstating trial court's dismissal of plaintiffs' claim for breach of implied warranty for lack of privity);

3. Ohio:  Curl v. Volkswagen of Am., Inc., 114 Ohio St. 3d 266, 2007-Ohio-3609, 871 N.E. 2d 1141, at ¶18 ("[P]rivity is required to maintain a breach of implied warranty claim.");

4. Washington:  Baughn v. Honda Motor Co., 107 Wn. 2d 127, 151, 727 P.2d 655, 669 (1986) ("[P]rivity between buyer and seller traditionally has been required before a plaintiff may maintain such an action" for breach of implied warranty); and

5. Wisconsin:  Dippel v. Sciano, 37 Wis. 2d 443, 155 N.W. 2d 55 (1967) (dismissing claim for breach of implied warranty for lack of privity).

# APPENDIX C

## Privity Exception Applies Only With Physical Injury

1. Alabama: Rampey v. Novartis Consumer Health, Inc., 867 So. 2d 1079, 1087 (Ala. 2003) ("[T]he privity requirements still remain[] in cases of strictly economic injury. There is no right of action on an implied warranty theory against a manufacturer for property damage without privity of contract . . .") (internal citation omitted);

2. California: Mathison v. Bumbo, No. SA CV08-0369, 2008 U.S. Dist. LEXIS 108511, at *21 (C.D. Cal. Aug. 18, 2008) ("California law clearly requires privity in implied warranty actions not based on personal injuries.");

3. Connecticut: O&G Indus. v. Lafarge Bldg. Materials, Inc., No. CV065002572, 2010 Conn. Super. LEXIS 175, at *10-11 (Conn. Super. Ct. 2010) ("Connecticut law provides that a contractual breach of warranty claim requires privity.");

4. Illinois: N. Ins. Co. v. Silverton Marine Corp., No. 10 CV 345, 2010 U.S. Dist. LEXIS 62112, at *7 (N.D. Ill. June 23, 2010) ("To the extent that Plaintiff alleges breach of an implied warranty, its claim also fails. Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty.") (internal quotation marks omitted);

5. New York: Arthur Jaffee Assocs. v. Bilsco Auto Serv., 58 N.Y.2d 993, 995, 448 N.E. 2d 792 (1983) ("[T]here being no privity between the purchaser and the defendant [,] there can be no implied warranty."); Adirondack Combustion Techs., Inc. v. Unicontrol, Inc., 793 N.Y.S.2d 576, 579, 17 A.D.3d 825, 827 (N.Y. App. Div. 2005) ("A claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries.");

6. North Carolina: AT&T Corp. v. Med. Review of N.C., Inc., 876 F. Supp. 91, 95 (E.D. N.C. 1995) ("[P]rivity is still required to assert a claim for breach of an implied warranty where only economic loss is involved"); and

7. Oregon: Hupp Corp. v. Metered Washer Serv., 256 Or. 245, 247, 472 P.2d 816, 817 (1970) ("[Purchaser's] contention is that an ultimate purchaser can recover for economic loss upon the theory of implied warranty against a manufacturer although the property was not purchased directly from the manufacturer but through an intermediate seller. This court has decided to the contrary.").

**APPENDIX D**

Heightened Pleading Applies to Deceptive Trade Practices Acts

1.   Alabama:  Cooper v. Bristol-Myers Squibb Co., No. 07-885, 2009 U.S. Dist. LEXIS 121095, at \*20 (D.N.J. Dec. 30, 2009) ("[W]hile no Alabama state court has had the occasion to address whether a heightened pleading standard applies to fraud claims under the DTPA, since Plaintiff is asserting his state claim in a federal forum, the Court will apply Rule 9(b) to Plaintiff's DTPA claim.");

2.   California:  Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) (affirming the dismissal of putative class action that alleged claims under Cal. Civ. Code §§ 1750-1784 and Bus. & Prof. Code §§ 17200-17210 for failure to satisfy Fed. R. Civ. P. 9(b));

3.   Colorado:  Mayhew v. Cherry Creek Mortg. Co., No. 09-cv-00219, 2009 U.S. Dist. LEXIS 125725, at \*34 (D. Colo. Dec. 21, 2009) ("Claims related to false representations allegedly made in violation of the CCPA must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).");

