IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE DRY MAX PAMPERS LITIGATION | : | CASE NO. 1:10-cv-00301 TSB |
| | : | (Judge Timothy S. Black) |
| | : | **JOINT MOTION FOR** |
| | : | **CERTIFICATION OF** |
| | : | **SETTLEMENT CLASS,** |
| | | **PRELIMINARY APPROVAL** |
| | : | **OF SETTLEMENT, APPROVAL** |
| | | **OF NOTICE PLAN AND** |
| | : | **NOTICE ADMINISTRATOR** |
| | | **AND APPOINTMENT OF** |
| | : | **LEAD CLASS COUNSEL** |

_____

After conducting arm's-length negotiations and engaging in multiple mediation sessions, Plaintiffs[1] and Defendants The Procter & Gamble Company, Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC (collectively "Procter & Gamble") have reached a fair, reasonable and adequate settlement in the above-captioned consolidated action, which includes all related cases that have been consolidated with this action.[2]  Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(e), Plaintiffs and Procter & Gamble

_____

[1] Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Brandy Bishop, Nicholas Bishop, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Holley Codner, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Frank Lawson, Amy Lock, Mariah MaLoon, Nicole Majchrzak, Morgan Maue, Robin York, Jeni McAllister, Maria McMahon, Eugenia Nunn, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Erin Ruopp, Lisa Saacks, Diane Samelson, Elvira Scarbro, Keith Scarbro, Adona Schank, Asia Southard, Suzy Sullivan, Felicia Robertson Tatum, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe and Amy Young (collectively, "Plaintiffs").

[2] The following twelve parallel cases have been consolidated into In re Dry Max Litigation:  (1) Clark v. Procter & Gamble,  No. 1:10-cv-00301 (S.D. Ohio) (filed May 11, 2010); (2) Maloon v. Procter & Gamble, No. 1:10-cv-00307 (S.D. Ohio) (filed May 13, 2010); (3) York v. Procter & Gamble, No. 1:10-cv-00304 (S.D. Ohio) (filed May 13, 2010); (4) Robins v. Procter & Gamble, 1:10-cv-00332 (S.D. Ohio) (filed May 23, 2010); (5) Berman v. Procter & Gamble, 2:10-cv-12179 (E.D. Mich.) (filed June 2, 2010); (6) D'Andrea v. Procter & Gamble, No. 2:10-cv-02562

(footnote cont'd...)

jointly move the Court to: (1) conditionally certify the Settlement Class, as defined in the

Settlement Agreement; (2) preliminarily approve the terms of the Settlement Agreement;

(3) approve the proposed Notice Plan; (4) appoint Garden City Group as notice administrator;

(5) appoint Lynn Lincoln Sarko and Gretchen Freeman Cappio of Keller Rohrback L.L.P. as

Lead Class Counsel; and (6) set a hearing date for final approval.[3]

---

(...cont'd)
(E.D.N.Y.) (filed June 4, 2010); (7) Bishop v. Procter & Gamble, 6:10-cv-01470, (D.S.C.) (filed June 7, 2010); (8) Tatum v. Procter & Gamble, No. 2:10-cv-03223 (D.N.J.) (filed June 23, 2010); (9) Tepper v. Procter & Gamble, No. 1:10-cv-00420 (S.D. Ohio) (filed June 25, 2010); (10) Rosenbaum v. Procter & Gamble, No. 1:10-cv-00563 (S.D. Ohio) (filed August 20, 2010); (11) Lawson v. Procter & Gamble, 1:10-cv-0074 (S.D. Ohio) (filed Oct. 22, 2010); and (12) Nunn v. Procter & Gamble, 1:10-cv-00795 (S.D. Ohio) (filed Nov. 12, 2010).

[3] A proposed Order is attached as Exhibit 1 and will be separately emailed to the Court in accordance with S.D. Ohio Electronic Filing Policies and Procedures Manual Section II.E.2.

Respectfully submitted,


/s/ Gary D. Greenwald (per authorization)
Gary D. Greenwald
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Trial Attorney for Plaintiffs


/s/ Lynn Lincoln Sarko (per authorization)
Lynn Lincoln Sarko
Michael D. Woerner
Gretchen Freeman Cappio
Gretchen S. Obrist
Harry Williams IV
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY 10003

Mark D. Samson
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Interim Lead Counsel

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland  (0010443)
Brian D. Wright (0075359)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3749
Email:  djireland@ficlaw.com

Attorneys for Defendants
The Procter & Gamble Company,
The Procter & Gamble Paper Products
Company and The Procter & Gamble
Distributing LLC

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION AND SUMMARY ................................................................................1

II.     BACKGROUND OF LITIGATION AND SUMMARY OF BENEFITS IN
        SETTLEMENT AGREEMENT ......................................................................................2

        A.      The Litigation and Settlement Negotiations ...........................................................2

        B.      Overview of the Settlement Agreement ................................................................4

III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ...........................8

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED .............................................13

V.      THE PROPOSED NOTICE PROGRAM IS SUFFICIENT AND SHOULD BE
        ADOPTED BY THIS COURT ........................................................................................17

VI.     LYNN LINCOLN SARKO AND GRETCHEN FREEMAN CAPPIO SHOULD
        BE APPOINTED AS LEAD CLASS COUNSEL .........................................................18

VII.    CONCLUSION ...............................................................................................................20

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF NOTICE PLAN AND NOTICE ADMINISTRATOR AND APPOINTMENT OF LEAD CLASS COUNSEL

