## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into as of May 27, 2011, among and between Plaintiffs, for themselves and as Class Representatives, on behalf of the putative Settlement Class and The Procter & Gamble Company, Procter & Gamble Paper Products Company, and Procter & Gamble Distributing LLC (collectively "Procter & Gamble"), and is submitted to the Court for approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## RECITALS

WHEREAS, Procter & Gamble manufactures, markets, distributes, promotes and/or sells Pampers with Dry Max diapers;

WHEREAS, on and after May 11, 2010, Plaintiffs brought several actions that remain pending, asserting a variety of common law and statutory claims for unfair and deceptive trade practices, consumer protection, breach of warranty, unjust enrichment and product liability against Procter & Gamble related to the manufacturing, marketing, distribution, promotion and/or sale of Pampers with Dry Max diapers;

WHEREAS, on and after June 16, 2010, the Court consolidated all actions pending in the Southern District of Ohio and any other action arising out of the same operative facts now pending or hereafter filed in, removed to or transferred to the Southern District of Ohio pursuant to Federal Rule of Civil Procedure 42(a);

WHEREAS, also on June 16, 2010, the Court appointed Keller Rohrback L.L.P. Interim Lead Counsel for Plaintiffs for the Consolidated Actions, and assigned Keller Rohrback

**Exhibit 2**
**Joint Motion for Cert.**

to assume litigation responsibilities including "[c]onducting settlement negotiations with Defendants; [a]nd all other matters concerning the prosecution or resolution of the cases."

WHEREAS, twelve (12) actions have been filed by Plaintiffs, and transferred to and/or consolidated in the Action;

WHEREAS, on August 23, 2010, Plaintiffs filed a Consolidated Complaint against Procter & Gamble;

WHEREAS, Procter & Gamble has denied and continues to deny each and every allegation asserted by Plaintiffs in the Action, and it has denied that this Action satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23;

WHEREAS, on September 2, 2010, the CPSC announced that they reviewed information regarding Pampers with Dry Max diapers and have not yet identified any specific cause linking Pampers with Dry Max diapers to diaper rash;

WHEREAS, on October 20, 2010, Procter & Gamble filed a Motion to Dismiss, seeking the dismissal of the Consolidated Complaint in its entirety pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6);

WHEREAS, on October 20, 2010, Procter & Gamble filed a Motion to Strike, seeking to strike the class allegations in the Consolidated Complaint pursuant to Federal Rule of Civil Procedure 12(f), 23(c)(1)(A) and 23(d)(1)(D);

WHEREAS, on November 19, 2010, the Court extended deadlines related to discovery issues and for Plaintiffs to respond to the Motion to Dismiss and Motion to Strike to allow the Parties to participate in mediation to attempt to resolve the Action;

WHEREAS, after attending and participating in numerous face-to-face and telephonic mediation sessions conducted by Layn Phillips, a former federal judge who is an experienced, independent mediator, the Parties reached this Settlement Agreement;

WHEREAS, the Parties recognize that the outcome of this Action is uncertain, and that a final resolution through the litigation process would likely require several years of protracted litigation and appeals; substantial risk and expense; the distraction and diversion of their personnel and resources; and the expense of any possible future litigation raising similar or duplicative claims, and consequently, the Parties have agreed to resolve this Action as a settlement class action according to the terms of this Settlement Agreement; and

WHEREAS, this Settlement Agreement is a product of sustained, arm's length settlement negotiations and the Parties believe that this Settlement Agreement is fair, reasonable, and adequate because: (1) it provides for certification of a Settlement Class, even though the Court has not yet determined whether this action could properly be brought as a class action, and the parties disagree about whether class certification would be proper under Federal Rule of Civil Procedure 23; (2) it provides substantial Injunctive Relief to the Settlement Class in exchange for Settlement Class Members' release of certain Claims and their limited waiver of the class action procedural device in certain future actions; and (3) it preserves the right of Settlement Class Members to bring individual lawsuits as a result of personal injury or actual damage they claim to have sustained as a result of the use of Pampers with Dry Max diapers.

3

NOW, THEREFORE, without (a) any admission or concession on the part of Plaintiffs of the lack of merit of the Action whatsoever, or (b) any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by Procter & Gamble, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs, the Settlement Class, and Procter & Gamble, that the Action and all Claims of the Settlement Class be settled, compromised, and dismissed on the merits and with prejudice as to Procter & Gamble, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this Settlement Agreement.

## I. DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meanings set forth below:

A. "Action" means all actions consolidated and styled In Re Dry Max Pampers Litigation, Case No. 1:10-cv-00301, currently pending in the Southern District of Ohio.

B. "CAFA Notice" means the notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in **Section IV(F)**.

C. "Claim" and "Claims" mean all claims, demands, actions, suits, causes of action, allegations of wrongdoing and liabilities asserted by Plaintiffs, individually and as Class Representatives, in this Action.

D. "Class Representatives" mean Plaintiffs, as individual claimants who seek to represent the Settlement Class for purposes of this Settlement Agreement.

