UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE DRY MAX PAMPERS LITIGATION | ) | No. 1:10-cv-00301-TSB |
| | ) | |
| | ) | The Honorable Timothy S. Black |
| | ) | |

**DECLARATION OF LYNN LINCOLN SARKO AND GRETCHEN FREEMAN CAPPIO IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND REPRESENTATIVE PLAINTIFF AWARD PAYMENTS**

**LYNN LINCOLN SARKO AND GRETCHEN FREEMAN CAPPIO DECLARE:**

1. Lynn Lincoln Sarko and Gretchen Freeman Cappio are partners in the law firm Keller Rohrback L.L.P. On June 7, 2011, the Court appointed us Lead Class Counsel in this matter, and we have personal knowledge of the information in this Declaration. If called upon, we could and would testify that the following facts are true and correct based on our personal knowledge.

**I.   INTRODUCTION**

2. Keller Rohrback L.L.P. was appointed Interim Lead Counsel for Plaintiffs on June 16, 2010. Order on Plaintiffs' Motion for Consolidation and Appointment as Interim Lead Counsel (Dkt. # 15, June 16, 2010) (hereinafter "Dkt. # 15"). Keller Rohrback L.L.P. has been primarily responsible for the prosecution of this matter and negotiation of the Settlement. On

1

June 7, 2011, Keller Rohrback L.L.P. was appointed Lead Class Counsel. Order Preliminarily Approving Class Action Settlement (Dkt. # 55, June 7, 2011) (hereinafter "Dkt. # 55").

3. Plaintiffs' counsel spent considerable time on the factual and legal aspects of this matter. Plaintiffs' counsel were contacted by over 700 individuals who complained of rashes caused by Dry Max Diapers and spent time interviewing these individuals and documenting their factual allegations. Eventually, complaints were filed on behalf of 59 named plaintiffs.

4. Counsel investigated and researched the allegations in the complaints filed against Defendants Proctor and Gamble Company, Procter & Gamble Paper Products Company and Procter & Gamble Distributing (collectively, P&G Companies or Defendants); briefed an opposition to Defendants' Motion to Bifurcate Discovery and participated in oral argument on that motion; negotiated disclosure of core documents; drafted written discovery requests; wrote mediation briefs that were substantively identical to oppositions to the motions to dismiss and motion to strike class allegations filed by Defendants; engaged in recurring consultation with medical and scientific experts; and engaged in extensive settlement discussions with Defendants that were overseen by Judge Layn Phillips (ret.).

5. The proposed Settlement is a direct result of these efforts on behalf of Plaintiffs and the Class.

## II. HISTORY OF THE LITIGATION

6. In May and June 2010, a number of putative class actions were filed in various federal courts against P&G Companies arising out of problems consumers experienced with a new product, Dry Max Pampers. On June 16, 2010 this Court consolidated the cases filed in the Southern District of Ohio and appointed Keller Rohrback L.L.P. as Interim Lead Counsel. Dkt. # 15. Over the next two months, cases from outside the Southern District were consolidated in this Court.

7. There are 59 class representatives from 25 states.

8. Plaintiffs conducted further legal and scientific research and filed a Consolidated Complaint on August 23, 2010.  Consolidated Class Action Complaint (Dkt. # 25, August 23, 2010) (hereinafter "Dkt. # 25").  The Consolidated Complaint was 207 pages long and reflected significant research on legal, factual and scientific issues.  The Consolidated Complaint asserted counts for violations of various state consumer protection laws, breach of implied warranty, strict liability and negligence, and unjust enrichment.

9. After a scheduling conference in July 2010, the Court ordered the parties to disclose core documents in the case, and Plaintiffs' counsel engaged in protracted negotiations to determine the content of core discovery and an appropriate Protective Order.

10. The parties also engaged in protracted negotiations in preparation for filing the Rule 26 Report.  The parties were unable to agree to a joint schedule and submitted separate proposed case schedules.  Rule 26f Report of Parties (Dkt. # 27, September 22, 2010) (hereinafter "Dkt. # 27").

11. The parties then briefed the issue of bifurcating discovery (Motion of Defendants the Procter & Gamble Company, Procter & Gamble Paper Products Company, and Procter & Gamble Distributing LLC to Phase and Sequence Discovery (Dkt. # 28, September 24, 2010) (hereinafter "Dkt. # 28"); Memorandum in Opposition to Defendants' Motion to Phase and Sequence Discovery (Dkt. # 33, October 15, 2010) (hereinafter "Dkt. # 33"); and Reply Memorandum of Defendant the Procter & Gamble Company, the Procter & Gamble Paper Products Company, and the Procter & Gamble Distributing LLC to Phase and Sequence Discovery (Dkt. # 41, October 22, 2010) (hereinafter "Dkt. # 41") and the Court held a telephone

hearing on the matter on October 25, 2010.  The Court denied Defendants' motion on November 12, 2010.  Calendar Order (Dkt. # 45, November 12, 2010) (hereinafter "Dkt. # 45").

