## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| IN RE PAMPERS DRY MAX LITIGATION | Case No: 1:10-cv-00301 TSB |
| | Judge Timothy S. Black |

---

## OBJECTION OF DANIEL GREENBERG

---

Adam Ezra Schulman (*pro hac vice* pending)
CENTER FOR CLASS ACTION FAIRNESS LLC
1718 M Street NW
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

Theodore J. Froncek
1208 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Fax: (513) 929-3473
Email: tjfroncek@fuse.net
Attorneys for Objector Daniel Greenberg

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................I

TABLE OF AUTHORITIES.............................................................................................. II

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...........................................1

I.       Objector Daniel Greenberg Is a Class Member. ....................................................2

II.      The Class Cannot be Certified as a Mandatory 23(b)(2) Class ..............................4

         A.       Monetary Claims Cannot Be Discharged in a Mandatory 23(b)(2) Class. ..........4

         B.       Even If Monetary Claims Can Sometimes Be Included Where Incidental, They
                  Predominate in This Case.........................................................................................7

                  1.       Monetary Claims Predominate From the Perspective of the Complaint. .....9

                  2.       Monetary Claims Predominate From the Perspective of the Release. .........12

                  3.       Monetary Claims Predominate from the Perspective of the Class. ..............14

                  4.       Predominance Is Not a Matter of Class Counsel's Desire. ...........................18

         C.       This Class Action Waiver Cannot be Included as Part of a Mandatory (b)(2)
                  Class Release. .........................................................................................................20

III.     The Class Definition Is Impermissibly Broad........................................................23

IV.      Even if Certifiable, This Settlement Is Not Fair.....................................................25

         A.       The Injunctive Relief Does Not Justify $2.7 Million in Attorneys Fees...........25

         B.       The Fee Agreement Includes Problematic "Clear Sailing" and "Kicker"
                  Provisions. ...............................................................................................................27

         C.       Notice Is Inadequate in Both Content and in Manner. .....................................27

                  1.       Class Members are Entitled to the Attorneys Fees Petition a Reasonable
                           Time Before the Objection Deadline. ...........................................................28

                  2.       Notice Does Not Apprise Class Members of the Total Amount of the
                           Incentive Awards............................................................................................29

                  3.       The Identity of the Main *Cy Pres* Recipient Is Not Announced....................30

                  4.       The Manner of Distributing Notice is Insufficient........................................30

V.       *Aqua Dots* Also Requires Decertification of the Class. .........................................32

CONCLUSION ...............................................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Allen v. Int'l Truck & Engine Corp.*,
    No. 3:07-cv-361, 2011 U.S. Dist. LEXIS 79723 (S.D. Ohio July 20, 2011) ........................24

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998).................................................................................. 6, 10, 11

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001).......................................................................................25

*Arch v. American Tobacco Co. Inc.*,
    175 F.R.D. 469 (E.D. Pa. 1997) .......................................................................................9

*AT&T Mobility v. Concepcion*,
    560 U.S. ___ (2011) ........................................................................................................22

*Austin v. Wilkerson*,
    83 Fed. Appx. 24 (6th Cir. 2003) ...................................................................................13

*Avritt v. Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) ........................................................................................11

*Bacon v. Honda of Am. Mfg., Inc.*,
    205 F.R.D. 466 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004)........................... 15, 18

*Bailey v. AK Steel Corp.*,
    2008 U.S. Dist. LEXIS 16704 (S.D. Ohio Feb. 21, 2008) .......................................................4

*Bentley v. Honeywell Int'l, Inc.*,
    223 F.R.D. 471 (S.D. Ohio 2004)...................................................................................24

*Bolin v. Sears, Roebuck & Co.*,
    231 F.3d 970 (5th Cir. 2000)................................................................................... 15, 19

*Brockman v. Barton Brands, Ltd.*,
    No. 3:06CV-332-H, 2007 U.S. Dist. LEXIS 86732 (W.D. Ky. Nov. 20, 2007) ....................7

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ...........................................................................................15

*Burden v. Check into Cash of Ky., LLC*,
    267 F.3d 483 (6th Cir. 2001)..........................................................................................22

*Cancino v. Yamaha Motor Corp., U.S.A.,*
No 3:04-cv-274, 2010 U.S. Dist. LEXIS 76645 (S.D. Ohio Jun. 24, 2010) ......................... 18

*Charrons v. Pinnacle Group N.Y. LLC,*
269 F.R.D. 221 (S.D.N.Y. 2010) ...................................................................................... 16

*Christ v. Beneficial Corp.,*
547 F.3d 1292 (11th Cir. 2008) .......................................................................................... 9

*Clarke v. Advanced Private Networks, Inc.,*
173 F.R.D. 521 (D. Nev. 1997) ........................................................................................ 13

*Clevenger v. Dillards, Inc.,*
No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464 (S.D. Ohio Mar. 9, 2007) ......................... 25

*Coleman v. Gen. Motors Acceptance Corp.,*
296 F.3d 443 (6th Cir. 2002) .............................................................................................. 6

*Compaq Computer Corp. v. Lapray,*
135 S.W.3d 657 (Tex. 2004) ............................................................................................... 7

*County Sec. Agency v. The Ohio Dep't of Commerce,*
296 F.3d 477 (6th Cir.2002) ............................................................................................. 21

*Cruz v. Dollar Tree Stores, Inc.,*
No. 07-2050 2009 U.S. Dist. LEXIS 62817 (N.D. Cal. July 2, 2009) ................................. 24

*Daffin v. Ford Motor Co.,*
No. C-1-00-458, 2004 U.S. Dist. LEXIS 18977 (S.D. Ohio July 15, 2004),
*aff'd,* 458 F.3d 549 (6th Cir. 2006) .......................................................................... *passim*

*Dennis v. Kellogg Co.,*
No. 09-CV-1786, 2010 U.S. Dist. LEXIS 116924 (S.D. Cal. Oct. 14, 2010) ...................... 32

*Edwards v. McCormick,*
196 F.R.D. 487 (S.D. Ohio 2000). ...................................................................................... 24

*Elkins v. Am. Showa Inc.,*
219 F.R.D. 414 (S.D. Ohio 2002) ...................................................................................... 11

*Employees Pension Fund v. Fruit of the Loom,*
234 F.R.D. 627 (W.D. Ky. 2006) ....................................................................................... 25

*Fidel v. Farley,*
534 F.3d 508 (6th Cir. 2008) .............................................................................................. 28

*Foster v. D.B.S. Collection Agency,*
  No. 01-CV-514, 2002 WL 484500 (S.D.Ohio Mar.26, 2002) ................................................24

*Fresco v. Auto. Directions, Inc.,*
  No. 03-CIV-61063, 2009 U.S. Dist LEXIS 125233 (S.D. Fla. Jan. 16, 2009) .........17, 22, 24

*Grant v. Bethlehem Steel Corp.,*
  823 F.2d 20 (2d Cir. 1987) ..............................................................................................4

*In re Aqua Dots Prods. Liab. Litig.,*
  __ F.3d __, No. 10-3847 (7th Cir. Aug. 17, 2011) ....................................................33

*In re Bluetooth Headset Prod. Liab. Litig.,*
  __ F.3d __, No. 10-56683 (9th Cir. Aug. 19, 2011) ....................................8, 9, 27, 33

*In re Broadwing, Inc. ERISA Litig.,*
  252 F.R.D. 369 (S.D. Ohio 2006) ....................................................................................25

*In re Cardinal Health Inc. Sec. Litigs.,*
  528 F.Supp.2d 752 (S.D. Ohio 2007) ............................................................................4

*In re Excess Value Ins. Coverage Litig.,*
  598 F.Supp.2d 380 (S.D.N.Y. 2005) ..............................................................................29

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) ..............................................................................................8

*In re Mercury Interactive Corp. Sec. Lit.,*
  618 F.3d 988 (9th Cir. 2010) ..........................................................................................28

*In re Nationwide Fin. Servs. Litig.,*
  No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009) ................22

*In re Tableware Antitrust Litig.,*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................................................32

*In re Telectronics Pacing Sys. Inc.,*
  221 F.3d 870 (6th Cir. 2000) ..........................................................................................6

*In re Telectronics Pacing Sys.,*
  137 F. Supp. 2d 1029 (S.D. Ohio 2001) ........................................................................25

*In re Telectronics Pacing Sys., Inc.,*
  186 F.R.D. 459 (S.D. Ohio 1999),
  *rev'd on other grounds,* 221 F.3d 870 (6th Cir. 2000) ....................................................25

*In re Wal-Mart Stores, Inc.*,
    No. 06-02069, 2008 U.S. Dist. LEXIS 109446 (N.D. Cal. May 2, 2008) .............................24

*Jefferson v. Ingersoll Int'l Inc.*,
    195 F.3d 894 (7th Cir. 1999).......................................................................................................7

