FILED
JAMES BONINI
CLERK

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

11 AUG 29 PM 2: 33

IN RE DRY MAX PAMPERS LITIGATION | NO. 1:10-CV-00301-TSB

## OBJECTIONS REGARDING PROPOSED SETTLEMENT

To The Honorable District Judge:

Comes Now Bonner Walsh, ("Objector"), and files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Attorneys' Fees, Notice of Intent to Appear, and Request to Speak at the Hearing, and would show as follows:

## I. Objector

Objector is a member of the settlement class. Objector's address, telephone number and signature are included below.

Objector intends to appear at the hearing. Objector requests that Objector be allowed to appear at the final approval hearing to talk about these objections for up to 15 minutes and to otherwise participate in the final approval hearing. Objector will not have an attorney appear for him.

## II. The fundamental disconnect between the claims and the settlement

The proposed settlement completely ignores the actual claims brought in this case. The claims were for (1) monetary damages for (2) past purchases of Pampers diapers. The settlement provides no damages or other relief whatsoever for past purchases and, instead, provides what can only charitably called a "disclosure" on diapers for *future* purchases. A comparison of the two shows that this settlement was the most convenient way for Class Counsel to maximize their fees and the Defendant to eliminate their exposure, all at the expense of class members who do not receive one thin dime for the damages alleged in the complaint.

Plaintiffs summarized their complaint as follows:

> This class action is brought by Plaintiffs ("Class Representatives") individually and on behalf of all persons in the United States who purchased or acquired (including by gift) ("Class Members") Pampers brand diapers or "Easy Ups" containing "Dry Max" technology ("Dry Max Pampers"), and *who discarded or ceased using the Dry Max Pampers because of concerns about health effects* including, but not

1

> limited to: severe rashes, blisters, welts, bleeding, oozing, chemical burns, infections, sores, scarring and/or other ailments linked to the Dry Max Pampers.

Doc. 25, ¶ 1, p. 2. The complaint clearly seeks only monetary damages for the economic loss of the use of discarded diapers. The remainder of the complaint unequivocally shows that the sole relief sought was damages and that certification was requested under every subdivision of FED. R. CIV. P. 23 (b) *except* 23 (b)(2). Yet, the settlement provides solely non-monetary relief and seeks certification under FED. R. CIV. P. 23(b)(2).

## A. The complaint

The Consolidated Class Action Complaint, Doc. 25, ("Complaint"), is clear and unequivocal regarding the requested relief. First, it seeks monetary damages for past sales, not injunctive relief for future sales. Second, it seeks certification under FED. R. CIV. P. 23 (b)(1) and (b)(3), but *not* Rule 23 (b)(2).

### 1. The claim is exclusively for damages

In addition to the introduction, Complaint ¶1, discussed above, the Complaint makes clear several times that the claim is for monetary damages for past sales. First, the definition of the nationwide and state classes all refer to:

> All persons in [the geographic territory] who purchased or acquired (including by gift) Pampers brand diapers or "Easy Ups" containing "Dry Max" technology ("Dry Max Pampers"), and who discarded or ceased using the Dry Max Pampers because of concerns about health effects including, but not limited to: severe rashes, blisters, welts, bleeding, oozing, chemical burns, infections, sores, scarring and/or other ailments linked to the Dry Max Pampers.

Complaint ¶ 151, p. 105-109. Thus, the claim was about economic losses based on the inability to use the diapers – monetary damages for past sales. Second, the alleged commonality and predominance were exclusively about monetary recovery for past sales:

> All members of the proposed Classes share a common interest in the determination of all factual and legal issues pertinent to P&G Companies' liability through the disgorgement and restitution of Dry Max Pampers revenue unjustly obtained by P&G Companies.

Complaint ¶ 154, p. 110. Again, the Complaint sought monetary damages for past sales. Third, the Counts seek exclusively monetary relief.

Importantly, the words "injunction" and "enjoin" are not in the Complaint anywhere. Not only was the primary relief sought monetary, it was the *only* relief sought. Injunctive relief was no part of the Complaint at all.

