IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE DRY MAX PAMPERS LITIGATION | : | CASE NO. 1:10-cv-00301 TSB |
| | : | (Judge Timothy S. Black) |
| | : | **JOINT MOTION OF PLAINTIFFS AND DEFENDANTS FOR FINAL APPROVAL OF SETTLEMENT** |
| | : | |

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs[1] and Defendants The Procter & Gamble Company, The Procter & Gamble Paper Products Company and The Procter & Gamble Distributing LLC (collectively "Procter & Gamble") jointly move this Court for final approval of the Settlement.  After diligent investigation and hard-fought litigation, the Settlement achieves significant benefits for the Settlement Class.

The Settlement reinstates the money-back guarantee program for unsatisfied customers, changes the Dry Max Pampers label, disseminates health information on Pampers' website and funds pediatric residency training programs in the area of skin health.  In exchange, Settlement Class Members have agreed to a limited release of equitable Claims and preserved

---

[1] Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Brandy Bishop, Nicholas Bishop, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Holly Codner, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Frank Lawson, Amy Lock, Mariah MaLoon, Nicole Majchrzak, Morgan Maue, Robin York, Jeni McAllister, Maria McMahon, Eugenia Nunn, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Erin Ruopp, Lisa Saacks, Diane Samelson, Elvira Scarbro, Keith Scarbro, Adona Schank, Asia Southard, Suzy Sullivan, Felicia Robertson Tatum, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe and Amy Young (collectively "Plaintiffs").

their right to bring individual lawsuits for personal injury or actual damages, subject to the prohibition of utilizing the class action procedural device for the second time in this matter.

After fully considering the difficulties associated with this litigation, including the likelihood of ultimate success on the merits and the risks, expense and delay of further litigation, Plaintiffs and Procter & Gamble negotiated a Settlement that achieves significant benefits for the Settlement Class. This Settlement was difficult to achieve -- reached only after a lengthy and arm's-length negotiation with the assistance of a mediator, a former federal judge who has vast experience in complex class-action litigation. This Settlement satisfies the requirements for final approval under Federal Rule of Civil Procedure 23(a)(b)(2) and (e), and should be approved by this Court.[2]

---

[2] A proposed Order is attached as Exhibit 1 and will be separately emailed to the Court in accordance with S.D. Ohio Electronic Filing Policies and Procedures Manual Section II.E.2.

Respectfully submitted,

/s/ Gary D. Greenwald (per authorization)
Gary D. Greenwald, Trial Attorney
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

Trial Attorney for Plaintiffs


/s/ Lynn Lincoln Sarko (per authorization)
Lynn Lincoln Sarko
Michael D. Woerner
Gretchen Freeman Cappio
Gretchen S. Obrist
Harry Williams IV
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY  10003

Mark D. Samson
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

Lead Class Counsel

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland  (0010443), Trial Attorney
Brian D. Wright (0075359)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3749
Email:  djireland@ficlaw.com

Attorneys for Defendants
The Procter & Gamble Company,
The Procter & Gamble Paper Products
Company and The Procter & Gamble
Distributing LLC

**TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY ........................................................................... 1

II. BACKGROUND OF LITIGATION AND SUMMARY OF BENEFITS IN
    SETTLEMENT AGREEMENT ............................................................................. 5

    A.  The Parties Reached a Settlement After Significant, Contentious Litigation ......... 5

    B.  The Settlement Provides Substantial Benefits to Settlement Class
        Members ........................................................................................................... 8

III. A SETTLEMENT CLASS SHOULD BE CERTIFIED .................................................. 11

    A.  Rule 23(a) Requirements Are Satisfied for Purposes of Certifying a
        Settlement Class ............................................................................................... 12

        1.  Numerosity is Satisfied ............................................................................. 12

        2.  Commonality is Satisfied ........................................................................... 13

        3.  Typicality is Satisfied ............................................................................... 13

        4.  Adequacy is Satisfied ............................................................................... 14

    B.  The Settlement Class Meets the Requirements of Rule 23(b)(2) ........................ 15

IV. THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ............................. 17

    A.  The Likelihood of Ultimate Success on the Merits Balanced Against the
        Amount and Form of Relief Offered Supports Approval of the Settlement ......... 18

    B.  The Risks, Expense and Delay of Further Litigation All Support Approval
        of the Settlement .............................................................................................. 20

    C.  The Stage of Proceedings and Amount of Discovery Support Approval of
        the Settlement .................................................................................................. 22

    D.  The Judgment of Experienced Counsel Who Have Competently Evaluated
        the Strength of the Case Supports Approval of the Settlement .......................... 24

    E.  The Nature of the Negotiations Supports Approval of the Settlement ................. 24

    F.  Objections from Only Three Settlement Class Members Show Strong
        Support for Settlement Approval ....................................................................... 25

    G.  The Settlement Is Consistent With the Public Interest ...................................... 27

V.      THE FEW OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED ........................................................................................... 27

      A.     The Class Can and Should Be Certified as a Rule 23(b)(2) Class ........................ 28

      1.     As Part of the Bargained for Exchange in the Settlement, Class Members Agreed Not to File Another, Similar Class Action ................................................ 36

      B.     The Class Definition is Appropriate ...................................................... 39

      C.     Notice is More than Adequate .............................................................. 40

VI.     CONCLUSION .......................................................................................... 45

# TABLE OF AUTHORITIES

Page(s)

I.    CASES

Alaniz v. Saginaw County, No. 05-10323, 2009 U.S. Dist. LEXIS 43340
    (E.D. Mich. May 21, 2009) .........................................................................16

Allen v. Int'l Truck & Engine Corp., 358 F.3d 469 (7th Cir. 2004) ...............................32

In re Am. Med. Sys., 75 F.3d 1069 (6th Cir. 1996)................................................ 12, 13-14

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231 (1997)..................11, 12

In re Apple Inc. Secs. Litig., No. 5:06-CV-05208, 2011 U.S. Dist.
    LEXIS 52685 (N.D. Cal. May 17, 2011)...............................................................26

Arch v. Am. Tobacco Co. Inc., 175 F.R.D. 469 (E.D. Pa. 1997) .....................................29

Aro Corp. v. Allied Witan Co., 531 F.2d 1368 (6th Cir.), cert. denied,
    429 U.S. 862, 97 S. Ct. 165, 50 L. Ed. 2d 140 (1976)..................................................27

In re Art Materials Antitrust Litig., 100 F.R.D. 367 (N.D. Ohio 1983) ................20, 24, 26

Ass'n for Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457
    (S.D. Fla. 2002)........................................................................................34, 38

Austin v. Wilkinson, 83 Fed. Appx. 24 (6th Cir. 2003) ......................................16, 35, 38

In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164
    (S.D.N.Y. 2000)..............................................................................................21

Ayers v. Haley Barbour, 358 F.3d 356 (5th Cir. 2004) .....................................................21

Baby Neal for & by Kanter v. Casey, 43 F.3d 48 (3d Cir. 1994).....................................15

Bailey v. AK Steel Corp., No, 1:06-CV-468 2008 U.S. Dist. LEXIS
    16704 (S.D. Ohio Feb. 21, 2008), aff'd, 320 Fed. Appx. 364
    (6th Cir. 2009).......................................................................... 17-19, 24, 26

In re Baldwin-United Corp., 770 F.2d 328 (2d Cir. 1985) ...............................................31

Bert v. AK Steel Corp., No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711
    (S.D. Ohio Oct. 23, 2008)...................................................................................17

Blaz v. Belfer, 368 F.3d 501 (5th Cir.), cert. denied, 543 U.S. 874, 125 S. Ct. 97 (2004)....................................................................................38

In Re Bluetooth Headset Prod. Liab. Litig., No. 09-56683, 2011 U.S. App. LEXIS 17224 (9th Cir. Aug. 19, 2011) ..............................................29-30

Bronson v. Bd. of Educ., 604 F. Supp. 68 (S.D. Ohio 1984)............................................24

Brotherton v. Cleveland, 141 F. Supp. 2d 894 (S.D. Ohio 2001)...............................25-26

Brown v. Ticor Title Ins. Co., 982 F.2d 386 (9th Cir. 1992)............................................34

Byrd v. Brandeburg, 922 F. Supp. 60 (N.D. Ohio 1996)..................................................31

In re Cardizem CD Antitrust Litig., 218 F.R.D. 508 (E.D. Mich. 2003)..........................27

Christ v. Beneficial Corp., 547 F.3d 1292 (11th Cir. 2008) .............................................29

City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974)........................................19

Claybrooks v. Primus Auto. Fin. Serv. Inc., No. 3:02-0382, 2005 U.S. Dist. LEXIS 12358 (M.D. Tenn. January 18, 2005) ............................................34

Coleman v. HMAC, 296 F.3d 443 (6th Cir. 2002) ...........................................................38

In re Corrugated Container Antitrust Litig., 643 F.2d 195 (5th Cir. 1981) ......................31

Daffin v. Ford Motor Co., No. C-1-00-458, 2004 U.S. Dist. LEXIS 18977 (S.D. Ohio July 15, 2004) .............................................................................29, 33

DeHoyos v. Allstate Corp., 240 F.R.D. 269 (W.D. Tex. 2007)...................................41, 43

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 100 S. Ct. 1166 (1980) .....................38

Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546 (D.N.J. 2010) .................................26

In re Diet Drugs Prod. Liab. Litig., No. 99-20593, 2000 U.S. Dist. LEXIS 12275 (E.D. Pa. Aug. 28, 2000)..............................................................30-31

Dillard v. City of Foley, 926 F. Supp. 1053 (M.D. Ala. 1995) ...................................41-42

In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366 (S.D. Ohio 1990).......................................................................................24, 27

Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240 (S.D. Ohio 1991).....................................................................................3-4, 27-28

Franks v. Kroger Co., 649 F.2d 1216 (6th Cir. 1981).......................................................17

Fresco v. Auto Data Directions, Inc., No. 03-CIV-61063, 2009
    U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) ...........................15, 17, 35, 37, 40

Fussell v. Wilkinson, No. 1:03-CV-704, 2005 U.S. Dist. LEXIS
    30984 (S.D. Ohio Nov. 22, 2005)........................................................................ 27-28

In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075 (6th Cir. 1984).........................18

Gottlieb v. Wiles, 11 F.3d 1004 (10th Cir. 1993) ..............................................................43

Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203 (6th Cir. 1992) ..................................27

Huguley v. Gen. Motors Corp., No. 89-2172, 1991 U.S. App. LEXIS 2993
    (6th Cir. Feb. 22, 1991 ...................................................................................17

In re Initial Public Offering Secs. Litig., 728 F. Supp. 2d 289 (S.D.N.Y. 2010) .............26

Int'l Union v. Gen. Motors Corp., 497 F.3d 615 (6th Cir. 2007) ......................................41

IUE-CWA v. Gen. Motors Corp., 238 F.R.D. 583 (E.D. Mich. 2006)..............................17

Johnson v. W. Suburban Bank, 225 F.3d 366 (3d Cir. 2000), cert. denied,
    531 U.S. 1145, 121 Sect. 1081 (2001) ..........................................................................38

Kaplan v. Chertoff, No. 06-5304, 2008 U.S. Dist. LEXIS 5082
    (E.D. Pa. Jan. 24, 2008) ....................................................................................44

Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496 (E.D. Mich. 2000)....................22, 24

Koz v. Kellogg Co., No. 09-cv-1786, 2010 U.S. Dist. LEXIS 116924
    (S.D. Cal. Oct. 14, 2010) ................................................................................ 44

Laichev v. JBM, Inc., 269 F.R.D. 633 (S.D. Ohio, 2004) ................................................ 40

Leonhardt v. Arvin Meritor, Inc., 581 F. Supp. 2d 818, 831 (E.D. Mich. 2008)...............18

Levell v. Monsanto Research Corp., 191 F.R.D. 543 (S.D. Ohio 2000) ..........................22

Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................12

Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766 (N.D. Ohio 2010) ......................26

McGee v. E. Ohio Gas Co., 200 F.R.D. 382 (S.D. Ohio 2001)..........................................40

Meacham v. Wing, 227 F.R.D. 232 (S.D.N.Y. 2005)....................................................44

Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781 (7th Cir. 2004)..........................................44

Montgomery v. Aetna Plywood, Inc., 231 F.3d 399 (7th Cir. 2000)................................42

In re Nationwide Fin. Servs. Litig., No. 2:08-CV-00249, 2009
     U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009) ................................. 18-21, 37

New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.,
     234 F.R.D. 627 (W.D. Ky. 2006)..........................................................................28

In re New Motor Vehicles Canadian Export Antitrust Litig., MDL Docket
     No. 1532, 2011 U.S. Dist. LEXIS 40843 (D. Me. Apr. 13, 2011) .............................26

Olden v. Gardner, 294 Fed. Appx. 210 (6th Cir. 2008)....................................................25

Olden v. LaFarge Corp., 383 F.3d 495 (6th Cir. 2004), cert. denied, 545 U.S.
     1152, 1255 S. Ct. 2990 (2005)................................................................16, 33

Pella Corp. v. Saltzman, 606 F.3d 391 (7th Cir. 2010)......................................................32

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283
     (3d Cir. 1998)................................................................................................19

Reeb v. Ohio Dep't of Rehab. and Corr., 435 F.3d 639 (6th Cir. 2006)................. 16, 31-32