4.   Connecticut:  Aviamax Aviation Ltd. v. Bombardier Aero. Corp., No. 3:08-CV-1958, 2010 U.S. Dist. LEXIS 45705, \*29-30 (D. Conn. May 10, 2010) (dismissing complaint where plaintiff failed to plead fraud with particularity);

5.   Florida:  Akzo Nobel Coatings, Inc. v. Auto Paint & Supply of Lakeland, Inc., No. 8:09-cv-2453, 2010 U.S. Dist. LEXIS 84544, at \*12 (M.D. Fla. July 16, 2010) ("'[C]laims arising under the FDUTPA must be pled with particularity.'");

6.   Illinois:  Matthews v. Homecoming Fin. Network, No. 03 C 3115, 2005 U.S. Dist. LEXIS 21535, at \*29 (N.D. Ill. Sept. 26, 2005) ("Where a plaintiff's ICFA claim sounds in fraud, it must be pleaded with particularity pursuant to Rule 9(b).");

7.   Kansas:  Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203, 2006 U.S. Dist. LEXIS 39113, at \*21 (D. Kan. June 13, 2006) ("[Fed. R. Civ. P. 9(b)] applies to allegations of deceptive trade practices under the KCPA.");

8.   Kentucky:  Hollon v. Consumer Plumbing Recovery Ctr., No. 5:05-414, 2006 U.S. Dist. LEXIS 29872, at \*13 (E.D. Ky. Mar. 2, 2006) ("[T]o the extent the KCPA claim is based on fraudulent acts of Defendant, this claim is dismissed without prejudice for failure to plead fraud with particularity.");

9.   Maine:  Everest v. Leviton Mfg. Co., No. CV-04-216, 2006 Me. Super. LEXIS 12, at \*8 (Me. Super. Ct. Jan. 13, 2006) (applying heightened pleading under state civil procedure rules, finding that "Plaintiff's claims under the UTPA . . . are premised on fraud. Therefore, under M.R. Civ. P. 9(b), Plaintiff's claims must be pled with particularity.");

10.  Michigan:  Zanger v. Gulf Stream Coach, Inc., No. 05-72300, 2005 U.S. Dist. LEXIS 35467, at \*28-29 (E.D. Mich. Dec. 13, 2005) ("The majority of all MCPA claims involve charges of fraud . . . the circumstances constituting fraud or mistake shall be stated with particularity.'" (citations omitted));

11.    <u>Minnesota</u>:  <u>Masterson Pers., Inc. v. McClatchy Co.</u>, No. 05-1274, 2005 U.S. Dist. LEXIS 29565, at *10-11, 15 (D. Minn. Nov. 22, 2005) (granting defendant's motion to dismiss both claims under Minn. Stat. § 325F.67 and Minn. Stat. § 325F.69, holding that "[b]ased on Plaintiffs' failure to plead the fraud claims against [defendant] with the particularity required by Fed. R. Civ. P. 9(b), those claims will be dismissed.");

12.    <u>Missouri</u>:  <u>Lavender v. Wolpoff & Abramson, L.L.P.</u>, No. 07-0015, 2007 U.S. Dist. LEXIS 64375, at *5-6 (W.D. Mo. Aug. 30, 2007) (finding that plaintiffs have "failed to set forth with particularity, the specifics of their fraud claims against the defendants. This alone would be reason to dismiss the claim"); <u>Blake v. Career Educ. Corp.</u>, No. 4:08CV00821, 2009 U.S. Dist. LEXIS 3432, at *4-6 (E.D. Mo. Jan. 20, 2009) ("The United States District Courts in Missouri have consistently applied Rule 9(b) to cases arising under the MMPA.");

13.    <u>Montana</u>:  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Fed. R. Civ. P. 9(b) to state consumer fraud claims under California law, stating broadly, "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." (citation omitted));

14.    <u>Nebraska</u>:  <u>Siegel v. Deutsche Bank Nat'l Trust Co.</u>, No. 8:08CV517, 2009 U.S. Dist. LEXIS 94033, at *15 (D. Neb. Oct. 8, 2009) (dismissing common law fraud claims because plaintiffs' allegations of fraud did not meet "the heightened pleading standards");