I.        INTRODUCTION AND SUMMARY

After conducting arm's-length negotiations and engaging in multiple mediation sessions with the assistance of an experienced mediator who is a former federal district court judge, Plaintiffs Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Brandy Bishop, Nicholas Bishop, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Holley Codner, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Frank Lawson, Amy Lock, Mariah MaLoon, Nicole Majchrzak, Morgan Maue, Robin York, Jeni McAllister, Maria McMahon, Eugenia Nunn, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Erin Ruopp, Lisa Saacks, Diane Samelson, Elvira Scarbro, Keith Scarbro, Adona Schank, Asia Southard, Suzy Sullivan, Felicia Robertson Tatum, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe and Amy Young (collectively "Plaintiffs") and Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC (collectively "Procter & Gamble") have reached a fair, reasonable and adequate settlement in this action, styled In Re Dry Max Pampers Litigation,

Case No. 1:10-cv-00301-TSB, which includes all related cases that have been consolidated with this action.[4]

Plaintiffs and Procter & Gamble now jointly seek preliminary approval of the Settlement Agreement,[5] and move this Court for an Order conditionally certifying the Settlement Class, approving the Notice Plan, appointing Garden City Group as notice administrator, appointing Lynn Lincoln Sarko and Gretchen Freeman Cappio of Keller Rohrback L.L.P. as Lead Class Counsel and setting a hearing date for final approval of the Settlement.

II.       BACKGROUND OF LITIGATION AND SUMMARY OF BENEFITS
          IN SETTLEMENT AGREEMENT

          A.       The Litigation and Settlement Negotiations

          Plaintiffs filed the first of several complaints on May 11, 2010, asserting claims against Procter & Gamble on behalf of "all purchasers" of Pampers brand diapers.  Class Action Complaint, Clark et al. v. The Procter & Gamble Co., et al., Case No. 10-cv-301 (filed May 11, 2010) ("Clark Complaint").  Collectively, Plaintiffs filed twelve actions against Procter & Gamble, each of which has been transferred to the United States District Court for the Southern District of Ohio and consolidated into the In Re Dry Max Pampers Litigation, Case No.

---

[4]The following twelve parallel cases have been consolidated into In re Dry Max Litigation:  (1) Clark v. Procter & Gamble, No. 1:10-00301 (S.D. Ohio) (filed May 11, 2010); (2) Maloon v. Procter & Gamble, No. 1:10-cv-00307 (S.D. Ohio) (filed May 13, 2010); (3) York v. Procter & Gamble, No. 1:10-cv-00304 (S.D. Ohio) (filed May 13, 2010); (4) Robins v. Procter & Gamble, 1:10-cv-00332 (S.D. Ohio) (filed May 23, 2010); (5) Berman v. Procter & Gamble, 2:10-cv-12179 (E.D. Mich.) (filed June 2, 2010); (6) D'Andrea v. Procter & Gamble, No. 2:10-cv-02562 (E.D.N.Y.) (filed June 4, 2010); (7) Bishop v. Procter & Gamble, 6:10-cv-01470, (D.S.C.) (filed June 7, 2010); (8) Tatum v. Procter & Gamble, No. 2:10-cv-003223 (D.N.J.) (filed June 23, 2010); (9) Tepper v. Procter & Gamble, No. 1:10-cv-00420 (S.D. Ohio) (filed June 25, 2010); (10) Rosenbaum v. Procter & Gamble, No. 1:10-cv-00563 (S.D. Ohio) (filed August 20, 2010); (11) Lawson v. Procter & Gamble, 1:10-cv-00741 (S.D. Ohio) (filed Oct. 22, 2010); and (12) Nunn v. Procter & Gamble, 1:10-cv-00795 (S.D. Ohio) (filed Nov. 12, 2010).

[5] Settlement Agreement and Release ("Settlement Agreement") is attached as Exhibit 2.  Capitalized terms in this Memorandum have the same meaning as defined terms in the Settlement Agreement.

1:10-cv-00301. June 16, 2010 Order on Plaintiffs' Motion For Consolidation and Appointment as Interim Lead Counsel [Doc. No. 15]. Keller Rohrback L.L.P. has been appointed to act as Interim Lead Counsel and has been authorized by the Court to, among other things, conduct settlement discussions with Procter & Gamble and for "[a]ll other matters concerning the prosecution or resolution of the consumer protection cases." Id. at 3.

On August 23, 2010, Plaintiffs filed the Consolidated Class Action Complaint ("Consolidated Complaint") [Doc. No. 25], asserting a variety of claims, all of which relate to the manufacturing, marketing, distribution, promotion and sale of Pampers with Dry Max Diapers by Procter & Gamble. Consolidated Complaint, ¶¶ 53-142. On October 20, 2010, Procter & Gamble filed a Motion to Strike Class Allegations ("Motion to Strike") [Doc. No. 39] and a Motion to Dismiss the Consolidated Class Action Complaint ("Motion to Dismiss") [Doc. No. 40] seeking to strike the class action allegations and the dismissal of all claims asserted in the Consolidated Complaint. At the request of the Parties, the Court extended deadlines related to discovery and the pending Motions in order to allow Plaintiffs and Procter & Gamble to mediate and attempt to resolve the Action. November 19, 2010 Order Granting Joint Motion to Amend Calendar Order and Adjust Deadlines ("Order Amending Calendar") [Doc. No. 50].

Plaintiffs and Procter & Gamble participated in numerous in-person and telephonic mediation sessions. The Parties retained and were assisted by the Honorable Layn Phillips, former Judge from the United States District Court for the Western District of Oklahoma and current head of the Irell & Manella Alternative Dispute Resolution Center. May 24, 2011 Declaration of Hon. Layn Phillips, ("Phillips Decl.") ¶ 3 (attached as Exhibit 3). Judge Phillips presided over in-person mediation sessions between the Parties on February 7 and 8, 2011 and, after the first mediation sessions, continued to communicate with Plaintiffs and

Procter & Gamble regarding their settlement positions to attempt to mediate a settlement between the Parties. Id. ¶ 4. After attending and participating in multiple face-to-face and telephonic mediation sessions, Plaintiffs and Procter & Gamble eventually reached the Settlement and these discussions ultimately resulted in the Settlement Agreement. Id. ¶¶ 5-9.[6]

B.     Overview of the Settlement Agreement

Pursuant to Fed. R. Civ. P. 23(b)(2), the Settlement Agreement contemplates the conditional certification, for settlement purposes only, of the following Settlement Class:

> All persons in the United States and its possessions and territories, who purchased or acquired (including by gift) Pampers brand diapers containing "Dry Max Technology" from August 2008 through Final Judgment.