E. "Class Settlement Website" means the Internet website to be established by the Notice Administrator, as part of the Notice Plan as set forth in **Section IV(C)**.

F. "Class Counsel" means the attorneys and law firms listed on the signature pages of this Settlement Agreement representing Plaintiffs and the Settlement Class Members.

G. "Consolidated Complaint" means the Consolidated Class Action Complaint filed by Plaintiffs on August 23, 2010.

H. "Court" or "Southern District of Ohio" means the United States District Court for the Southern District of Ohio, Western Division (Cincinnati) where this Action is pending.

I. "CPSC" means the United States Consumer Product Safety Commission.

J. "Effective Date" means the date on which all appellate rights with respect to the Final Approval Order and Judgment have expired or have been

5

exhausted in such a manner as to affirm the Final Approval Order and Judgment, and when no further appeals are possible, including review by the United States Supreme Court.

K.    "Final Approval Hearing Date" or "Final Judgment" shall mean the hearing date set by the Court for the final approval of the Settlement Agreement.

L.    "Final Approval Order and Judgment" shall have the meaning assigned in **Section IX** of the Settlement Agreement.

M.    "Injunctive Relief" means the injunctive relief that Procter & Gamble has agreed to in **Section V**.

N.    "Lead Class Counsel" means Lynn Lincoln Sarko and Gretchen Freeman Cappio of Keller Rohrback L.L.P.

O.    "Long-Form Notice" means the longer form of notice to the Settlement Class under the Notice Plan, as further described in **Section IV(D).**

P.    "Motion to Dismiss" means the Motion of Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC to Dismiss the Consolidated Class Action Complaint filed on October 20, 2010.

Q.    "Motion to Strike" means the Motion of Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and

The Procter & Gamble Distributing LLC to Strike Plaintiffs' Class Allegations filed on October 20, 2010.

R.     "Notice" means the forms of notice, attached as **Exhibits A and B**, or such other form as may be approved by the Court, as applicable, which informs the Settlement Class Members of: (i) the certification of the Actions for settlement purposes; (ii) the dates and locations of the Final Approval Hearing Date; and (iii) the elements of the Settlement Agreement.

S.     "Notice Administrator" means Garden City Group.

T.     "Notice Plan" means the plan for providing Notice of this settlement to the Settlement Class Members, as set forth in **Section IV(A)**.

U.     "Objection Date" means the date by which Settlement Class Members must file any written objection or opposition to the Settlement Agreement or any part or provision thereof in the Court, as set forth in **Section IV(H)**.

V.     "Pampers with Dry Max" means diaper products manufactured, marketed, distributed, promoted and/or sold by Procter & Gamble, sold from August 2008 through Final Judgment, containing "Dry Max Technology," whether or not so indicated on the Pampers packaging. "Dry Max Technology" means an absorbent core for use in a disposable absorbent article, *e.g.*, diapers and pants, the core containing a composite of adhesives and superabsorbent gelling material, but not airfelt (paper pulp).

W.     "Pampers Swaddlers and Cruisers" means diaper products manufactured, marketed, distributed, promoted and/or sold by Procter & Gamble bearing the trade name Swaddlers or Cruisers.

X.     "Pampers Website" means the Procter & Gamble owned website for marketing the Pampers Swaddlers and Cruisers products in the United States (http://www.pampers.com/en_US/home/).

Y.     "Parties" means Plaintiffs and Procter & Gamble.

Z.     "Person" or "Persons" means all persons and entities (including, without limitation, natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, associations, partnerships, limited liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs and assigns).

AA.    "Plaintiffs" mean all of the named Plaintiffs in the Action, including but not limited to Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Brandy Bishop, Nicholas Bishop, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Holley Codner, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Frank Lawson, Amy Lock, Mariah MaLoon, Nicole Majchrzak, Morgan Maue, Robin York, Jeni

McAllister, Maria McMahon, Eugenia Nunn, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Erin Ruopp, Lisa Saacks, Diane Samelson, Elvira Scarbro, Keith Scarbro, Adona Schank, Asia Southard, Suzy Sullivan, Felicia Robertson Tatum, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe, and Amy Young.

BB.   "Preliminary Approval" and "Preliminary Approval Order" mean the Court's Order Certifying a Settlement Class, Preliminary Approval of Proposed Settlement, Approving and Directing Notice Plan, Appointing Notice Administrator, and Appointing Class Counsel and Lead Class Counsel, in substantially the same form as **Exhibit C.**

CC.   "Procter & Gamble" means Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC.

DD.   "Released Claims" mean those Claims that the Settlement Class Members are releasing, as set forth in **Section VIII.**

EE.   "Released Parties" mean Procter & Gamble, as well as their respective predecessors, successors, and assigns, the present and former, direct and indirect, parents, subsidiaries, divisions, corporate affiliates, or associates of any of the above; and the present and former members, principals, partners, officers, directors, trustees, control persons, employees, agents,

attorneys, shareholders, advisors, insurers and representatives of the above, and any and all entities and individuals that are alleged to have handled, distributed, purchased for resale and/or redistribution, supplied, manufactured and/or sold or offered for sale Pampers with Dry Max.