12. The Defendants filed a Motion to Dismiss and Motion to Strike Class Allegations on October 20, 2010.  Motion of Defendants the Procter & Gamble Company, the Procter & Gamble Paper Products Company and the Procter & Gamble Distributing LLC to Strike Plaintiffs' Class Allegations (Dkt. # 39, October 20, 2010) (hereinafter "Dkt. # 39") and Motion of Defendants the Procter & Gamble Company, the Procter & Gamble Paper Products Company and the Procter & Gamble Distributing LLC to Dismiss the Consolidated Class Action Complaint (Dkt. # 40, October 20, 2010) (hereinafter "Dkt. # 40").  On October 27, the Court entered a Minute Order, setting Plaintiffs' Oppositions to these motions for December 17, 2010. That order was modified on November 19, 2010, to allow briefing to be delayed if the parties engaged in mediation.

### III.  MEDIATION AND SETTLEMENT NEGOTIATIONS

13. In preparation for in-person mediation with Judge Phillips, the parties exchanged opening briefs on January 21, 2011 and reply briefs on January 28.  These were substantive briefs, covering applicable law from dozens of states, as well as requiring further analysis of the factual record and consultation with medical and scientific experts.

14. The parties had a two-day, in-person settlement conference with Judge Philips on February 7 and 8, 2011.  Plaintiffs' Counsel from four law firms attended.

15. During the in-person mediation and for nearly a month afterward, the parties engaged in extensive, arms-length, and contentious negotiations.  The parties worked tirelessly, exchanging numerous proposals and counter-proposals covering all substantive aspects of the Settlement Agreement.

16. During this time, Plaintiffs consulted with their scientific, medical, and marketing experts to determine the scope of an acceptable agreement.

17. While the parties made significant progress on proposed settlement terms, they ultimately came to an impasse on attorneys' fees. Judge Phillips then informed the parties that he would make a Mediator's Recommendation on Friday, March 4. According to Judge Phillips' protocol, the term sheet included all agreed terms between the parties as well as a Mediator's Recommendation on Attorneys' fees.

18. The Mediator's Recommendation on attorneys' fees was based on the Mediator's involvement in the settlement negotiations, his review of information provide by Interim Lead Counsel, and his extensive experience in resolving class actions. The information provided by Plaintiffs' counsel included the total lodestar and expenses incurred by the Plaintiff firms.

19. The Mediator's Recommendation was made on a take-it-or-leave-it basis, and each party would submit its answer to Mediator separately. The parties were given until noon on Thursday, March 10 to accept or reject the proposal. Plaintiffs' counsel consulted with plaintiffs and accepted the terms. Judge Phillips informed the parties that P&G Companies had also accepted and that there was agreement on the terms of the Settlement as well as attorney fees and expenses.

20. After the Mediator confirmed that the terms of Settlement were agreed, the parties began the process of incorporating the terms into the proposed Settlement Agreement.

21. After a hearing on the settlement, the Court preliminarily approved the Settlement in an Order dated June 7, 2011. Dkt. # 55.

### IV. THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

22. Settlement Class Members are eligible to claim money from P&G Companies if they experience problems with Dry Max Pampers. P&G Companies have placed no limit on the

5

number of families that may take advantage of the money back offer for twelve months after the entry of the Final Settlement Agreement.

23. The Settlement provides for other important injunctive relief. P&G Companies have agreed to place language on all Pampers packages directing consumers to a web site and toll-free telephone number that will have information from the Mayo Clinic on the diagnosis and treatment of diaper rash, including information that will allow consumers to determine if the rash their child has requires medical attention.

24. In addition, P&G Companies have agreed to spend $400,000 to help train pediatricians about diaper rash and to provide information to medical professionals in conjunction with the American Academy of Pediatrics.

25. P&G Companies will pay all costs of administering the money-back program and all Notice expenses.

26. P&G Companies also agreed to pay Representative Plaintiff Awards of $1,000 per affected child. The Class Representatives have agreed to release their personal injury claims. The personal injury claims of all other class members are not barred by this Settlement.