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*,
    No. 1:06-cv-1397, 2010 U.S. Dist. LEXIS 132034 (N.D. Ohio Dec. 14, 2010) ................18

*Kanawi v. Bechtel Corp.*,
    No. C 06-05566 CRB 2011 U.S. Dist. LEXIS 24747 (N.D. Cal. Mar. 1, 2011) ..................31

*Kaplan v. Chertoff*,
    No. 06-5304, 2008 U.S. Dist. LEXIS 5082 (E.D. Pa. Jan. 24, 2008) ....................................32

*Laichev v. JBM, Inc.*,
    269 F.R.D. 633 (S.D. Ohio 2008) ...........................................................................................24

*Martin v. Caterpillar, Inc.*,
    No. 07-cv-1009 2010 U.S. Dist. LEXIS 82350 (C.D. Ill. Aug. 12, 2010)..............................31

*McManus v. Fleetwood Enters., Inc.*,
    320 F.3d 545 (5th Cir. 2003).............................................................................................15, 18

*Mirfasihi v. Fleet Mortgage Corp.*,
    356 F.3d 781 (7th Cir. 2004).......................................................................................................4

*Mogel v. UNUM Life Ins. Co. of Am.*,
    646 F.Supp.2d. 177 (D. Mass 2009) .......................................................................................16

*Monreal v. Potter*,
    367 F.3d 1224 (10th Cir. 2004) .................................................................................................9

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000).....................................................................................................30

*Mueller v. CBS, Inc.*,
    200 F.R.D. 227 (W.D. Pa. 2001) .............................................................................................24

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...........................................................................................................28, 30

*North Star Capital Acquisitions, LLC v. Krig*,
    No. 3:07-cv-264-J-32MCR, 2011 U.S. Dist. LEXIS 4596 (M.D. Fla. Jan. 10, 2011)..........29

*Oblix, Inc. v. Winiecki,*
  374 F. 3d 488 (7th Cir. 2004) ....................................................22

*Olden v. Lafarge Corp.,*
  383 F.3d 495 (6th Cir. 2004)....................................................17

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999)........................................................ 5, 6, 18

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985)...................................................... 5, 14, 23

*Polaris Amphitheater Concerts, Inc. v. City of Westerville,*
  267 F.3d 503 (6th Cir. 2001)....................................................21

*Powers v. Gov't Employees Ins. Co.,*
  192 F.R.D. 313 (S.D. Fla. 1998) ................................................10

*Reeb v. Ohio Dep't of Rehab & Corr.,*
  435 F.3d 639 (6th Cir. 2006).............................................*passim*

*Saur v. Snappy Apple Farms, Inc.,*
  203 F.R.D. 281 (W.D. Mich. 2001) ............................................24

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
  362 F. Supp. 2d 574 (E.D. Pa. 2005)..........................................30

*Sheick v. Auto. Component Carrier LLC,*
  No. 2:09-cv-14429 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ...............31

*Shreve v. Franklin County,*
  No. 2:10-cv-644, 2010 U.S. Dist. LEXIS 131911 (S.D. Ohio Dec. 14, 2010)....................17

*Silber v. Mabon,*
  957 F.2d 697 (9th Cir. 1992)......................................................4

*Smith v. Dep't of Corr Rehab. & Corr.,*
  No. 2:08-cv-15, 2010 U.S. Dist. LEXIS 81842 (S.D. Ohio Aug. 12, 2010) .........................17

*Sobel v. Hertz,*
  No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) .29

*Ticor Title Ins. Co. v. Brown,*
  511 U.S. 117 (1994)...............................................................5

*Violette v. P.A. Days, Inc.*,
  214 F.R.D. 207 (S.D. Ohio 2003) ........................................................................18

*Wal-Mart Stores Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................................*passim*

*Wike v. Vertrue, Inc.*,
  2010 U.S. Dist. LEXIS 96700 (M.D. Tenn. Sept. 15, 2010) ..................................25

**<u>Rules and Statutes</u>**

Ala. Code § 8-19-10 ..................................................................................................14

Fed. R. Civ. P. 18(a) .................................................................................................20

Fed. R. Civ. P. 23(a) ............................................................................................ 9, 33

Fed. R. Civ. P. 23(b)(2) ..............................................................................*passim*

Fed. R. Civ. P. 23(b)(3) .................................................................................... 6, 9, 18

Fed. R. Civ. P. 23(e)(1) ..................................................................................... 23, 27

Fed. R. Civ. P. 23(e)(2) .............................................................................................25

Fed. R. Civ. P. 23(e)(5) .............................................................................................23

Fed. R. Civ. P. 23(h) .......................................................................................... 28, 29

**<u>Other Authorities</u>**

Advisory Committee Notes, 39 F.R.D. 98 (1966) ....................................................16

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(C) ......4

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.13(a) ....26

Consumer Product Safety Commission, *No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash* (Sep. 2, 2010) ......................................................................33

Dasteel, Jeffrey H. & Ronda McKaig, *What's Money Got to Do With It?: How Subjective, Ad Hoc Standards for Permitting Money Damages in Rule 23(b)(2) Injunctive Relief Classes Undermine Rule 23's Analytical Framework*, 80 TUL. L. REV. 1881 (2006) ..............................................................7

Frankel, Allison, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010) ........................................................................................3

Grande, Thomas R., *Innovative Class Action Techniques: The Use of Rule 23(B)(2) in Consumer Class Actions*, 14 LOY. CONSUMER L. REV. 251 (2002) ..................................................19

Issacharoff, Samuel, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057 (2002) ................................................................ 12, 13

James, Jr., Fleming, Geoffrey C. Hazard, Jr. & John Leubsdorf, CIVIL PROCEDURE § 10.22 (5th ed. 2001) ....................................................................................................18

Mullenix, Linda S., *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177 (2003) ........................................19

2 Newberg on Class Actions § 8.04 ..............................................................................23

3 Newberg on Class Actions § 8:18 (4th ed. 2002) ........................................................28

Univ. of Mich. Health Sys., Toilet Training, http://www.med.umich.edu/yourchild/topics/toilet.htm....................................................15

Wolfman, Brian, & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729 (2006) ...................................................................... 16, 19

7B Charles Alan Wright et al., Federal Practice and Procedure, § 1787 (2d ed.1986) .............23

Zahorsky, Rachel M., "Unsettling Advocate," ABA J. (Apr. 2010) .............................................3

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This settlement must be rejected: the class is improperly defined and certified, the notice is insufficient, the settlement includes an unprecedented nonconsensual sweeping waiver of the class action device, and there is ultimately a failure to produce value for most of the class, as well as any class members who claim to be injured. Independently, each of these reasons is sufficient grounds to reject the settlement. Combined, they amount to a rare situation where, for a good portion of the class, being an absent class member is worse than being a non-class member.

A common thread unites most of the shortcomings of this settlement: a failure to respect the autonomy of absent class members. This vice manifests itself in attempting to certify the class as a (b)(2) class rather than as a more suitable (b)(3) class; in proposing a class definition that would deprive certain class members of notice and opportunity to object entirely; in implementing a shoddy notice plan that omits facts material to the fairness of the proposed settlement; and in coercing absent class members into waiving their right to seek to use the class action mechanism. It would be reversible error to approve the settlement.

Section I describes Daniel Greenberg's status as a class member and thus his standing to object to the settlement.

Section II explains why the class cannot be certified under Fed. R. Civ. P. 23(b)(2). Principal authorities relied on include *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011); *Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639 (6th Cir. 2006); *Daffin v. Ford Motor Co.*, No. C-1-00-458, 2004 U.S. Dist. LEXIS 18977 (S.D. Ohio July 15, 2004); and *Bacon v. Honda of*

*Am. Mfg., Inc.*, 205 F.R.D. 466 (S.D. Ohio 2001).

Section III demonstrates that the class is improperly defined, and cannot be certified as a matter of law even as a Rule 23(b)(3) class.

Section IV discusses how even if the court were to certify the class, the settlement cannot be considered fair under Rule 23(e), and must be rejected.

Section V argues that the 23(a)(4) problems that are created when a class representative gets an incentive award, the class attorneys get paid, but the class itself receives nothing of substance, providing an additional reason to decertify the class and reject the settlement.

## I.    Objector Daniel Greenberg Is a Class Member.

Objector Daniel Greenberg's mailing address is 55 Fontenay Circle, Little Rock, Arkansas, 72223. His telephone number is (501) 821-4808. On repeated occasions since August of 2008, he has purchased Pampers with Dry Max diapers. He is therefore a member of the relevant class and has standing to object to the settlement.