### 2. The Complaint did not seek certification under Rule 23(b)(2)

2

Given the fact that the Complaint does not request injunctive relief, it is no surprise that Plaintiffs did not request certification under the injunctive subsection of Rule 23, FED. R. CIV. P. 23 (b)(2). Instead, the Plaintiffs sought certification under every other subsection of Rule 23 (b). They sought certification under Rule 23 (b)(1). Complaint ¶ 160, p. 113. They sought certification under Rule 23 (b)(3). Complaint ¶ 156 (L), p. 112. But nowhere does the Complaint seek certification under Rule 23 (b)(2).

### B. The settlement

As shown below, the settlement relief in itself is pathetic. But it is strikingly *dissimilar* to the actual claims made in the case. The sole relief to class members comes under the title "Injunctive Relief." Settlement Agreement and Release, Doc. 54-2 ("Settlement") p. 17 – 21. Thus, there is no recovery of damages and no relief for past losses *at all.* Moreover, the sole basis for certification is the only basis omitted in the Complaint, FED. R. CIV. P. 23 (b)(2).

### C. The disconnect

The disconnect between the Complaint that the settlement is manifest:

|  | Complaint | Settlement |
|---|---|---|
| Monetary relief? | Yes | No |
| Relief for past sales? | Yes | No |
| Relief for future sales? | No | Yes |
| Injunctive relief | No | Yes |
| Certify under 23(b)(1)? | Yes | No |
| Certify under 23(b)(2)? | No | Yes |
| Certify under 23(b)(3)? | Yes | No |

As will be shown below, (1) this disconnect establishes that certification under Rule 23(b)(2) is improper and (2) releasing class members' monetary claims for past sales without any compensation for the release of those claims is improper.

Pampers was apparently concerned enough about the claims that it was willing to pay roughly $3 million to buy peace. That money goes to class counsel and the named Plaintiffs, all of whom were at the settlement table, and no money goes to the class members, who were not. This is a textbook example of an unfair class action settlement. Moreover, it violates the requirements of Rule 23 and due process.

3

### III. Objections to Class Certification

Objector objects to class certification for the following reasons.

### A. Certification under Rule 23 (b)(2) is improper

The Federal Judicial Center has said that the combination of a release of monetary damage claims and certification under Rule 23 (b)(2) is a "hot button indicator" of an unfair settlement:

> Might an emphasis on injunctive relief and proposed certification of a Rule 23(b)(2) class amount to a tactical move to avoid more stringent certification requirements and opt-out rights associated with a damages class under Rule 23(b)(3)?

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 20 (identifying this as a "hot button indicator," which the Center defines at p. 15 as a term of "potential unfairness on [its] face."). That is exactly the case here.

The Supreme Court frequently emphasizes the importance of individual notice and opt out rights when claims are wholly or predominately for money judgments. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847-48 (1999); *Phillips Petroleum Co.*, 472 U.S. at 811-12. The Court has also demonstrated growing concern regarding the certification of Rule 23 (b)(2) classes when monetary damages are implicated. *See Ortiz*, 527 U.S. at 844-48; *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994). In fact, the Supreme Court has stated that there is "at least a substantial possibility" that actions seeking monetary damages are certifiable only under (b)(3), which provides class members notice and the right to opt-out. *Ticor Title*, 511 U.S. at 121.

More recently, the Supreme Court has held that damages claims may not be certified under Rule 23 (b)(2):

> Our opinion in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (*per curiam*) expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2)]. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief. ... [The rule] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc. v. Dukes*, 2011 WL 2437013 (2011).

There can be no dispute that the claims here were primarily, indeed exclusively, for money damages. The requested monetary relief was not incidental to any injunctive

4

relief, nor will class members receive any monetary relief that is incidental to the injunction in the settlement. Under clear U.S. Supreme Court precedent, certifying the claim for monetary relief under Rule 23 (b)(2) violates the rule and due process.

**B. The settling parties have not met their burden of proof**

The settling parties bear the burden of proof that all Rule 23 (a) requirements have been met, as well as one of the subdivisions of Rule 23 (b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). The settling parties have not met their burden of proof.

## IV. Objections to the Settlement

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Settlements that take place prior to formal class certification, as was the case here, require a higher standard of fairness:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). This is the position adopted by the Third Circuit in *GM Pick-Up Litig.*, 55 F.3d at 805 ("We affirm the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified."); the Second Circuit in *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care"); and the Seventh Circuit in *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir.1987) ("*Simer* and *Weinberger* emphasize ... that when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required. We agree...."). *See also Manual for Complex Litigation* § 30.45 (3rd. ed. 1995) ("Approval under Rule 23(e) of settlements involving settlement classes ... requires closer judicial scrutiny than approval of settlements where class certification has been litigated."). No circuit has held to the contrary. Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Third Circuit agrees:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." We have explained that this "heightened standard is

5

> designed to ensure that class counsel has demonstrated sustained advocacy
> throughout the course of the proceedings and has protected the interests of
> all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted).