Robinson v. Ford Motor Co., Nos. 1:04-CV-00844, 1:04-CV-00845,
     2005 U.S. Dist. LEXIS 11673 (S.D. Ohio June 15, 2005) ..........................................26

Senter v. Gen. Motors Corp., 532 F.2d 511 (6th Cir. 1976)..............................................12

Smith v. Ohio Dep't of Rehab. & Corr., No. 2:08-cv-15, 2010 U.S. Dist.
     LEXIS 81842 (S.D. Ohio Aug. 12, 2010) ...................................15, 16, 30, 35

Stewart v. Rubin, 948 F. Supp 1077 (D. D.C. 1996).........................................34

Yong Soon Oh v. AT&T Corp, 225 F.R.D. 142 (D.N.J. 2004).........................................31

In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................... 43-44

In re Telectronics Pacing Sys., Inc., 137 F. Supp. 2d 985
     (S.D. Ohio 2001)..........................................................17, 19, 20, 22, 24, 27

UAW v. Gen. Motors Corp., 497 F.3d 615 (6th Cir. 2007) ...............................................18

UAW v. Gen. Motors Corp., No. 05-CV-73991, 2006 U.S. Dist. LEXIS
14890 (E.D. Mich. 2006), aff'd, 497 F.3d 615 (6th Cir. 2007)....................... 19, 24-25

Wal-Mart v. Dukes, 564 U.S. ___ (2011) ...................................................................13, 34

In re Warner Commc'ns Sec. Litig.., 618 F. Supp. 735 (S.D.N.Y. 1985),
aff'd, 798 F.2d 35 (2d Cir. 1986) ...........................................................................23

Wess v. Storey, No. 2:08-cv-623, 2011 U.S. Dist. LEXIS 41050 (S.D. Ohio
Apr. 14, 2011) .........................................................................................................11

Whitford v. First Nationwide Bank, 147 F.R.D. 135 (W.D. Ky. 1992) ....................17, 31

Williams v. Vukovich, 720 F.2d 909 (6th Cir. 1983)........................................................24

## II.     RULES

Fed. R. Civ. P. 23 ......................................................................................................11, 38

Fed. R. Civ. P. 23(a) ...................................................................................11-12, 15-16, 33

Fed. R. Civ. P. 23(a)(b)(2) and (e)...............................................................................4, 45

Fed. R. Civ. P. 23(a)(1)....................................................................................................12

Fed. R. Civ. P. 23(a)(2)................................................................................................... 13

Fed. R. Civ. P. 23(a)(3)................................................................................................ 13-14

Fed. R. Civ. P. 23(a)(4)....................................................................................................14

Fed. R. Civ. P. 23(b) ..................................................................................................11, 30

Fed. R. Civ. P. 23(b)(1).............................................................................................11, 30

Fed. R. Civ. P. 23(b)(2).................................................8, 11, 15-18, 28-35, 40-41, 43

Fed. R. Civ. P. 23(b)(3).................................................................15-16,  30-32, 41

Fed. R. Civ. P. 23(c)(2).....................................................................................................41

Fed. R. Civ. P. 23(e) ................................................................................................... 41-44

Fed. R. Civ. P. 23(e)(1) .............................................................................41, 43

Fed. R. Civ. P. 26(a)(1) ......................................................................................6

### III.    MISCELLANEOUS

2 Herbert Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 11.48
    (3d ed. 1993) ...............................................................................................26

7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, <u>Federal Practice
    and Procedure</u> 2d § 1775 ....................................................................16, 33

**MEMORANDUM IN SUPPORT OF JOINT MOTION OF PLAINTIFFS AND
DEFENDANTS FOR FINAL APPROVAL OF SETTLEMENT**

I.        INTRODUCTION AND SUMMARY

After conducting arm's-length negotiations and engaging in multiple mediation

sessions with the assistance of an experienced mediator who is a former U.S. District Court

judge, Plaintiffs[1] and Defendants The Procter & Gamble Company, The Procter & Gamble Paper

Products Company and The Procter & Gamble Distributing LLC (collectively "Procter &

Gamble") reached a fair, reasonable and adequate settlement in this Action, which resolves all

related cases that have been transferred to and consolidated in this Action.[2] Plaintiffs and Procter

& Gamble have negotiated a creative nationwide Settlement that provides substantial benefits to

Settlement Class Members, and is uniquely attuned to the issues addressed by the litigation.[3]

---

[1] Angela Clark, Kenneth Clark, Kelly Adams, Kristina Atwood, Chasitie Ayers-Porter, Crissy Beach, Amber Beck, Ryan Berman, Stacie Berman, Brandy Bishop, Nicholas Bishop, Meredith Bottar, Melanie Braun, Gina Brown, Whitney Caldwell, Holly Codner, Amanda Converse, Shannon D'Andrea, Angelina Davenport, Robert Davenport, Darcel Darscheid, Brandon Ehrhart, Jessica Ehrhart, Gayle Hironimus, Brandon Hulse, Victoria Katona, Frank Lawson, Amy Lock, Mariah MaLoon, Nicole Majchrzak, Morgan Maue, Robin York, Jeni McAllister, Maria McMahon, Eugenia Nunn, Natalie Papailiou, Cassie Raether, Stephanie Rios, Jodi Robins, Jennifer Robinson, Leah Robison, Alexandra Rosenbaum, Erin Ruopp, Lisa Saacks, Diane Samelson, Elvira Scarbro, Keith Scarbro, Adona Schank, Asia Southard, Suzy Sullivan, Felicia Robertson Tatum, Nicole A. Tepper, John Walker, Karina Walker, Emily Weaver, Ryan Weaver, Brigette Wolfe, Joseph Wolfe and Amy Young (collectively "Plaintiffs").

[2] The Settlement includes the following:  (1) Clark v. Procter & Gamble,  No. 1:10-cv-00301 (S.D. Ohio) (filed May 11, 2010); (2) Maloon v. Procter & Gamble, No. 1:10-cv-00307 (S.D. Ohio) (filed May 13, 2010); (3) York v. Procter & Gamble, No. 1:10-cv-00304 (S.D. Ohio) (filed May 13, 2010); (4) Robins v. Procter & Gamble, 1:10-cv-00332 (S.D. Ohio) (filed May 23, 2010); (5) Berman v. Procter & Gamble, 2:10-cv-12179 (E.D. Mich.) (filed June 2, 2010); (6) D'Andrea v. Procter & Gamble, 1:2010cv00471 (filed June 4, 2010); (7) Bishop v. Procter & Gamble, 1:2011cv00054 (S.D. Ohio) (filed June 7, 2010); (8) Tatum v. Procter & Gamble, 1:2011cv00215 (S.D. Ohio) (filed June 23, 2010); (9) Tepper v. Procter & Gamble, No. 1:10-cv-00420 (S.D. Ohio) (filed June 25, 2010); (10) Rosenbaum v. Procter & Gamble, No. 1:10-cv-00563 (S.D. Ohio) (filed August 20, 2010); (11) Lawson v. Procter & Gamble, 1:10-cv-0074 (S.D. Ohio) (filed Oct. 22, 2010); and (12) Nunn v. Procter & Gamble, 1:10-cv-00795 (S.D. Ohio) (filed Nov. 12, 2010).

[3] All capitalized terms not defined in this Memorandum shall have the same meaning as set forth in the Settlement Agreement, filed May 27, 2011.

The Settlement reinstates and extends a money-back guarantee program for unsatisfied consumers (including Settlement Class Members who purchased the product during the class period); changes the Dry Max Pampers product label to provide guidance to consumers; disseminates important health information on the Pampers website that is directed to the issues addressed in this litigation; and funds a pediatric residency training in babies' skin health. In exchange, Settlement Class Members have agreed to release only equitable Claims. Settlement Class Members (other than Named Plaintiffs) have preserved expressly for themselves the right to bring individual claims for personal injury and actual damages.

Given the relief agreed to in this Settlement and the limited release provided by Settlement Class Members, this Settlement is a remarkably good resolution, especially considering the risks of going forward with this Action. This matter has been hard-fought. Plaintiffs conducted an investigation (that included documents and information provided by Procter & Gamble, as ordered by this Court).[4] Lead Class Counsel performed a diligent investigation into the facts alleged in this case, which involved extensive consultation with experts, as well as being in touch with over 700 parents whose babies were allegedly affected.[5] Lead Class Counsel also coordinated and directed numerous scientific experiments related to the diapers. Plaintiffs filed a lengthy and detailed Consolidated Complaint.[6] The Parties battled about discovery (with Procter & Gamble filing a motion related to the phasing and sequencing of

---

[4] Preliminary Calendar Order [Doc. No. 20].

[5] Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Representative Plaintiff Award Payments [Doc. No. 57], p. 8.

[6] Consolidated Class Action Complaint ("Consolidated Complaint") [Doc. No. 25].

discovery).[7] Procter & Gamble filed Motions seeking to strike the class action allegations and to dismiss all of the claims asserted in the Consolidated Complaint.[8]

There are significant risks to claims of the Settlement Class Members, if this matter is not resolved at this time. While the Parties' views on their respective chances of success differ, Plaintiffs' claims may not survive the pending Motions to Dismiss and to Strike. Even if all or some of the claims survive the Motions, Plaintiffs may not be able to certify a litigation class in this case. Furthermore, even if certified for purposes of litigation (and Procter & Gamble believes that it will not be), Settlement Class Members could lose all claims on summary judgment or at a trial on the merits of this matter. After investigating consumer complaints, some of which were made by Plaintiffs and scientific data, two independent regulatory bodies, the Consumer Product Safety Commission ("CPSC") and Health Canada, announced on September 2, 2010 that they had identified no specific cause linking Dry Max Pampers to diaper rash.[9]

The Settlement has been well-received by the Settlement Class Members. While the number of Settlement Class Members is likely in the hundreds of thousands, only three have objected to the Settlement (two of them coming from professional-type objectors). The objectors wholly fail to meet their heavy burden to prove the settlement is unreasonable. ("Once

---

[7] Motion to Phase and Sequence Discovery [Doc. No. 28].

[8] Motion to Strike the Class Allegations ("Motion to Strike") [Doc. No. 39] and Motion to Dismiss the Consolidated Class Action Complaint ("Motion to Dismiss") [Doc. No. 40].

[9] U.S. safety agency looking into P&G's new Pampers, May 5, 2010 (available at http://www.reuters.com/article/2010/05/05/us-procter-pampers-idUSTRE6444RW20100505) (last visited September 1, 2011); Information on [Health Canada] Investigation into Pampers Dry Max Diapers, May 2, 2010 (http://www.hc-sc.gc.ca/ahc-asc/media/advisories-avis/_2010/2010_68-eng.php) (last visited September 1, 2011).

preliminary approval has been granted, a settlement is presumptively reasonable and an objector must overcome a heavy burden to prove that the settlement is unreasonable." Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 246 (S.D. Ohio 1991) (citations omitted).  Importantly, the objectors ignore inherent difficulties associated with this case (including the likelihood of success on the merits, the complexity of discovery and motion practice, and the expense and likely duration of this litigation) and unfairly minimize and misconstrue key components of a Settlement, which provides substantial benefits to the Settlement Class.

On June 7, 2011, this Court "considered the terms of the Settlement Agreement in light of the issues presented by the pleadings, the record in this case, the complexity of the proceedings, the absence of any evidence of collusion between Plaintiffs and Procter & Gamble" and was "preliminarily satisfied that the Settlement Agreement is fair, reasonable and consistent with applicable laws."[10]  This Court was correct when it preliminarily approved this Settlement in June 2011, and the Settlement remains fair, reasonable and consistent with applicable laws.  The Settlement satisfies the requirements for final approval under Federal Rule of Civil Procedure 23(a)(b)(2) and (e), and this Court should grant final approval of the Settlement.

---

[10] June 7, 2011 Order Preliminarily Approving Class Action Settlement [Doc. No. 55], p. 2.

II.       BACKGROUND OF LITIGATION AND SUMMARY OF BENEFITS IN
          SETTLEMENT AGREEMENT

          A.       The Parties Reached a Settlement After Significant, Contentious
                   Litigation

          This Settlement resolves all aspects of the Action brought against Procter &

Gamble shortly after the CPSC and Health Canada announced investigations on May 5, 2010.[11]

Plaintiffs filed the first of several complaints on May 11, 2010, asserting claims against Procter

& Gamble of behalf of "all purchasers" of Pampers brand diapers.[12]  Eventually, twelve class

action lawsuits were filed against Procter & Gamble, and all were consolidated before this Court

as In Re Dry Max Pampers Litigation, Case No. 1:10-cv-00301.[13]

          These cases were settled only after hard-fought and contentious litigation.  The

Parties participated in "informal . . . core discovery," as ordered by the Court.  On July 20, 2010,

the Court issued a Preliminary Calendar Order that, among other things, allowed Plaintiffs to

submit "initial informal request[s] for core discovery" to Procter & Gamble.[14]  Plaintiffs

requested core information about the Dry Max diaper, including:  (1) all Dry Max patents; (2) the

names of Dry Max ingredients and/or component part suppliers, with corresponding name of

item supplied; (3) the names and locations of Dry Max manufacturers; (4) a list of all Dry Max

---

[11] U.S. safety agency looking into P&G's new Pampers, May 5, 2010 (available at
http://www.reuters.com/article/2010/05/05/us-procter-pampers-idUSTRE6444RW20100505) (last visited September
1, 2011);  Information on [Health Canada] Investigation into Pampers Dry Max Diapers, May 2, 2010
(http://www.hc-sc.gc.ca/ahc-asc/media/advisories-avis/_2010/2010_68-eng.php) (last visited September 1, 2011).