15.    <u>New Jersey</u>:  <u>Alban v. BMW of N. Am., LLC</u>, No. 09-5398, 2010 U.S. Dist. LEXIS 94038 (D.N.J. Sept. 8, 2010) (dismissing plaintiffs' claim under the NJCFA because plaintiffs' failed to meet the heightened 9(b) pleading standards);

16.    <u>Ohio</u>:  <u>Ferron v. Zoomego, Inc.</u>, 2:06-cv-751, 2007 U.S. Dist. LEXIS 48292, at *9 (S.D. Ohio July 3, 2007) ("[T]he elevated standards of Rule 9(b) will be applied" to an OCSPA claim), <u>aff'd</u>, 276 Fed. Appx. 473 (6th Cir. 2008);

17.    <u>Pennsylvania</u>:  <u>Thomas v. Chase Bank</u>, No. 09-3803, 2010 U.S. Dist. LEXIS 48161, at *5 (E.D. Pa. May 13, 2010) (holding that Plaintiffs' fraud-based UTPCPL claim had to meet Rule 9(b) requirements);

18.    <u>South Carolina</u>:  <u>Neuman v. Levan Trust</u>, No. 8:08-03418, 2009 U.S. Dist. LEXIS 55139, at *10 (D.S.C. June 25, 2009) (dismissing complaint because "Plaintiffs' allegation that Defendants engaged in false, misleading, and deceptive acts lacks any particularity.");

19.    <u>Texas</u>:  <u>Berry v. Indianapolis Life Ins. Co.</u>, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("It is well-established that '[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b).'");

20.    <u>Washington</u>:  <u>In re Wall Data Sec. Litig.</u>, No. C95-05282, 1995 U.S. Dist. LEXIS 19812, at *83 (W.D. Wash. Sept. 13, 1995) ("plaintiffs' federal claims must be dismissed for failure to plead fraud with particularity, plaintiffs' state law claims must also be dismissed for the same reasons");

21. West Virginia:  Jones v. Sears Roebuck & Co., 301 Fed. Appx. 276, 287 (4th Cir. 2008) (affirming the dismissal of Plaintiffs' WVCCPA claim for failure to plead fraud with particularity); and

22. Wisconsin:  Ball v. Sony Elecs. Inc., 05-C-307-S, 2005 U.S. Dist. LEXIS 22004, at *10 (W.D. Wis. Sept. 28, 2005) ("To comply with Rule 9(b) plaintiff must at least identify the statements alleged to be false or deceptive, not a general legal conclusion that such statements were made.").

**APPENDIX E**

Reliance or Causation Is a Required Element of Claims Under Deceptive Trade Practices Acts

1.   Alabama:  Ala. Code § 8-19-10(a) (permitting a plaintiff to recover from a person who "commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer");

2.   California:  Janda v. T-Mobile, USA, Inc., No. C 05-03729, 2008 U.S. Dist. LEXIS 93399, at *21-22 (N.D. Cal. Nov. 7, 2008) ("Plaintiffs' CLRA claims are premised, in part, upon allegedly false advertisements.  Accordingly, Plaintiffs must allege that they relied on the false advertisements. . . . Plaintiffs have not alleged facts showing reliance, and their general statements that they suffered injury as a result of T-Mobile's practices are insufficient to do so.") (internal citations omitted); In re: Actimmune Mktg. Litig., No. C 08-02376, 2010 U.S. Dist. LEXIS 90480, at *26 (N.D. Cal. Aug. 31, 2010) (dismissing plaintiffs' putative class action complaint, stating, "Because this case, as in Tobacco II, Durell and Laster, involved representations intended to persuade a consumer to purchase a product, the court holds that plaintiffs must plead actual reliance in order to establish their standing under the UCL.");

3.   Colorado:  Colo. Rev. Stat. 6-1-113(1) (providing a plaintiff a right to recover only where the plaintiff was "injured as a result of such deceptive trade practice");

4.   Connecticut:  Abrahams v. Young & Rubicam, 240 Conn. 300, 306-307, 692 A.2d 709, 712 (1997) ("Thus, in order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury.  The language 'as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff.") (citation omitted);