Settlement Agreement at § III.[7] Because the Settlement Class is being certified under Fed. R. Civ. P. 23(b)(2), Settlement Class Members shall not be permitted to opt-out of the Settlement Class. Id.

The primary benefit of the settlement to the Settlement Class is the implementation of a comprehensive program of Injunctive Relief. Id. § V. Specifically, Procter & Gamble agreed to modify the Pampers Swaddlers and Cruisers label as a rolling effort to be completed within twenty-four (24) months of the Effective Date, to read as follows:

---

[6] Prior to the first scheduled mediation session, Plaintiffs and Procter & Gamble submitted confidential mediation statements supporting their respective positions. Phillips Decl., ¶ 4. Judge Phillips confirms that the discussions during the mediation sessions were vigorous on both sides and that the Settlement reached in this matter was the result of arm's length negotiations by both Parties. Id. ¶ 10. Judge Phillips also states that, based on his extensive discussions with Plaintiffs and Procter & Gamble and information made available to him during the mediation process, the Settlement was negotiated in good faith and the Settlement is fair and reasonable. Id. ¶ 11.

[7] "All federal judges to whom this case is assigned and members of their families within the first degree of consanguinity, and officers and directors of Procter & Gamble, are excluded from the class definition." Settlement Agreement at § III.

> *For more information on common diapering questions such as choosing the right Pampers product for your baby, preventing diaper leaks, diaper rash, and potty training, please consult Pampers.com or call 1-800-Pampers.*

<u>Id.</u>  The above statement shall remain on such packages for a minimum of twenty-four (24) months after the date placed on the Pampers Swaddlers and Cruisers label.  <u>Id.</u>[8]  Within thirty (30) days of the Effective Date, Procter & Gamble also agreed to post the following additional information on the Pampers website, which shall remain there for a minimum of twenty-four (24) months after the Effective Date:

> *"Diaper rash is usually easily treated and improves within a few days after starting home treatment.  If your baby's skin doesn't improve after a few days of home treatment with over-the-counter ointment and more frequent diaper changes, then talk to your doctor.*
>
> *Sometimes, diaper rash leads to secondary infections that may require prescription medications.  Have your child examined if the rash is severe or the rash worsens despite home treatment.  See your child's doctor if the rash occurs along with any of the following:  (1) fever; (2) blisters or boils; (3) a rash that extends beyond the diaper area; (4) pus or weeping discharge.*
>
> *Useful links:  http://www.mayoclinic.com/health/diaper-rash/DS00069 and http://www.patiented.aap.org/ content.aspx?aid=5297"*

<u>Id.</u>[9]

Procter & Gamble also agreed to, as soon as practicable and within a reasonable time after the Effective Date, produce and fund a pediatric resident training program at leading

---

[8] This label change does not otherwise prevent Procter & Gamble from changing the labeling on its Pampers Swaddlers and Cruisers product, or otherwise taking any steps that may affect the marketing of Pampers Swaddlers and Cruisers as it sees fit.  <u>Id.</u>

[9] Procter & Gamble may modify the links, if the referenced links become unavailable. <u>Id.</u>

children's health centers in the area of skin health, e.g., programs for medical schools and educational material, in the amount of $150,000/year for two (2) years. Id. The program will give pediatric residents (the first line in rash cases) additional training and information about skin health and the treatment of diaper rash. Id. Procter & Gamble also agreed to, as soon as practicable and within a reasonable time after the Effective Date, sponsor a program with the American Academy of Pediatrics in the area of skin health in the amount of $50,000/year for two (2) years. Id.[10]

Finally, Procter & Gamble agreed that, for twelve (12) months after the Effective Date, it would reinstate its money-back guarantee program for consumers who purchased Pampers Swaddlers and Cruisers diapers. Id. The terms of the program, including requirements for proof of purchase, shall be consistent with those that existed in the prior program. Id.

In exchange for the above benefits, Settlement Class Members have agreed to release certain Claims and provide Procter & Gamble with a limited waiver of the class action procedural device in future actions "against Released Parties, where the lawsuit asserts Claims that were or could have been brought in State or Federal Court in this Action prior to the entry of this Final Approval Order and Judgment and are not otherwise released and discharged by the Settlement Agreement." Id. § VIII.[11] Notwithstanding the release of certain Claims, Settlement

---

[10] If any amount of funds remain after performing either program, then Procter &Gamble agreed to use the remaining amount of funds to fund the other remaining program, as well as another similar program. Id.

[11] Plaintiffs and Settlement Class Members recognize that as part of this Settlement Agreement, Procter & Gamble is agreeing to the certification of a Settlement Class, even though the parties disagree about whether this Action could be properly certified as a class action for trial purposes. Plaintiffs and Settlement Class Members further recognize that they have already availed themselves of the class action procedural device once in this Action, and they agree that they are not allowed to avail themselves of the class action procedural device a second time in the future against the Released Parties for Claims that were or could have been brought in this Action. Plaintiffs and all members of the Settlement Class waive and agree to be permanently barred and enjoined from seeking to use the class action procedural device in any future lawsuit against Released Parties, where the lawsuit asserts Claims that were or could
(footnote cont'd...)

Class Members preserve the right to bring individual lawsuits for personal injury or actual damages claimed to have been caused by or related to the Pampers with Dry Max, subject to the limited waiver of the class action procedural device.  Id.