FF.   "Releasing Parties" shall include Plaintiffs and all Settlement Class Members, and each of their respective heirs, executors, representatives, agents, legal representatives, assigns, and successors.

GG.   "Representative Plaintiff Award" or "RPA" means the one-time payment to each of the Plaintiffs, as set forth in **Section VI**.

HH.   "Settlement Agreement" means this Settlement Agreement and Release, including its Exhibits.

II.   "Settlement Class" or "Settlement Class Members" means the Class as defined in **Section III**.

JJ.   "Summary Notice" means the shorter form of the notice to the Settlement Class under the Notice Plan, as further described in **Section IV(E)**.

## II.      **MOTION FOR PRELIMINARY APPROVAL**

As soon as reasonably practicable after the signing of this Settlement Agreement, the Parties shall file with the Court a Joint Motion for Certification of Settlement Class, Preliminary Approval of Settlement, Approval of Notice of Plan and Notice Administrator and Appointment of Settlement Lead Counsel that seeks entry of an order substantially similar to the proposed order attached hereto as **Exhibit C**, which would, for settlement purposes only:

1.     certify a tentative settlement class under Federal Rule of Civil Procedure 23(b)(2) composed of the Settlement Class Members;

2.     preliminarily approve this Settlement Agreement;

3.     approve the proposed Notice Plan and CAFA notice in forms substantially similar to those attached hereto as **Exhibits A, B and D**;

4.     appoint the Notice Administrator; and

5.     appoint Lead Class Counsel.

III.     **CERTIFICATION OF SETTLEMENT CLASS**

For purposes of settlement only, and upon the express terms and conditions set forth in this Settlement Agreement, Plaintiffs and Procter & Gamble agree to seek certification of a mandatory, nationwide Settlement Class in the Action pursuant to Federal Rule of Civil Procedure 23(b)(2) as follows:

> All persons in the United States and its possessions and territories, who purchased or acquired (including by gift) Pampers brand diapers containing "Dry Max Technology" from August 2008 through Final Judgment.

> All federal judges to whom this case is assigned and members of their families within the first degree of consanguinity, and officers and directors of Procter & Gamble, are excluded from the class definition.

### A.   No Right to Opt Out

Because the Settlement Class is being certified as a mandatory class under Federal Rule of Civil Procedure 23(b)(2), Settlement Class Members shall not be permitted to opt out of the Settlement Class.

### B.   Class Certified for Settlement Purposes Only

The parties disagree about whether class certification would be proper under Federal Rule of Civil Procedure 23. Procter & Gamble contends that this Action could not be certified as a class action under Federal Rule of Civil Procedure 23(b)(3). Procter & Gamble's agreement to seek a Settlement Class under Federal Rule of Civil Procedure 23(b)(2) is based on the belief that any monetary damages sought by Plaintiffs (other than individual claims as a result of personal injury or actual damage), which are not Released Claims pursuant to **Section VIII(D)**) are properly viewed as merely incidental to the Injunctive Relief.

Nothing in this Settlement Agreement shall be construed as an admission by Procter & Gamble that this Action or any similar case is amenable to class certification for trial purposes. Furthermore, nothing in this Settlement Agreement shall prevent Procter & Gamble or Plaintiffs from opposing or supporting class certification or seeking de-certification of the conditionally-certified Settlement Class if final approval of this Settlement Agreement is not obtained, or not upheld on appeal, including review by the United States Supreme Court, for any reason.

## IV.   SETTLEMENT CLASS NOTICE AND OBJECTION DATE

As this Settlement Agreement provides for a certification of a class comprised of Settlement Class Members under Federal Rule of Civil Procedure 23(b)(2), individual notice is

not required and will not be sent by the Parties.  Plaintiffs, Procter & Gamble and the Notice Administrator have developed a Notice Plan, as detailed below.  The Parties will recommend to the Court this Notice Plan, which will be administered by an experienced and highly-qualified Notice Administrator.

      **A.**    <u>**Notice Plan**</u>

      The Notice Plan will employ the following different methods for circulating information about the settlement to Settlement Class Members:

1. A press release agreed to by the Parties to be issued within 15 days of the filing of the Joint Motion for Certification of Settlement Class, Preliminary Approval of Settlement, Approval of Notice of Plan and Notice Administrator and Appointment of Settlement Lead Counsel;

2. An active hyperlink to a copy of the Summary Notice and/or Summary Notice will be published on Plaintiffs' counsel websites within 15 days of the Court's Order granting Preliminary Approval;

3. An active hyperlink to a copy of the Summary Notice will be published within 15 days of Preliminary Approval on the front page of the Pampers Website;

4. Summary Notice will be published within 15 days of Preliminary Approval on the "Info" tab of the  Facebook.com/Pampers website http://www.facebook.com/Pampers/info#!/pampers?sk=info);

5.      A Class Settlement Website will be established within 15 days of Preliminary Approval that contains the Preliminary Approval Order, the Long-Form Notice, the Settlement Agreement, and other relevant information regarding the Court-approval process;

6.      Until the Notice Administrator terminates the Class Settlement Website in accordance with Section IV(C) below, (i) an active hyperlink to the Summary Notice shall be maintained on the front page of the Pampers Website, and (ii) the Summary Notice shall be published on the "Info" tab of the Facebook.com/Pampers website http://www.facebook.com/ Pampers/info#!/pampersZsk=info); and

7.      The Long-Form Notice and Summary Notice will be made available in English and Spanish on the Class Settlement Website.