27. P&G Companies agree not to object to, or otherwise challenge, the Class Representatives' applications for Representative Plaintiff Awards so long as the Class Representatives do not seek awards in excess of $1,000 per affected child. Any Representative Plaintiff Awards awarded by the Court shall be paid by P&G Companies, in addition to the Settlement benefits to Settlement Class Members and the Attorneys' Fees and Expenses otherwise provided for in the Settlement.

28. The Settlement Agreement provides substantial relief to the Class. When weighed against the complexities, costs and uncertainties of the litigation, and probability of

lengthy litigation without a settlement, the Settlement is a reasonable in relation to the total likely recovery at trial.

29. Regardless of the final outcome, further proceedings in this matter would be contentious, protracted, costly and a drain on judicial resources. The Settlement provides substantial relief to Plaintiffs, possibly years earlier than would be the case if the matter was litigated at trial, not to mention possible appeals.

30. By reaching a favorable Settlement, Plaintiffs have avoided significant delays and ensured a recovery to the Settlement Class. Defendants have numerous legal defenses to Plaintiffs' claims that will require full discovery and briefing. Without this Settlement, the Parties face expensive, extensive discovery. Defendants have proposed taking over 250 depositions, and Plaintiffs have requested what will likely be tens of thousands of documents. Plaintiffs have engaged medical, scientific and marketing experts who are likely to give expert testimony. In addition to the pending Motion to Dismiss and Motion to Strike Class Allegations, the parties also face class certification and summary judgment briefing. A trial on the merits would require considerable expense and thousands of hours of attorney time, and, given the right to appeal, even a trial would not be end of the litigation. The proposed Settlement provides an immediate benefit to the Class and avoids unnecessary expense and delay.

31. We are not aware of any Plaintiff seeking to file objections.

## V. PAYMENT OF ADMINISTRATIVE EXPENSES

32. P&G Companies has agreed to pay all claims administration expenses and all notice expenses.

## VI. ATTORNEYS' FEES

33. As set forth above and for the reasons detailed in Plaintiffs' Memorandum in Support of an Award of Attorneys' Fees, Reimbursement of Expenses, and Representative

7

Plaintiff Award Payments (Fee Memo), the requested Attorneys' Fees and Expenses and Representative Plaintiff Awards are fair and reasonable under Sixth Circuit precedent and, in light of the result achieved on behalf of the Class, should be awarded in full by this Court pursuant to the Parties' Settlement Agreement.

34. Plaintiffs' Counsel seek an award of Attorneys' Fees and Expenses separate and apart from the relief provided the Settlement Class.

35. The fee sought is the Mediator's Proposal and is considerably less than Plaintiffs' lodestar, which was the amount sought by Plaintiffs.

36. In determining their lodestar, Plaintiffs' counsel have applied their usual billing rates.

37. Throughout the litigation, Lead Class Counsel coordinated the efforts of Plaintiffs' counsel to maximize collective resources, minimize duplication and streamline the prosecution of the case.

38. Lead Class Counsel will allocate fees and costs to Plaintiffs' Counsel, based on Lead Class Counsel's assessment of each firm's overall contribution to the litigation and their respective lodestars.

    **1.    The Number of Hours Plaintiffs' Counsel Worked Is Reasonable**

39. Under the lodestar method, a reasonable fee is determined by multiplying the number of hours reasonably worked by a reasonable hourly rate. The total hours worked by Plaintiffs' counsel – 9,063 – is reasonable, considering the complex, high-stakes nature of this nationwide class action. Plaintiffs' counsel's extensive efforts are detailed above.

    **2.    Plaintiffs' Counsel's Hourly Rates are Reasonable**

40. Plaintiffs' Counsel are well-respected members of the bar who are highly experienced in the areas of consumer class actions and high-stakes complex litigation.

8

Moreover, Plaintiffs' Counsel's rates are reasonable and have been approved by many courts and are comparable to the rates for firms in the National Law Journal. The hourly rates of the firms seeking fees in Fee Motion are appropriate for complex nationwide litigation, with median rate of $380.00 for associates and $593.00 for partners.

### 3. The Contingent Nature of the Action

41. While Plaintiffs' Counsel do not seek a multiplier, Plaintiffs' Counsel's lodestar would merit an upward adjustment based on the contingent nature of this matter.

42. Plaintiffs' Counsel litigated this matter on a contingent basis and placed their own resources at risk. Because the fee in this matter was entirely contingent, the only certainty was that Plaintiffs' Counsel would not get paid unless they obtained a successful result, and such a result would only be possible after significant time and expense. Absent this Settlement, there was a sizeable risk that Plaintiffs, the Settlement Class, and their counsel would obtain no recovery at all. At no time has P&G conceded liability, the appropriateness of class certification, or the availability of damages. Despite this uncertainty, Plaintiffs' Counsel obtained an excellent result on behalf of the Settlement Class.