Mr. Greenberg's attorney, Adam Schulman of the non-profit Center for Class Action Fairness LLC, is representing him *pro bono*, has a *pro hac vice* motion pending, and will appear at the Fairness Hearing. Mr. Greenberg does not plan to attend the Fairness Hearing. Mr. Schulman, on his behalf, does not plan to call any witnesses, but reserves the right to cross-examine any witnesses who testify in support of the settlement.

The Center, founded in 2009, represents class members *pro bono* in class actions where class counsel has acted to benefit themselves at the expense of the class; it has won millions

of dollars on behalf of class members. *See, e.g.*, Rachel M. Zahorsky, "Unsettling Advocate," ABA J. (Apr. 2010); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," AMERICAN LAWYER LIT. DAILY (Nov. 30, 2010).

It is perhaps relevant to distinguish the Center's mission from the agenda of those who are often styled "professional objectors." A number of "professional objectors" are for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. *See* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG § 3.05 comment *a* (2010) (discussing "lawyers who may seek private gain from interposing strategically motivated objections") ("*ALI Principles*"). This is not the business model of the Center, which is funded entirely through charitable donations and court-awarded attorneys' fees. The Center refuses to engage in *quid pro quo* settlements to extort attorneys, and has never settled an objection in exchange for payment.

Because the Center does not object indiscriminately, it has an excellent track record of success. In 24 cases to date where the Center has objected 25 times, courts have rejected the settlement or materially modified the settlement or fee request eleven times; on two other occasions, parties responded to the Center's objection before the fairness hearing to modify settlements to provide millions of dollars more of cash to the class. The Center has lost two objections with finality and has fifteen objections pending in trial or appellate courts (including five where its objection was upheld in part).

In short, Mr. Greenberg brings this objection through the Center in good faith to protect the interests of the class.[1]

## II.  The Class Cannot be Certified as a Mandatory 23(b)(2) Class

"In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable." *ALI Principles* § 3.05(c) (2010). The burden of proving settlement fairness rests with the moving party. *Id.; Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 16704, at *3 (S.D. Ohio Feb. 21, 2008).

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mahon*, 957 F.2d 697, 701 (9th Cir. 1992). *See also In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 757 (S.D. Ohio 2007) ("[T]he Court must zealously protect the class's interest by acting as a fiduciary for the class") (internal quotation omitted).

## A.  Monetary Claims Cannot Be Discharged in a Mandatory 23(b)(2) Class.

Within the past twenty years both the Supreme Court and the Sixth Circuit have, with

---

[1] Nevertheless, it is the experience of the Center that class counsel will often attempt to distract courts by falsely accusing the Center of being a "professional objector" that seeks to extort class counsel. If this Court has any doubt whether Mr. Greenberg is objecting in good faith, Mr. Greenberg and the Center are willing to stipulate to an injunction prohibiting them from settling this objection in exchange for a cash payment.

---

increasing frequency, suggested that 23(b)(2) class actions—which do not permit absent class members to opt-out—cannot accommodate claims for monetary relief. In 1985, when the Supreme Court pronounced in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) that absent class members have a due process right to opt-out from class actions involving predominantly money damages, the Court conspicuously left undecided the question of whether due process compelled the right of opt out in actions which did not seek primarily money damages. *Id.* at 811-12 n.3.

Since that time, all indications from the Supreme Court point to the conclusion that due process demands the right of opt out in any action containing any claim, even a non-predominant one, for monetary relief. Notably in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994), in dismissing certiorari as improvidently granted, the Court declared that there is "at least a substantial possibility" that "in actions seeking [any] monetary damages, classes can only be certified under 23(b)(3), which permits opt out." *Id.* at 121. Five years later, the Court warned again that certifying a mandatory class that includes money damages potentially compromises the Seventh Amendment and due process rights of absent class members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999).

Most significantly and most recently, the Court determined in *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011) that the "serious possibility that [the inclusion of monetary claims without a right to opt out would violate due process] provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here." *Id.* at 2559. In so concluding, the Court reasoned that

> The mere "predominance" of a proper (b)(2) injunctive claim

> does nothing to justify elimination of Rule 23(b)(3)'s procedural
> protections: It neither establishes the superiority of *class*
> adjudication over *individual* adjudication nor cures the notice and
> opt-out problems. We fail to see why the Rule should be read to
> nullify these protections whenever a plaintiff class, at its option,
> combines its monetary claims with a request—even a
> "predominating request"—for an injunction. [*Id.*]

Both *Wal-Mart* and *Ortiz* were decisions driven by the canon of constitutional avoidance. As a result, any time a class action seeks monetary relief on the basis of individualized aggregated claims, as opposed to a unitary group claim, it is best to read Rule 23 as demanding 23(b)(3) certification. The Sixth Circuit is at the forefront of courts adopting this approach. According to the Sixth Circuit, "such individual claims for money damages will always predominate over requested injunctive or declaratory relief." *Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639, 641 (6th Cir. 2006). This standard, much like the "incidental damages" standard of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), effectively harmonizes the Supreme Court's recurrent constitutional concerns with the idea that (b)(2) certifications should go forward when money damages do not "predominate."

On multiple occasions the Sixth Circuit, while striking down improperly certified classes, has remarked upon the significance of the constitutional concerns of *Ortiz* and *Ticor*. *Reeb*, 435 F.3d at 658; *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002); *In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870, 881 (6th Cir. 2000) (stating that the Supreme Court has stressed in interpreting Rule 23 that "principles of sound judicial management and constitutional considerations of due process and the right to jury trial all lead to the conclusion that in an action for money damages class members are entitled to personal notice and an opportunity to opt out."). *See also Brockman v. Barton Brands, Ltd.*, No.

3:06CV-332-H, 2007 U.S. Dist. LEXIS 86732, at *25-26 (W.D. Ky. Nov. 20, 2007); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 667-68 (Tex. 2004); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897-99 (7th Cir. 1999); Jeffrey H. Dasteel & Ronda McKaig, *What's Money Got to Do With It?: How Subjective, Ad Hoc Standards for Permitting Money Damages in Rule 23(b)(2) Injunctive Relief Classes Undermine Rule 23's Analytical Framework*, 80 TUL. L. REV. 1881, 1898-99 (2006) (presenting the constitutional problem with certifying damage claims without opt out rights). Moreover, each of the above opinions preceded *Wal-Mart,* the Supreme Court's most forceful proclamation to date.

## B.    Even If Monetary Claims Can Sometimes Be Included Where Incidental, They Predominate in This Case.

Although *Reeb* specifically holds that "individual claims for money damages will always predominate over requested injunctive or declaratory relief," the opinion does leave open the possibility that there could be non-predominating group-based claims[2] for money damages and, with approval, cites to the *Allison* incidental damages standard as a method of determining whether money damages predominate. *Reeb*, 435 F.3d at 647-50.

The predominance inquiry is made less tractable by the fact that the plaintiffs and defendants seek certification of a settlement-only class. Delaying certification until settlement poses various problems, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods.*

---

[2] It is enough to say that the damages claims here are not group-based, but are compensatory ones that accrued to individuals under state consumer protection statutes upon the purchase of goods. *See* Samuel Issacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1073 (2002) (noting "an important distinction in the nature of the claim between those that truly inhere in the collective entity of the class and those that are merely an aggregation of what might otherwise be self-sustaining individual causes of action.") For the sake of completeness, however, see *infra* § II.B.

---

*Liab. Litig.*, 55 F.3d 768, 786-800 (3d Cir. 1995), and calls for heightened judicial scrutiny of the certification. *Id.* at 807; *accord In re Bluetooth Headset Prod. Liab. Litig.*, ___ F.3d ___, No. 09-56683 (9th Cir. Aug. 19, 2011). In the context of a 23(b)(2) settlement, however, the analytical problems are all the more pronounced, because the judge must determine whether monetary or injunctive relief predominates. If this class was being certified for trial, the (b)(2) analysis would be a comparatively easy matter of two steps: (1) look to the complaint and determine whether any monetary relief sought is incidental and thus non-predominant; and (2) make sure that the class has the requisite "homogeneity of interests."[3] Alternatively, this second inquiry can be conceived of as asking whether the injunctive relief is predominant from the perspective of the class and whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[4] But because this is a settlement class, two new factors complicate the equation: (3) the actual relief obtained in the settlement; and (4) the claims released in the settlement. This Court should not certify the class if any of the above factors counsel against (b)(2) certification. Certainly, under Sixth Circuit jurisprudence, if either the complaint contains non-incidental claims for monetary damages or the class is not sufficiently homogenous, the class cannot be certified. From the perspective of due process, it is the release that is the vehicle for deprivation of an absent class member's right to sue. Thus, it stands to reason that when certifying a (b)(2) settlement class, the court should ensure that the release does not include non-incidental monetary claims. Regardless of how the Court chooses to view the predominance inquiry in

---

[3] *Reeb*, 435 F.3d at 649.

[4] Fed. R. Civ. P. 23(b)(2).