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### A. There is inadequate compensation to class members

For unnamed class members, there is no consideration for the release of liability for past purchases. *None.* A district court abuses its discretion if it approves a class action settlement that does not provide adequate consideration for the release of the class member claims:

> Under Rule 23(e), trial judges bear the important responsibility of
> protecting absent class members, "which is executed by the court's
> assuring that the settlement represents adequate compensation for the
> release of the class claims."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3rd Cir. 2010).

In the Class Action Fairness Act of 2005, (CAFA), Congress highlighted the very abuse that this settlement presents:

> Congress finds the following: ...
>
> **(3)** Class members often receive little or no benefit from class actions, and
> are sometimes harmed, such as where--
>
>> **(A)** counsel are awarded large fees, while leaving class members with
>> coupons *or other awards of little or no value*.

Pub.L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4 (emphasis added). The settlement here provides a benefit to Defendant – a release of class member claims. The settlement provides a benefit to Class Counsel – a whopping $2.73 million in a case that was litigated for *less than a year!* The settlement even provides a nice windfall to the class representatives, $1,000 each despite, apparently, never having to even respond to discovery requests or do anything other than agree to be a Plaintiff. Yet, the class members receive little or no consideration as a result of the settlement, but nonetheless release claims against Defendant. That is not fair, reasonable, or adequate as a matter of law. The Seventh Circuit aptly described what appears to be the case here:

> Would it be too cynical to speculate that what may be going on here is that
> class counsel wanted a settlement that would give them a generous fee and
> [the Defendant] wanted a settlement that would extinguish 1.4 million

6

claims against it at no cost to itself? The settlement that the district judge
approved sold these 1.4 million claimants down the river.

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

The Federal Judicial Center has identified that very outcome as a "hot button indicator"
of an unfair settlement:

> At times parties have attempted to release a damages remedy without
> making any correlative payment to class members ... .

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A
POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 20. "A
damages remedy" is being released here – the release of "equitable Claims." Settlement
§ VIII, p. 23-24.

A settlement where all of the monetary relief Defendants were willing to pay goes to
Class Counsel and the named Plaintiffs, with no money to the class, should cause courts
serious concern. This case is even worse than the coupon settlements that Congress was
concerned about in CAFA. In a coupon settlement class members at least have the option
of using the coupon and receiving some monetary benefit. Here the settling parties
ensured that 100% of the money Defendants were willing to pay to end this litigation
would go to the Class Counsel and the named Plaintiffs instead of the class members.

Courts routinely reject settlements that fail to provide compensation for the release of
class members' claims. For instance, in *Acosta v. Trans Union, LLC*, 243 F.R.D. 377
(C.D. Cal. 2007), the Plaintiffs had sought both injunctive and monetary relief. *Id.* at 380
("Acosta sought actual damages ... and an injunction."). Like here, the proposed
settlement provided injunctive relief. *Id.* at 382. It also released all equitable and
monetary claims. *Id.* at 383. While it provided for economic relief to some class
members, the court there focused on the fact that most class members would lose their
damages claims for no compensation:

> [O]ver two-thirds of the Settlement Class, and up to 10 million class
> members, will be completely ineligible for any economic relief under the
> Settlement. In order to avoid having their rights to recover under the
> FCRA extinguished in exchange for zero economic relief, the Settlement
> requires these class members to affirmatively opt out lest their claims be
> permanently relinquished under the Settlement's sweeping and
> indiscriminate release provisions. Moreover, those class members
> ineligible for economic relief are precisely those who are least likely to
> receive notice of the Settlement because the Settlement denies them its
> most effective notice mechanism, that of Mailed Notice.

*Id.* at 388.