[12] Class Action Complaint, Clark, et al. v. The Procter & Gamble Co., et al., Case No. 1:10-cv-00301 (filed May 11,
2010).

[13] Keller Rohrback L.L.P. has been appointed to act as Interim Lead Counsel and has been authorized by the Court
to, among other things, conduct settlement discussions with Procter & Gamble for "[a]ll other matters concerning
the prosecution or resolution of the consumer protection cases."  Order On Plaintiffs' Motion for Consolidation and
Appointment as Interim Lead Counsel [Doc. No. 15], p. 3.

[14] Preliminary Calendar Order [Doc. No. 20].

ingredients, including quantities, concentrations and grades of raw materials (both chemical and physical); and (5) information about the Dry Max assembly process.  On August 6 and 10, 2010, Procter & Gamble produced the requested information to Plaintiffs.

Seeking to limit extensive and expensive discovery prior to class certification, Procter & Gamble filed a motion to phase and sequence discovery.[15]  Plaintiffs vigorously opposed Procter & Gamble's discovery motion.[16]  On November 12, 2010, after oral argument, the Court denied Procter &Gamble's motion and entered an amended calendar order that required full discovery and class certification briefing by October 2011, with a trial scheduled for May 2012.[17]

Plaintiffs identified approximately 145 fact witnesses -- parents, caregivers and neighbors with knowledge about the diapers.[18]  Plaintiffs preliminarily identified 13 witnesses from Procter & Gamble, [19] and the Parties were working with experts in at least seven different fields.[20]

The Parties engaged in extensive motion practice concerning the Consolidated Complaint -- a tome that contained 720 paragraphs, 207 pages, alleged a variety of claims,

---

[15] Motion to Phase and Sequence Discovery [Doc. No. 28].

[16] Memorandum in Opposition to Defendants' Motion to Phase and Sequence Discovery [Doc. No. 33].

[17] Calendar Order [Doc. No. 45].

[18] Plaintiffs' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1).

[19] Id.

[20] Rule 26(f) Report of the Parties [Doc. No. 27].

including twenty-six (26) claims under various state consumer protection laws.[21]  Procter &

Gamble filed Motions to Strike and Dismiss,[22] seeking to strike the class action allegations and

the dismissal of all claims asserted in the Consolidated Complaint.

On September 2, 2010, the CPSC and Health Canada announced that it "had not

identified any specific cause linking Dry Max Pampers to diaper rash."  No Specific Cause

Found Yet Linking Dry Max Diapers to Diaper Rash, Sept. 2, 2010 (available at

http://www.cpsc.gov/cpscpub/prerel/prhtml 10/10331.html) (last visited September 16, 2011).

The CPSC reviewed over 4,700 consumer complaints, "clinical and toxicological data found in

published, peer-reviewed medical literature" and also "critically reviewed data submitted by

Procter & Gamble (P&G) and the results of a human cumulative irritation patch study conducted

by P&G in May 2010."  Id.  Further, "chemistry, toxicology and pediatric medicine information

provided by Health Canada was reviewed by CPSC."[23]  Id.

In light of the Parties' discovery, factual investigations, pending motions and the

agencies' decisions, the Parties decided to attempt mediation to see if there was any way to

resolve the dispute.  At the request of the Parties, the Court extended the deadlines related to

---

[21] Consolidated Complaint, ¶¶ 53-142.

[22] Motion to Strike Class Allegations ("Motion to Strike") [Doc. No. 39] and a Motion to Dismiss the Consolidated Class Action Complaint ("Motion to Dismiss") [Doc. No. 40].

[23] The CPSC noted that while "the investigation thus far does not find a link between the diapers and the health complaints received CPSC recognize[d] the serious concerns expressed by parents.  CPSC staff cannot rule out that there may exist a health concern for some babies, especially those babies that may be sensitive and develop rashes or other skin problems as a result of contact with the materials in this or other products."  Id.

discovery and the oppositions to the pending Motions in order to allow the Plaintiffs and Procter

& Gamble to mediate and attempt to resolve this Action.[24]

Plaintiffs and Procter & Gamble retained and were assisted by the Honorable

Layn Phillips, former Judge of the United States District Court for the Western District of

Oklahoma and current head of the Irell & Manella Alternative Dispute Resolution Center.[25]

Judge Phillips presided over in-person mediation sessions between the Parties on February 7 and

8, 2011.[26]  After attending and participating in multiple face-to-face and telephone mediation

sessions, Plaintiffs and Procter & Gamble eventually reached a Settlement and these discussions

ultimately resulted in the Settlement Agreement.

> B.     The Settlement Provides Substantial Benefits to Settlement Class
>        Members

Pursuant to Fed. R. Civ. P. 23(b)(2), the Settlement provides the certification, for

settlement purposes only, of the following Settlement Class:

> "All persons in the United States and its possessions and territories,
> who purchased or acquired (including by gift) Pampers brand
> diapers containing "Dry Max Technology" from August 2008
> through Final Judgment."

Settlement Agreement at § III.  "All federal judges to whom this case is assigned and members

of their families within the first degree of consanguinity, and officers and directors of Procter &

Gamble, are excluded from the class definition."  Settlement Agreement at § III.

---

[24] November 19, 2010 Order Granting Joint Motion to Amend Calendar Order and Adjust Deadlines [Doc. No. 50].

[25] May 24, 2011 Declaration of Hon. Layn Phillips ("Phillips Decl."), ¶¶ 2, 3 (attached as Exhibit 3 to the Joint Motion for Preliminary Approval).

[26] Id. ¶ 4.

Procter & Gamble agreed to the implementation of a comprehensive program of Injunctive Relief. Id. § V. First, Procter & Gamble agreed that, for twelve (12) months after the Effective Date, it would reinstate and extend its money-back guarantee program for consumers who purchased Pampers Swaddlers and Cruisers diapers. The money-back guarantee provides reimbursement to Settlement Class Members for purchases of the product during the class period. Id. The terms of the program, including requirements for proof of purchase, are consistent with those that existed in the prior program. Id.[27]

Second, Procter & Gamble agreed to modify the Pampers Swaddlers and Cruisers labels as a rolling effort to be completed within twenty-four (24) months of the Effective Date. Id. The packages will contain explicit information about diaper rash:

> *"For more information on common diapering questions such as choosing the right Pampers product for your baby, preventing diaper leaks, diaper rash, and potty training, please consult Pampers.com or call 1-800-Pampers."*

Id. This statement shall remain on such packages for a minimum of twenty-four (24) months after the date placed on the Pampers Swaddlers and Cruisers labels. Id.

Third, Procter & Gamble agreed to post the following additional information on the Pampers website:

> *"Diaper rash is usually easily treated and improves within a few days after starting home treatment. If your baby's skin doesn't*

---

[27] Until December 2010, Procter & Gamble provided a "Satisfaction Guarantee" for the Dry Max Pampers product. The program provided a full money-back reimbursement to consumers unsatisfied with the product (plus $1 for postage and handling). To receive reimbursement, consumers were required to provide an original receipt, the UPC from the Pampers Swaddlers or Cruisers Dry Max package and their full name and mailing address printed on a 3x5 card. Reimbursement was limited to one redemption per household on one pack; U.S. residents; and no organizations. Refunds took six to eight weeks to arrive. (*See* http://www.pampers.com/en_US/dry-max/diapers-satisfaction-guarantee). Procter & Gamble has agreed to reinstate the "Satisfaction Guarantee" program for one year from the Effective Date of the Settlement. The terms will be consistent with those that existed in the prior program.

> *improve after a few days of home treatment with over-the-counter ointment and more frequent diaper changes, then talk to your doctor.*
>
> *Sometimes, diaper rash leads to secondary infections that may require prescription medications.  Have your child examined if the rash is severe or the rash worsens despite home treatment.  See your child's doctor if the rash occurs along with any of the following:  (1) fever; (2) blisters or boils; (3) a rash that extends beyond the diaper area; (4) pus or weeping discharge.*
>
> *Useful links:  http://www.mayoclinic.com/health/diaper-rash/DS00069 and http://www.patiented.aap.org/ content.aspx?aid=5297."*

Id.[28]  This information shall remain on the Pampers website for a minimum of twenty-four (24) months after the Effective Date.  Id.

Finally, Procter & Gamble agreed to, as soon as practicable and within a reasonable time after the Effective Date, produce and fund pediatric resident training programs at leading children's health centers in the area of skin health, e.g., programs for medical schools and educational materials, in the amount of $150,000/year for two (2) years and to sponsor programs with the American Academy of Pediatrics in the area of skin health in the amount of $50,000/year for two (2) years.  Id.[29]  The programs will give pediatric residents (the first line in rash cases) additional training and information about skin health and the treatment of diaper rash.

In exchange for the above benefits, Settlement Class Members have agreed to a limited release of only equitable Claims.  Id. § VIII.  Settlement Class Members fully preserved the right to bring individual lawsuits for personal injury or actual damages alleged to have been

---

[28] Procter & Gamble may modify the links, if the referenced links become unavailable. Id.

[29] If any amount of funds remains after performing either program, then Procter &Gamble will use the remaining amount of funds to fund the other remaining program, as well as another similar program. Id.

caused by the Dry Max Pampers diaper, subject to the limited waiver of the class action procedural device. Id.[30]

III.                <u>A SETTLEMENT CLASS SHOULD BE CERTIFIED</u>

          The Settlement Agreement meets the standard for final class approval under Rule 23. Fed. R. Civ. P. 23.[31] The benefits of a class settlement can be realized only through the final certification of a settlement class. <u>Wess v. Storey</u>, No. 2:08-cv-623, 2011 U.S. Dist. LEXIS 41050, at *17 (S.D. Ohio Apr. 14, 2011) (final approval of a class settlement under Rule 23(b)(1) and (b)(2) involving claims under the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act). For a settlement class to be certified, all four requirements of Rule 23(a) must be satisfied, along with one of three categories of Rule 23(b). <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613-14, 117 S. Ct. 2231, 2244-45 (1997). For purposes of settlement only, the requirements of Fed. R. Civ. P. 23(a) and (b)(2) have been met.

---

[30] Plaintiffs and Settlement Class Members recognize that as part of this Settlement Agreement, Procter & Gamble is agreeing to the certification of a Settlement Class, even though the Parties disagree about whether this Action could be properly certified as a class action for trial purposes. Plaintiffs and Settlement Class Members have availed themselves of the class action procedural device once in this Action. As a bargained-for piece of the settlement, Plaintiffs have agreed not to avail themselves of the class action procedural device a <u>second time</u> in the future against the Released Parties for Claims that were or could have been brought in this Action relating to Dry Max Pampers. As a result, Settlement Class Members provide Procter & Gamble with a limited waiver of the class action procedural device in future actions "against Released Parties, where the lawsuit asserts Claims that were or could have been brought in State or Federal Court in this Action prior to the entry of this Final Approval Order and Judgment and are not otherwise released and discharged by the Settlement Agreement."

[31] As demonstrated by the Motion to Dismiss, it is the position of Procter & Gamble that there remain substantial obstacles to certification of a litigation class under Fed. R. Civ. P. 23 and, therefore, any certification of a final Settlement Class is for settlement purposes only and shall not constitute, nor be construed as, an admission on the part of Procter & Gamble that this action, or any other proposed or certified class action, is appropriate for treatment as a class for any other purpose, including for trial class treatment. Plaintiffs, on the other hand, believe that a litigation class can and would be certified in this case, but that, nonetheless, settlement is in the best interest of the Class.

A.      Rule 23(a) Requirements Are Satisfied for Purposes of Certifying a
        Settlement Class

"The four requirements of Rule 23(a), numerosity, commonality, typicality and adequacy, are well recognized and defined by the courts." <u>Wess</u>, 2011 U.S. Dist. LEXIS 41050, at *17 (citing <u>Senter v. Gen. Motors Corp.</u>, 532 F.2d 511, 522 (6th Cir. 1976)). "A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" <u>Lipuma v. Am. Express Co.</u>, 406 F. Supp. 2d 1298, 1313-1314 (S.D. Fla. 2005) (citation omitted). In certifying a class for settlement purposes only, the Court need not determine "whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." <u>Amchem Prods.</u>,521 U.S. at, 620, 117 S. Ct. at 2248. These four requirements are satisfied for purposes of certifying a settlement class in this case.

1.      Numerosity is Satisfied

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is not amenable to a strict numerical test. <u>In re Am. Med. Sys.</u>, 75 F.3d 1069, 1079 (6th Cir. 1996). The Court must examine this factor in light of the specific facts of the case. <u>Id.</u> Nonetheless, common sense dictates that at some point numbers alone will satisfy the numerosity requirement. <u>Id.</u>

The proposed class consists of potentially hundreds of thousands of consumers who purchased Dry Max Pampers diapers. Consolidated Complaint, ¶ 153 (Plaintiffs assert that there are millions of members of the class).