5.   Florida:  Lawrie v. Ginn Cos., LLC, No. 3:09-CV-446-J-32JBT, 2010 U.S. Dist. LEXIS 98693, at*37 n.26 (M.D. Fla. Sept. 21, 2010) ("Failure to state facts which indicate how the alleged deceptive acts or unfair practices caused damage to Plaintiffs can result in dismissal of Plaintiffs' FDUTPA claim.");

6.   Illinois:  Oliveira v. Amoco Oil Co., 201 Ill. 2d 134, 155, 776 N.E. 2d 151, 163 (2002) (reversing the appellate court's decision and reinstating the trial court's dismissal of plaintiffs' putative class action for failure to plead causation, holding, "Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance.");

7.   Kansas:  Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203, 2006 U.S. Dist. LEXIS 39113, at *28 (D. Kan. June 13, 2006) (dismissing plaintiffs' consumer fraud claims in a putative class action, stating, "None of these allegations [relating to misrepresentations and omissions], however, are tied in factually in any way to Ms. Thompson's claim for a violation of the KCPA.  As such . . . the court finds defendant's motion to dismiss Ms. Thompson's claims for violation of consumer protection laws should be granted for failure to comply with Fed. R. Civ. P. 9(b).");

8.      <u>Kentucky</u>:  Ky. Rev. Stat. § 367.220(1) ("Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, <u>as a result of</u> the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action." (emphasis added));

9.      <u>Maine</u>:  <u>Everest v. Leviton Mfg. Co.</u>, No. CV-04-612, 2007 Me. Super. LEXIS 111, at *16 (Me. Super. Ct. June 5, 2007) ("Similarly, reliance is an element under both UTPA and unjust enrichment.");

10.     <u>Michigan</u>:  <u>Kussy v. Home Depot U.S.A. Inc.</u>, No. 06-12899, 2006 U.S. Dist. LEXIS 90024, at *18-19 (E.D. Mich. Nov. 27, 2006) (dismissing MCPA claim and stating, "[Plaintiff] still must show reliance, and for the class action allegations, must show that a reasonable person would have relied on the marked price of the wire.");

11.     <u>Minnesota</u>:  <u>Ansari v. NCS Pearson, Inc.</u>, No. 08-5351, 2009 U.S. Dist. LEXIS 66034 (D. Minn. July 23, 2009) (affirming magistrate's dismissal of defendant, and finding that plaintiff failed to properly plead reliance or causation under both the MCFA and MFSAA);

12.     <u>Missouri</u>:  <u>Owen v. GMC</u>, 533 F.3d 913, 922-923 (8th Cir. 2008) ("[T]here is no denying that causation is a necessary element of an MMPA claim. . . . [T]he plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice.");

13.     <u>Montana</u>:  Mont. Code § 30-14-133(1) ("A consumer who suffers any ascertainable loss of money or property, real or personal, <u>as a result of</u> the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 may bring an individual . . . action. . . ." (emphasis added));

14.     <u>Nebraska</u>:  Neb. Rev. Stat. § 59-1609 ("Any person who is injured in his or her business or property by a violation of sections 59-1602 to 59-1606 … may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him or her, or both");

15.     <u>New Jersey</u>:  <u>N.J. Citizen Action v. Schering-Plough Corp.</u>, 367 N.J. Super 8, 15, 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003) (dismissing plaintiffs' claim under the NJCFA because "plaintiffs cannot demonstrate that any loss that they may have suffered was caused by defendants' allegedly misleading . . . advertisements," finding that "plaintiffs must nonetheless plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained");

16.     <u>New York</u>:  <u>Small v. Lorillard Tobacco Co.</u>, 94 N.Y.2d 43, 56, 720 N.E. 2d 892, 897 (1999) (stating that one element of a claim under New York's consumer fraud act is that a "material deceptive act or practice caused actual, although not necessarily pecuniary, harm");

17. <u>North Carolina</u>: <u>Kelly v. Georgia-Pacific LLC</u>, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009) (dismissing unfair or deceptive trade practice claim because "[plaintiff did] not allege actual reliance or that the misrepresentation proximately caused the damage," reasoning that "[w]here an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains.") (citation omitted);

18. <u>Ohio</u>: <u>Temple v. Fleetwood Enters., Inc.</u>, 133 Fed. Appx. 254, 265 (6th Cir. 2005) ("To make out a prima facie claim under the [O]CSPA, a plaintiff must 'show a material misrepresentation, deceptive act or omission' that impacted his decision to purchase the item at issue.");