In connection with the Settlement, Plaintiffs and Procter & Gamble have agreed upon a proposed Notice Plan that is reasonably calculated to reach Settlement Class Members. Id. § IV.  As part of the Notice Plan, Plaintiffs and Procter & Gamble will jointly issue a press release, publish a Summary Notice on Class Counsel's various websites, provide a hyperlink to the Summary Notice on Procter & Gamble's Pampers' website and provide the Summary Notice on Procter & Gamble's Pampers' Facebook webpage.  Id.  Plaintiffs and Procter & Gamble will also establish and maintain a Class Settlement Website, where information about the Settlement will be provided to Settlement Class Members.  Id.[12]

After negotiating the terms of the Settlement Agreement, Procter & Gamble agreed that it would not oppose or object to Class Counsel's application for all attorneys' fees, costs and expenses in an amount up to $2.73 million, in the aggregate.  Id. § VII.  The $2.73 million award includes all fees, costs and expenses for all Plaintiffs' and Settlement Class

_____

(...cont'd)

have been brought in State or Federal Court in this Action prior to the entry of this Final Approval Order and Judgment.  The waiver of the class action device is permissible.  Accord: In re Nationwide Fin. Servs. Litig., No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962, at *47 (S.D. Ohio Aug. 18, 2009) (Watson, J.) (court's order provided that "[a]ll persons or entities are permanently barred and enjoined from organizing settlement Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit based on, or relating to, the claims and causes of action, and/or the facts and circumstances relating thereto, in the Shareholder Actions and/or the Released Claims."); Fresco v. Auto Data Directions, Inc., No. 03-civ-61063, 2009 U.S. Dist. LEXIS 125233, at *12-13, *23-34 (S.D. Fla. Jan. 16, 2009) (holding that a release in the settlement agreement preventing collective action was permissible.).

[12] For example, the Class Settlement Website will post a copy of the Settlement Agreement, any preliminary approval order issued by the Court, a long-form notice, and other relevant information regarding court-approval.  Id. The Long Form Notice and Short Form Notice are attached as Exhibits A and B, respectively, to the Settlement Agreement.

Members' counsel (and their employees, consultants, experts, and other agents) who may have performed work in connection with this Action. Id. The agreement with respect to attorneys' fees, costs and expenses was negotiated after the substantive terms of the settlement, including the Injunctive Relief to the Settlement Class, had been negotiated and agreed upon during the mediation. Id.

In addition to the Injunctive Relief that will benefit Plaintiffs as Settlement Class Members, Procter & Gamble agreed not to oppose a Representative Plaintiff Award ("RPA") to Plaintiffs in the amount of $1,000 per affected child. Id. § VI. The RPA compensates Plaintiffs solely for the time and effort associated with their participation in this Action, and not for reimbursement or compensation for any damages, injury, reimbursement for medical bills or any such other payment or other relief sought in the Action. Id. Plaintiffs' and Procter & Gamble's negotiation of and agreement to the RPA did not occur until after the substantive terms of the settlement, including the Injunctive Relief to the Settlement Class, had been negotiated and agreed upon during the mediation. Id.

III.        THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Pursuant to Fed. R. Civ. P. 23(e)(1), prior to the dissemination of notice to Settlement Class Members and final approval of the Settlement, the Court must preliminarily approve the proposed Settlement as being "within the range of possible [final] approval." In re All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (internal citations and quotation marks omitted).[13] Additionally, as this Settlement is

---

[13] The Court must follow a three-step process to approve a class action settlement: (1) preliminary approval of the proposed settlement; (2) notice of the proposed settlement to the members of the class; and (3) after holding a hearing the Court must decide whether to give its final approval of the proposed settlement by deciding whether it is

(footnote cont'd…)

8

being proposed to the Court and prior to any certification of a class for settlement purposes, the Court must determine that the proposed Settlement Class satisfies the requirements set forth in Rule 23(a) and at least one of the subsections of Rule 23(b) and must conditionally certify the Settlement Class.[14] Id.

With respect to fairness, "[a]ll that is required at the preliminary hearing in order to progress to the fairness hearing is that the proposed settlement be within the range of possible approval.... "[15] Id. When determining whether a settlement is fair, adequate and reasonable and thus whether it should or could be approved the Court must consider the following factors: "(1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by class members; and (7) the public interest." Enter. Energy Corp. v. Columbia Gas Trans. Corp., 137 F.R.D. 240, 245 (S.D. Ohio 1991) (citations omitted).

The fairness factors, as applied to the Settlement Agreement, show that the proposed Settlement is within the range of possible approval. The first element, Plaintiffs'

---

(...cont'd)
fair, adequate, and reasonable to the class as a whole, and consistent with the public interest. In re Nationwide, 2009 U.S. Dist. LEXIS 126962, at *3.

[14] Manual for Complex Litigation § 21.632 (4th ed. 2005).

[15] The preliminary, pre-notification hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to the second step in the review process. . . ." Armstrong v. Bd. of Sch. Dirs., 616 F.2d 305, 314 (7th Cir. 1980) overruled on other grounds, Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998), aff'd sub nom. California Pub. Employees' Ret. Sys. v. Felzen, 525 U.S. 315, 119 S. Ct. 720, 142 L. Ed. 2d 766 (1999).

likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the Settlement, weighs in favor of Settlement. After investigating consumer complaints, some of which were made by Plaintiffs,[16] that were parallel to the claims and allegations in this Action, the United States Consumer Products Safety Commission ("CPSC") reviewed the Pampers with Dry Max products and could not identify (and has not yet identified) a specific cause linking Pampers with Dry Max to diaper rash. No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash." CPSC website. http://www.cpsc.gov/cpscpub /prerel/prhtml10/10331.html (last visited Sept. 10, 2010) (attached as Exhibit 4); "Health Canada, US Consumer Product Safety Commission Find No Link Between Pampers Dry Max Diapers and Severe Diaper Rash." Despite the lack of a conclusive cause of the health effects alleged, Plaintiffs continue to believe they would ultimately prevail on the merits.