As soon as reasonably practicable after Preliminary Approval, Procter & Gamble and the Notice Administrator shall implement the Notice Plan.

**B.      <u>Court Appointment and Retention of Notice Administrator</u>**

At the Preliminary Approval hearing, the Parties will propose that the Court appoint Garden City Group as Notice Administrator.  The Notice Administrator will facilitate the notice process by assisting the Parties in the implementation of the Notice Plan, as well as CAFA Notice.

14

### C.   Class Settlement Website

The Notice Administrator will create and maintain the Class Settlement Website, to be activated within 15 days of Preliminary Approval.  The Notice Administrator's responsibilities will also include securing an appropriate URL, such as www.diaperclassactionsettlement.com.

The Class Settlement Website will post the settlement documents and case-related documents such as the Settlement Agreement, the Long-Form Notice, and the Preliminary Approval Order.  In addition, the Class Settlement Website will include procedural information regarding the status of the Court-approval process, such as an announcement of the Final Approval Hearing Date, when the Final Approval Order and Judgment has been entered, and when the Effective Date has been reached.

The Class Settlement Website will terminate (be removed from the internet) and no longer be maintained by the Notice Administrator after (i) six (6) months from the date of its creation (i.e., the launch of the Class Settlement Website), or (ii) thirty (30) days after either (a) the Effective Date of the Settlement or (b) the date on which the Settlement Agreement is terminated or otherwise not approved by a court, whichever is later.  The Notice Administrator will then transfer ownership of the URL to Procter & Gamble.

### D.   Long-Form Notice

The Parties have agreed that they will jointly recommend the Long-Form Notice, substantially in the form attached as **Exhibit A**, to the Court for approval.  The Long-Form Notice is designed to provide comprehensive and reasonable notice of the terms of the

Settlement Agreement. The Long-Form Notice shall be posted on the Class Settlement Website as provided by **Section IV(C)** above.

### E. Summary Notice and Publication Program

The Parties have agreed that they will jointly recommend the Summary Notice, substantially in the form attached as **Exhibit B**, to the Court for approval. The Summary Notice is designed to provide the Settlement Class Members information about the class-action settlement and direct them to the Long-Form Notice posted on the Class Settlement Website. As stated in Section IV(A) above, the Summary Notice (or an active hyperlink to the Summary Notice) will be placed on (i) Plaintiffs' counsel websites; (ii) the Pampers Website, and (iii) the "Info" tab of the Facebook.com/Pampers website (http://www.facebook.com /Pampers/info#!/pampers?sk=info). The Summary Notice (or the hyperlink) will be removed from the Pampers Website and Facebook Website after (i) six (6) months from the date of its creation (i.e., placement on the websites) or (ii) thirty (30) days after either (a) the Effective Date of the Settlement or (b) the date on which the Settlement Agreement is terminated or otherwise not approved by a court, whichever is later.

### F. CAFA Notice

The Parties agree that the Notice Administrator shall serve notice of the settlement (via Federal Express) that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than 10 days after the filing of this Settlement Agreement with the Court. A proposed form of CAFA Notice, without the accompanying attachments, is attached as **Exhibit D**.

### G. Costs

The cost of the above Notice Plan (with the exception of notice provided on Plaintiffs' counsel websites) shall be paid by Procter & Gamble. If the Court requires methods of notice in addition to that defined above, then Procter & Gamble shall bear the cost of such additional notice. Class Counsel will not advocate for content or methods of notice beyond what has been agreed upon above.

### H. Procedures for Objecting to the Settlement

Any objection to this Settlement Agreement, including any of its terms or provisions, must be served on Lead Class Counsel and Counsel for Procter & Gamble (as identified in **Section XI(D)** below), the Notice Administrator, and filed with the Court in writing and postmarked no later than thirty (30) days prior to the Final Approval Hearing Date.

## V. INJUNCTIVE RELIEF

### A. Commencement of Injunctive Relief

The settlement shall become final on the Effective Date, and Procter & Gamble shall begin to implement the Injunctive Relief within thirty (30) days of the Effective Date.