### 4. Skill and Experience of Counsel

43. The Settlement was achieved by counsel who have decades of experience in prosecuting and trying complex class actions. In this case, success required experienced and skilled class action attorneys and the result reflects that experience and skill.

44. Plaintiffs' Counsel sought the maximum recovery for the Settlement Class. Counsel undertook thorough investigation and consulted with numerous experts. This matter also involved complex scientific and medical investigation, making it significantly more complex than many class actions.

45. Keller Rohrback attorneys have extensive experience handling class actions on behalf of consumers and employees. Keller Rohrback has litigated hundreds of class action cases during the past 20 years, and has successfully recovered over $4 billion for the benefit of victims of price fixing conspiracies, securities fraud, breaches of fiduciary duties, and deceptive practices. Keller Rohrback's firm resume, detailing the firm's accomplishments, has been filed in this case. *See* Dkt. 54-11.

46. In a recent class action case handled by Keller Rohrback involving violations of the Washington Consumer Protection Act (WCPA), Chief Judge Robert S. Lasnik approved the plaintiffs' settlement award and stated: "[T]his is an example of how [a] class action works, and I was very pleased to see it come to this conclusion." Transcript of Motion Hearing at 6, *Kavu, Inc. v. Omnipak Corp.*, No. 06-109-RSL (W.D. Wash. Jan. 24, 2008). Judge John C. Coughenour found that Keller Rohrback has "substantial experience in consumer class action litigation." *Pelletz v. Weyerhaeuser Co.*, 592 F.Supp.2d 1322, 1329 (W.D. Wash. 2009). *See also Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 416 (W.D. Wash. 2003) (Pechman, J.) (stating that the "firm is experienced in class action litigation and management"); *Mortimore v. FDIC*, 197 F.R.D. 432, 437 (W.D. Wash. 2000) (Coughenour, J.) (stating that the firm is "well qualified to represent the class in this case."); *Getty v. Harmon*, No. 98-0178, slip op. at 2 (W.D. Wash., Sept. 20, 1999) (Dkt. # 346) (Dwyer, J.) ("Despite substantial obstacles to recovery, Keller Rohrback was willing to undertake the significant risks presented by this case. After a year and half of intensive litigation, including extensive discovery, motion practice and mediation, Class Counsel achieved real and substantial benefits for members of the Class.").

47. Keller Rohrback L.L.P. has special expertise in protecting children, and has represented families in several successful complex lawsuits, including a recent case regarding toy safety, *In re Mattel, Inc.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008).

48. In 1993, Keller Rohrback filed a class action lawsuit against the national fast-food chain Jack-in-the-Box, which resulted in more than $13 million in payments to those affected by the E. coli outbreak.  Specifically working in the interest of children affected by the outbreak, Keller Rohrback served as co-lead counsel in the suit and helped to secure a sizable donation from Jack-in-the-Box, directly awarded to the Children's Hospital Foundation.

## VII. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

49. Plaintiffs' Counsel's expenses were $292,928.14.

50. Plaintiffs' expenses included legal research, travel, experts, photocopies, postage, filing fees, transcripts, and telephone charges.  The travel expenses include only standard travel expenses such as commercial airfare.

51. All expenses were reasonable and necessary to the prosecution of this matter.

## VIII. REPRESENTATIVE PLAINTIFF AWARD FOR CLASS REPRESENTATIVES

52. Plaintiffs' Counsel respectfully request that this Court approve Representative Plaintiff Awards for Class Representatives of $1,000 per affected child.

53. The Class Representatives have spent significant time prosecuting this action on behalf of the Settlement Class.  The Class Representatives assisted in gathering facts, in contacting medical professionals and obtaining medical records, reviewing pleadings, preparing initial disclosures, and considering settlement terms.

54. In addition, the Class Representatives are releasing their personal injury claims as part of the settlement.  Other class members are not releasing these claims.

## IX. CONCLUSION

For the reasons set forth above and in the Plaintiffs' Motion For Attorneys' Fees, Reimbursement of Expenses and Representative Plaintiff Award Payments, we respectfully request that the Court award Plaintiffs' Counsel's fees and expenses' and award Class Representatives a Representative Plaintiff Award of $1,000 per affected child.

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 26th day of August, 2011, in Seattle, WA.

_____
Lynn Lincoln Sarko

_____
Gretchen Freeman Cappio