---

a settlement context, the inescapable conclusion is that monetary claims predominate.

### 1. Monetary Claims Predominate From the Perspective of the Complaint.

In their joint motion for certification and preliminary approval of settlement ("Joint Motion") (Dkt. No. 54), the settling parties correctly acknowledge that looking to the complaint can be of value in ascertaining whether injunctive or monetary claims predominate. Joint Motion at 16. Assessing the complaint is customary procedure in courts of this District, Circuit and across the nation. *E.g., Daffin v. Ford Motor Co.*, No. C-1-00-458, 2004 U.S. Dist. LEXIS 18977, at *14-15 (S.D. Ohio July 15, 2004), *aff'd*, 458 F.3d 549 (6th Cir. 2006); *Reeb* 435 F.3d at 642; *Christ v. Beneficial Corp.*, 547 F.3d 1292 (11th Cir. 2008); *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004); *Arch v. American Tobacco Co. Inc.,* 175 F.R.D. 469 (E.D. Pa. 1997). *Cf. In re Bluetooth Headset Prods. Liab. Litig.*, __ F.3d__, No. 09-56683, slip op. at 11112 n.8 (9th Cir. Aug. 19, 2011).

The settling parties derailed, however, in their conclusion that injunctive relief claims predominate. Joint Motion at 16 (citing to Consolidated Complaint ("Complaint") (Dkt. No. 25) 53-142; Prayer for Relief A-C, G). It is insufficient for purposes of (b)(2) certification that "all of Plaintiffs' claims stem from the same alleged actions." *Id.* That fact, if correct, be contributing evidence to 23(a) commonality and typicality, and a factor in whether there is 23(b)(3) predominance, but it does not help answer whether injunctive relief predominates or whether final injunctive relief is appropriate to the class as a whole. If the settling parties' approach was to analyze the Prayer for Relief and discern whether the "injunctive"[5] relief

---

[5] The scare quotes for"injunctive" are there because some of the purported injunctive relief would not be creditable in any inquiry into whether the injunctive relief was predominating.

predominated, their approach was backward. The correct approach is to pinpoint the

monetary relief and ask whether it is "incidental."[6] If it is not, then monetary relief

predominates.

Prayer for Relief D seeks medical expenses, E seeks costs of medical treatment, F

seeks damages for the worthless Pampers, and H seeks "awards of actual, compensatory,

treble, punitive and/or exemplary damages in such amount to be determined at trial and as

---

For example, Prayer for Relief A asks the court to certify the class. This does not count as "final injunctive relief" that may predominate. Nor does a declaration of unlawful conduct count toward predominating injunctive relief, when it merely sets the stage for monetary liability. *See e.g., Daffin,* 2004 U.S. Dist. LEXIS 18977, at * 15 (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1775 (2d ed. 1986)); *Powers v. Gov't Employees Ins. Co.,* 192 F.R.D. 313, 318 (S.D. Fla. 1998). *See also* Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives,* 2003 U. CHI. LEGAL F. 177, 221 (2003) ("[I]t is not uncommon to see class complaints in which the legal liability theory is simply asserted as, or converted into, a request for declaratory judgment or injunctive relief. Thus, class counsel may take a breach of contract claim and recast the class complaint as a request for a declaration from the court that the defendants have breached the contract. There are endless variations on this theme over an array of legal theories sounding in tort, contract, and statutory claims. As my colleague Professor Redish rightly suggests, the class action rule, as a procedural form or mechanism, was never intended to alter substantive law. The class action rule cannot possibly be used to modify the concepts underlying the appropriate use of the declaratory judgment action or injunctive relief.").

[6] "By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions." *Allison,* 151 F.3d at 415 (citations omitted).

---

provided by applicable law."[7] Complaint at 206. These monetary claims are definitely not incidental. *See Elkins v. Am. Showa Inc.,* 219 F.R.D. 414, 427 (S.D. Ohio 2002) (refusing to certify as a 23(b)(2) class when plaintiffs seek compensatory and punitive damages as permitted under state and federal law because such damages would not flow automatically from a finding of liability).

Even excluding any personal injury claims, the monetary claims under various state unfair and deceptive practices acts[8] are not incidental. This is because these claims are "dependent in significant way[s] on the intangible, subjective differences of each class member's circumstances." *Allison,* 151 F.3d at 415. Compensatory damages/restitution amounts vary with the individual purchase price and quantity. Statutory liquidated damages vary depending upon the geographical location of the individual purchase. Furthermore, some consumer protection statutes take into account subjective notions like individual reliance. *See Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1036 (8th Cir. 2010) (affirming denial of (b)(2) certification of unfair and deceptive practices claim because defendant's "conduct cannot be evaluated without reference to the individual circumstances of each plaintiff" such as reliance).

*Daffin* is most instructive. The complaint in that case alleged defective throttles in Mercury Villager minivans. Ms. Daffin advanced four theories of liability: "negligent design

---

[7] Arguably, Prayers for Relief D and E should be excluded from this analysis as the settlement agreement clearly permits absent class members to retain personal injury claims. Settlement Agreement VIII.A.

[8] *See* Complaint ¶¶ 197, 240, 248, 261, 271, 288, 298, 302, 311, 323, 327, 332, 337, 346, 350, 370, 374, 383, 399, 411, 417, 429,  439, 453, 459, 469, 482, 493, 507, 511, 520, 530 and all state statutes referenced therein.

and manufacture, breach of implied warranty, breach of express warranty, and violation of

the Ohio Consumer Sales Practices Act" and sought "incidental and consequential damages

on her first two causes of action (breach of implied and express warranty), compensatory

damages on her third and fourth causes of action (negligent design and manufacture), and

compensatory and treble damages on her fifth cause of action (consumer protection

statute)." *Daffin*, 2004 U.S. Dist. LEXIS 18977, at *6, *14-*15. Consequently, the court

concluded that the action was for primarily money damages and that consumer product

defect claims that seek compensatory relief are not suitable for 23(b)(2) certification. *Id.*

at *17. Here, likewise, the plaintiffs allege breach of implied warranty,[9] violation of unfair

and deceptive practices acts of many states,[10] design defect,[11] and the complaint seeks

monetary damages on all counts.[12] Monetary claims predominate in this complaint, and the

right of opt out must be preserved.

### 2.      Monetary Claims Predominate From the Perspective of the Release.

Next, a thorough (b)(2) analysis entails examining the preclusive effects that the

settling parties intend to foist upon absent class members. Samuel Isaacharoff, *Preclusion, Due

Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1068-73

(2002). Determining the preclusive effects is easier in the settlement context where the

agreement and notice should detail the scope of the precluded/released claims. Here, Section

---

[9] Complaint at 115-16.

[10] Complaint at 121-73.

[11] Complaint at 173-78.

[12] Complaint ¶¶ 178, 197, 240, 248, 261, 271, 288, 298, 302, 311, 323, 327, 332, 337, 346, 350, 370, 374, 383, 399, 411, 417, 429,  439, 453, 459, 469, 482, 493, 507, 511, 520, 530.

VIII of the settlement agreement, as well as the "Terms of Release" attachment to the notice delineate the contours of the release.

In a (b)(2) class settlement, the release should confine itself to future claims for injunctive relief, without encroaching on absent class members' rights to bring claims for non-incidental (*i.e.*, individualized) monetary relief in the future. Mandatory settlements that purport to release claims for monetary relief are, as a matter of law, not fair, reasonable or adequate. *Clarke v. Advanced Private Networks, Inc.*, 173 F.R.D. 521, 522 (D. Nev. 1997). *Cf. Austin v. Wilkerson*, 83 Fed. Appx. 24, 25 (6th Cir. 2003) (unpublished opinion) (certification of Rule 23(b)(2) bars claims for future injunctive relief) ("[Appellant's] main complaint seems to be a desire to pursue compensatory damages; he is of course not barred from seeking damages by the preclusive effect of the class action, which bars only future injunctive relief"); *see also* Isaacharoff, *supra*, at 1081 ("If the parties, particularly in the settlement context, try to cheat by compromising the ability to opt out and by short-circuiting the more exacting Rule 23(b)(3) certification standards, then they should be limited in their claim to have achieved finality.").

The settling parties in the agreement and the Terms of Release attachment did make overtures toward the importance of retaining absent class members' right to sue for monetary relief. First, they specify that the release encompasses only equitable claims. Settlement § VIII.A. Second, they include a savings clause for personal injuries and actual damages caused by or related to the product. *Id.* Ultimately, these limitations on the release are not sufficient to comport with constitutional certification of a mandatory class.

As the Supreme Court recently made clear in *Wal-Mart*, the proper division in the

(b)(2) analysis is not between "equitable" claims and "legal" remedies but between "injunctive" and "monetary" ones. *Wal-Mart*, 131 S.Ct. at 2560. A bar on future "equitable" claims bars absent class members from seeking individualized monetary relief in the form of restitution for or rescission of the transactions with Pampers.