The *Acosta* court rejected the settlement in that case, despite the injunctive relief, for the
same reasons this Court should reject the settlement in this case. In fact, the settlement

here is even more unfair, unreasonable, and inadequate because (1) class members lacked the right to opt out, and (2) *no* class members (other than the named Plaintiffs) receive any economic recovery. As the *Acosta* court held, the injunctive relief does not compensate for the release of the economic damage claims for past statutory violations:

> The wholesale sacrifice of those class members [who receive no economic benefits] is especially egregious because as to these individuals "only damages matter, yet all the settlement does for (to?) them is cut them off at the knees. They gain nothing, yet lose the right to the benefits of aggregation in a class." *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir.2000).

*Id.* at 388. Just as the injunctive relief for future violations was not sufficient to support the waiver of past damages in *Acosta*, the injunctive relief in this case does not support the waiver of damages here.

The Seventh Circuit in *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) also rejected a settlement that released damage claims for no compensation, despite the existence of injunctive relief. There were two main Defendants in that case, Beneficial and H&R Block. The settlement there provided injunctive relief against both Defendants to address future conduct. *Id.* at 281 ("the defendants [ ] also agreed to injunctive relief in the form of certain required disclosures to future customers"). As in *Acosta*, however, the Seventh Circuit did not consider the injunctive relief for future conduct to be consideration to support the release of damage claims for past conduct:

> For this release of potentially substantial claims against H & R Block the settlement class received no consideration. In fact the settlement class received no consideration for the release of any claims against Block.

*Id.* at 283-284.

Like those courts, this Court should reject this settlement as being unfair, unreasonable, and inadequate.

## B. The injunctive relief is inconsequential, if not insulting

Plaintiffs claimed that "Dry Max Pampers actually had the capacity to and, in many cases, did actually harm the babies." Complaint ¶3, p. 3. The injunction does not prohibit Defendant from continuing to sell Dry Max diapers. The injunction does not require Defendant to change the product to address the cause of the "harm" to the babies. The injunction does absolutely nothing to address the concern raised in the complaint that "Dry Max Pampers actually had the capacity to and, in many cases, did actually harm the babies."

Instead, the injunction merely requires Defendant to "disclose" on the label that consumers may call the Pampers 1-800 number or go to Pampers.com. Do the parties really contend that this is not something any manufacturer would want to do anyway?

8

What exactly is Defendant giving up here? Getting consumers to call Defendant or go to Defendant's website is *a marketing benefit* for Defendant.

Next the "consumer education" on the website again does nothing to address the complaint that "Dry Max Pampers actually had the capacity to and, in many cases, did actually harm the babies." Instead, the "education" is merely about what to do *after* the Dry Max Pampers cause the diaper rash, instead of addressing the underlying problem with the diapers. Moreover, the "additional relief" is an insubstantial amount of money regarding the treatment of rashes, not the study of how to ensure that Dry Max Pampers do not cause diaper rash in the first place.

In short, the claim was that "Dry Max Pampers actually had the capacity to and, in many cases, did actually harm the babies," but the injunctive relief does absolutely nothing to prevent that from happening in the future.

### C. The amount of the requested attorneys' fees is evidence that the settlement is not fair, reasonable, or adequate.

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the requested attorneys' fees are excessive. The amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate:

> The court's settlement review should include provisions for the payment of Class Counsel. In class actions whose primary objective is to recover money damages, settlements may be negotiated on the basis of a lump sum that covers both class claims and attorney fees. Although there is no bar to such arrangements, the simultaneous negotiation of class relief and attorney fees creates a potential conflict … The judge can condition approval of the settlement on a separate review of the proposed attorneys' compensation.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335. The requested fees here are excessive, as shown below. Moreover, the fact that the attorneys grabbed for themselves virtually all of the money Defendant was willing to pay to settle the case is a clear indication that they sold out the class members for their own financial gain.

### D. The settling parties have not met their burden of proof

Objector objects to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate. The burden of proof is on the settlement parties, not objectors:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.'

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322.

## V. Objections to an Award of Attorneys' fees

Objector objects to the request for attorneys' fees for the following reasons.

### A. The Court improperly set an objections deadline only one business day after the due date for the fee application

Rule 23 requires district courts to give class members a full and fair opportunity to contest class counsel's fee motion:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, *for motions by class counsel, directed to class members in a reasonable manner*.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52 (a).

FED. R. CIV. P. 23 (h)(emphasis added). Respectfully, this Court failed to direct class counsel's motion for fees to class members in a reasonable manner because it set an objection deadline *one business day after* the due date for the fee request. *See*, Doc. 56 (setting an objection deadline of Monday August 29, 2011 and a Friday August 26, 2011 deadline for the filing of the fee motion). That is *per se* an unreasonable amount of time for a fee request of $2.73 million.