2.     <u>Commonality is Satisfied</u>

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)(2), the case must present a common issue the resolution of which will advance the litigation. <u>Wal-Mart v. Dukes</u>, 564 U.S. ____, slip op. at 12 (2011). Here, each Settlement Class Member's claim raises questions of law or fact, the resolution of which are common to the Settlement Class.

More specifically, with respect to the request for injunctive relief, the Settlement Class presents the common question of whether Procter & Gamble knew or should have known of alleged diaper-related health risks and whether Procter & Gamble provided any or sufficient notice of Dry Max related health risks. These are common questions, among others detailed in the Consolidated Complaint, ¶ 156. Rule 23(a)(2) is satisfied because the resolution of these questions of law or fact are common to the Settlement Class.

3.     <u>Typicality is Satisfied</u>

The claims or defenses of the representative parties are typical of the claims or defenses of the Settlement Class. To satisfy the typicality requirement of Rule 23(a)(3), the claims of the class representatives must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." <u>In re Am. Med. Sys.</u>, 75 F.3d at 1082 (citation omitted) ("a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory").

With respect to the request for injunctive relief, there is a nexus between the Plaintiffs' claims or defenses and the common question of fact or law (i.e., whether Procter & Gamble provided any notice of diaper-related health risks) that unites this case. Rule 23(a)(3) is satisfied in this case.

### 4.    Adequacy is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To establish adequacy of representation, Plaintiffs must satisfy two elements. First, Plaintiffs must have interests in common with the unnamed members of the Settlement Class. In re Am. Med. Sys., 75 F.3d at 1083. Second, it must be shown that Plaintiffs -- through qualified counsel -- will vigorously prosecute the interests of the Settlement Class. Id.

Plaintiffs are adequate Settlement Class representatives. With respect to the claims for injunctive relief, Plaintiffs have no interests that are adverse or antagonistic to the interests of the Settlement Class. All Settlement Class Members will benefit equally from the Injunctive Relief provided by Settlement, and each Settlement Class Member retains the right to pursue his or her individual damages claims. Plaintiffs are appropriate class representatives and have fairly and adequately protected the interests of the Settlement Class.

Lead Class Counsel are also adequate. Lead Class Counsel have extensive experience handling complex class actions and have demonstrated a willingness to vigorously prosecute the class claims. Joint Declaration of Lynn Sarko and Gretchen Freeman Cappio, ¶ 11 (attached as Exhibit 5 to the Joint Motion for Certification [Doc. No. 54]). Over the course of this Action, Lead Class Counsel has drafted a 207-page Consolidated Complaint; briefed and

researched key issues for the Court's consideration; represented Plaintiffs in conferences with the Court; requested significant discovery; led Plaintiffs' multi-months-long mediation efforts including the filing of numerous mediation briefs; retained and consulted with numerous medical, scientific and marketing experts; briefed key issues; represented the interests of the Settlement Class in motion practice and in contested negotiations; and coordinated the efforts of Plaintiffs and other class counsel.  Lead Class Counsel are qualified counsel and have vigorously prosecuted the interests of the Settlement Class. [32]

B.      The Settlement Class Meets the Requirements of Rule 23(b)(2)

A Rule 23(b)(2) settlement class must satisfy two conditions in addition to the Rule 23(a) prerequisites.  Rule 23(b)(2) requires that first, "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and second, "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The first requirement has been interpreted to mean that, to fall within Rule 23(b)(2), defendant's conduct must be generally applicable to the class, meaning defendant has adopted a pattern or policy that is likely to be the same as to all class members.  Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 52, 63-64 (3d Cir. 1994).  The second requirement has been interpreted to mean that a class can be certified under Rule 23(b)(2) even if a complaint requires equitable and legal relief, if the injunctive relief and declaratory relief predominates over monetary relief.

---

[32] The absence of a damage recovery in this settlement does not suggest a lack of vigor on the part of the class representatives or class counsel.  In addition to ensuring that Class Members receive their money back in a reinstatement of the Satisfaction Guarantee, class members preserve their rights to pursue any individual damage claims they may have regarding the Dry Max Pampers.  Smith v. Ohio Dep't of Rehab. & Corr., No. 2:08-cv-15, 2010 U.S. Dist. LEXIS 81842, at *7-8 (S.D. Ohio Aug. 12, 2010) (Holschuh, J.) (noting that the parties had preserved the right for class members to pursue their own claims for damages in separate actions by including such protection in the proposed settlement); Fresco v. Auto. Directions, Inc., No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *13 (S.D. Fla. Jan. 16, 2009) (certifying a Rule 23(b)(2) settlement and noting that "the parties' settlement preserves any individual claims that class plaintiffs may have for actual damages, claims which might otherwise have precluded certification under Rule 23(b)(2).").

<u>Reeb v. Ohio Dep't of Rehab. and Corr.</u>, 435 F.3d 639, 650-51 (6th Cir. 2006) (giving plaintiffs choice of proceeding under Rule 23(b)(2) or Rule 23(b)(3)).

This case is appropriate for certification under Rule 23(b)(2). Procter & Gamble is alleged to have acted or refused to act on grounds that apply generally to the class and Plaintiffs request injunctive and declaratory relief in the Consolidated Complaint. Consolidated Complaint, ¶¶ 53-142; Prayer for Relief, ¶¶ A-C, G.[33] The Settlement resolves equitable relief only and expressly carves out any individual claim brought by Settlement Class Members (other than Named Plaintiffs) for personal injury or actual damages.[34]

Since claims for personal injury and actual damages have been carved out from this settlement and the settlement achieves important injunctive relief, this case is well-suited for the certification of a settlement class under Rule 23(b)(2). <u>Austin v. Wilkinson</u>, 83 Fed. Appx. 24, 25 (6th Cir. 2003) ("[Appellant's] main complaint seems to be a desire to pursue compensatory damages; he is of course not barred from seeking damages by the preclusive effect of the class action, which bars only future injunctive relief."); <u>Smith v. Ohio Dep't of Rehab.&amp; Corr.</u> No. 2:08-cv-15, 2010 U.S. Dist. LEXIS 81842 at *7, 10 (S.D. Ohio Aug. 12, 2010)

---

[33] Certification under this Rule 23(b)(2) is appropriate when declaratory or injunctive relief "predominates" over claims for monetary damages. The Sixth Circuit has noted that "[d]isputes over whether [an] action is primarily for injunctive . . . relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed." <u>Olden v. LaFarge Corp.</u>, 383 F.3d 495, 510-11 (6th Cir. 2004) (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, <u>Federal Practice and Procedure</u>, 2d. § 1775), <u>cert</u>. <u>denied</u>, 545 U.S. 1152, 1255 S. Ct. 2990 (2005); <u>Alaniz v. Saginaw County</u>, No. 05-10323, 2009 U.S. Dist. LEXIS 43340, at *8-9 (E.D. Mich. May 21, 2009) (certifying a Rule 23(b)(2) settlement class and preliminarily approving a settlement).

[34] Settlement Agreement, § VIII ("Notwithstanding anything stated below [release paragraph], Settlement Class Members (other than Named Plaintiffs) do not release and discharge, but instead preserve, the right to file individual lawsuits for personal injury or actual damages claimed to have been caused by or related to the Pampers with Dry Max product, subject to the limited class action bar.")

(certifying a settlement class under Rule 23(b)(2), noting that "if any [class member] has a documented, medically substantiated asbestos-related condition, he is free to file a separate cause of action . . . [and] the pending litigation will not affect his rights in that regard" and holding that the objecting class member "always had the right and ability to bring a separate cause of action to pursue compensatory damages for physical injury."); Fresco v. Auto. Directions, Inc., No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *13 and n.4 (S.D. Fla. Jan. 16, 2009 (certifying a Rule 23(b)(2) settlement and noting that "the parties' settlement preserves any individual claims that class plaintiffs may have for actual damages, claims which might otherwise have precluded certification under Rule 23(b)(2)"). Accordingly, this action is well-suited for certification for settlement purposes only under Fed. R. Civ. P. 23(b)(2).

IV.        THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

        For final review of a class action settlement, the Court should view the Settlement in light of the "general federal policy favoring the settlement of class actions." Bailey v. AK Steel Corp., No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 16704, at *2 (S.D. Ohio Feb. 21, 2008) (Black, J.), aff'd, 320 Fed. Appx. 364 (6th Cir. 2009) (citing IUE-CWA v. Gen. Motors Corp., 238 F.R.D. 583, 593 (E.D. Mich. 2006)); accord: Franks v. Kroger Co., 649 F.2d 1216, 1226 (6th Cir. 1981) (The "law generally favors and encourages the settlement of class actions."); Bert v. AK Steel Corp., No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at * 12 (S.D. Ohio Oct. 23, 2008) (Beckwith, J.) (approving a class action settlement) (citing Whitford v. First Nationwide Bank, 147 F.R.D. 135, 143 (W.D. Ky. 1992); In re Telectronics Pacing Sys., Inc., 137 F. Supp 2d 985, 1008 (S.D. Ohio 2001) ("there is a strong presumption by courts in favor of settlement.")

        To approve a proposed class action settlement, it must be "fair, adequate, and reasonable." Huguley v. Gen. Motors Corp., No. 89-2172, 1991 U.S. App. LEXIS 2993, at *9

(6th Cir. Feb. 22, 1991) (approving Rule 23(b)(2) class settlement with no right to opt-out).  "[I]n determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness' and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  In re Nationwide Fin. Servs. Litig. No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *5 (S.D. Ohio Aug. 18, 2009) (internal citation omitted) ("[Courts] should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement.") (citing Leonhardt v. Arvin Meritor, Inc., 581 F. Supp. 2d 818, 831 (E.D. Mich. 2008)).

In making the overall determination, the Court should consider and balance several factors, which include:  (1) Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered to Settlement Class Members; (2) the complexity, expenses and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the Settlement Class Members; and (7) the public interest.  Bailey, 2008 U.S. Dist. LEXIS 16704, at *2 (citing UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)).

A.    The Likelihood of Ultimate Success on the Merits Balanced Against the
       Amount and Form of Relief Offered Supports Approval of the Settlement

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits."  In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1086 (6th Cir. 1984).  "The ultimate question . . . is whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."

Bailey, 2008 U.S. Dist. LEXIS 16704, at *4 (quoting UAW v. Gen. Motors Corp., No. 05-CV-73991,  2006 U.S. Dist. LEXIS 14890, at *46 (E.D. Mich. 2006), aff'd 497 F.3d 615 (6th Cir. 2007)).

"It is neither required, nor is it possible for a court to determine the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate, and reasonable."  Id. (citation omitted).  In assessing the Settlement, "the Court should balance the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits."  In re Nationwide, 2009 U.S. Dist. LEXIS 126962, at *5-6 (quoting In re Telectronics, 137 F. Supp. 2d at 1010) and (citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998); City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).

Here, the prospect of any recovery, had the Parties proceeded further to litigate the matter, was "not overwhelming."[35]  Significant questions about whether Plaintiffs would have survived the Motions to Dismiss and to Strike or whether Plaintiffs could have prevailed on the merits of the case persist.  After investigating the same claims which were made by Plaintiffs,[36] two independent regulatory bodies -- the CPSC and Health Canada -- could not identify any specific cause linking Pampers with Dry Max to diaper rash.  ("the review has not identified any specific cause linking Dry Max diapers to diaper rash").[37]  Even if Plaintiffs' claims survived

---

[35] Bailey v. AK Steel Corp., No, 1:06-CV-468 2008 U.S. Dist. LEXIS 16704,at * 2 (S.D. Ohio Feb. 21, 2008).

[36] E.g., Consolidated Complaint, ¶¶ 11-14.

[37] No Specific Cause Found Yet Linking Dry Max to Diaper Rash, (available at http://cpsc.gov/cpscpub/prerel/prhtml10/10331.html (last visited Aug. 30, 2011); Health Canada, US Consumer

(footnote cont'd...)

dismissal intact, there is a risk that Plaintiffs would not have ultimately prevailed on the merits of the case.  Settlement Class Members were able to avoid these risks.

Notwithstanding questions about whether Plaintiffs would survive the Motions or eventually prevail on the merits, this Settlement provides substantial benefits to Settlement Class Members.  The Settlement provides certain and current relief, as opposed to uncertain litigation. Settlement Class Members can seek their money back under the reinstated and year-long money-back guarantee program.  Procter & Gamble has agreed to provide specific information on its website about skin irritation alleged to be associated with Dry Max Pampers and about when a doctor should be consulted.  Procter & Gamble has committed to funding pediatric training in the area of skin health.  Nothing in the Settlement prevents any Settlement Class Member (other than the Named Plaintiffs) from bringing individual claims for personal injury and actual damages. When balanced against the possibility that Settlement Class Members might have received nothing by going forward, this factor weighs heavily in favor of approving the proposed Settlement.

B.     The Risks, Expense and Delay of Further Litigation All Support Approval of the Settlement

In determining the fairness of the Settlement, courts also consider "[t]he complexity, expense and likely duration of the litigation."  In re Telectronics, 137 F. Supp. 2d at 1013; In re Art Materials Antitrust Litig., 100 F.R.D. 367, 370 (N.D. Ohio 1983).  This case, like "most class actions," is "inherently complex[,] and settlement avoids the costs, delays, and multitude of other problems associated with them."  In re Telectronics, 137 F. Supp. 2d at 1013

_____

(...cont'd)
Product Safety Commission Find No Link Between Pampers Dry Max Diapers and Severe Diaper Rash (available at http://www.hc-sc.gc.ca/ahc-asc/media/ftr-ati/_2010/2010_149-eng.php) (last visited Aug. 30, 2011).