19. <u>Pennsylvania</u>: <u>Hunt v. United States Tobacco Co.</u>, 538 F.3d 217, 221 (3d Cir. 2008) ("[A] private plaintiff pursuing a claim under the [Pennsylvania Unfair Trade Practices and Consumer Protection Law] must prove justifiable reliance.");

20. <u>South Carolina</u>: <u>Colleton Preparatory Academy, Inc. v. Hoover Univ., Inc.</u>, 379 S.C. 181, 194 666, S.E. 2d 247, 254 (2008) ("To recover under the [the South Carolina Unfair Trade Practices Act], a plaintiff must prove a violation of the Act, proximate cause, and damages.");

21. <u>Texas</u>: <u>Henry Schein, Inc. v. Stromboe</u>, 102 S.W.3d 675, 686, 46 Tex. Sup. Ct. J. 103 (Tex. 2002) ("Reliance is also not only relevant to, but an element of proof of, plaintiffs' claim[] of . . . DTPA "laundry-list" violations.");

22. <u>Washington</u>: <u>Guijosa v. Wal-Mart Stores</u>, 144 Wn. 2d 907, 917, 32 P.3d 250, 255 (Wash. 2001) ("To establish a claim for violation of the CPA, a private plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) impacting the public interest, and (4) proximately causing injury to the plaintiff in his or her business or property.");

23. <u>West Virginia</u>: <u>Bertovich v. Advanced Brands & Importing, Co.</u>, No. 5:05CV74, 2006 U.S. Dist. LEXIS 57735, at *14-15 (N.D. W. Va. Aug. 14, 2006) ("Under West Virginia law, each cause of action requires a cognizable injury and a causal connection between that injury and the Defendants' conduct." (citing W. Va. Code § 46A-6-106(a)); and

24. <u>Wisconsin</u>: <u>Spacesaver Corp. v. Marvel Group, Inc.</u>, 621 F. Supp. 2d 659, 663 (W.D. Wis. 2009) (dismissing complaint, stating, "'[r]eliance is an aspect of the third element [of a claim under § 100.18], whether a representation caused the plaintiff's pecuniary loss.' In other words, to satisfy the element of causation for a claim under § 100.18, it is not enough for the plaintiff to show that it sustained a loss that is somehow connected to a misrepresentation made to 'the public.' Rather, the question is whether 'the representation . . . materially induce[d] the plaintiff's decision to act and [whether the] plaintiff would have acted in the absence of the representation.'" (citation omitted)).

**APPENDIX F**

Economic Loss Rule Requires Dismissal of Plaintiffs' Negligence and Strict Liability Claims

1.    Alabama:  Lloyd Wood Coal Co. v. Clark Equip. Co., 543 So. 2d 671, 672 (Ala. 1989) (affirming trial court's grant of summary judgment in favor of defendant on negligence and strict liability claims pursuant to the economic loss rule, reasoning that "there is no claim for personal injury or for damage to any property other than the front-end loader itself");

2.    California:  Phillips v. "MERS" Mortgage Elec. Registration Sys., 1:09-CV-01028-OWW-SMS, 2009 U.S. Dist. LEXIS 93277, at *12 (E.D. Cal. Oct. 2, 2009) ("'In California, plaintiffs may seek remedies for strict liability and negligence only for physical injury to person or property, and not for pure economic losses.' . . . "Since Plaintiffs' alleged damages are purely economic, the economic loss doctrine supports dismissal of the negligence claim." (citation omitted));

3.    Colorado:  Adams-Arapahoe School Dist. No. 28-J v. GAF Corp., 959 F.2d 868, 871 (10th Cir. 1992) ("[N]egligence is not actionable in Colorado unless it results in physical damage to persons or property.");

4.    Florida:  Zurich Am. Ins. Co. v. Hi-Mar Specialty Chems., LLC, No. 08-80255, 2009 U.S. Dist. LEXIS 54779, at *14 (S.D. Fla. June 25, 2009) (dismissing negligence and strict liability claims pursuant to the economic loss rule because "[plaintiff] does not allege any personal injury or damage to any of its property other than [the allegedly defective product at issue]");