Further, Procter & Gamble filed a Motion to Dismiss, seeking a dismissal of every claim in Plaintiffs' Consolidated Complaint, and a Motion to Strike, seeking to strike the class allegations in the Consolidated Complaint. Motion to Dismiss [Doc. No. 40]; Motion to Strike [Doc. No. 39]. The fact that Plaintiffs will oppose each of these Motions and would dispute each of Procter & Gamble's arguments does not shift the balance of this factor. In re Nationwide Fin. Servs. Litig., No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962, at *6 (S.D. Ohio Aug. 18, 2009) (Watson, J.) (citations omitted). While Plaintiffs would oppose the Motions, there is at least some risk that Plaintiffs' claims will not survive the pending Motions.[17]

---

[16] E.g., Consolidated Complaint, ¶¶ 11-14.

[17] The parties thus disagree about the likelihood that Plaintiffs' claims will survive the pending motions. Yet, the injunctive relief achieved in the settlement is certain and substantial. Procter & Gamble has agreed to provide specific information about skin irritation alleged to be associated with Dry Max Pampers and when a doctor should be consulted.

The second element, the complexity, expense and likely duration of litigation, weighs heavily in favor of settlement approval. This Action involves 59 Plaintiffs, 45 claims and the laws of all 50 states. Consolidated Complaint, pp. 10-52, 151, 165-720. In re Sunrise Sec. Litig., 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving the class action settlement in part because it "will alleviate…the extraordinary complexity, expense and likely duration of this litigation" and highlighting the difficulty created by the myriad of parties and issues involved). This case is complex and has already required the use of experts and the analysis of scientific and research data. The litigation has been pending for approximately one year, and it will continue to involve extensive discovery spanning hundreds of thousands of documents and involving the depositions of many experts on a variety of subjects as well as party representatives. The size of this case and the complexity of the issues will result in the expenditure of significant amounts of time and money.

The third element, the stage of the proceedings and the amount of discovery completed, also weighs in favor of settlement approval. Almost a year has elapsed since the filing of the first complaint. Several motions have been filed, including a discovery motion. E.g., September 24, 2010, Motion of Defendants The Procter & Gamble Company, Procter & Gamble Paper Products Company, and Procter & Gamble Distributing LLC to Phase and Sequence Discovery [Doc. No. 28]. Written discovery has occurred. Plaintiffs engaged in significant informal discovery prior to filing and during the course of litigation and have retained

numerous experts to assist them. Plaintiffs requested informal discovery prior to mediation, and served formal discovery requests during the mediation process.[18]

The fourth element, the judgment of experienced trial counsel, also weighs in favor of settlement approval. In considering a proposed settlement, the Court should give the judgment of experienced counsel significant weight.[19] Proposed Lead Class Counsel has extensive experience in class action litigation.[20] In addition, several different attorneys representing Plaintiffs in other cases that were consolidated participated in the mediation, and all of those attorneys have agreed to the proposed Settlement Agreement. Interim Lead Counsel Decl., ¶ 14. Moreover, counsel for Procter & Gamble has vast experience in class action litigation, particularly products liability class action cases.[21] Based upon considerable experience in handling cases such as the present case, counsel for Plaintiffs and Procter & Gamble are well-suited to determine the need and the value of settling litigation such as the present case.

---

[18] Levell v. Monsanto Research Corp., 191 F.R.D. 543, 556-57 (S.D. Ohio 2000) (Rice, C.J.), ("In the present case, the record contains little evidence of formal discovery having taken place. Based upon its familiarity with this litigation, however, and its limited direct involvement in the same, the Court is aware that class counsel retained experts and engaged in substantial informal discovery prior to the negotiation of the proposed Settlement Agreement...Counsel's reliance upon informal discovery does not preclude approval of the proposed Settlement.").

[19] Lake v. First Nationwide Bank, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class." (citation and internal quotation marks omitted)); Reed v. Rhodes, 869 F. Supp. 1274, 1281-82 (N.D. Ohio 1994) ("Based on the foregoing facts, the opinion of Plaintiffs' counsel that the proposed Settlement Agreement is fair, adequate, and reasonable is an important factor in the Court's consideration.").

[20] Joint Declaration of Lynn Lincoln Sarko and Gretchen Freeman Cappio in Support of Joint Motion for Certification of Settlement Class, Preliminary Approval of Settlement, Approval of Notice Plan and Notice Administrator and Appointment of Lead Class Counsel ("Interim Lead Counsel Decl.") (attached as Exhibit 5) at ¶ 11 (noting that Keller Rohrback has litigated hundreds of class action cases during the past 20 years, and has successfully recovered over $4 billion for the benefit of victims of price fixing conspiracies, securities fraud, breaches of fiduciary duties, and deceptive practices).

[21] May 27, 2011 Declaration of D. Jeffrey Ireland ("Ireland Decl."), ¶ 3 (attached as Exhibit 6).

The fifth element, the nature of the negotiations, also weighs in favor of settlement approval. Plaintiffs and Procter & Gamble have negotiated for several months.[22] Plaintiffs and Procter & Gamble participated in multiple sessions with an experienced mediator, both face-to-face and over the phone before reaching a settlement. Phillips Decl. ¶¶ 6-8. The negotiations were at arm's-length and were not a product of collusion.

The sixth element, the objections raised by class members, is irrelevant at the preliminary approval stage. Because notice has not yet been provided, there has not been an opportunity for objections.

The seventh and final element, the public interest, also weighs in favor of settlement. The nature of the relief provided in this Action will positively impact the public. The public will benefit from additional information and research regarding pediatric skin care issues.

As demonstrated above, evidence supports each of the fairness factors and, in turn, approval of the Settlement. The proposed Settlement satisfies the preliminary approval test as the Settlement falls "within the range of approval" and the Court should preliminarily approve this Settlement.