### B. Agreed Injunctive Relief

Subject to the terms and conditions of this Settlement Agreement, Plaintiffs and Procter & Gamble have agreed to move jointly for the Court to enter, as part of the Final Approval Order and Judgment, an injunction applicable to Procter & Gamble. The injunctive relief provision of the Final Approval Order and Judgment shall enjoin Procter & Gamble with the following language:

1. **Label Change**

    a.    Procter & Gamble shall modify the Pampers Swaddlers and Cruisers label as a rolling effort to be completed within twenty-four (24) months of the Effective Date, to read as follows: *"For more information on common diapering questions such as choosing the right Pampers product for your baby, preventing diaper leaks, diaper rash, and potty training, please consult Pampers.com or call 1-800-Pampers."* The above statement shall remain on such packages for a minimum of twenty-four (24) months after the date it is first placed on the Pampers Swaddlers and Cruisers label.

    b.    This required label change shall not otherwise prevent Procter & Gamble from changing the labeling on its Pampers Swaddlers and Cruisers product, or otherwise taking any steps that may affect the marketing of Pampers Swaddlers and Cruisers as it sees fit.

2. **Consumer Education**

    a.    Within thirty (30) days of the Effective Date, Procter & Gamble shall post the following additional information on the Pampers website, which shall remain there for a minimum of twenty-four (24) months after the Effective Date:

*"Diaper rash is usually easily treated and improves within a few days after starting home treatment.  If your baby's skin doesn't improve after a few days of home treatment with over-the-counter ointment and more frequent diaper changes, then talk to your doctor.*

*Sometimes, diaper rash leads to secondary infections that may require prescription medications.  Have your child examined if the rash is severe or the rash worsens despite home treatment. See your child's doctor if the rash occurs along with any of the following:  (1) fever; (2) blisters or boils; (3) a rash that extends beyond the diaper area; (4) pus or weeping discharge.*

*Useful links:  http://www.mayoclinic.com/health/diaper-rash/DS00069 and http://www.patiented.aap.org/content.aspx?aid=5297"*

    b.      Procter & Gamble may modify the links, if the referenced links become unavailable.

3.    **Additional Relief**

    a.      As soon as practicable and within a reasonable time after the Effective Date, Procter & Gamble shall produce and fund a pediatric resident training program at leading

children's health centers in the area of skin health, e.g., programs for medical schools and educational material, in the amount of $150,000/year for two (2) years.  This program shall give pediatric residents (the first line in rash cases) additional training and information about skin health and the treatment of diaper rash.

b.  As soon as practicable and within a reasonable time after the Effective Date, Procter & Gamble shall sponsor a program with the American Academy of Pediatrics in the area of skin health in the amount of $50,000/year for two (2) years.

c.  If any amount of funds remain after performing either V(B)(2)(a) or V(B)(2)(b) above, then the remaining amount of funds shall be used to fund the other remaining program (either V(B)(2)(a) or V(B)(2)(b) above), as well as another similar program.

4.  **Satisfaction Guarantee**

a.  For twelve (12) months after the Effective Date, Procter & Gamble shall reinstate its money-back guarantee program for consumers who purchased Pampers Swaddlers and Cruisers diapers.  The terms of the program, including

20

requirements for proof of purchase, shall be consistent with those that existed in prior program.

## VI.    REPRESENTATIVE PLAINTIFF AWARD

### A.    Amount

In addition to the Injunctive Relief that will benefit Plaintiffs as Settlement Class Members, Plaintiffs will seek the Court's approval of a Representative Plaintiff Award ("RPA") of One Thousand Dollars ($1,000) per affected child for each Plaintiff.  The RPA provided to Plaintiffs is to compensate Plaintiffs solely for their time and effort associated with their participation in this Action, and shall not be considered reimbursement or compensation for any damages, injury, reimbursement for medical bills or any such other payment or other relief sought in the Action.  Procter & Gamble will not oppose an RPA of One Thousand Dollars ($1,000) per affected child for each Plaintiff.  The Parties' negotiation of and agreement to the foregoing RPA did not occur until after the substantive terms of the settlement, including the Injunctive Relief to the Settlement Class, had been negotiated and agreed upon during the mediation.  These Representative Plaintiff Awards shall constitute the sole consideration for such individuals being Plaintiffs, and shall be made separately from any payment of attorneys' fees, costs and expenses under **Section VII**.

### B.    Payment Schedule

The Representative Plaintiff Awards, subject to Court approval, shall be paid within thirty (30) days of the later of:  (1) the Effective Date; or (2) receipt by counsel for Procter & Gamble of the Plaintiff's completed W-9 form and any other information required by state or federal law.

## VII.    ATTORNEYS' FEES COSTS, AND EXPENSES

### A.    Amount

In advance of the Objection Date, Class Counsel shall make an application to the Court for an award of all attorneys' fees, costs, and expenses, in the amount of not more than $2,730,000 in the aggregate, to be paid by Procter & Gamble. Procter & Gamble shall not oppose or object to the application by Class Counsel for attorneys' fees, costs, and expenses in an amount up to $2.73 million, in the aggregate. The $2.73 million award shall include all fees, costs, and expenses for all Plaintiffs' and Settlement Class Members' counsel (and their employees, consultants, experts, and other agents) who may have performed work in connection with this Action. Regardless of the number of attorneys sharing in the Court's award of attorneys' fees, costs, and other expenses, Procter & Gamble shall not be required to pay any award that exceeds, in the aggregate, $2.73 million.