Just as significant is the fact that the savings clause muddies the water. Through the interpretative canon of *expresio unius est exclusio alterius*, the settling parties imply that any claims against the defendant which assert neither personal injury nor actual damage from the product are relinquished.[13] Relinquishment would surely include statutory liquidated damages claims arising out of the purchase, which in some states can reach at least one hundred dollars,[14] not to mention treble and punitive damages. It would likely include claims for actual, compensatory damages of the purchase price for each unit purchased.[15] Consistent with (b)(2) and the Constitution, these non-incidental monetary claims cannot be released.

### 3. Monetary Claims Predominate from the Perspective of the Class.

Third, to certify this class under (b)(2) this Court must make sure that the class has a

---

[13] *See* Terms of Release Attachment: "Notwithstanding the definition of 'Released Claims' below, Settlement Class Members (other than Named Plaintiffs) do not release and discharge, but instead preserve, the right to file an individual lawsuit to recover for personal injury or actual damages claimed to have been caused by or related to the Pampers Dry Max products." If the "released claims" really means only equitable claims, then why include this savings clause at all?

[14] *E.g.*, Ala. Code § 8-19-10. *Compare with Shutts*, 472 U.S. at 809 ($100 average monetary claim requires opt-out).

[15] Moreover, even if these claims are retained by absent class members, it is impermissible to subject monetary claims that are not released to a class action ban. *See infra* § II.C.

---

"homogeneity of interests." *Reeb*, 435 F.3d at 649. That common interest must make appropriate the granting of final injunctive or corresponding declaratory relief. It does not. In this case there is a discontinuity between the class definition, former buyers, and the prospective injunctive relief sought in the complaint[16] and obtained in the settlement.[17] All settlement relief at most benefits future purchasers of Pampers whereas the class comprises past purchasers. 98% of children are toilet trained by three years of age.[18] Needless to say there is a large proportion of the class who no longer have any use for Pampers products. Moreover, any class member who claims injury from the Pampers product is not likely to purchase the product in the future simply because it has new labeling. Thus, the only beneficiaries of the class relief are class members who are **satisfied** with Dry Max, and wish to purchase it again in the future—*i.e.,* class members who have suffered no injury.

A wide consensus of courts have rejected past attempts at shoehorning former customers, ex-employees, or any individuals who suffered a discrete harm in the past and who no longer have an ongoing relationship into 23(b)(2) classes that offer prospective injunctive relief. *See e.g., Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 486 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004); *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010); *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 553 (5th Cir. 2003); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000); *Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221,

---

[16] Complaint, Prayer for Relief B, C.

[17] Settlement Agreement § V.

[18] Univ. of Mich. Health Sys., Toilet Training, http://www.med.umich.edu/yourchild/topics/toilet.htm

229 (S.D.N.Y. 2010); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F.Supp.2d. 177, 184 (D. Mass 2009) ("[W]eighing the relative predominance of relief sought is unnecessary where class members do not stand to benefit from the injunctive relief sought: Of course, certification under rule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief they request.")(quotation omitted). *See also Synfuel Tech. v. DHL Express*, 463 F.3d 646, 654 (7th Cir. 2006) ("The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries."). If any doubt remained, after *Wal-Mart* it cannot:

> "[E]ven though the validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*," about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all. Of course, the alternative (and logical) solution of excising plaintiffs from the class as they leave their employment may have struck the Court of Appeals as wasteful of the District Court's time." [*Wal-Mart*, 131 S.Ct. at 2560.]

Commentators too have recognized the problem of mandatory injunctive relief settlement classes that remit no benefit to the class. *See e.g.* Brian Wolfman & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729, 740 (2006) (applying their critique to all cases "where the class includes former customers who will not benefit from injunctive relief unless they choose to do business with the defendant in the future.").

Certainly, a 23(b)(2) class is appropriate when the class is comprised of individuals who maintain an ongoing relationship with the defendant. The prototypical example is a desegregation injunction in a civil rights case. *See* Advisory Committee Notes 39 F.R.D. 98, 102 (1966); *see also Daffin* 2004 U.S. Dist. LEXIS 18977, at * 16 ("23(b)(2) was plainly

designed for to address [civil rights issues] rather than products liability ones.") (citing cases). The settling parties' contention that the "injunctive relief achieved in the settlement is certain and substantial"[19] is unsound, premised on the faulty idea that class members have an ongoing relationship with the defendant. Cases which the settling parties cite as instances of approval of settlements without recovery of damages[20] confirm as much. *Smith v. Dep't of Corr Rehab. & Corr.*, No. 2:08-cv-15, 2010 U.S. Dist. LEXIS 81842 (S.D. Ohio Aug. 12, 2010) involved a class of then-currently incarcerated inmates and the relief was abatement of a hazardous condition. *Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063, 2009 U.S. Dist LEXIS 125233 (S.D. Fla. Jan. 16, 2009) similarly involved a class that had an ongoing relationship with the defendant in virtue of the fact that the defendant continued to maintain personal information of the class members. Thus, injunctive relief in the form of better practices for maintaining the privacy of that information was a benefit to the class. Other recent cases in this circuit also manifest the principle that proper (b)(2) classes must be benefitted by injunctive relief. *E.g. Shreve v. Franklin County*, No. 2:10-cv-644, 2010 U.S. Dist. LEXIS 131911 (S.D. Ohio Dec. 14, 2010) (certifying a class of incarceratees, whom would be benefited by a prospective injunction, under 23(b)(2)); *Olden v. Lafarge Corp.*, 383 F.3d 495, 510-11 (6th Cir. 2004) (allowing certification of a class of homeowners seeking an injunction against a cement company's pollution when the harm was ongoing).

The status of the class in relationship to the defendant, the type of claims at issue, and the relief sought and obtained all dictate that, if anything, this class should be certified as

---

[19] Joint Motion, at 10 n.17.

[20] Joint Motion, at 16 n.24.

a 23(b)(3) class. Rule 23(b)(3) captures the growing edge of class actions, a category which this suit falls into for several reasons. *Ortiz*, 527 U.S. at 861-62. "Individualized money damages belong in Rule 23(b)(3)." *Wal-Mart*, 131 S.Ct at 2558; *see also* Fleming James, Jr., Geoffrey C. Hazard, Jr. & John Leubsdorf, CIVIL PROCEDURE § 10.22, at 652 (5th ed. 2001) (noting that (b)(3) is commonly known as the "damages" class action).

Courts in this Circuit and beyond have generally adhered to this framework, refusing to certify similar consumer claims to the ones at issue under (b)(2) while often certifying them under (b)(3). *E.g.*, *Daffin*, 2004 U.S. Dist. LEXIS 18977 (refusing certification as a (b)(2) class but approving it as a (b)(3); *McManus*, 320 F.3d 545 (denying (b)(2) certification for a breach of implied warranty of merchantability claim). In the majority of cases, plaintiffs do not even attempt to certify such classes under (b)(2), instead seeking and winning certification under (b)(3). *E.g.*, *Cancino v. Yamaha Motor Corp., U.S.A.*, No 3:04-cv-274, 2010 U.S. Dist. LEXIS 76645 (S.D. Ohio Jun. 24, 2010); *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207 (S.D. Ohio 2003); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, No. 1:06-cv-1397, 2010 U.S. Dist. LEXIS 132034 (N.D. Ohio Dec. 14, 2010).

### 4.  Predominance Is Not a Matter of Class Counsel's Desire.

What is certain is that "Rule 23(b)(2) certainly cannot be read as requiring the court to accept the plaintiffs' ranking in importance of the various forms of relief they seek in the action." *Bacon*, 205 F.R.D. at 485. Nor can it be read to allow the class representatives' subject intentions to govern the predominance inquiry. *Daffin*, 2004 U.S. Dist. LEXIS 18977, at * 13. Professor Mullenix has noted that despite "all the high-minded rhetoric plaintiffs' and defense attorneys may attach to the virtues of opt-outs, all such principles will be

abandoned when plaintiffs' and defense interests converge on the utility of the mandatory classes." Mullenix, *supra*, at 241. That point of convergence is at the time of settlement, when the defendants seek to broaden the global peace they will attain, and the plaintiffs would prefer not to have to overcome the (b)(3) hurdles of predominance and superiority. Mullenix is not alone in this observation. *See Bolin*, 231 F.3d at 976; Wolfman and Morrison, *supra*, at 740; Thomas R. Grande, *Innovative Class Action Techniques: The Use of Rule 23(B)(2) in Consumer Class Actions*, 14 LOY. CONSUMER L. REV. 251, 253-54, 261 (2002).