A recent Ninth Circuit case reversed a district court for failing to give class members adequate time to review and object to class counsel's fee request:

> The plain text of the rule requires that any class member be allowed an opportunity to object to the fee "motion" itself, not merely to the preliminary notice that such a motion will be filed.

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993-994 (9th Cir. 2010). That Court went on to explain that the intent of the rule was to ensure that class members have sufficient time to review the motion and supporting documentation:

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this reading of the rule. They elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, ¶ 68. The

10

> Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." *Id.* ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.

*Id.* at 994. Finally, the Ninth Circuit noted that commentators agree that class members should be given sufficient opportunity to review and challenge class counsel's fee request:

> Commentators also agree with this logical interpretation of the rule. For example, Moore's Federal Practice counsels that "[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009). Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee.

*Id.*

Importantly, a district court is required to give class members a full and fair opportunity to contest class counsel's fee motion.

> Included in [the district court's] fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests. When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class.

*Id.* at 995. The Ninth Circuit case is on point and reversed the district court for using the very procedure followed here:

> We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion. Moreover, the practice borders on a denial of due process because it deprives objecting class members of a full and fair opportunity to contest class counsel's fee motion.

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993 (9th Cir. 2010).

### B. The abysmal recovery here does not justify the fee

11

As shown above, Class Counsel brought a claim to recover monetary damages for class members. They achieved 0% of their goal. Stated another way, their result was a 100% failure. That they would even request $2.73 million for their utter and complete failure in obtaining the relief they sought in the Complaint is exactly why commentators and the public have such a dim view of class actions.

Had the settlement not included such an exorbitant fee, perhaps the Defendant would have provided some real relief to class members. Class Counsel may claim that fees are not coming from the benefits being provided to the class. In reality, the fees are, because Defendant was willing to pay that money to settle the case, and if Class Counsel had not grabbed it for themselves, then the money could have been used to benefit class members.

But more importantly, such an argument would shine a light on how this is an unfair, unreasonable and inadequate settlement. The fees are not coming from money to be paid to class members, *because there is no money to be paid to class members*. In other words, the justification for the fee would is that there is no money going to class members, rewarding Class Counsel for failing to obtain monetary relief for the class. Acceptance of such an argument would give Class Counsel an incentive to do exactly what was done here – deny any monetary benefit to the class members.

## VI. Prayer

Regarding the proposed class settlement, the Court is limited to a single decision: approve or disapprove the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986). The Court may not amend the settlement. *Id.* Thus, Objector prays that the Court disapprove the settlement and deny the motion to certify.

If the Court nevertheless approves the settlement, Objector prays that the Court deny the requested fees to Class Counsel.

Objector further prays that the Court grant Objector such other and further relief as to which Objector may be entitled

## VII. Declaration of class membership

By my signature below, I state as follows:

> I declare under penalty of perjury under the laws of the United States of America that I purchased, in Texas, Pampers brand diapers containing "Dry Max Technology" at least once after August 2008 but before August 1, 2011. Some of those Dry Max Pampers diapers were discarded because of concerns about health effects.

12

Signed on August 26, 2011 in Athens Texas.

Bonner C. Walsh
904 Mission Avenue
Bonner.walsh@mac.com
903-780-1155

### Certificate of Service

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record as well as the Court on August, 26, 2011 as follows:

**CERTIFIED MAIL, Return Receipt Requested**
**No. 70091680000145513738 and REGULAR MAIL**
**Objections - Dry Max Pampers**
**Notice Administrator**
Dry Max Pampers Notice Administrator
c/o GCG, Inc.
P.O. Box 9734
Dublin, OH 43017-5634

**FEDERAL EXPRESS**
**Court**
Office of the Clerk
Potter Stewart U.S. Courthouse
Room 103
100 East Fifth Street
Cincinnati, OH 45202

**FEDERAL EXPRESS**
**and REGULAR MAIL**
**Lead Class Counsel**
Lynn Lincoln Sarko
Gretchen Freeman Cappio
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

13

**FEDERAL EXPRESS**
**and REGULAR MAIL**
**Procter & Gamble's Counsel**
D. Jeffrey Ireland
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202

Bonner Walsh