(quoting In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 174 (S.D.N.Y.

2000)).  "[A]voiding the delay, risks, and costs of continued litigation against a defendant is a

valid reason for counsel to recommend and for the court to approve a settlement."  In re

Nationwide, 2009 U.S. Dist. LEXIS 126962, at *10 (quoting Ayers v. Haley Barbour, 358 F.3d

356, 369 (5th Cir. 2004) ("settling now avoids the risks and burdens of potentially protracted

litigation").

   The difficulty the Parties would encounter in proving the claims, the substantial

litigation expenses and a possible delay in recovery due to the appellate process, all justify this

Court's approval of the Settlement.  See, e.g., Id. at *7.  The size of this case and the complexity

of the issues would have made litigation enormously expensive and time consuming.  This

Action involves 59 Plaintiffs, 45 claims and the laws of all 50 States.  Consolidated Complaint,

¶¶ 10-52, 151 and 165-720.  Plaintiffs identified more than 145 fact witnesses from nearly every

state.[38]  Experts were identified in the fields of pediatric medicine, statistics, toxicology,

manufacturing, product design, consumer behavior and damages.  Rule 26(f) Report of the

Parties [Doc. No. 27].  It is foreseeable that a costly "battle of experts" would ensue.

   Absent a settlement, Plaintiffs would be required to respond to both the Motions

to Dismiss and Motions to Strike.  The Parties would also engage in a time-consuming, and

likely disputed, discovery practice.  Plaintiffs would also need to file motions seeking to certify a

litigation class.  Approximately 300 depositions would be taken, and extensive document

production -- nearly all of it electronic -- would occur.  Had the Action proceeded beyond the

---

[38] At this time, Lead Class Counsel has already spent more than 9,063 hours in pursuing this matter, incurred
attorneys' fees and expenses in excess of $2.73 million.  Plaintiffs' Motion for Attorneys' Fees, Reimbursement of
Expenses and Representative Plaintiff Award Payments [Doc. No. 57], pp. 6, 11.

class certification stage, in addition to extensive fact discovery, expert discovery would involve both the preparation of experts' reports, rebuttal reports and the depositions of at least 14 experts. Summary judgment motions and trial preparation would be a massive endeavor and require considerable additional time and resources. Counsel on both sides would have had to expend many hours preparing for direct and cross-examination, identifying and preparing the exhibits intended for use at trial, and filing and responding to pre-trial motion practice, including motions in limine. The trial itself would take weeks, if not longer.

These efforts and costs must be considered in connection with the instant motion to approve the Settlement. In complex class action litigation, these expenses will burden any recovery obtained for the Settlement Class, if Plaintiffs were to succeed. Moreover, even a victory at trial might be lost through post-trial motions or likely appeals. All of this work would have resulted in the expenditure of many additional hours (and years) of effort, and great additional expense. This factor also weighs heavily in favor of approval because the Settlement secures a substantial benefit in a highly-complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation.

C.     The Stage of Proceedings and Amount of Discovery Support Approval of the Settlement

To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the Settlement, the stage of the proceedings and the discovery taken must be considered. In re Telectronics, 137 F. Supp. 2d at 1015; Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 502 (E.D. Mich. 2000). The fact that more formal discovery did not occur does not prohibit a settlement in this case. Levell v. Monsanto Research Corp., 191 F.R.D. 543, 556-57 (S.D. Ohio 2000) (Rice, J) ("In the present case, the record contains little

evidence of formal discovery having taken place.  Based upon its familiarity with this litigation, however, and its limited direct involvement in the same, the Court is aware that class counsel retained experts and engaged in substantial informal discovery prior to the negotiation of the proposed Settlement Agreement . . . Counsel's reliance upon informal discovery does not preclude approval of the proposed Settlement.").

Sixteen months have now elapsed since the filing of the first complaint, and several motions have been filed, including discovery motions.  Lead Class Counsel engaged in a significant investigation prior to filing the original complaint and the Consolidated Complaint. Counsel conducted substantial factual research concerning Dry Max Pampers, including investigating the facts of the case by conferring with experts and reviewing documents produced by Procter & Gamble.  The Parties also participated in "informal . . . core discovery," as ordered by the Court.[39]  The Settlement occurred only after Plaintiffs had the opportunity to assess the facts supporting their claims, the legal and factual defenses raised by Procter & Gamble, and the risks of continued litigation.  Although the parties were able to negotiate the Settlement at a relatively early stage in the proceedings, all of the Parties had a "clear view of the strengths and weaknesses of their cases."  In re Warner Commc'ns Sec. Litig.., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986).  This factor weighs in favor of approving the proposed Settlement.  Both sides were fully apprised of the legal and factual issues presented, as well as the strengths and weaknesses of their cases, and both sides made a well-informed decision to enter into the Settlement.

---

[39] Procter & Gamble provided Plaintiffs with information about the Dry Max Pampers diapers.  Plaintiffs reviewed core information they requested about the Dry Max diaper, including:  (1) all Dry Max patents; (2) the names of Dry Max ingredients and/or components part suppliers, with corresponding name of item supplied; (3) the names and locations of Dry Max manufacturers; (4) a list of all Dry Max ingredients, including quantities, concentrations and grades of raw materials (both chemical and physical); and (5) information about the Dry Max assembly process.

D.     The Judgment of Experienced Counsel Who Have Competently Evaluated
the Strength of the Case Supports Approval of the Settlement

The view of experienced counsel favoring the settlement is entitled to great

weight.  In re Telectronics, 137 F. Supp. 2d at 1015-16; In re Art Materials, 100 F.R.D. at 371.

Indeed, it is well settled that, in approving a class action settlement, the courts should "defer to

the judgment of experienced counsel who has competently evaluated the strength of his proofs."

Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir. 1983); accord: Kogan, 193 F.R.D. at 501

(citing Bronson v. Bd. of Educ., 604 F. Supp. 68, 73 (S.D. Ohio 1984)).

Both Lead Class Counsel's and Procter & Gamble's counsel are experienced

practitioners in the field of complex class actions.  Both Counsel urge final approval of the

Settlement based upon their experience, their knowledge of the strengths and weaknesses of the

case, their analysis of the discovery taken in the case, the risks associated with this type of

litigation, the likely recovery at trial and on appeal, and other factors considered in evaluating the

Settlement.  The Settlement has been negotiated vigorously and at arm's-length and, at all times,

Plaintiffs and Lead Class Counsel acted independently and their interests coincide with the

interests of the Settlement Class.  Plaintiffs and Procter & Gamble made a well-informed

decision to enter into the Settlement assisted by the advice and judgment of an experienced

mediator.

E.     The Nature of the Negotiations Supports Approval of the Settlement

In appraising the fairness of the Settlement, the Court should also consider the

nature of the negotiations.  In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D.

366, 372 (S.D. Ohio 1990).  "Courts presume the absence of fraud or collusion, unless there is

evidence to the contrary."  Bailey, 2008 U.S. Dist. LEXIS 16704, at *10 (citing UAW v. Gen.

Motors Corp., 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. 2006) (citations omitted).  No such evidence exists in this case.

The intensive, arm's-length negotiations were facilitated by the Honorable Layn Phillips, former Judge for the United States District Court for the Western District of Oklahoma and one of the leading mediators in the country.  Phillips Decl., ¶¶ 2, 3.  Prior to the first scheduled mediation session, Plaintiffs and Procter & Gamble submitted confidential mediation statements supporting their respective positions.  Id. ¶ 4.  Judge Phillips presided over all day, in-person mediation sessions between the Parties on February 7 and 8, 2011.  Since a settlement was not reached after two full days of intense negotiations, Judge Phillips continued to communicate with Plaintiffs and Procter & Gamble regarding their respective settlement positions.  Id. ¶ 6.  After multiple telephone mediation sessions, Plaintiffs and Procter & Gamble eventually reached a Settlement and these discussions ultimately resulted in the Settlement Agreement.  Judge Phillips confirms that the discussions during the mediation sessions were vigorous on both sides and that the Settlement was the result of arm's-length negotiations.  Id. ¶ 10.  Judge Phillips also states that, based on his extensive discussions with Plaintiffs and Procter & Gamble and information made available to him during the mediation process, the Settlement was negotiated in good faith and the Settlement is fair and reasonable.  Id. ¶ 11.

F.    Objections from Only Three Settlement Class Members Show Strong
Support for Settlement Approval

In considering a class action settlement, the Court should also look to the reaction of the absent class members.  Olden v. Gardner, 294 Fed. Appx. 210, 217 (6th Cir. 2008).  Not only have Named Plaintiffs approved the settlement, but the lack of significant objections is powerful evidence of the fairness of a proposed settlement.  Brotherton v. Cleveland, 141 F.

Supp. 2d 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.") (citing 2 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.48 (3d ed. 1992)); Robinson v. Ford Motor Co., Nos. 1:04-CV-00844, 1:04-CV-00845, 2005 U.S. Dist. LEXIS 11673, at *17 (S.D. Ohio June 15, 2005); In re Art Materials, 100 F.R.D. 367 at 372 (noting that the overwhelming approval of a proposed settlement by the class members "is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements").

While the Settlement Class is undeniably large (and is likely in the hundreds of thousands), only three Settlement Class Members have objected (and two have a history objecting to class action settlements).[40]   The Settlement Class reaction indicates that the Class supports the Settlement.  This factor also weighs in favor of approving the Settlement.

---

[40] Objector Daniel Greenberg on behalf of the Center for Class Action Fairness ("CCAF") goes to great lengths to convince the Court of the nobility of his cause (pp. 2-4).  Because CCAF seeks fees for objecting to class action settlements, the representation that "The Center refuses to engage in quid pro quo settlements to extort attorneys, and has never settled an objection in exchange for payment" is misleading because it implies CCAF has never sought payment from settlement funds for lodging objections.  (Greenberg Objection, p. 3).  The reality, however, is that the CCAF is just another professional objector that objects to most class action settlements because of a philosophical disagreement with class actions in general and the payment of class attorneys' fees in particular.  See the CCAF website, www.centerforclassactionfairness.blogspot.com.  Theodore Frank, founder of the CCAF, has been characterized accurately as a "professional objector."  Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546, 575 (D.N.J. 2010).  CCAF's client, Mr. Greenberg, has been the CCAF's "objector" of choice in several other class action settlements, e.g., Lonardo v. Travelers Indem. Co., 706 F. Supp. 2d 766 (N.D. Ohio 2010) (CCAF fee request seeking 2.2 multiplier on lodestar in light of "risk" undertaken in filing objection to class action settlement on a contingency fee basis); In re Apple Inc. Secs. Litig., No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *13-16 (N.D. Cal. May 17, 2011) (rejecting CCAF's requested attorneys' fees of $297,916 for 104 hours billed, which would amount to an hourly rate of more than $2,800); In re New Motor Vehicles Canadian Export Antitrust Litig., MDL Docket No. 1532, 2011 U.S. Dist. LEXIS 40843 (D. Me. Apr. 13, 2011).  Similarly, Objector Bonner Walsh is an attorney at Weinstein Law, and employed by Jeffrey Weinstein, who has a track record of his own when it comes to objecting to class action settlements, e.g., In re Initial Pub. Offering Secs. Litig., 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010) (recognizing "evidence of bad faith or vexatious conduct by the Objectors[,]" including those represented by Jeffrey Weinstein; court noted that other courts have found Weinstein to be a "serial objector[]").

G.    The Settlement Is Consistent With the Public Interest

"There is a strong public interest in encouraging settlement of complex litigation and class-action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." Bailey, 2008 U.S. Dist. LEXIS 16704, at *11 (citing In re Cardizem CD Antitrust Litig., 218 F.R.D. 508 (E.D. Mich. 2003) (citing Granada Invs., Inc. v. DWG Corp., 962 F2d 1203, 1205 (6th Cir. 1992)).  As the Sixth Circuit has stated:

> "Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit.  By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute. "

Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir.), cert. denied 429 U.S. 862, 97 S. Ct. 165, 50 L. Ed. 2d 140 (1976); accord:  In re Telectronics, 137 F. Supp. 2d at 1025; In re Dun & Bradstreet, 130 F.R.D. at 372.  The public has a significant interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve.  The Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources.

V.        THE FEW OBJECTIONS ARE MERITLESS AND SHOULD BE
          OVERRULED

As to the objectors, the law is clear that "approval should not be denied merely because some class members object to it."  Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 246 (S.D. Ohio 1991) (citations omitted).  An individual who objects, "has a heavy burden to prove that the settlement is unreasonable." Id. (citation omitted).  The Settlement of this action was preliminarily approved by this Court, and preliminary approval gives rise to a presumption that the Settlement is fair, reasonable and adequate.  Fussell v.