5.    Illinois:  Northern Ins. Co. v. Silverton Marine Corp., No. 10 CV 345, 2010 U.S. Dist. LEXIS 62112, at *4 (N.D. Ill. June 23, 2010) (dismissing negligence and strict liability claims pursuant to the economic loss rule, stating that plaintiff "alleges no personal injury or damage to property other than the [allegedly defective product]");

6.    Iowa:  Audio Odyssey, Ltd. v. United States, 243 F. Supp. 2d 951, 961 (S.D. Iowa 2003) (dismissing the negligence claim pursuant to the economic loss rule, holding that damages sought were not recoverable because "Iowa has adopted the pure economic loss doctrine which bars recovery in negligence claims absent physical harm."), aff'd, 373 F.3d 870 (8th Cir. 2004); Nelson v. Todd's, Ltd., 426 N.W.2d 120, 122 (Iowa 1988) (affirming judgment of the appellate court that the plaintiffs' strict liability claim against the manufacturer should not have been submitted to the jury pursuant to the economic loss rule, reasoning that "purely economic losses are not recoverable under the strict liability theory");

7.    Kansas:  Smith v. Ford Motor Co., No. 03-4192-SAC, 2004 U.S. Dist. LEXIS 6549, at *6 (D. Kan. Mar. 16, 2004) ("[P]laintiffs strict liability and negligence claims for damage done to their motor home are barred by the economic loss doctrine.");

8.    Maine:  Fireman's Fund Ins. Co. v. Childs, 52 F. Supp. 2d 139, 142 (D. Me. 1999) (stating that courts (including Maine) "do not permit tort recovery for a defective product's damage to itself or, in other words, where the injury suffered is merely the

failure of the product to work properly rather than personal injury or resulting injury to other property");

9.  Michigan:  Sherman v. Sea Ray Boats, 251 Mich. App. 41, 44, 649 N.W.2d 783, 785 (Mich. Ct. App. 2002) (affirming dismissal of consumer's negligence claim pursuant to the economic loss doctrine, stating that "'where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses.'" (citation omitted));

10.  Minnesota:  Milwaukee Mut. Ins. Co. v. Deere & Co., No. 04-4905 (MJD/JGL), 2005 U.S. Dist. LEXIS 37134, at *7, *14 (D. Minn. 2005) (granting defendants' motion for judgment on the pleadings on the negligence and strict liability claims pursuant to the economic loss rule, reasoning that "where the damage is to the product itself and includes no damage to other property, then the Uniform Commercial Code is the exclusive remedy – precluding tort claims.");

11.  Missouri:  Summer Chase Second Addition Sub Division Homeowners Ass'n v. Taylor-Morley, Inc., 146 S.W.3d 411, 417 (Mo. Ct. App. 2004) (affirming dismissal of negligence claim, stating "[w]here the only damage complained of is an economic loss resulting from defects in the item built pursuant to a contract, a negligence action does not lie");

12.  Nebraska:  Nat'l Crane Corp. v. Ohio Steel Tube Co., 213 Neb. 782, 790, 332 N.W.2d 39, 44 (1983) (affirming dismissal and holding that "the purchaser of a product pursuant to contract cannot recover economic losses from the seller manufacturer on claims in tort based on negligent manufacture or strict liability in the absence of physical harm to persons or property caused by the defective product");

13.  New Jersey:  Alloway v. General Marine Indus., L.P., 149 N.J. 620, 641, 695 A.2d 264, 275 (1997) (reinstating trial court's judgment dismissing plaintiffs' claims for negligence and strict liability, finding that "a tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive");

14.  New York:  Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc., No. 09-CV-6370, 2010 U.S. Dist. LEXIS 75805, at *22-29 (W.D.N.Y. July 28, 2010) (dismissing plaintiff's negligence and strict liability claims, concluding that "damages which are purely economic are not recoverable under tort theories such as negligence" and that "New York law precludes recovery of economic loss under a strict liability theory");

15.  North Carolina:  Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 791 (D.N.C. 2009) (applying the economic loss rule and dismissing plaintiff's negligence claim, stating, "North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the UCC operates to allocate risk.");