IV.        THE SETTLEMENT CLASS SHOULD BE CERTIFIED

When presented with a proposed settlement prior to a decision on class certification, the Court must also determine whether the proposed settlement class satisfies the

---

[22] Accord Brotherton v. Cleveland, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) (Spiegel, J.) (approving proposed settlement in part because "this settlement was reached as the result of significant and substantial arms-length negotiations," and because "[t]he negotiations did not reflect or suggest any collusion or illegality").

requirements for class certification under Rule 23. "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1313-1314 (S.D. Fla. 2005) (citation omitted). Pursuant to Fed. R. Civ. P. 23(a), a class can only be certified if there is numerosity, commonality, typicality, and adequacy of representation. Nationwide, 2009 U.S. Dist. LEXIS 126962 at *23-24. In addition, at least one of the requirements of Fed. R. Civ. P. 23(b) must be satisfied. Id. In the instant action, the Plaintiffs and Procter & Gamble seek to certify the class under section 23(b)(2). In certifying a class for settlement purposes only, the Court need not determine "whether the case, if tried, would present intractable management problems...for the proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997).[23] Accordingly, for purposes of settlement only, the requirements of Fed. R. Civ. P. 23(a) and (b)(2) have been met.

To satisfy the numerosity requirement of Rule 23(a)(1), "the class [must be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the numerosity requirement is easily met. In the Consolidated Complaint, Plaintiffs assert that there are millions of members of the class. Consolidated Complaint, ¶ 153.

To satisfy the commonality requirement of Rule 23(a)(2), there must be at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); Fabricant v. Sears Roebuck & Co., 202 F.R.D. 310, 313 (S.D. Fla. 2001); Ass'n for Disabled Ams., Inc. v. Amoco

---

[23] As demonstrated by the Motion to Dismiss, it is the position of Procter & Gamble that there remain substantial obstacles to certification of a litigation class under Fed. R. Civ. P. Rule 23 and, therefore, any certification of a preliminary or final Settlement Class is for settlement purposes only and shall not constitute, nor be construed as, an admission on the part of Procter & Gamble that this action, or any other proposed or certified class action, is appropriate for treatment as a class for any other purpose, including for trial class treatment. Plaintiffs believe that a class will be certified here if the litigation continues.

Oil Co., 211 F.R.D. 457, 463 (S.D. Fla. 2002).  With respect to the request for injunctive relief, whether Procter & Gamble knew or should have known of alleged diaper related health risks and whether Procter & Gamble provided any or sufficient notice of Dry Max related risks are common questions, among others detailed in the Consolidated Complaint, ¶ 156.

To satisfy the typicality requirement of Rule 23(a)(3), the claims of the class representatives must be "typical of the claims or defenses of the class."  "[T]ypicality requires a nexus between Plaintiffs' claims or defenses and the common questions of fact or law which unite the Settlement Class."  Fabricant, 202 F.R.D. at 313.  With respect to the request for injunctive relief, there is a nexus between the Plaintiffs' claims or defenses and the common question of fact or law (i.e., whether Procter & Gamble provided any notice of diaper related health risks) that unites this case.

To satisfy the adequacy requirement of Rule 23(a)(4), two components must be met:  (1) Plaintiffs (as class representatives) must have no interests antagonistic to the class, and (2) Class Counsel must possess the competence to undertake the litigation.  Fabricant, 202 F.R.D. at 314.  Plaintiffs are adequate to serve as class representatives.  With respect to the claims for injunctive relief, Plaintiffs have no interests that are adverse or antagonistic to the interests of the Settlement Class.  All Settlement Class Members will benefit equally from the Injunctive Relief provided by Settlement of this suit and each Settlement Class Member retains the right to pursue his or her individual damages claims.

Proposed Lead Class Counsel are also adequate.  Proposed Lead Class Counsel (current Interim Lead Counsel) have extensive experience handling complex class actions experience and have demonstrated a willingness to vigorously prosecute the class claims.

Interim Lead Counsel Decl. ¶ 11. Over the course of the Action, Proposed Lead Class Counsel has drafted a 211 page Consolidated Complaint; briefed and researched key issues for the Court's consideration; represented Plaintiffs in conferences with the Court; requested significant discovery; lead Plaintiffs' multi-months-long mediation efforts including the filing of numerous briefs; retained and consulted with numerous medical, scientific and marketing experts; briefed key issues; represented the interests of the Settlement Class in motion practice and in contested negotiations; and coordinated the efforts of Plaintiffs and Plaintiffs' Counsel.[24]

Under Rule 23(b)(2), a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Consolidated Complaint involves claims for injunctive relief[25] and involves allegations that Procter & Gamble acted or refused to act on grounds that apply generally to the class. Consolidated Complaint, ¶¶ 53-142; Prayer for Relief, ¶¶ A-C, G. All of Plaintiffs' claims stem from the same alleged actions and the injunctive relief claims predominate.

---

[24] The fact that this settlement does not provide for recovery of damages does not suggest a lack of vigor on the part of the class representatives or class counsel, because the rights of the class members to pursue individual damage claims has been preserved. Smith v. Ohio Dep't of Rehab. & Corr., No. 2:08-cv-15, 2010 U.S. Dist. LEXIS 81842, at *8 (S.D. Ohio Aug. 12, 2010) (Holschuh, J.) (noting that the parties had preserved the right for class members to pursue their own claims for damages in separate actions by including such protection in the proposed settlement); Fresco v. Auto. Directions, Inc., No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *13 (S.D. Fla. Jan. 16, 2009) (certifying a Rule 23(b)(2) settlement and noting that "the parties' settlement preserves any individual claims that class plaintiffs may have for actual damages, claims which might otherwise have precluded certification under Rule 23(b)(2)."). Plaintiffs' counsel has adequately represented the interests of the class.