This agreement with respect to attorneys' fees, costs, and expenses was negotiated after the substantive terms of the settlement, including the Injunctive Relief to the Settlement Class, had been negotiated and agreed upon during the mediation.

Lead Class Counsel shall distribute attorneys' fees and costs to Plaintiffs' counsel who have made substantial contributions to the prosecution of the Consolidated Complaint. Lead Class Counsel shall have the sole and exclusive responsibility to identify the Plaintiffs' attorneys who made substantial contributions. Should a dispute arise regarding the fee distribution, it shall be resolved in accordance with the Alternative Dispute Resolution procedures in **Section XI(B)** below.

### B. Payment

If the request for an aggregate award of $2.73 million in attorneys' fees, costs, and expenses is finally approved by the Court and upheld on any appeal, then Procter & Gamble shall pay $2.73 million via electronic transfer to Lead Class Counsel within seven (7) business days after the Effective Date. If the aggregate award of attorneys' fees, costs, and other expenses that is ultimately approved and upheld on appeal is less than $2.73 million as of the Effective Date, then Procter & Gamble shall pay Class Counsel the lesser amount awarded via electronic transfer to Lead Class Counsel within seven (7) business days after the Effective Date.

## VIII. RELEASE

### A. Scope of Release

Notwithstanding anything stated below, Settlement Class Members (other than Named Plaintiffs) do not release and discharge, but instead preserve, the right to file individual lawsuits for personal injury or actual damages claimed to have been caused by or related to the Pampers with Dry Max product, subject to the limited class action bar described in **Section VIII(C)**.

Upon the Effective Date, the Releasing Parties forever release and discharge all equitable Claims that have been brought, could have been brought, are currently pending, or are ever brought in the future, by any Settlement Class Member against Released Parties, in any forum in the United States (including their territories and Puerto Rico), whether known or unknown, asserted or unasserted, under or pursuant to any statute, regulation or common law, that relate in any way to the alleged manufacture, distribution, sale, purchase or use of Pampers with Dry Max and all equitable Claims for any damages or injuries, of whatever type or description arising or that may have arisen as a result of, or relate in any way to any of the facts,

acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters referenced in any Claim raised (including, but not limited to, any Claim that was raised against Procter & Gamble) in this Action.

After entering into this Settlement Agreement, Plaintiffs or the Settlement Class may discover facts other than, different from, or in addition to, those that they know or believe to be true with respect to the Released Claims.  Plaintiffs and the Settlement Class Members expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or noncontingent equitable Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other, different, or additional facts.

### B.     <u>Notice Related to Section 1542 of the California Civil Code</u>

All Parties to this Settlement Agreement, including the Settlement Class, specifically acknowledge that they have been informed by their legal counsel of Section 1542 of the California Civil Code and they expressly waive and relinquish any rights or benefits available to them under this statute.  California Civil Code § 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding Section 1542 of the California Civil Code, or any other statute or rule of law of similar effect, this Settlement Agreement shall be given full force and effect according to each and all of its expressed terms and provisions, including those related to any

unknown or unsuspected claims, liabilities, demands, or causes of action which are based on, arise from or are in any way connected with the Actions.

### C. Limited Class Action Bar

Plaintiffs and all members of the Settlement Class are hereby permanently barred and enjoined from seeking to use the class action procedural device in any future lawsuit against Released Parties, where the lawsuit asserts Claims that were or could have been brought in State or Federal Court in this Action prior to the entry of this Final Approval Order and Judgment and are not otherwise released and discharged by the Settlement Agreement.

### D. Binding Release

Upon the Effective Date, no default by any Person in the performance of any covenant or obligation under this Settlement Agreement or any order entered in connection therewith shall affect the dismissal of the Action, the *res judicata* effect of the Final Approval Order and Judgment, the foregoing releases, or any other provision of the Final Approval Order and Judgment; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Settlement Agreement shall remain available to all Parties.

## IX. ENTRY OF FINAL APPROVAL ORDER AND JUDGMENT

The Parties shall jointly seek entry by the Court of a Final Approval Order and Judgment as soon as is practical that includes provisions:

1. granting final approval of this Settlement Agreement, and directing its implementation pursuant to its terms and conditions;

2. ruling on Class Counsel's application for attorneys' fees, costs, and expenses;

3.      enjoining Procter & Gamble according to the specific terms in **Section V**;

4.      discharging and releasing the Released Parties, and each of them, from the Released Claims;

5.      permanently barring and enjoining all Releasing Parties from instituting, maintaining, or prosecuting, either directly or indirectly, any lawsuit that asserts Released Claims;

6.      permanently barring and enjoining all Releasing Parties in accordance with the limited class action bar;

7.      directing that, as to Procter & Gamble, the Action be dismissed with prejudice and without costs;

8.      stating pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the Final Approval Order and Judgment is a final, appealable order; and

9.      reserving to the Court continuing and exclusive jurisdiction over the Parties with respect to the Settlement Agreement and the Final Approval Order and Judgment.