The case at bar is an exemplar of Mullenix's theory. In the complaint, the plaintiffs sought certification under 23(b)(1)(A), 23(b)(1)(B), and 23(b)(3)[21]: everything other than 23(b)(2). The defendants even more vociferously asserted that the class could not be certified because of the individual factual differences that abounded (including reliance on the defendant's representations). Defendant's Motion to Strike (Dkt. No. 39). Now, however, the defendants meekly maintain that their "agreement to seek a Settlement Class under …23(b)(2) is based on the belief that any monetary damages sought by Plaintiffs… are properly viewed as merely incidental to the Injunctive Relief."[22] Class members have become the sacrificial pawn. *See* Mullenix, *supra*, at 241.

The incentives are no longer present for any of the settling parties to protect the interests of unnamed parties. The Court is the last line of defense and must conduct an independent evaluation of whether monetary relief predominates. It does not.

---

[21] Complaint ¶¶ 160-62.

[22] Settlement Agreement § III.B.

**C.      This Class Action Waiver Cannot be Included as Part of a Mandatory (b)(2) Class Release.**

Perhaps the most unique aspect of the settlement is the broad waiver of the right of absent class members to bring class actions against Proctor & Gamble.[23] Despite being labeled as a "Limited Class Action Bar," the breadth of the waiver language is startling. First, §VIII.C waives this right in suits seeking monetary relief. Neither Rule 23(b)(2) nor the constitutional rule of *Shutts* permit the waiver of a class member's ability to use the class action device when there is no right to opt out.

Secondly, the waiver covers all claims that could have been brought in state or federal court. Because of Fed. R. Civ. P. 18(a)'s rule of permissive joinder,[24] the only actual limitation on the class action waiver is a temporal one: the claim would have had to have

---

[23] Settlement Agreement § VIII.C reads in significant part: "all members of the Settlement Class are hereby permanently barred and enjoined from seeking to use the class action procedural device in any future lawsuit against Released Parties, where the lawsuit asserts Claims that were or could have been brought in State or Federal Court in this Action prior to the entry of this Final Approval Order…"

[24] "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

In anticipation that the moving parties may argue that the class action waiver is restricted to those claims that could have been brought and satisfied the requirements of 23(a) (although this makes little sense when it is doubtful that the personal injury/medical treatment claims could satisfy 23(a) and they are explicitly subject to the class action waiver), Mr. Greenberg makes these counterarguments: 1. The waiver says "could have been brought," not "could have been brought and then certified as a class claim;" 2. As a matter of fact, at the time of the settlement agreement no class had been certified; 3. It is burdensome to require absent class members to do a 23(a) analysis to determine whether their class action procedural right has been waived. However, the most decisive fact of all is that the class action waiver lacks the following limitation of the general release: claims "that relate in any way to the alleged manufacture, distribution, sale, purchase or use of Pampers with Dry Max."

---

accrued before the entry of final judgment. The settlement's definition of released parties is correlatively broad[25] and Proctor & Gamble itself is an extraordinarily large company. According to its annual report it owns 23 billion-dollar brands and is one of the 100 largest companies in the world, calculated by revenue of the 2010 fiscal year. Moreover, it has the tenth largest market capitalization of any publicly-traded US company.[26] In conjunction, these facts evince the sheer magnitude of the class action waiver.

Furthermore, the prohibition is unreasonably vague. By its terms it precludes class members from "seeking to use the class action procedural device." Nowhere is it explained whether this proscription applies only to instituting a class action as a named plaintiff, or whether it also prohibits filing a claim as an absent class member in any future class action brought against the released parties, or even whether it prohibits encouraging others from bringing a class action suit. A ban covering solicitation of class actions implicates the First Amendment prior restraint doctrine.[27] "A prior restraint is permissible if the speech poses 'a grave threat to a critical government interest or to a constitutional right.'"[28] Although reaching a satisfactory settlement is a laudable goal, it does not rise to the level of a critical government interest or a constitutional right, and does not justify an infringement on absent

---

[25] Settlement Agreement § I.EE.

[26] http://247wallst.com/page/real-time-500/ (accessed Aug. 11, 2011).

[27] *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 507 (6th Cir. 2001) ("Injunctions are indeed at the core of the prior restraint doctrine.") (internal quotation omitted).

[28] *County Sec. Agency v. The Ohio Dep't of Commerce,* 296 F.3d 477, 485 (6th Cir.2002) (quoting *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226–27 (6th Cir.1996)).

class members' rights.

Even if one assumes that the class action bar is as minimal as possible (only prohibiting bringing an action as class representatives), it is still impermissible. Certainly, freedom of contract permits a class-action waiver: freely bargaining parties can choose to accept benefits in exchange for waiving rights, notwithstanding unconscionability doctrine. *See, e.g., AT&T Mobility v. Concepcion*, 560 U.S. __ (2011); *Oblix, Inc. v. Winiecki*, 374 F. 3d 488, 491 (7th Cir. 2004); *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) ("'[O]ne who signs a contract is presumed to know its contents"). But a mandatory settlement is even more bereft of a lack of "a meaningful choice" than any so-called "contract of adhesion." No choice exists, because class members cannot opt out.

The settling parties attempt to justify this provision by pointing out two cases approving settlements which include waivers of this sort. Joint Motion, at 7 n.11. The case from this district, *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009) is inapposite. The class action restriction there was limited to lawsuits "based on, or relating to, the claims and causes of action, and/or the facts and circumstances relating thereto, in the Shareholder Actions and/or the Released Claims." *Id.* at * 47 As noted, *supra*, this type of limitation is wholly absent from VIII.C. Similarly, it appears that the court in the other case cited, *Fresco* believed that the class action waiver was limited to the Drivers Privacy Protection Act-related claims. *Fresco,* 2009 U.S. Dist. LEXIS 125233, at * 23. *Fresco*'s *ipse dixit* rejection of the objections without any analysis is not persuasive, and provides no reasoning for this Court to follow suit.

The conclusion that a mandatory class action waiver of monetary claims is improper

follows from precepts of 23(b)(2) and *Shutts*. What if, instead of eliminating the class action procedure, the provision eliminated the possibility of legal representation entirely and preserved monetary claims only if the class member litigated each claim *pro se*? Both procedural burdens are end-runs around the due process rule of *Shutts* and should not be countenanced.

## III.    The Class Definition Is Impermissibly Broad.

Fed. R. Civ. P. 23(e)(1) requires the court to direct reasonable notice of the settlement to all members of the class who would be bound by the settlement. Notice serves the function of allowing class members a sound platform for assessing the strengths and weaknesses of the case, the merits and demerits of the settlement in deciding whether to object or opt-out, when that right is available.[29] Unless each package of Dry Max Pampers contains a notice of impending class action settlement, and warns customers that by purchasing the product they will become class members, those who purchase in the time immediately before the final approval order will not receive adequate notice.

Even if somehow these late-purchasing class members learn of the settlement, the objection deadline will have passed by that time. Individuals who enter the class after the objection deadline will be deprived of their Fed. R. Civ. P. 23(e)(5) right of objection. Were this proceeding merely a class certification and litigation to final judgment under 23(b)(2), there would be no concomitant statutory right to notice or objection—but as a 23(e)

---

[29] *See* 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE, § 1787 at 220 (2d ed.1986); 2 NEWBERG ON CLASS ACTIONS, § 8.04 at 8-17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context.").

settlement, the class does have those rights and the class definition effectively obliterates that right for a substantial subclass.

A threshold requirement in any potential Rule 23 certification is that the named plaintiffs propose an identifiable, unambiguous class.[30] This means that at the very least every class definition should include at least: (1) a specification of a particular group at a particular time frame and location who were harmed in a particular way; and (2) a method of definition that allows the court to ascertain its membership.[31] These principles are violated by a class definition that has no definite end date and is only bounded by the issuance of a final approval order at an indeterminate future date.

Although two cases have approved settlements where the class period runs until final approval,[32] both did so without mentioning the Rule 23(e) problems in certifying such a class. Those courts that did analyze the issue unanimously reached the same conclusion: proposed classes with no fixed end date must be denied certification. *See Mueller v. CBS, Inc.*, 200 F.R.D. 227, 236 (W.D. Pa. 2001); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 285-86 (W.D. Mich. 2001); *In re Wal-Mart Stores, Inc.*, No. 06-02069, 2008 U.S. Dist. LEXIS 109446, at * 15-16 (N.D. Cal. May 2, 2008); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 2009 U.S. Dist. LEXIS 62817, at *3-5 (N.D. Cal. July 2, 2009); *Wike v. Vertrue, Inc.*, 2010 U.S. Dist. LEXIS

---

[30] *Foster v. D.B.S. Collection Agency,* No. 01-CV-514, 2002 WL 484500, at *3 (S.D.Ohio Mar.26, 2002) (citing *Reid v. White Motor Corp.,* 886 F.2d 1462, 1471 (6th Cir.1989)). *See also Allen v. Int'l Truck & Engine Corp.,* No. 3:07-cv-361 2011 U.S. Dist. LEXIS 79723 (S.D. Ohio July 20, 2011); *Edwards v. McCormick,* 196 F.R.D. 487, 491 (S.D. Ohio 2000).