Wilkinson, No. 1:03-CV-704, 2005 U.S. Dist. LEXIS 30984, at *8-12 (S.D. Ohio Nov. 22, 2005) (Beckwith, J.) (overruling objections to the proposed settlement and granted joint motion for approval); New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc., 234 F.R.D. 627, 631 (W.D. Ky. 2006) (overruling objections and granting final approval). Objectors, therefore, have the heavy burden of persuading this Court that the proposed settlement is unreasonable. Enter. Energy, 137 F.R.D. at 247. The objectors cannot meet this burden and the Settlement should be approved by this Court.[41]

A.     The Class Can and Should Be Certified as a Rule 23(b)(2) Class

The certification of a settlement class under Fed. R. Civ. P. 23(b)(2) is entirely appropriate. Ignoring the actual terms of the release and concentrating on the Consolidated Complaint (and misconstruing the settlement relief), Objectors Walsh and Greenberg argue that this case is not appropriate for certification under Fed. R. Civ. P. 23(b)(2). Objection Regarding Proposed Settlement ("Walsh Objection"), pp. 4-5; Objection of Daniel Greenberg ("Greenberg Objection"), pp. 4-20. Objectors Walsh and Greenberg are wrong.

As an initial matter, Objector Walsh is off the mark in arguing that Plaintiffs did not seek injunctive relief as part of the Consolidated Complaint. Walsh Objection, pp 2-3. For example, Objector Walsh states, incorrectly, that the proposed Settlement "completely ignores the actual claims brought in this case," and characterizes the claims in the Consolidated Complaint as being "exclusively" for monetary damages for past purchases of Pampers diapers. Id. at 1-2. In its Prayer for Relief, Plaintiffs ask the Court to order Procter & Gamble to take

---

[41] Plaintiffs address Objectors' responses to their attorneys' fees in a separate Memorandum filed herewith.

affirmative actions. Consolidated Complaint, pp. 205-06, Prayers B and C. These are <u>not</u> monetary claims, but rather requests for relief that can be satisfied only by an injunction.

While Objector Greenberg seems to acknowledge that when certification is sought for purposes of a settlement, as opposed to a litigation class, a review of the complaint has less relevance, Objector Greenberg concentrates, in part, on the relief requested in the Consolidated Complaint and asserts that it is appropriate for the Court to examine the Consolidated Complaint for purposes of determining whether to certify a class under Rule 23(b)(2). Greenberg Objection, pp. 9-12.

Objector Greenberg asserts that reviewing "the complaint is customary procedure in courts of this District, Circuit and across the nation" (Greenberg Objection, p. 9) when determining whether to certify a Rule 23(b)(2) class. Since the Parties are seeking to certify a <u>settlement</u> class (and not a litigation class), an examination of the relief requested as part of the <u>Settlement</u> (injunctive relief) is more appropriate. The cases cited by Objector Greenberg are inapposite because each seeks the certification of a <u>litigation</u> class, and not a <u>settlement</u> class. <u>Daffin v. Ford Motor Co.</u>, No. C-1-00-458, 2004 U.S. Dist. LEXIS 18977, at *1-2 (S.D. Ohio July 15, 2004) (deciding plaintiffs motion to certify a litigation class); <u>Christ v. Beneficial Corp.</u>, 547 F.3d 1292, 1299 (11th Cir. 2008) (reversing the certification of a litigation class because Truth in Lending Act did not provide for injunctive or declaratory relief); <u>Arch v. Am. Tobacco Co. Inc.</u>, 175 F.R.D. 469, 481 (E.D. Pa. 1997) (denying motion to certify a Rule 23(b)(2) litigation class involving medical monitoring).

Objector Greenberg's citation to <u>In Re Bluetooth Headset Prod. Liab. Litig.</u>, No. 09-56683, 2011 U.S. App. LEXIS 17224, at *23 n.8 (9th Cir. Aug. 19, 2011) provides no

support. While the footnote does note that the Ninth Circuit did look at the complaint, it was <u>not</u> for purposes of making a determination as to whether certification under Rule 23(b) was appropriate. The Ninth Circuit looked at, among other things, the complaint when determining the value of the injunctive relief for purposes of the fee award. <u>Id</u>. <u>Bluetooth Headset</u> involved the general release of all claims (unlike the limited release in this case) and certification under Rule 23(b)(3). This case is not the <u>Bluetooth Headset</u> case, as this Settlement provides substantial relief to Settlement Class Members, in exchange for an appropriately tailored release that preserves claims for money damages for personal injury and actual damages.

The Settlement resolves the equitable claims only, and expressly preserves the right of Settlement Class Members to bring individual claims for personal injury and actual damages.[42] While Plaintiffs did not expressly cite Rule 23(b)(2) in the Consolidated Complaint, Plaintiffs sought equitable relief in the form of an injunction. Consolidated Complaint, pp. 205-06 (seeking an order to "ensure that the Dry Max diapers lack the capacity to cause severe [diaper] rashes . . . [and] submit product testing results on a regular basis to ensure that their products lack the capacity to cause severe rashes . . ."). When a complaint seeks injunctive relief, this Court can certify a <u>settlement</u> class under Rule 23(b)(2). <u>Smith v. Ohio Dep't of Rehab. & Corr.</u>, No. 2:08-cv-15, 2010 U.S. Dist. LEXIS 81842, at *2 (S.D. Ohio Aug 12, 2010) (certifying a Rule 23(b)(2) settlement class where plaintiffs complaint sought certification under Rule 23(b)(1), (b)(2) and (b)(3)); <u>In re Diet Drugs Prod. Liab. Litig.</u>, No. 99-20593, 2000 U.S. Dist. LEXIS 12275, at *130 (E.D. Pa. Aug. 28, 2000) (finding that the cohesion necessary for

---

[42] While Objector Greenberg claims that monetary claims under various State unfair and deceptive trade acts are not incidental (Greenberg Objection, p. 11), he ignores that such claims are not released as part of the Settlement as claims for <u>actual damages</u> are expressly preserved by Settlement Class Members. An analysis of consumer protection acts is not necessary, where these damage claims are preserved.

settlement of Rule 23(b)(2) class is present, in part, because in the settlement context, individual

issues related to personal injury litigation are irrelevant); Yong Soon Oh v. AT&T Corp, 225

F.R.D. 142, 146-48 (D.N.J. 2004) (certifying a Rule 23(b)(2) settlement class where plaintiffs

alleged breach of contract, common law fraud, negligent misrepresentation and violation of the

New Jersey Consumer Fraud Act and sought damages in the complaint). A settlement may

properly prevent class members from subsequently asserting claims relying upon a legal theory

different from that relied upon in the class action complaint, but depending upon the very same

set of facts. In re Corrugated Container Antitrust Litig., 643 F.2d 195, 221 (5th Cir. 1981). It is

common for a class action settlement agreement to contain a release of "any and all related civil

claims the plaintiffs had against the settling defendant[ ] based on the same facts." In re

Baldwin–United Corp., 770 F.2d 328, 337 (2d Cir. 1985). Accord: Whitford v. First Nationwide

Bank, 147 F.R.D. 135, 142 (W.D. Ky. 1992) report and recommendation adopted, (CIV.A.C-91-

0130-L(M), 1992 WL 442864 (W.D. Ky. Nov. 17, 1992)).

At best, the practical effect of the Walsh and Greenberg Objections would merely

be to require Plaintiffs to amend their complaint in this matter. Requiring Plaintiffs to amend

their 207-page Consolidated Complaint, for the sole purpose of expressly seeking to certify a

Rule 23(b)(2) class, would be a waste of time and resources, especially in the settlement context.

See, e.g., Byrd v. Brandeburg, 922 F. Supp. 60, 65 (N.D. Ohio 1996) (leave to amend pleadings

to conform to evidence freely given when justice so requires).

Importantly, while Objector Greenberg acknowledges the Reeb decision from the

Sixth Circuit (Greenberg Objection, pp. 6 and 15), he ignores the Sixth Circuit's holding that

Plaintiffs can make a choice about whether to seek to certify a class under Rule 23(b)(3) (and

seek monetary damages that predominate over injunctive relief) or whether to proceed under

Rule 23(b)(2) (and seek declaratory or injunctive relief). <u>Reeb v. Ohio Dep't of Rehab. & Corr.</u>, 435 F. 3d 639, 651 (6th Cir. 2003) (vacating the District Court's decision to certify a class under Rule 23(b)(2) where certification would apply to both equitable relief and damages claims, and holding "Plaintiffs now have the choice of proceeding under Rule 23(b)(3) in an action for money damages or in an action under Rule 23(b)(2) for declaratory or injunctive relief alone or in conjunction with compensatory and punitive damages that inure to the group benefit.").

Given the unique issues presented in this case, Plaintiffs chose to pursue injunctive relief and seek to certify a settlement class under Rule 23(b)(2), rather than continuing to pursue certification of a litigation class under Rule 23(b)(3). Such a choice is especially appropriate in this case. <u>See</u>, <u>e.g.</u>, <u>Allen v. Int'l Truck & Engine Corp.</u>, 358 F.3d 469, 472 (7th Cir. 2004) (vacating the District Court's order denying class certification, remanding matter "with instructions to certify a class under Rule 23(b)(2) for equitable matters and to reconsider the extent to which damages matters also could benefit from class treatment"); <u>Pella Corp. v. Saltzman</u>, 606 F.3d 391, 395 (7th Cir. 2010) (affirming decision to certify Rule 23(b)(2) class for purposes of equitable relief where damage claims were allowed to go forward individually), <u>cert. denied</u>, 131 S. Ct. 998, 178 L.Ed. 2d 826 (2011).

Objectors Walsh and Greenberg criticize the Settlement because they claim that money damages predominate and the case is not appropriate for Rule 23(b)(2) certification.[43] Importantly, the Sixth Circuit has held that "[d]isputes over whether [an] action is primarily for injunctive . . . relief rather than a monetary award neither promote the disposition of the case on

---

[43] It is worth noting, however, that objector Walsh also makes the inconsistent criticism that the Settlement contains insufficient monetary relief. Walsh Objection at 7.

the merits nor represent a useful expenditure of energy.  Therefore, they should be avoided.  If

the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been

requested, the action usually should be allowed to proceed."  Olden v. LaFarge Corp., 383 F.3d

495, 510-11 (6th Cir. 2004) (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay

Kane, Federal Practice and Procedure 2d § 1775).  Especially considering the fact that the

Settlement expressly preserves the right of Settlement Class Members to bring individual claims

for personal injury and actual damages,[44] the injunctive relief offered in this Settlement does

predominate any remaining claims for monetary damages.  This case is well-suited for the

certification of a settlement class under Rule 23(b)(2).

Objector Greenberg describes Daffin v. Ford Motor Co., No-C-1-00-458, 2004

U.S. Dist. LEXIS 18977, at *14-15 as "most instructive."  Greenberg Objection, pp. 11-12.

Greenberg ignores the fact that in Daffin, Plaintiff was seeking to certify a litigation class where

individual damages claims would be subject to classwide treatment under Rule 23(b)(2).  The

contrast between this Settlement (where personal injury and actual damages claims are preserved

and carved out of the settlement) and Daffin (where plaintiff was attempting to certify a Rule

23(b)(2) class to litigate collectively damage claims) is stark and shows this case is appropriate

for class certification under Rule 23(b)(2), whereas Daffin was not appropriate for such

classwide treatment.  The Parties here are seeking to certify a settlement class where the relief

requested is injunctive relief.  This case is not the Daffin case; not even close, and this case is

appropriately certified under Rule 23(b)(2).

---

[44] Settlement Agreement, § VIII ("Notwithstanding anything stated below [release paragraph], Settlement Class Members (other than Named Plaintiffs) do not release and discharge, but instead preserve, the right to file individual lawsuits for personal injury or actual damages claimed to have been caused by or related to the Pampers with Dry Max product, subject to the limited class action bar.")

While Objector Greenberg recognizes that the release is limited to equitable relief, he asserts that, from the perspective of the release, damage claims continue to predominate.[45] Objector Greenberg asserts that in a Rule 23(b)(2) class settlement, the parties should confine the release to future claims for injunctive relief only and is critical of the release because he seems to believe it is unclear that personal injury and actual damages claims are not released.  Greenberg Objection, p. 13.  Nothing can be further from the truth.  Ass'n for Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 471-73 (S.D. Fla. 2002) (approving a similar release in the Rule 23(b)(2) settlement where the parties released statutory damage claims, but preserved claims for actual damages and personal injury).  The release was carefully negotiated with the help of the mediator, is appropriately tailored to this case, and it is clear from the release that such claims are preserved.[46]

---

[45] Objector Greenberg also claims that Settlement Class Members should be permitted to opt-out of the Settlement.  Contrary to Mr. Greenberg's objection, the ability to opt-out is not required in a Rule 23(b)(2) settlement for injunctive relief, and it is not appropriate in such cases.  Claybrooks v. Primus Auto. Fin. Serv. Inc., No. 3:02-0382, 2005 U.S. Dist. LEXIS 12358, at *36-39 (M.D. Tenn. January 18, 2005) ("This entitlement [to personal notice and an opportunity to opt-out] can be overcome only when individual suits would confound the interests of other plaintiffs, such as with a limited fund . . .  or an injunction that affects all plaintiffs similarly.") (emphasis in original) (citation omitted).  As in Claybrooks, this case does not present due process concerns (especially since individual claims for personal injury and actual damages are preserved) as the relief provides for an injunction that affects all Settlement Class Members similarly.  Moreover, the interests of Settlement Class Members have been "protected by the requirement that representative plaintiffs and their class counsel act as fiduciaries for [the Settlement Class Members.)  Id. at *38 (citing Brown v. Ticor Title Ins. Co. 982 F.2d 386, 390, 392 (9th Cir. 1992), cert. granted, 510 U.S. 810 (1993), cert. dismissed, 511 U.S. 117, 114 S. Ct. 1359 (1994); Stewart v. Rubin, 948 F. Supp. 1077, 1091 (D.D.C 1996) (finding that an objecting class member's rights of due process and fundamental fairness were met by membership in a 23(b)(2) class when there was adequate representation by named plaintiffs and class counsel, adequate notice and opportunity to object to a proposed settlement, and settlement would not be approved unless deemed fair, reasonable, and adequate by the district court); aff'd, 124 F. 3d 1309 (1997).  With respect to Rule 23(b)(2) class actions for injunctive relief only, due process does not require notice and opportunity to opt-out.