16.  Ohio:  Brainard v. Am. Skandia Life Assurance Corp., 432 F.3d 655, 665 (6th Cir. 2005) (holding that district court properly dismissed plaintiff's negligence claim because "for claims sounding in negligence, the well established rule is that a plaintiff who has

suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable") (quotations and citation omitted);

17. <u>Oregon</u>:  <u>Galbraith v. MML Investor Servs., Inc.</u>, No. CV-09-437, 2009 U.S. Dist. LEXIS 116259, at *5 (D. Or. Dec. 11, 2009) (granting defendant's motion to dismiss plaintiff's negligence claim asserted under Oregon law, stating that "'a negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm'");

18. <u>Pennsylvania</u>:  <u>Sovereign Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d 162, 175 (3rd Cir. 2008) (affirming dismissal of plaintiff's negligence claim after finding the claim was barred by the economic loss doctrine, stating that the "[e]conomic [l]oss [d]octrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage");

19. <u>South Carolina</u>:  <u>Sapp v. Ford Motor Co.</u>, 386 S.C. 143, 150, 687 S.E. 2d 47, 51 (2009) (affirming the dismissal of plaintiff's negligence and strict liability claims on the basis of the economic loss rule, holding, "[T]he economic loss rule precludes [plaintiff's] recovery in tort.");

20. <u>Texas</u>:  <u>Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland</u>, 524 F.3d 676, 678 (5th Cir. 2008) (affirming district court's dismissal of plaintiff's negligence claim; stating that "in Texas, the economic loss rule bars plaintiffs from recovering economic losses resulting from a defective product based on a negligence theory") (citations omitted);

21. <u>Washington</u>:  <u>Wash. Water Power Co. v. Graybar Elec. Co.</u>, 112 Wn. 2d 847, 867 (1989) (holding that "the WPLA preempts common law remedies [and] the statute provides no remedy for 'economic loss'");

22. <u>West Virginia</u>:  <u>White v. AAMG Constr. Lending Ctr.</u>, No. 35286, 2010 W. Va. LEXIS 93, at *22-23 (W. Va. Sept. 16, 2010) (affirming judgment against plaintiff on his negligence claim based on the economic loss rule, as a plaintiff may not recover for pure economic loss except when the plaintiff and defendant have a special relationship); and

23. <u>Wisconsin</u>:  <u>General Cas. Co. v. Ford Motor Co.</u>, 225 Wis. 2d 353, 361, 592 N.W.2d 198, 201 (affirming dismissal of plaintiff's claims for negligence and strict liability under the economic loss doctrine).

**APPENDIX G**

Plaintiffs' No-Injury Product Liability Claims Must Be Dismissed

1. <u>Colorado</u>:  Colo Rev. Stat. § 13-21-401(2) (defining a product liability action as "any action . . . upon which the action is brought, for or on <u>account of personal injury, death, or property damage</u> . . .") (emphasis added); <u>Carter v. Brighton Ford, Inc.</u>, No. 09CA1966, 2010 Colo. App. LEXIS 1394, at *7-8 (Colo. App. Sept. 30, 2010) (holding that plaintiff did not have a products liability claim where there was only economic loss);

2. <u>Kansas</u>:  Kansas. Stat. Ann. § 60-3302 (defining a product liability claim as "any claim or action brought for harm…"); <u>Kestrel Holdings I, L.L.C. v. Learjet Inc.</u>, 316 F. Supp. 2d 1071, 1076 (D. Kan. 2004) (dismissing plaintiff's Kansas Product Liability Act claim seeking damages caused by allegedly defective aircraft because plaintiff sought damages such as "service costs for an unusable aircraft; costs of using alternative aircraft; reduced value of the aircraft; lost employee and contractor time and expenses; and lost use of the aircraft.  Plaintiff's alleged damages relate[d] to the aircraft itself – <u>not damage to other property or personal physical injuries</u>.") (emphasis added);

3. <u>Kentucky</u>:  Ken. Rev. Stat. § 411.300 (1) (defining a product liability action under the statute as "any action brought <u>for or on account of personal injury, death or property damage</u> . . .");