V.        THE PROPOSED NOTICE PROGRAM IS SUFFICIENT AND SHOULD
          BE ADOPTED BY THIS COURT

The proposed notice is sufficient. Pursuant to Fed. R. Civ. P. 23(e)(1), Plaintiffs

and Procter & Gamble are required to provide notice of settlement. Settlement notice need only

apprise the prospective class members of the terms of the settlement "so that class members may

come to their own conclusions about whether the settlement serves their interests." UAW v.

Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir. 2007). Notice under 23(e)(1) does not have to

be as detailed as the notice associated with Rule 23(c)(2) (required in Rule 23(b)(3) class

actions.). Gottlieb v. Wiles, 11 F.3d 1004, 1013 (10th Cir. 1993). Moreover, under Rule 23(e)

individual notice is not required, nor must notice be the "best notice practicable." Publication

notice is widely used in 23(b)(2) class actions. Publication notice programs are particularly

appropriate where the defendant does not have a list of or cannot otherwise identify each class

member.[26]

The Notice Plan proposes the use of publication notice through the issuance of a

joint press release[27] and the use of targeted websites and a Class Action Website. The

Consolidated Complaint emphasizes the use of the internet as the primary means for making

claims that are allegedly false and misleading. Settlement Agreement, § IV. Garden City Group,

as the notice administrator, will aid in the preparation of the websites and notice postings and

will do so in a manner that increases the likelihood that the notices will reach Pampers

---

[26] In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (approving notice by publication in antitrust class action involving fine tableware where defendants could not identify complete list of possible class members); Dennis v. Kellogg Co., No. 09-CV-1786, 2010 U.S. Dist. LEXIS 116924, at *15-17 (S.D. Cal. Oct. 14, 2010) (approving publication notice in consumer protection case where defendant did not sell directly to customers and therefore could not produce list of all possible class members).

[27] The Parties will issue a press release and expect that the press release will be published by various news and media sources.

purchasers or users. Id.[28]  Courts have approved the use of such targeted notice programs. Kaplan v. Chertoff, No. 06-5304, 2008 U.S. Dist. LEXIS 5082, at *39-41 (E.D. Pa. Jan. 24, 2008) (Rule 23(b)(2) class action allowing a targeted notice program involving posting notices on certain websites and providing notice to the U.S. Customs and Immigration Service for dissemination to advocacy groups).  Accordingly, the Notice Plan is sufficient and should be adopted.

VI.　　　　LYNN LINCOLN SARKO AND GRETCHEN FREEMAN CAPPIO
　　　　　　SHOULD BE APPOINTED AS LEAD CLASS COUNSEL

　　　　Keller Rohrback attorneys have extensive experience handling class actions on behalf of consumers and employees.  See Interim Lead Counsel Decl. ¶¶ 7-10.  Keller Rohrback has litigated hundreds of class action cases during the past 20 years, and has successfully recovered over $4 billion for the benefit of victims of consumer fraud, price fixing conspiracies, securities fraud, breaches of fiduciary duties, and deceptive practices. Id. at ¶ 7.

　　　　In a recent class action case handled by Keller Rohrback involving violations of the Washington Consumer Protection Act (CPA), Chief Judge Robert S. Lasnik approved the plaintiffs' settlement award and stated: "[T]his is an example of how [a] class action works, and I was very pleased to see it come to this conclusion." Kavu, Inc. v. Omnipak Corp., No. 06-109-RSL (W.D. Wash. Jan. 24, 2008); Interim Lead Counsel Decl. ¶ 8.  Moreover, Judge John C. Coughenour found that Keller Rohrback has "substantial experience in consumer class action litigation." Id.; see also Hansen v. Ticket Track, Inc., 213 F.R.D. 412, 416 (W.D. Wash. 2003) (Pechman, J.) (the "firm is experienced in class action litigation and management"); Mortimore

---

[28] Background information about Garden City Group is attached as Exhibit 7.

v. FDIC, 197 F.R.D. 432, 437 (W.D. Wash. 2000) (Coughenour, J.) (the firm is "well qualified to represent the class in this case."); Getty v. Harmon, No. 98-0178, Sept. 20, 1999, (Dwyer, J.) ("Despite substantial obstacles to recovery, Keller Rohrback was willing to undertake the significant risks presented by this case. After a year and half of intensive litigation, including extensive discovery, motion practice and mediation, Class Counsel achieved real and substantial benefits for members of the Class.").

Keller Rohrback L.L.P. has special expertise in protecting children, and has represented families in several successful complex lawsuits, including cases regarding toy safety, such as In re Mattel, Inc., 588 F. Supp. 2d 1111 (C.D. Cal. 2008), the safety of baby bottles and In re: Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig., MDL No. 08-1967 (W.D. Mo.). In 1993, Keller Rohrback filed a class action lawsuit against the national fast-food chain Jack in the Box, which resulted in more than $13 million in payments to those affected by the E. Coli outbreak. Specifically working in the interest of children affected by the outbreak, Keller Rohrback served as co-lead counsel in the suit and helped to secure a sizable donation from Jack-in-the-Box, directly awarded to the Children's Hospital Foundation.

Lynn Sarko, Keller Rohrback L.L.P.'s Managing Partner since 1991, has prosecuted a variety of class actions involving high profile matters including the Exxon Valdez Oil Spill, the Microsoft civil antitrust case, the Vitamins price-fixing cases, the MDL Fen/Phen Diet Drug Litigation, as well as notable public service lawsuits such as Erickson v. Bartell Drug Co., establishing a woman's right to prescription contraceptive health coverage. He has also served as lead or co-lead counsel in several leading breach of fiduciary duty cases, including many of the most complex, including the Enron, WorldCom, HealthSouth, Merrill Lynch, Countrywide, and Global Crossing ERISA cases.