## X.      <u>TERMINATION</u>

The parties' willingness to settle this Action on a class-action basis and to agree to the accompanying certification of a Settlement Class depends on achieving finality in this Action and avoiding the expense of this and other litigation, except to the extent certain rights to individual claims for damages are expressly preserved in **Section VIII(A)**. Consequently, the

parties reserve the right to terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement, if any of the following conditions subsequently occur:  a court (a) disapproves, sets aside, or modifies the Agreement; (b) declines for any reason to enter or give effect to a Preliminary Approval Order; (c) requires a notice program in addition to or in any form other than as specifically set forth in **Section IV** and attached **Exhibits A and B**; (d) orders Procter & Gamble to pay, in the aggregate, attorneys' fees,  costs, and expenses in excess of $2.73 million; (e) orders Procter & Gamble to pay, in the aggregate, Representative Plaintiff Awards in excess of $1,000; (f) expands the class action bar beyond claims that were or could have been brought in State or Federal Court in the Action prior to entry of this Final Judgment and Order; (g) releases individual claims for personal injury or actual damage, except for Named Plaintiffs; (h) declines for any reason to give effect to an Order for Final Judgment consistent with the provisions in **Section IX**; or (i) holds that the Order for Final Judgment, or any judgment entered pursuant thereto, should in any material part be overturned or modified in any material way.

The failure of the Court or any appellate court to approve in full the request by Class Counsel for attorneys' fees, costs, and other expenses shall not be grounds for Plaintiffs, the Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement.  The failure of the Court or any appellate court to approve in full the request of any Plaintiff for his or her Representation Plaintiff Award shall not be grounds for Plaintiffs, the Settlement Class, or Class Counsel to cancel or terminate this Settlement Agreement.

If this Settlement Agreement is not finally approved, is not upheld on appeal or is otherwise terminated for any reason before the Effective Date, then the Settlement Class shall be decertified; the Settlement Agreement and all negotiations, proceedings, documents prepared,

and statements made in connection therewith, shall not be deemed or construed to be an admission or confession by the Parties of any fact, matter, or proposition of law; and all Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

## XI.  MISCELLANEOUS PROVISIONS

### A.  Best Efforts to Obtain Court Approval

Plaintiffs, Procter & Gamble, and the Parties' counsel, agree to use their best efforts to obtain Court approval of this Settlement Agreement, subject, however, to the parties' rights to terminate this Settlement Agreement, as provided in **Section X**.

### B.  Alternative Dispute Resolution

If any disputes arise out of the settlement itself, then those disputes are to be resolved by the independent mediator, Layn Phillips, first by way of mediation, and, if mediation is unsuccessful, then by way of final binding non-appealable arbitration. If, for any reason, the independent mediator, Layn Phillips, is unavailable or has a conflict, then the Parties will agree on a substitute mediator or neutral so that this Alternative Dispute Resolution provision may be enforced without returning to Court. If the Parties cannot agree upon a substitute mediator or neutral, then the Parties will jointly petition either Layn Phillips or the Court to select a mediator or neutral for enforcement of this clause.

### C.  No Admission

This Settlement Agreement, whether or not it shall become final, and any and all negotiations, communications, and discussions associated with it, shall not be:

28

1. offered or received by or against any Person as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by a Party of the truth of any fact alleged by Plaintiffs or defense asserted by Procter & Gamble, of the validity of any Claim that has been or could have been asserted in this Action, or the deficiency of any defense that has been or could have been asserted in this Action, or of any liability, negligence, fault or wrongdoing on the part of Plaintiffs or Procter & Gamble;

2. offered or received by or against any Person as a presumption, concession, admission or evidence of the violation of any state or federal statute, law, rule, or regulation or of any liability or wrongdoing by Procter & Gamble, or of the truth of any of the Claims, and evidence thereof shall not be directly or indirectly, in any way, (whether in this Action or in any other action or proceeding), except for purposes of enforcing this Settlement Agreement and the Final Approval Order and Judgment including, without limitation, asserting as a defense the release and waivers provided herein;

3. offered or received by or against any Person as evidence of a presumption, concession, or admission with respect to a decision by any court regarding the certification of a class, or for purposes of proving any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Procter & Gamble, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement;

provided, however, that if this Settlement Agreement is approved by the Court, then Plaintiffs or Procter & Gamble may refer to it to enforce their rights hereunder; or

4.    construed as an admission or concession by Plaintiffs, the Settlement Class or Procter & Gamble that the consideration to be given in this Settlement Agreement represents the relief that could or would have been obtained through trial in this Action.

These prohibitions on the use of this Settlement Agreement include, but are not limited to, any individual lawsuit preserved from release in **Section VIII** above.