[31] *See e.g.,* *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004).

[32] *Fresco*, 2009 U.S. Dist. LEXIS 125233; *Laichev v. JBM, Inc.*, 269 F.R.D. 633 (S.D. Ohio 2008).

---

96700 (M.D. Tenn. Sept. 15, 2010); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001).

## IV.   Even if Certifiable, This Settlement Is Not Fair.

Mr. Greenberg, *supra*, has urged this court to reject this settlement on the various grounds which demonstrate that the underlying class cannot be certified as requested. These arguments can bleed into the corollary 23(e)(2) question of whether the settlement is fair, reasonable and adequate. For instance, if final injunctive relief is not appropriate respecting the class as a whole, any settlement that offers only injunctive relief will be per se inadequate. Nonetheless, there are several independent reasons that this Court should reject the settlement under 23(e) even if it accepts that the class itself is viable.

## A.   The Injunctive Relief Does Not Justify $2.7 Million in Attorneys Fees.

The settlement agreement permits class counsel to seek, unopposed, an award of fees and costs of $2.73 million. The preferred method of calculating attorneys fees is to award a percentage of the recovery with discretion to reference the lodestar.[33] Many case awards adhere to the Ninth Circuit's 25% of the common fund benchmark.[34] With putative class counsel seeking the entire $2.73 million, to reach the appropriate ratio, the class benefit would have to be valued at $8.19 million.

---

[33] *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999), *rev'd* on other grounds, 221 F.3d 870 (6th Cir. 2000).

[34] *E.g., In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1042 (S.D. Ohio 2001) (citing the Ninth Circuit's 25% benchmark and awarding 27% plus expenses); *Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky. 2006)(25% awarded); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464 (S.D. Ohio Mar. 9, 2007) (29% awarded); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) (23% awarded).

---

It is far from obvious that the injunctive relief that this settlement offers is worth $8.19 million. The face value of the *cy pres* donation is $400,000 with a possible additional amount.[35] The label change and "consumer education" information are essentially valueless, in that they duplicate what a simple Internet search would tell any class member. Moreover, the label essentially reads as an advertisement for Pampers. Therefore, the crucial determinant is how much of a benefit the year-long prospective money-back guarantee is to the class. Given that Proctor & Gamble previously offered an equivalent money-back guarantee, it should be little trouble for them to provide to the Court data regarding the number of refunds issued annually. That would serve as a starting point estimation of the value, from there discounted to account for the fact that those future refunds will go to people who are not class members. Another more accurate alternative is to withhold judgment on the issue of fees until the refund period ends in a year, at which point there will be a concrete value.

Even in the unlikely event that P&G issues over $8 million of money-back refunds over the next year, class counsel would still not be entitled to their requested fee. That is because the award of class counsel's fee request should be contingent upon the amounts actually received by their *clients*, the class. AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG § 3.13(a) *and* comment *a* (citing cases). Because P&G requires the original receipt and the UPC code from the diaper packaging,[36] it is all but assured that

---

[35] This residue portion is very unclear from the settlement agreement § V.B.3.c.

[36] http://www.pampers.com/en_US/dry-max/diapers-satisfaction-guarantee (last accessed Aug. 26, 2011).

most of those who participate in the refund program will be future purchasers, not class members who would have to save diaper packaging for up to three years. "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries," not on how it benefits prospective customers. *Synfuel*, 463 F.3d at 654.

**B.    The Fee Agreement Includes Problematic "Clear Sailing" and "Kicker" Provisions.**

Not only does the settlement contain a "clear sailing" provision forbidding P&G from challenging the fee amount, but there is a "kicker" providing that any reduction in the fee award reverts to P&G, rather than the class. This is inappropriate; it indicates that the class attorneys have negotiated a provision to protect their fee award at the expense of potential class benefits. At a minimum, these two clauses are a warning sign of a self-serving settlement that merits justification: why was this negotiated in such a manner to make the class worse off? *In re Bluetooth*, *supra*. The settlement should be rejected unless the parties agree to modify the settlement so that any reduction in the proposed fee award reverts to either the class or to the *cy pres*.

**C.    Notice Is Inadequate in Both Content and in Manner.**

As mentioned previously, those class members who enter the class immediately preceding final judgment have virtually no way of receiving the "reasonable notice" to which they are entitled under 23(e)(1). This deficiency is exacerbated by the fact that even those who are class members as of now are not receiving "reasonable notice." The settling parties stress the idea that because this is a 23(b)(2) class, members are not entitled to 23(c)(2)(b)'s "best notice practicable." Joint Motion, at 17. While they are correct that the "best notice

practicable" is not required under 23(e)(1), notice of settlement is still subject to the constitutional constraints elucidated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).[37] There, the Court held that notice must be "reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314; *see also Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008). *Mullane* also has a content component. The notice must "reasonably convey the required information." 339 U.S. at 314. 23(e)(1)'s demand of reasonable notice echoes both the manner and content requirement of *Mullane*.

1. **Class Members are Entitled to the Attorneys Fees Petition a Reasonable Time Before the Objection Deadline.**

Under the plain language of Fed. R. Civ. P. 23(h), class counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Sec. Lit.*, 618 F.3d 988 (9th Cir. 2010). Objections are due Monday, August 29 but the legal basis and evidence for the settlement and fee request was not filed until Friday, August 26. Class counsel's argument that notice is sufficient fails to explain why this Court should disregard *Mercury Interactive*.

Mr. Greenberg was actually prejudiced. Class counsel did not file their evidence in support of their attorney fee until almost midnight on Friday, August 26, giving Mr. Greenberg only the weekend to respond with his objections to meet the Monday, August 29

---

[37] *See also* 3 William B. Rubenstein, Alba Conte and Herbert B. Newberg, Newberg on Class Actions §8:18 (4th ed. 2002) ("The court's formulation of an adequate notice procedure under Rule 23(e) is limited only by constitutional due process considerations.").

filing deadline—a schedule further complicated by Hurricane Irene. Mr. Greenberg has not

had an opportunity to scrutinize the fee submission or evidence in support of it —which

included 18 accompanying declarations and altogether amounted to over 100 pages— and

had to prepare his objection before seeing the materials that Rule 23(h) requires.[38] The

Court cannot approve the fee request because of the failure to meet Rule 23(h)

requirements.

## 2. Notice Does Not Apprise Class Members of the Total Amount of the Incentive Awards.

Rule 23(h) also applies to incentive fee award applications and confirms that the class

must be given notice of all fee applications and an opportunity to object. *In re Excess Value

Ins. Coverage Litig.*, 598 F.Supp.2d 380, 392 (S.D.N.Y. 2005); *North Star Capital Acquisitions,

LLC v. Krig*, No. 3:07-cv-264-J-32MCR, 2011 U.S. Dist. LEXIS 4596, at *14 (M.D. Fla. Jan.

10, 2011). Neither the notice nor the settlement agreement itself disclose the sum total that

will be sought in incentive awards. All that is revealed is that the award will be $1,000 "per

affected child for each plaintiff." Settlement Agreement § VI.A. With 59 named

representatives that number will likely equate to more than $100,000, in a settlement where

the class receives no monetary relief. The fact that the settlement does not wholly neglect to

---

[38] Putative class counsel seems to rely heavily on the presence of a neutral mediator. The Court should not allow this factor to override an independent assessment of the settlement. *In re Bluetooth*, *supra*, at 11117. Likewise, reliance on a slight reduction from lodestar is misplaced. *See Sobel v. Hertz*, No. 3:06-CV-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011) ("Class Counsel has requested for itself an uncontested cash award ... with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright.").

mention that there will be incentive awards sought does not salvage the propriety of the award. *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000) (affirming the denial of an incentive award while placing "significant weight" on the fact that although the notice to class members did allude to an incentive award, it did not specify the sum total of the award).

> 3. **The Identity of the Main *Cy Pres* Recipient Is Not Announced.**

Another deficiency in the notice is that the identity of the intended recipients of three-quarters of the *cy pres* money ($300,000) is not revealed. This information is pertinent for multiple reasons. In an opt-out settlement, this information preserves the right of any absent class members to distance themselves from causes or institutions that they would rather not support. In the settlement at bar, the information can underpin a valid objection if there is an abuse of the *cy pres* mechanism that is occurring. Abuses can occur, *inter alia*, when there is a conflict of interest between class counsel and the intended recipient, or when there is a geographic incongruence between the class and the *cy pres* recipient. *See e.g. Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577 (E.D. Pa. 2005). For these reasons, and because inclusion is not a taxing burden on the moving parties, reasonable notice would declare all intended *cy pres* recipients.