[46] The recent Wal-Mart decision does not require the limitation of any release to equitable claims.  Rather, the Wal-Mart decision prohibits the certification of a Rule 23(b)(2) litigation class where back-pay claims are resolved as part of the litigation.  Wal-Mart v. Dukes, 546 U.S. ____ (2011).  This settlement preserves claims for personal injury and actual damages while providing for injunctive relief.  The certification of a settlement class in this case is entirely appropriate under Rule 23(b)(2) and not in any way prohibited by the recent Wal-Mart decision.

Several courts have certified Rule 23(b)(2) settlement classes where, like here, the parties preserved individual compensatory damage claims, while releasing other claims (including claims that could arguably provide for some monetary relief). Austin v. Wilkinson, 83 Fed. Appx. 24, 25 (6th Cir. 2003) ("[Appellant's] main complaint seems to be a desire to pursue compensatory damages; he is of course not barred from seeking damages by the preclusive effect of the class action, which bars only future injunctive relief."); Smith, 2010 U.S. Dist. LEXIS 81842, at *11 (certifying a settlement class under Rule 23(b)(2), noting that "if any [class member] has a documented, medically substantiated asbestos-related condition, he is free to file a separate cause of action. . . [and] the pending litigation will not affect his rights in that regard" and holding that the objecting class member "always had the right and ability to bring a separate cause of action to pursue compensatory damages for physical injury."); Fresco v. Auto. Directions, Inc., No. 03-CIV-61063, 2009 U.S. Dist. LEXIS 125233, at *13 (S.D. Fla. Jan. 16, 2009 (certifying a Rule 23(b)(2) settlement and noting that "the parties' settlement preserves any individual claims that class plaintiffs may have for actual damages, claims which might otherwise have precluded certification under Rule 23(b)(2)").

All of the Objectors (Walsh, Greenberg and Nace) misconstrue the benefits offered in the settlement as offering only prospective injunctive relief that benefits future purchasers of the Dry Max Pampers diapers. Walsh Objection, p. 1 (discussing "future purchases"); Greenberg Objection, p. 15 ("settlement relief at most benefits future purchasers"); and Nace Objection to Settlement ("Nace Objection"), p. 4 ("money-back guarantee is only for future purchasers"). Procter & Gamble agreed that, for twelve (12) months after the Effective Date, it would reinstate and extend its money-back guarantee program for consumers who purchased Pampers Swaddlers and Cruisers diapers. There are no monetary caps to the program.

The money-back guarantee provides reimbursement for Settlement Class Members for purchases of the product during the class period. Settlement Agreement at ¶ V.B.4. This Settlement (which provides substantial equitable relief for Settlement Class Members) is entirely appropriate for settlement under Rule 23(b)(2).

> 1.  As Part of the Bargained for Exchange in the Settlement, Class Members Agreed Not to File Another, Similar Class Action

Without citing any authority, Objector Greenberg criticizes the limited class action waiver. Greenberg Objection, pp. 20-23. Objector Greenberg is, again, wrong. The Settlement Agreement affords broad (and fair) injunctive relief, uniquely tailored to the facts of this case. The Settlement wholly preserves the right of Settlement Class Members to bring future lawsuits for personal injury or actual damages, and reads, in relevant part:

> "Plaintiffs and all members of the Settlement Class are hereby permanently barred and enjoined from seeking to use the class action procedural device in any future lawsuit against Released Parties, where the lawsuit asserts Claims that were or could have been brought in State or Federal Court in this Action prior to the entry of this Final Approval Order and Judgment and not otherwise released and discharged by the Settlement Agreement."

Settlement Agreement at § VIII.[47] The Settlement Agreement does not, however, allow a Settlement Class Member to file a new -- and thus second -- class action based on "Claims that were or could have been brought in State or Federal Court in this Action[.]" Id.

Considering the Settlement as a whole, waiver of the class action procedural device is fair, reasonable, and adequate under these unique circumstances because if the

---

[47] After investing significant time and resources in investigating the underlying problems with Dry Max Pampers, Lead Class Counsel believes that under the unique circumstances presented by the Dry Max Pampers product, certification of a personal injury class would be unlikely.

Settlement Agreement is finally approved, the Settlement Class Members will have already successfully availed themselves of the class action procedural device once by virtue of this Settlement and gained considerable relief. Contrary to Objector Greenberg's claims (pp. 20-23), the language of the waiver is narrowly-tailored to this case.[48]

Further, as Objector Greenberg concedes (p. 22) class-action waivers such as the one here have been utilized in other class action settlements. E.g., In re Nationwide Fin. Servs. Litig., No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962, at *47 (S.D. Ohio Aug. 18, 2009) (Watson, J.); Fresco v. Auto Data Directions, Inc., 2009 U.S. Dist. LEXIS 125233, at *12-13, *23-34. In Fresco, the court faced an objection similar to one made by the objectors in this case -- namely, that waiver of the class action procedural device is improper. Id. at *23. The Fresco court quickly rejected that argument, holding that it was "not aware of any binding authority holding that parties may not waive such rights in a settlement agreement." Id. at *23-24. Other than expressing disapproval as professional objectors, none of them cite any authority for the proposition that the waiver of the class action procedural device in future litigation is in any way improper.

The waiver of the class action device is appropriate in the circumstances presented by this case and because the Class achieved significant relief in this settlement. Individuals who were dissatisfied with Pampers can get their money back. All consumers will benefit from additional, accurate information being made available on the internet and by phone.

---

[48] Greenberg incorrectly implies the waiver is so broad that it implicates Procter & Gamble's other brands. The release cannot be so broadly construed, as it is limited to "Claims brought in this Action," which were based on alleged defects in Dry Max Pampers.

This real and significant relief justifies the bargain. This is doubly true where, as here, they may still bring their own claims for actual damages.

Contrary to Objector Greenberg's position (Greenberg Objection, p. 20), there is no requirement that Settlement Class Members be permitted to opt out prior to permitting a class action waiver. There is no right to opt in a Rule 23(b)(2) settlement. Austin v. Wilkinson, 83 Fed. Appx. 24, 25 (6th Cir. 2003) ("Rule 23(b)(2) class actions are mandatory class actions, in that class members are given no opportunity to opt out of the action.") (citing Coleman v. HMAC, 296 F.3d 443,447 (6th Cir. 2002); Ass'n for Disabled Am., 211 F.R.D. at 473 n.14 (rejecting objectors contention that class members should be permitted to opt out and holding "every class member will necessary benefit from the [settlement relief and b]ecause class members cannot avoid the benefits provided by the [settlement agreement], to permit an exclusion opportunity would be to allow class members to have their cake and eat it too.") (citation omitted).[49]

Objector Greenberg's assertion that the class action waiver is some sort of prior restraint that implicates the First Amendment freedom of speech is absurd. Greenberg Objection, p. 21. The class action waiver states that Settlement Class Members are prohibited from "seeking to use the class action procedural device in any future lawsuit against Released Parties, where the lawsuit asserts Claims." Settlement Agreement, § VII.C. There is no First

---

[49] While a plaintiff may seek to represent a class through Rule 23, the Federal Rules of Civil Procedure do not create or vest any substantive "right" to proceed in a class action. Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 332, 100 S. Ct. 1166, 1171 (1980) ("the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims") (emphasis added); Blaz v. Belfer, 368 F.3d 501, 504 (5th Cir.) (no substantive right to pursue a class action), cert. denied, 543 U.S. 874, 125 S. Ct. 97 (2004); Johnson v. W. Suburban Bank, 225 F.3d 366, 371 (3d Cir. 2000) ("the 'right' to proceed as a class action, in so far as the TILA is concerned, is a procedural one") cert. denied, 531 U.S. 1145, 121 S. Ct. 1081 (2001).

Amendment right to class actions, and the class action wavier is not a prior restraint on Settlement Class Members' freedom of speech.  Moreover, the prohibition on the second use of the class action device is tied to the defined term "Claims," which is appropriately tied to the claims asserted by Plaintiffs in this Action.  The class action waiver is narrowly drafted and appropriately tailored to this unique case.

The limited class action waiver is an essential part of the consideration for the class benefits conferred in this unique Settlement.  By definition, a settlement embodies a compromise among the disputing parties resulting in bargained-for terms of agreement.  The class action waiver is a bargained-for concession, in return for the beneficial provisions conferred on this Settlement Class.[50]  Importantly, the Settlement preserves the rights of Settlement Class Members to pursue subsequent individual litigation for personal injuries and actual damages.

B.      The Class Definition is Appropriate

The Court certified a settlement class of "[a]ll persons in the United States and its possessions and territories, who purchased or acquired (including by gift) Pampers brand diapers containing "Dry Max Technology" from August 2008 through Final Judgment."  June 7, 2011 Order Preliminarily Approving Class Action Settlement, p. 3.  The class definition is appropriate for this case and is consistent with those certified in other cases.

"While class definitions are obviously individualized to the given case, important elements of defining a class include:  (1) specifying a particular group at a particular time and

---

[50] In addition, a class action waiver, as part of the overall Settlement, serves the goal of judicial efficiency and economy, which would be undermined if, in settling one class, the Settlement Agreement permitted subsequent cascading, duplicative class actions based on the same claims and theories.

location who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner." Laichev v. JBM, Inc., 269 F.R.D. 633, 639 (S.D. Ohio, 2004) (citing McGee v. E. Ohio Gas Co., 200 F.R.D. 382, 387 (S.D. Ohio 2001) (certifying a class "through final judgment"). The Settlement Class meets those requirements. The defined Settlement Class identifies a particular group ("all persons . . . who purchased or acquired (including by gift) Pampers brand diapers containing 'Dry Max Technology"), at a particular time ("from August 2008 through Final Judgment") and location ("in the United States and its possessions and territories").

Mr. Greenberg objects to the class definition as impermissibly broad.  Greenberg Objection, pp. 23-25.  The class definition is consistent with class definitions that have been previously approved in other cases, including cases in the Southern District of Ohio.  Laichev, 269 F.R.D. at 639 (certifying a class "through final judgment"); Fresco, 2009 U.S. Dist. LEXIS 125233, at *13 (certifying a settlement class "through final judgment").  The class definition is appropriate given the facts and circumstances of this case.[51]

C.    Notice is More than Adequate

The notice provided in this extraordinarily well-publicized Rule 23(b)(2) Settlement is more than sufficient.  As anticipated, traditional media wrote articles based upon the press release that were picked up by wire services like the Associated Press, spreading

---

[51] While the Parties continue to believe that the certification of a settlement class through final judgment is appropriate under the law (and the circumstances of this Rule 23(b)(2) settlement where Settlement Class Members are preserving the right to bring individual lawsuits and all such Class Members will have access to the settlement benefits), if the Court determines that the class period should be limited, then the Parties have no objection to modifying the class to end the class period as of the date of the final approval hearing (September 28, 2011).

information about this well-publicized settlement.[52]  Notice was available on the Pampers website, as well as the Facebook website for Pampers.  Given the social media associated with this case, the combination of social and traditional media yielded extensive coverage of the Settlement (as is discussed below).

The Court need only to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  While Rule 23(e)(1) requires some form of notice of any class settlement, Rule 23(e)(1) does not require the same level of detail as the notices associated with Rule 23(c)(2) (required in Rule 23(b)(3) class actions).  Int'l Union v. Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir. 2007) (stating that Rule 23(b)(2) does not require notice before certifying a mandatory class and Rule 23(e) does not require "a notice to lay out every reason a class member might object to the settlement") (citing Fed. R. Civ. P. 23(e)(1) ("requiring the court only to 'direct notice in a reasonable manner'").

Settlement notice need only apprise the prospective Settlement Class Members of the terms of the settlement "so that class members may come to their own conclusions about whether the settlement serves their interests." Id.; accord: DeHoyos v. Allstate Corp., 240 F.R.D. 269, 298 (W.D. Tex. 2007) (holding that "[a] class settlement notice need only properly identify the plaintiff class and generally describe the terms of the settlement so as to alert members 'with adverse viewpoints to investigate and to come forward and be heard'") (citation omitted); Dillard v. City of Foley, 926 F. Supp. 1053 (M.D. Ala. 1995) (holding that notice that

---

[52] Attached as Exhibit 3 is the Declaration of Bryan McCleary who confirms that between June 10 and 20, 2011, several articles about the Settlement were published by the Associated Press and Reuters new agencies.  The Associated Press, which serves 1700 newspapers and 5,000 television outlets in the United States, was one of the first news networks to pick up on the story of the settlement.  By June 10, 2010, a Google search revealed over 90 stories, and by September 14, 2011, there were more than 21,000 search results revealed from a Google search of the terms "dry max" and settlement.

advised class members of the terms of the proposed consent decree, the existence of the opportunity to object and the time and place of the fairness hearing was sufficient).