4. <u>Maine</u>:  <u>Mazerolle v. DaimlerChrysler Corp.</u>, No. CV-01-581, 2002 Me. Super. LEXIS 169, at *17-18 (Me. Super. Sept. 19, 2002) (holding that the economic loss doctrine applies to strict liability claims under 14 M.R.S.A. § 221 and that the economic loss doctrine bars claims for injury to the product itself) (citing <u>Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors</u>, 659 A.2d 267, 271(Me. 1995));

5. <u>Missouri</u>:  <u>Rolf v. McKee Foods</u>, No. 10-00005-CV-W-DGK, 2010 U.S. Dist. LEXIS 91260, at *7-8 (W.D. Mo. Sept. 2, 2010) ("[e]ven if [p]laintiff established the Honey Buns were defective or unreasonably dangerous, [p]laintiff has not presented any evidence to show he was damaged by Defendant's product");

6. <u>Nebraska</u>:  Neb. Rev. Stat.§ 25-21,180 (defining product liability action as "any action brought against a manufacturer, seller, or lessor of a product, regardless of the substantive legal theory or theories upon <u>which the action is brought, for or on account of personal injury, death or property damage</u>. . . . ") (emphasis added); <u>National Crane Corp. v. Ohio Steel Tube Co.</u>, 213 Neb. 782, 788, 332 N.W.2d 39, 43 (1983) ("Neb. Rev. Stat. § 25-21,180 . . . defines a product liability action as 'an action brought for or on account of personal injury, death, or property damage caused by the product.' The statute refers only to physical harm, not to economic loss");

7. <u>New Jersey</u>:  N.J. Stat. § 2A:58C-1 (defining harm as "(a) physical damage to property, <u>other than to the product itself</u>; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." §2A:58C-1.b(2)) (emphasis added); <u>Boyd v. Johnson & Johnson</u>

Consumer Cos., No. 09-cv-3135, 2010 U.S. Dist. LEXIS 53684, at *18 (D.N.J. May 31, 2010) ("[h]arm, for purposes of the PLA, does not include pure economic loss");

8.    North Carolina: N.C. Gen. Stat. § 99B-1 (3) (defining product liability action as "any action brought for or on account of personal injury, death or property damage . . ."); AT&T Corp. v. Med. Review of N.C., Inc., 876 F. Supp. 91, 95 (E.D.N.C. 1995) ("The [North Carolina Products Liability] Act is inapplicable to claims where the alleged defects of the product manufactured by the defendant caused neither personal injury nor damage to property other than to the manufactured product itself.");

9.    Ohio: Ohio Rev. Code § 2307.71 A (7) (defining harm as "death, physical injury to person, serious emotional distress, or physical damage to property other than the product in question. Economic loss is not 'harm.'"); Radford v. Daimler Chrysler Corp., 168 F. Supp. 2d 751, 753 (N.D. Ohio 2001) (dismissing plaintiff's Ohio Products Liability Act claim because "[e]conomic loss is not harm" under the Act) (citation omitted);

10.    Oregon: Or. Rev. Stat. § 30.900 (defining a product liability civil action as "a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage . . ."); Kent v. Shiley, Inc., No. 87-6554-e, 1989 U.S. Dist. LEXIS 8962, at *2-3 (D. Or. Jan. 24, 1989) ("Oregon courts have interpreted this statute to require that a product cause physical harm in order to subject the manufacturer or seller to strict liability for a defective condition");

11.    South Carolina: S.C. Code. Ann. § 15-73-10 (1) (providing that "one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm . . ."); Sapp v. Ford Motor Co., 386 S.C. 143, 687 S.E.2d 47 (S.C. 2009) (affirming dismissal of strict liability claims where the damages asserted were purely economic);

12.    Texas: Tex. Civ. Prac. & Rem. § 82.001 (2)"any action against a manufacturer or seller for recovery of damages, arising out of personal injury, death, or property damage . . ."; Murray v. Ford Motor Co., 97 S.W.3d 888, 891 (Tex. Ct. App. 2003) ("Where 'a product injures a consumer economically and not physically,' the consumer may recover under the warranties provided by the Uniform Commercial Code, but not for strict liability in. . . ."); and

13.    Washington: Hofstee v. Dow, 109 Wn. App. 537, 36 P.3d 1073, 1076 (Wash. Ct. App. 2001) ("WPLA explicitly confines recovery to physical harm suffered by persons and property and leaves purely economic loss to the UCC").

413934.3