19

Gretchen Freeman Cappio joined Keller Rohrback L.L.P. in 1999.  Ms. Cappio has a diverse practice in the areas of consumer protection, ERISA, mutual funds, and employment litigation.  She represents plaintiffs in several cutting-edge complex cases, including In re Mattel, Inc., serves on the Plaintiffs' Steering Committee in In re: Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litig., MDL No. 1967 (W.D. Mo.), consumer litigation in which plaintiffs assert claims for breach of the implied warranty of merchantability, fraudulent and negligent omissions of material fact, and unjust enrichment against certain plastic bottle manufacturers.  Ms. Cappio also represented plaintiffs in Erickson v. Bartell Drug Co., 141 F. Supp. 2d 1266 (W.D. Wash. 2001), in which the Honorable Robert S. Lasnik ruled that an employer violated Title VII of the Civil Rights Act when its coverage failed to cover prescription contraceptives on an equal basis as to other prescription drugs.  Ms. Cappio has been named a "Rising Star" four times by Washington Law and Politics in its annual review of the state's legal professionals.

VII.        CONCLUSION

For the foregoing reasons the proposed Settlement Class should be certified for settlement purposes under Fed. R. Civ. P. 23(b)(2), the settlement should be preliminarily approved, the proposed Notice Plan should be adopted and the proposed notice administrator appointed, and Lynn Lincoln Sarko and Gretchen Freeman Cappio of Keller Rohrback LLP should be appointed as Lead Class Counsel.  Finally, the Court should set a date for the final fairness hearing.

Respectfully submitted,

/s/ Gary D. Greenwald (per authorization)
Gary D. Greenwald
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

Trial Attorney for Plaintiffs


/s/ Lynn Lincoln Sarko (per authorization)
Lynn Lincoln Sarko
Michael D. Woerner
Gretchen Freeman Cappio
Gretchen S. Obrist
Harry Williams IV
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY  10003

Mark D. Samson
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

Interim Lead Counsel

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland  (0010443)
Brian D. Wright (0075359)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3749
Email:  djireland@ficlaw.com

Attorneys for Defendants
The Procter & Gamble Company,
The Procter & Gamble Paper Products
Company and The Procter & Gamble
Distributing LLC

## CERTIFICATE OF SERVICE

I certify that on this 27th day of May, 2011, I electronically filed the foregoing

Joint Motion for Certification of Settlement Class, Preliminary Approval of Settlement,

Approval of Notice of Plan and Notice Administrator and Appointment of Settlement Lead

Counsel with the Clerk of Courts using the CM/ECF system, which will send notification of such

filing to CM/ECF participants.

> Gary D. Greenwald
> Mark D. Samson
> KELLER ROHRBACK P.L.C.
> 3101 North Central Avenue, Suite 1400
> Phoenix, AZ  85012
>
> Lynn Lincoln Sarko
> Michael D. Woerner
> Gretchen Freeman Cappio
> Gretchen S. Obrist
> Harry Williams IV
> KELLER ROHRBACK L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA  98101
>
> David S. Preminger
> KELLER ROHRBACK L.L.P.
> 770 Broadway, 2nd Floor
> New York, NY  10003
>
> Lead Class Counsel
>
> Craig W. Hillwig
> Christina Donato Saler
> Joseph C. Kohn
> George S. Croner
> KOHN, SWIFT & GRAF, P.C.
> One South Broad Street, Suite 2100
> Philadelphia, PA  19107

Thomas M. Mullaney
LAW OFFICES OF THOMAS M. MULLANEY
275 Madison Avenue, 37th Floor
New York, NY 10016

Attorneys for Plaintiffs


and I hereby certify that I have mailed by first class U.S. mail, postage prepaid, the document to the non-CM/ECF participants:

Donald S. Varian, Jr.
195 South Main Street, Suite 400
Akron, OH 44308

Todd S. Collins
Neil F. Mara
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365

Gerard V. Mantese
David Honigman
MANTESE, HONIGMAN, ROSSMAN AND WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, MI 48083

Daniel E. Gustafson
Karla M. Gluek
Amanda M. Williams
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402

Richard J. Arsenault
Laura Singletary
Mary Nell Bennett
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
PO Box 1190
Alexandria, LA 71309-1190

Nicholas J. Drakulich
THE DRAKULICH FIRM
A Professional Law Corporation
2727 Camino Del Rio South, Suite 322
San Diego, CA 92108

Joseph F. Devereux, Jr.
Joseph F. Devereux III
DEVEREUX MURPHY LLC
The Plaza at Clayton
190 Carondelet, Suite 1100
St. Louis, MO 63105

Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601

David S. Corwin (VIA U.S. MAIL)
Amanda Sher
SHER CORWIN, LLC
190 Carondelet Plaza, Suite 1100
Clayton, MO 63105

Attorneys for Plaintiffs

Charles S. Zimmerman
Timothy J. Becker
J. Gordon Rudd, Jr.
Elizabeth A. Peterson
ZIMMERMAN REED, P.L.L.P.
80 South Eighth Street
1100 IDS Center
Minneapolis, MN 55402

Attorneys for Plaintiffs

Stuart E. Scott
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114

Attorneys for Plaintiffs

J. Edward Bell, III
J. Ryan Heiskell
BELL LEGAL GROUP, LLC
232 King Street
Post Office Box 2590
Georgetown, SC 29442

Attorneys for Plaintiffs


Charles J. Hodge
T. Ryan Langley
HODGE AND LANGLEY LAW FIRM, PC
P.O. Box 2765
Spartanburg, SC 29304

Attorneys for Plaintiffs


Hassan A. Zavareei
Jonathan Tycko
Jeffrey Kaliel
TYCKO & ZAVAREEI LLP
2000 L Street, NW, Suite 808
Washington, DC 20036

Attorneys for Plaintiffs


Mila F. Bartos
Karen J. Marcus
FINKELSTEIN THOMPSON LLP
1050 – 30th Street, NW
Washington, DC 20007

Attorneys for Plaintiffs


James E. Cecchi
Donald Ecklund
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ 07068

Attorneys for Plaintiffs

                                    /s/ D. Jeffrey Ireland
                                    D. Jeffrey Ireland

489426.1