**D.    Settlement Notices**

Except for the Notice Plan and the CAFA Notice, as provided for in **Section IV** above, all other notices or formal communications under this Settlement Agreement shall be in writing and shall be given (i) by hand delivery; (ii) by registered or certified mail, return receipt requested, postage prepaid; or (iii) by Federal Express or similar overnight courier to counsel for the Party to whom notice is directed at the following addresses:

For Plaintiffs and Settlement Class:

Lynn Lincoln Sarko
Gretchen Freeman Cappio
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101

For Procter & Gamble:

D. Jeffrey Ireland
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202

Counsel may designate a change of the person to receive notice or a change of address, from time to time, by giving notice to all Parties in the manner described in this Section.

### E.    Administrative Costs

Except as provided in **Sections IV** (Notice), **VI** (Representative Plaintiff Awards to Plaintiffs), and **VII** (Attorneys' Fees, Costs, and Expenses), each of the Plaintiffs and Procter & Gamble shall be solely responsible for his, her, or its own costs and expenses.

### F.    Taxes

Settlement Class Members, Plaintiffs and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Settlement Agreement.

### G.    Public Statements

All public statements about the settlement (including, but not limited to, any statements by Plaintiffs, Class Counsel, Procter & Gamble, and Counsel for Procter & Gamble in press releases, websites, blogs, Facebook pages, etc.) will be limited to statements agreed upon by the Parties in advance and found within the Notice.  The Parties will agree upon a press release.  No Parties shall disparage another Party.

Notwithstanding this Settlement Agreement, Procter & Gamble may continue to respond to inquiries and make statements regarding the quality, safety, and performance of its products.  Procter & Gamble shall also, where appropriate, direct parents complaining of rash to consult Procter & Gamble's website and the specific language described above.

**H.**     **Complete Agreement**

This Settlement Agreement is the entire, complete agreement of each and every term agreed to by and among Plaintiffs, the Settlement Class, Procter & Gamble and Class Counsel.  In entering into this Settlement Agreement, no Party has made or relied on any warranty or representation not specifically set forth herein.  This Settlement Agreement shall not be modified except by a writing executed by all the Parties hereto.

**I.**     **Headings for Convenience Only**

The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

**J.**     **Severability**

In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Settlement Agreement shall continue in full force and effect without said provision.

**K.**     **No Party Is the Drafter**

None of the Parties to this Settlement Agreement shall be considered to be the primary drafter of this Settlement Agreement or any provision hereof for the purpose of any rule of interpretation or construction that might cause any provision to be construed against the drafter.

**L.**     **Binding Effect**

This Settlement Agreement shall be binding according to its terms upon, and inure to the benefit of Plaintiffs, the Settlement Class, Procter & Gamble, the Released Parties, and their respective successors and assigns.

**M.**     **Authorization to Enter Settlement Agreement**

Lead Class Counsel represents that they are fully authorized to conduct settlement negotiations with counsel for Procter & Gamble on behalf of Plaintiffs, the Settlement Class and Class Counsel, and to enter into, and to execute, this Settlement Agreement on behalf of Plaintiffs, the Settlement Class and Class Counsel, subject to Court approval pursuant to Federal Rule of Civil Procedure 23(e).

**N.**     **Execution in Counterparts**

Plaintiffs, Class Counsel, and Procter & Gamble may execute this Settlement Agreement in counterparts, and the execution of counterparts shall have the same effect as if all Parties had signed the same instrument.  Facsimile signatures shall be considered as valid signatures as of the date signed, although the original signature pages shall thereafter be appended to the Settlement Agreement.  This Settlement Agreement shall not be deemed executed until signed by Lead Class Counsel and Procter & Gamble.

**Class Counsel:**

/s/ Gary D. Greenwald (per authorization)
Gary D. Greenwald
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

     Trial Attorney for Plaintiffs


/s/ Lynn Lincoln Sarko (per authorization)
Lynn Lincoln Sarko
Michael D. Woerner
Gretchen Freeman Cappio
Gretchen S. Obrist
Harry Williams IV
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101

     Lead Class Counsel


David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY  10003

     Lead Class Counsel


Mark D. Samson
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

     Attorneys for  Plaintiffs

**Defendants:**

THE PROCTER & GAMBLE COMPANY

By: _____

KEN K. PATEL
VICE PRESIDENT & ASSOCIATE GENERAL COUNSEL - LEGAL

THE PROCTER & GAMBLE PAPER PRODUCTS COMPANY

By: _____

E.J. Wunsch
Vice President and Secretary

THE PROCTER & GAMBLE DISTRIBUTING LLC

By: _____

E.J. Wunsch
Vice President and Secretary

**Defendants' Counsel:**

_____
D. Jeffrey Ireland (0010443)
  Trial Attorney
Brian D. Wright (0075359)
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
Telephone:  (513) 632-0310
Telecopier:  (513) 632-0319
Email:  djireland@ficlaw.com

Counsel for Defendants
The Procter & Gamble Company
The Procter & Gamble Paper Products
Company and The Procter & Gamble
Distributing LLC

488685.1