> 4. **The Manner of Distributing Notice is Insufficient.**

Lastly, the method of publication is meager and not "reasonably calculated, under all the circumstances, to apprise interested parties." *Mullane* 339 U.S. at 314. Mr. Greenberg acknowledges that publication notice can suffice when individual class member names, as in this case, are not readily ascertainable: indeed, that is the rule of *Mullane. Id.* at 317.

Nevertheless, that allowance does not justify the scanty publication notice offered by the settling parties here. The notice plan consists of a joint press release, a settlement website, and three links to the website: one from class counsel's webpage, one from Pampers' homepage, and one from Pampers' Facebook page. Settlement Agreement § IV.A.1-6.

Comparable mandatory class settlements, wherein members are entitled only to (e)(1) notice, do not admit of any notice plans similar to the one implemented here. *E.g.,* *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) (23(b)(2) class with 23(e)(1) notice by mail and publication in multiple newspapers); *Martin v. Caterpillar, Inc.*,  No. 07-cv-1009 2010 U.S. Dist. LEXIS 82350 (C.D. Ill. Aug. 12, 2010) (mandatory class 23(e)(1) notice requirement satisfied by individual notice where identities were ascertainable by reasonable effort, by website posting, and by publication on two occasions in newspapers); *Kanawi v. Bechtel Corp.,* No. C 06-05566 CRB 2011 U.S. Dist. LEXIS 24747 (N.D. Cal. Mar. 1, 2011) (mandatory class 23(e)(1) notice via individual notice where identities were ascertainable by reasonable effort, by website posting and by publication in four major daily newspapers). Mr. Greenberg does not object to internet only notice; after all, this is the twenty-first century and the class is composed of young parents. What he does object to is that there was no publication in online parenting websites, blogs or other sites young parents might frequent. One cannot reasonably expect most class members, busy parents,  to be looking at the website of a plaintiffs law firm or "friending" Pampers on Facebook.

Had the notice plan included publication on various other websites targeted at the proper demographic, then this notice would approach that of *In re Tableware Antitrust Litig.,*

484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (cited by Joint Motion at 17 n.26).  There, as a supplement to the settlement website, the parties effectuated notice by advertisement in national periodical (USA Today) and the internet's most trafficked website regarding wedding planning. *Id.* In another case cited by the settling parties, *Dennis v. Kellogg Co.*, No. 09-CV-1786, 2010 U.S. Dist. LEXIS 116924, at *15-17 (S.D. Cal. Oct. 14, 2010), the settlement website was supplemented by targeted publication in Parents Magazine and in on-line versions of local newspapers and television stations on 375 websites. *Id.* at *16. The settling parties' best parallel is *Kaplan v. Chertoff*, No. 06-5304, 2008 U.S. Dist. LEXIS 5082, at *39-41 (E.D. Pa. Jan. 24, 2008), but even that analogy is inapt. There, notice of the settlement was posted on certain websites, but more importantly it was provided to U.S. Customs and Immigration Service for dissemination to advocacy groups that would have frequent contact with the plaintiff class of non-citizens. Such a strategy was likely superior in reaching the demographic constituency of the class. Here, there does not exist the same rationale for neglecting publication in online or hardcopy periodicals.

## V.     *Aqua Dots* Also Requires Decertification of the Class.

Here we have a settlement where the class representatives will get approximately $100,000,[39] the attorneys will get over $2.7 million, but the class gets nothing—unless they have infants who are not toilet-trained in the future and are eligible for the prospective relief that is the only relief in this settlement. Even then, any class member who claims injury from the Pampers product is not likely to purchase the product in the future simply because it has

---

[39] The exact figure still does not appear to be revealed in the fee motion.

new labeling. Thus, the only beneficiaries of the class relief are class members who are **satisfied** with Dry Max, still have children who will continue to use diapers, and wish to purchase Dry Max again in the future—*i.e.,* class members who have suffered no injury. The main beneficiaries of this settlement are the attorneys; combined with the questionable clear-sailing and "kicker" provisions of the settlement with the questionable relief, *In re Bluetooth, supra,* there is a tremendous question of Rule 23(a)(4) adequacy: were the class representatives and counsel in this case acting in the best interests of the class, or in the best interests of class counsel?

This is especially so in this case, where the underlying suit is based on the unsupported contention that Pampers with Dry Max caused diaper rash. CPSC, *No Specific Cause Found Yet Linking Dry Max Diapers to Diaper Rash* (Sep. 2, 2010) ("Most babies exhibit diaper rash at least once in their lifetime."). Such meritless class actions are socially wasteful, and raise costs to class members, transferring wealth from consumers to attorneys; it would be inequitable to reward the attorneys responsible for this with a multi-million-dollar payday. A meritless class action brought for the benefits of class counsel against the best interests of the class fails the Rule 23(a)(4) inquiry. *In re Aqua Dots Prods. Liab. Litig.,* __ F.3d __, No. 10-3847 (7th Cir. Aug. 17, 2011). The class must be decertified.

## CONCLUSION

The foregoing objection is the longest that the Center for Class Action Fairness has ever filed, for which there is good reason. Simply put, the settlement as proposed is riddled with defects. It presupposes a certification that, consistent with Rule 23 and the

Constitution, must not be granted. The proposed class definition assures that a certain segment of the class will get neither notice nor an opportunity to object. Both the content and the form of the class notice are remarkably deficient.

The settlement itself offers virtually nothing to the class while class representatives and class counsel will be paid nearly three million dollars. Proctor & Gamble, as well, must be elated with the broad release it has obtained, one which imposes on absent class members the virtually unprecedented non-consensual waiver of the ability to use class action mechanisms. This is a rare kind of settlement in which absent class members would be unequivocally better off were they not class members at all. Approval would be a miscarriage of justice.

Dated: August 29, 2011

Respectfully submitted,

/s/ Theodore J. Froncek
Theodore J. Froncek
1208 Sycamore Street
Cincinnati, Ohio 45202
Phone: (513) 241-5670
Fax: (513) 929-3473
Email: tjfroncek@fuse.net

/s/ Adam Ezra Schulman
Adam Ezra Schulman (*pro hac vice* pending)
CENTER FOR
CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (610) 457-0856
Email: shuyande24@gmail.com

Attorneys for Daniel Greenberg

## CERTIFICATE OF SERVICE

The undersigned certifies that pursuant to the preliminary approval of the settlement I have sent via first class mail a copy of the objection to the following address:

Objections- Dry Max Pampers Notice Administrator
c/o GCG, Inc.
P.O Box 9734
Dublin, Ohio 43017-5634

In conformity with Local rule 5.2(b), I caused to be served through Notice of Electronic Filing a copy of this objection upon the following attorneys of record as indicated below:

**For the Plaintiffs:**
Timothy J Becker
Elizabeth A Peterson
J. Gordon Rudd Jr.
Zimmerman Reed PLLP
80 South Eighth Street
1100 IDS Center
Minneapolis, MN 55402

Gretchen Freeman Cappio
Gretch S. Obrist
Lynn Lincoln Sarko
Henry Williams IV
Michael D. Woerner
Keller Rohback LLP
1201 Third Avenue
Suite 3200
Seattle, WA 98101

Gary Douglas Greenwald
Mark Dudley Sampson
Keller Rohrback, LLP
3101 North Central Ave

Suite 1400
Phoenix, AZ 85012

David S Preminger
Keller Rohrback LLP
770 Broadway
Second Floor
New York City, NY 10003

Daniel E Gustafson
Gustafson Gluek PLLC
608 Second Avenue South
Suite 650
Minneapolis, MN 55402

Craig W. Hillwig
Christina Donato Saler
Kohn, Swift & Graf, P.C.
One South Broad Street
Suite 2100
Philadelphia, PA 19107

Thomas M. Mullaney
Law Offices of Thomas M. Mullaney
275 Madison Avenue
37th Floor
New York, NY 10017

Stuart E Scott
Spangenbert, Shibley & Liber, LLP
1001 Lakeside Avenue East
Suite 1700
Cleveland, OH 44114-3400

Donald S Varian, Jr.
195 S. Main Street
Suite 400
Akron, OH 44308

**For the Defendants:**
Joanne E Caruso
Baker & Hostetler LLP
555 So. Flower Street
Suite 4200
Los Angeles, CA 90071

Edward Han
Howrey & Simon
1299 Pensylvania Avenue NW
Washington, DC 20004

Brian Donald Wright
Faruki Ireland & Cox PLL - 3
500 Courthouse Plaza, SW
10 N Ludlow Street
Dayton, OH 45402-1818

I declare under penalty of perjury that the foregoing is true and correct.

*/s/Theodore J. Froncek*
  SIGNATURE

August 29, 2011
DATE