Objectors Greenberg and Nace claim the notice is deficient because neither the Settlement Agreement nor the notice provides the sum total that will be sought in incentive awards. Greenberg Objection, pp. 29-30; Nace Objection, p. 2. Both somehow estimate that 59 class representatives and $1,000 payments will yield more than $100,000 because the award is provided on a "per affected child" basis. Contrary to the Objectors' positions, the total award is $51,000. Joint Declaration of Lynn Lincoln Sarko and Gretchen Freeman Cappio, ¶ 3 (attached as Exhibit 2). [53] The sum total of the amount of the Representative Plaintiff Award is not material to the Settlement (especially since it is less than the number of Plaintiffs) and need not be disclosed in the class settlement.

Moreover, Objector Greenberg cites to Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 301 (7th Cir. 2000) as support for the proposition that the failure to disclose an incentive award makes the notice deficient. The case provides no such support. Contrary to Objector Greenberg's position, the court did not find the notice deficient based upon the alleged failure to disclose the total amount of the incentive payment. Rather, the court rejected the $30,000 incentive payment to the class representative. Id. The Objectors have not and cannot cite legal authority for the proposition that the sum total of the representative payment award needs to be in the class notice for the class notice to be approved pursuant to Rule 23(e).

---

[53] Many of the class representatives are both parents of the "affected child," thus only entitled to one payment (and not multiple payments). E.g., Consolidated Complaint, ¶ 10 (Angela and Kenneth Clark), ¶ 16 (Ryan and Stacie Berman), ¶ 23 (Robert and Angelina Davenport), ¶ 25 (Jessica and Brandon Ehrhart), ¶ 30 (Morgan Maue and Robin York), ¶ 46 (John and Karina Walker) ¶ 47 (Emily and Ryan Weaver), and ¶ 49 (Brigette and Joseph Wolfe)).

Similarly, both the Greenberg and Nace Objectors complain that the notice fails to identify the intended recipients of the cy pres award.  This objection is without merit because there is no cy pres award, but rather, an injunction requiring Procter & Gamble to establish and produce a pediatric resident training program at a leading children's health center.  Notice, p. 2 ("produce and fund a pediatric resident training program at a leading children's health center.") (emphasis added).  Since the Settlement requires the production of the program (not the funding of an existing program), the identity of the children's health center to host the program has not been identified (and will not be indentified until settlement funds are available to produce the program).  Further, the identity of the "leading children's health center" is not material to the settlement; rather the injunctive relief requiring the production and funding of the program is material and that information has been disclosed to Settlement Class Members.  There is no cy pres and there is sufficient notice of the relief offered as part of the Settlement.

As the Greenberg Objector concedes, settlement notice under Rule 23(e) need not be the "best notice practicable" or assure individual notice.  Gottlieb v. Wiles, 11 F.3d 1004, 1013 (10th Cir. 1993) (holding that published notice that "generated a significant response" was held to be sufficient); DeHoyos, 240 F.R.D. at 296-97 (individual notice is not required and noting that publication notice is widely used in Rule 23(b)(2) class actions).  Because individual notice is not required under Rule 23(e)(1), publication notice is often used in Rule 23(b)(2) class actions.  Id.

Numerous class action settlements have been approved where the parties have published notice from a website with publications.  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (notice via national publication, a website dedicated to the litigation and www.theknot.com (the most trafficked wedding website) was sufficient as

43

defendants did not have a list of class members); <u>Koz v. Kellogg Co</u>., No. 09-cv-1786, 2010 U.S.

Dist. LEXIS 116924, at *15-17 (S.D. Cal. Oct. 14, 2010) (notice in national magazines and on-

line versions of local newspapers and television stations was sufficient where defendant could

not identify class members directly because defendant did not sell to class members

directly); <u>Mirfasihi v. Fleet Mortg. Corp.</u>, 356 F.3d 781, 786-87 (7th Cir. 2004) (notice in

national newspapers and on a website maintained by the settlement administrator was sufficient

where defendants had no records regarding class members).  Such combined notice programs are

particularly appropriate when, as here, defendant lacks a list of the class members.  <u>Kellogg</u>,

2010 U.S. Dist. LEXIS 116924, at *15-17.

   In addition to more traditional publication notices (with a website component),

courts have also approved notice programs where the parties provided notice through a website

and to targeted organizations devoted to service or advocacy with respect to issues relevant to the

putative class.  <u>Meacham v. Wing</u>, 227 F.R.D. 232, 235  (S.D.N.Y. 2005) (notice was posted in

waiting rooms of fair hearing offices, mailed to advocacy groups, posted on the website and

distributed to a listserv; <u>Kaplan v. Chertoff</u>, No. 06-5304, 2008 U.S. Dist. LEXIS 5082, at *39-

41 (E.D. Pa. Jan. 24, 2008) (distribution of notice through a website and to individuals who

worked with defendant agency or through affiliated agencies that were likely to interact with

class members).  A similar approach of website notice and distribution of notice to a limited

number of properly-targeted groups may meet the notice requirement of Rule 23(e).

   The use of publication notices through the issuance of a joint press release and the

use of targeted websites and a Class Action Website is entirely appropriate in this case.  The

Consolidated Complaint emphasizes the use of the internet as the primary means for making

claims that are allegedly false and misleading.  Settlement Agreement, § IV.  Since the filing of

the complaint received substantial publicity, as expected, this Settlement received substantial publicity.[54] As expected, the press release generated a significant amount of publicity about the settlement.[55] The distribution of the notice through targeted websites and the creation of a settlement website is entirely appropriate and sufficient for this well-publicized Settlement.[56]

VI.          CONCLUSION

For the foregoing reasons, the Settlement satisfies the requirements for final approval under Federal Rule of Civil Procedure 23(a)(b)(2) and (e), and should be approved by this Court.

---

[54] More than 200 media outlets covered the Parties' settlement. A few examples of the publicity are as follows: P&G has a mess on its hands Company tries to counter gripes about new diaper, The Houston Chronicle (Houston, Texas), May 16, 2010; Bloggers wage war with Pampers claims, The Star-Ledger (Newark, New Jersey), May 15, 2010; New diapers suffer rash of complaints; In Facebook protest, parents allege Pampers cause sore bottoms; no way, says Procter & Gamble, citing tests and blog testimonials, The Columbus Dispatch (Columbus, Ohio) May 14, 2010; A Real Pain In The Butt, The Globe and Mail (Canada), May 14, 2010; United States. P&G being sued over Pampers rash claims, Ottawa Citizen (Canada), May 14, 2010; Bloggers battle company over diaper allegations, San Jose Mercury News (California), May 14, 2010; Facebook parents push for Pampers recall; In the latest sign of the power of social media, concerned parents band together on Facebook to push for a Pampers recall, The Christian Science Monitor, May 10, 2010; US investigating Pampers complaints, The Boston Globe, May 7, 2010; Feds examining claims of severe rashes from new types of Pampers, Fort Worth Star-Telegram (Texas), May 7, 2010; Starwatch consumer | Pampers complaints; cribs recalled, The Kansas City Star (Missouri), May 7, 2010; Diaper debut prompts rash of complaints; Pampers defends "Dry Max" as parents vent online over red bottoms, Star Tribune (Minneapolis, MN), April 30, 2010; Rash Of Complaints Over New Line Of Pampers, Daily News (New York), April 20, 2010.

[55] The settlement received publicity such as the following: P&G to settle Pampers diaper rash lawsuit, The Associated Press State & Local Wire, June 10, 2011; P&G to settle diaper suit, Gannett News Service, June 10, 2011; Procter & Gamble Agrees To Settle Lawsuit Over Pampers Dry Max Diapers, Consumerist, June 10, 2011; P&G to settle Pampers diaper rash lawsuit, Pittsburgh Tribune Review, June 11, 2011; P&G to settle diaper suit, The Cincinnati Enquirer (Ohio), June 11, 2011; Reports Procter & Gamble (NYSE:PG) to settle Pampers diaper lawsuit; moms claimed Dry Max caused skin problems, M2 PressWIRE June 13, 2011; P&G settles Pampers lawsuit, Edmonton Journal (Alberta), June 14, 2011.

[56] Attached as Exhibit 4 is the Declaration of Rebecca S. Hall identifying some of the media outlets that ran articles about the Settlement.

Respectfully submitted,


/s/ Gary D. Greenwald (per authorization)
Gary D. Greenwald, Trial Attorney
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012


Trial Attorney for Plaintiffs


/s/ Lynn Lincoln Sarko (per authorization)
Lynn Lincoln Sarko
Michael D. Woerner
Gretchen Freeman Cappio
Gretchen S. Obrist
Harry Williams IV
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY  10003

Mark D. Samson
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012


Interim Lead Counsel


/s/ D. Jeffrey Ireland
D. Jeffrey Ireland  (0010443), Trial Attorney
Brian D. Wright (0075359)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3749
Email:  djireland@ficlaw.com


Attorneys for Defendants
The Procter & Gamble Company,
The Procter & Gamble Paper Products
Company and The Procter & Gamble
Distributing LLC

## CERTIFICATE OF SERVICE

I certify that on this 16th day of September, 2011, I electronically filed the

foreground Joint Motion of Plaintiffs and Defendants for Final Approval of Settlement with the

Clerk of Courts using the CM/ECF system, which will send notification of such filing to

CM/ECF participants.

Gary D. Greenwald
Mark D. Samson
KELLER ROHRBACK P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, AZ  85012

Lynn Lincoln Sarko
Michael D. Woerner
Gretchen Freeman Cappio
Gretchen S. Obrist
Harry Williams IV
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101

David S. Preminger
KELLER ROHRBACK L.L.P.
770 Broadway, 2nd Floor
New York, NY  10003

Lead Class Counsel

Craig W. Hillwig
Christina Donato Saler
Joseph C. Kohn
George S. Croner
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA  19107

Thomas M. Mullaney
LAW OFFICES OF THOMAS M. MULLANEY
275 Madison Avenue, 37th Floor
New York, NY 10016

Attorneys for Plaintiffs

Donald S. Varian, Jr.
195 South Main Street, Suite 400
Akron, OH 44308

Daniel E. Gustafson
Karla M. Gluek
Amanda M. Williams
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402

Charles S. Zimmerman
Timothy J. Becker
J. Gordon Rudd, Jr.
Elizabeth A. Peterson
ZIMMERMAN REED, P.L.L.P.
80 South Eighth Street
1100 IDS Center
Minneapolis, MN 55402

Attorneys for Plaintiffs

Stuart E. Scott
Peter H. Weinberger
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114

Attorneys for Plaintiffs

Theodore J. Froncek
1208 Sycamore Street
Cincinnati, OH 45202

and I hereby certify that I have mailed by first class U.S. mail, postage prepaid, the document to the non-CM/ECF participants:

Todd S. Collins
Neil F. Mara
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365

Gerard V. Mantese
David Honigman
MANTESE, HONIGMAN, ROSSMAN AND WILLIAMSON, P.C.
1361 E. Big Beaver Road
Troy, MI 48083

Richard J. Arsenault
Laura Singletary
Mary Nell Bennett
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
PO Box 1190
Alexandria, LA 71309-1190

Nicholas J. Drakulich
THE DRAKULICH FIRM
A Professional Law Corporation
2727 Camino Del Rio South, Suite 322
San Diego, CA 92108

Joseph F. Devereux, Jr.
Joseph F. Devereux III
DEVEREUX MURPHY LLC
The Plaza at Clayton
190 Carondelet, Suite 1100
St. Louis, MO 63105

Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601

David S. Corwin (VIA U.S. MAIL)
Amanda Sher
SHER CORWIN, LLC
190 Carondelet Plaza, Suite 1100
Clayton, MO 63105

Attorneys for Plaintiffs

J. Edward Bell, III
J. Ryan Heiskell
BELL LEGAL GROUP, LLC
232 King Street
Post Office Box 2590
Georgetown, SC 29442

Attorneys for Plaintiffs

Charles J. Hodge
T. Ryan Langley
HODGE AND LANGLEY LAW FIRM, PC
P.O. Box 2765
Spartanburg, SC 29304

Attorneys for Plaintiffs

Hassan A. Zavareei
Jonathan Tycko
Jeffrey Kaliel
TYCKO & ZAVAREEI LLP
2000 L Street, NW, Suite 808
Washington, DC 20036

Attorneys for Plaintiffs

Mila F. Bartos
Karen J. Marcus
FINKELSTEIN THOMPSON LLP
1050 – 30th Street, NW
Washington, DC 20007

Attorneys for Plaintiffs

James E. Cecchi
Donald Ecklund
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ  07068

Attorneys for Plaintiffs

Adam Ezra Schulman
CENTER FOR CLASS ACTION FAIRNESS LLC
1718 M Street NW, No. 236
Washington, D.C. 20036

Attorneys for Daniel Greenberg

Bonner C. Walsh
904 Mission Ave.
Athens, TX 75751

Donald K. Nace
1000 Suffolk Court
Cedar Park, TX 78613

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland

560692.2